# Exhibit C

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

DUSTIN HYDE, individually and on )
Behalf of All Other Similarly Situated )
)
Plaintiff, )
)
   v. )   Civil Action File No: 2:22-cv-103-RWS
)
316 TOWING & ROAD SERVICE, )   **JURY TRIAL DEMANDED**
INC., and MAKSIM LISOVSKIY )
)
Defendants. )

## AFFIDAVIT OF ELISHA KUDRIN

Elisha "Eli" Kudrin, having PERSONALLY APPEARED before an officer duly authorized by law to administer oaths, and having been duly sworn, states the following:

1. My name is Elisha "Eli" Kudrin.  I am over 21 years of age, suffer from no legal disabilities, and give this affidavit from personal knowledge for utilization for all purposes in the above-styled civil action.

2. I am the General Manager of 316 Towing and Road Services, Inc. ("316 Towing"). In this role, I am responsible for overseeing and managing the day-to-day operations of 316 Towing, including direct communications with the tow truck drivers engaged by 316 Towing and maintaining documents related

1

**Exhibit C, Kudrin Aff., Sept. 12, 2022**

to the drivers. I am personally familiar with 316 Towing's operations and employment practices.

3.      316 Towing has one office, which is located in Barrow County, Georgia, at 796 Bill Rutledge Road, Winder, GA 30680.

4.      316 Towing provides roadside assistance to customers within and around Winder, Georgia, including towing, winching, accident response, jump starting vehicles, and other related services.

5.      I was hired as the General Manager of 316 Towing in June of 2019.

6.      In my capacity as General Manager, I had the authority to recruit and terminate tow truck drivers.

7.      Prior to June of 2019, I had no experience managing or operating a towing business.

## 316 TOWING

8.      316 Towing engages tow truck drivers as independent contractors, by which 316 Towing would retain tow truck drivers who could respond to calls from potential customers during scheduled on-call "shifts" in exchange for a fixed weekly rate.

9.      Since 2019, 316 Towing has had no more than six (6) to truck drivers working for it at any given time.

**Exhibit C, Kudrin Aff., Sept. 12, 2022**

10. Each tow truck driver was required to be "on-call" each day during his twelve-hour shift, six days per week.

11. During each tow truck driver's respective shift, 316 Towing only required that he be available to answer or promptly return phone calls from dispatch and confirm whether he could respond to a potential customer's request for roadside assistance.

12. Drivers were free to reject requests from potential customers, and frequently did so.

13. 316 Towing never disciplined or threatened to terminate any tow truck driver for rejecting a request from a potential customer.

14. Tow truck drivers were not required to spend on-call time at 316 Towing's office or any other location.

15. Most tow truck drivers spent the majority of their on-call shifts at home or engaged in personal activities, such as errands or attending to other responsibilities or other jobs.

16. Each of 316 Towing's tow truck drivers used a timekeeping software program called "Towbook" which tracks data including calls from dispatch, rejected calls, and how much time that tow truck drivers spent assisting clients and driving to-and-from client locations.

3

**Exhibit C, Kudrin Aff., Sept. 12, 2022**

17.  With a few exceptions, 316 Towing tow truck drivers used their own personal cell phones (which were already compatible with the Towbook software) to respond to calls remotely.

18.  Each tow truck driver was required to sign an Independent Contractor Agreement before he began performing work for 316 Towing.

19.  The Independent Contractor Agreement was identical for each tow truck driver who performed work for 316 Towing and includes a provision that "any dispute concerning the terms of this Agreement will be submitted to mediation followed by binding arbitration before a tribunal convened under the rules of the American Arbitration Association at Atlanta, GA."

20.  I have personally witnessed at least two truck drivers sign the Independent Contractor Agreement in my presence, though this was not required so long as each tow truck driver returned a signed Independent Contractor Agreement before performing any work.

21.  Any time that 316 Towing asked a tow truck driver to take a call or perform a job outside of his scheduled shift, he was compensated an additional rate over and above his weekly rate.

22.  316 Towing's mechanic, James Parrish, occasionally drives a 316 Towing-leased vehicle in the course of his regular duties, which include picking up and delivering equipment for the business.

4

**Exhibit C, Kudrin Aff., Sept. 12, 2022**

## DUSTIN HYDE

23.   In or around December of 2019, Dustin Hyde ("Hyde") approached 316
      Towing looking for work as a tow truck driver.

24.   On December 5, 2019, Hyde completed and returned a signed Independent
      Contractor Agreement, which I then signed on behalf of 316 Towing.  A copy
      of that agreement is attached hereto as "Exhibit A."

25.   Because Hyde had years of experience as a tow truck driver, he was paid a
      higher weekly rate and performed different duties than other tow truck drivers,
      including training, advising management about industry best practices,
      reviewing driver applications and making recommendations, and sourcing
      equipment for 316 Towing from his established network of local vendors.

26.   Hyde worked for 316 Towing from about December 5, 2019 through July 30,
      2021, then again from November 15, 2021 through April 8, 2022.

27.   In July of 2021, Hyde voluntarily stopped performing work for 316 Towing
      following a dispute with management regarding another tow truck driver.

28.   Before voluntarily returning to work for 316 Towing in November of 2021,
      Hyde was required to submit a drug test.

29.   During the timeframe that Hyde was performing work for 316 Towing, Hyde,
      like all other tow truck drivers, was required to be "on-call" for twelve-hour
      shifts six days per week.

**Exhibit C, Kudrin Aff., Sept. 12, 2022**

30.     During his on-call shifts, Hyde was not required to be in the office.

31.     Hyde spent the majority of his "on-call" time at home or engaged in personal activities.

32.     Hyde frequently rejected jobs from potential customers, for which he was never disciplined.

33.     Hyde performed an average of just about 15 hours of work per week for 316 Towing, including driving to-and-from customers and performing roadside assistance.

34.     Most tow truck drivers spent a similar amount of time as Hyde each week performing work for 316 Towing.

35.     Hyde held a remote desk job for a different company during the time that he performed services for 316 Towing. I know this because Hyde told me.

36.     Hyde spent at least part of his on-call time at home performing work from his computer for another company.  I know this because Hyde told me.

37.     At no time did Hyde ever perform more than 40 hours of work for 316 Towing in any given week between 2019 and 2022.

## BRENT JOHNSON

38.     In or around April of 2021, Brent Johnson ("Johnson") approached 316 Towing looking for work as a tow truck driver.

6

39. On May 24, 2021, Johnson completed and returned a signed Independent Contractor Agreement, which I then signed on behalf of 316 Towing.  A copy of that agreement is attached hereto as "Exhibit B."

40. Johnson worked for 316 Towing from about May 24, 2021 through December 30, 2021.

41. In December of 2021, Johnson voluntarily stopped performing work for 316 Towing.

42. During the timeframe that Johnson was performing work for 316 Towing, Johnson, like all other tow truck drivers, was required to be "on-call" for twelve-hour shifts six days per week.

43. During his on-call shifts, Johnson was not required to be in the office.

44. Johnson spent the majority of his "on-call" time at home or engaged in personal activities.

45. Johnson frequently rejected jobs from potential customers, for which he was never disciplined.

46. Johnson performed an average of about 34 hours of work per week for 316 Towing, including driving to-and-from customers and performing roadside assistance.

*[SIGNATURE PAGE FOLLOWS]*

**Exhibit C, Kudrin Aff., Sept. 12, 2022**

FURTHER AFFIANT SAYETH NOT.

Respectfully submitted as of the notarized date below.

_____

Affiant
Elisha Kudrin
Operations Manager
316 Towing & Road Service, Inc.

SWORN TO and subscribed before me
by Elisha Kudrin, who is well known to
me or had produced a valid driver's
license as identification, this 12th day
of September 2022.

_____
Notary Public
My Commission Expires: 3|30|2025

8

# Exhibit A

## INDEPENDENT CONTRACTOR AND LEASE AGREEMENT

This Independent Contractor Agreement is made between 316 Towing and Road Service (hereinafter referred to as "Carrier") and
_____, (hereinafter referred to as "Contractor").

WHEREAS, Carrier is a for-hire motor carrier operating in interstate commerce and subject to the rules and regulations of the Federal Motor Carrier Safety Administration, the U.S. Department of Transportation, and other federal and state agencies; and

WHEREAS, Contractor is a (check where applicable):  (1) A Sole Proprietorship ☐; (2) Limited Liability Corporation or Partnership ☐; or (3) A Corporation ☐ which owns or leases the equipment identified in Appendix A attached hereto; and

WHEREAS, the parties desire to enter an independent contractor relationship and lease agreement in accordance with applicable law;

NOW, THEREFORE, the parties agree as follows:

This Agreement shall govern the lease of equipment identified on Appendix A with driver by Contractor to Carrier for the continuing performance of a series of separate transportation contracts, the payment for which shall be determined in accordance with the agreed compensation set forth in Appendix B.

1.    <u>Compliance with Federal Statutes and Regulations</u>.  The parties acknowledge and agree that this contract is governed by Federal Regulation, to wit: 49 C.F.R. 376 and it is the intent of the parties that this Agreement fully comply with such regulations without creating indicia of control which would otherwise frustrate the intent of the parties to create an independent contractor relationship.  See 49 C.F.R. 376.12(c)(4).

Accordingly, the parties agree as follows:

A.    Carrier shall exercise that level of dominion and control over the leased equipment required by Federal Motor Carrier Safety Regulations including the execution of an original and 2 copies of this Lease by the parties with a copy or notice of this Lease to be kept on the equipment during its term in accordance with 49 C.F.R. 376.11(a) and 49 C.F.R. 376.12(l).

B.    Receipts specifying the identity of the equipment and stating the date and time possession is transferred shall be issued in the form set forth in Appendix C in the time and manner as required by 49 C.F.R. 376.11(b).

C.    During the period of the Lease, Carrier shall identify the equipment in accordance with FMCSA requirements found at 49 C.F.R. 390.21 and Contractor warrants that it will immediately execute a receipt for return of the equipment as provided for in Appendix C, and remove or submit for removal all identification that the equipment is operated subject to the safety duties and obligations of Carrier. Within five calendar days of termination of the lease,

Initial Here: D.H

Contractor shall return to Carrier by mail or in person all identification devices, other than those painted directly on the equipment, as well as the executed receipt. Carrier may withhold final payment to Contractor, pursuant to 49 C.F.R. 376.12(f) until this requirement is complied with.

      D.    Records of Equipment. Carrier shall keep records covering each separate job or trip for which Contractor's services are retained in accordance with 376.11(d). Contractor warrants that it will instruct its driver to issue, obtain and carry while in transit bills of lading covering each trip which identify the lading and indicating the point of origin, the time and date of departure, the point of final destination, and confirm that the transportation is provided under the responsibility of Carrier.

      E.    Contractor warrants that it is the title holder or has equitable ownership of the leased equipment in accordance with 49 C.F.R. 376.12(a).

      F.    The Lease shall commence with the time of the giving of the receipt for possession and shall continue from month to month until terminated by either party in accordance with the termination provisions herein.

      G.    To fulfill the exclusive possession and responsibilities of the regulations, the authorized Carrier shall have exclusive possession, control and use of the equipment for the duration of the lease and the concomitant safety duties imposed by the Federal Motor Carrier Safety Administration's regulations. See 49 C.F.R. 376.12(c) and the safety regulations found at 49 C.F.R. 390-399.

      H.    Contractor recognizes Carrier's regulatory duty to *inter alia* maintain driver qualification files, monitor driver's hours of service, conduct pre-employment and random drug and alcohol screening, verify equipment maintenance and repair, ensure proper securement, transport of freight in accordance with reasonable dispatch and highway restrictions governing the transportation of hazardous and overweight and over-dimensional loads. Contractor certifies that it is familiar with these regulatory requirements, will so instruct its driver personnel in proper compliance and will indemnify and hold Carrier harmless from any breach by it or its employees of this duty or failure to offer reasonable cooperation.

      I.    Calculation of Compensation. Compensation set forth in Appendix B is based upon a percentage of the line haul revenue derived from each load or trip tendered by Carrier to Contractor and accepted for transport. Line haul revenue shall be that amount reflected upon the rated freight submitted by Carrier to its customer for payment for the services rendered by Contractor and accordingly shall exclude charges paid to interline carriers, pickup and delivery fees for services not performed by Contractor, expenses for over-dimensional permits, escort service and accessorial charges not earned by line haul equipment or its drivers such as lumpers or rigging expenses. Other expenses not attributable to the services rendered by Contractor shall also be excluded from line haul revenue. In accordance with 49 C.F.R. 376.12(g), Carrier will give Contractor before or at the time of settlement a copy of the rated freight bill or computer-generated document containing the same information. Upon request, Contractor may view other documents as required by regulation. In addition to the agreed

Initial Here: D.H

percentage of line haul revenue, Contractor shall receive 100% of any fuel surcharge, if any, collectible by Carrier as reflected on its rated freight bill.

     J.    Non-Reimbursable Expenses.  For the consideration specified above, Contractor agrees to be solely responsible for the following additional expenses:

     (1)    Identification Devices.  (At its expense upon termination of lease, Contractor removing identification devices, offering suitable evidence to Carrier that such devices have been removed, or submit the equipment to Carrier for its removal.)

     (2)    Cost of Fuel.

     (3)    Fuel Taxes.

     (4)    Permits of all types.

     (5)    Tolls, ferries, accessorial services, base plate and licenses.

     (6)    The hiring and settling of wages for its drivers and the payment of all employment taxes, worker's compensation insurance,

     (7)    The maintenance of all equipment in accordance with DOT standards.

     (8)    The payment of all operating expenses including Federal Highway Use Taxes, personal property taxes, fines incurred by it.

     (9)    Furnishing all tools, including tie-downs and load securement equipment, and safety equipment required by the DOT and/or FMCSA.

     (10)    Cost pertaining to the proper training and instruction of Contractor and its employees.

     (11)    Compatible on-board computer and tracing technology to meet Shipper's requirements.  Attached hereto as Appendix D is a list of tools and other devices which Contractor is required to provide pursuant to this Agreement which can be purchased or rented to Contractor by Carrier for the fees stated therein.  If Contractor elects to purchase or rent these items by executing the addendum in the place provided, the cost of same will be charged back to settlements until such time as the tool or device is returned in good condition, ordinary wear and tear excepted.

Initial Here: D.H.

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

(12)  Property Damage to Carrier's Trailer.  Contractor shall be responsible for any property damage to Carrier's trailer equipment or other equipment beyond ordinary wear and tear.

(13)  Fines for Oversize or Overweight Shipments.  Unless trailers are preloaded and sealed or containerized, Contractor or its employees shall be responsible for confirming that all lading is suitable for transportation in accordance with applicable weight and dimensional limitations imposed by in-transit states or authorized by special permits obtained for transportation of the shipment. Contractor shall be responsible for all fines, penalties and claims resulting from failure to comply with this obligation.

(14)  With respect to fuel purchases set forth in Subparagraph 3 above, Contractor recognizes that Carrier is required by IFTA to file taxes governing fuel taxes for its services and accordingly agrees to purchase sufficient fuel within each state in which its equipment operates to assure payment of fuel taxes.  Contractor agrees to provide Carrier with satisfactory proof of such purchases and to pay any applicable deficiency.

(15)  With respect to base plates, if purchased in the name of Carrier, upon termination of the lease Carrier will transfer the plates to another unit if possible, crediting Contractor with any refund or credit it received.  If Carrier is unable to transfer the plates to another unit, then no refund or credit will be due to Contractor.

(16)  Detention time.

K.     Payment.  In accordance with 49 C.F.R. 376.12(f) Carrier agrees to pay Contractor within 15 days after submission of necessary delivery documents to secure payment from shipper and driver log books required by the U.S. DOT.  Because the parties recognize that the U.S. DOT regulations now require the Carrier to maintain supporting documents including but not limited to trip reports, weight tickets, evidence of toll receipts and fees, as well as other documents, Contractor agrees to submit these additional documents with its settlement.  If such documentation is not provided within 5 working days of Carrier's request, Contractor agrees to a settlement deduction of $50 per occurrence to reimburse Carrier for the administrative expense of re-requesting the documentation.  I

L.     Chargeback Options.  Carrier shall be entitled to chargeback to Contractor and deduct from settlement the following: (1) all payments paid by Carrier for authorized advances and costs incurred by Carrier on behalf of Contractor as a result of Contractor's obligations enumerated in J above.  In addition, any advance specifically confirmed in writing, the purchase of any goods or services from Carrier by Contractor as specifically authorized in this Agreement or otherwise and specifically enumerated fine or penalty may be deducted for the

Initial Here:  D. H

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

specific amount provided for herein or at Carrier's cost without markup. Contractor will be afforded copies of documents necessary to determine the validity of any charge.

     M.    Products, Equipment or Services from Carrier. Contractor is not required to purchase or rent any products, equipment or services from Carrier as a condition of entering this Lease. Any product, equipment or service which Contractor elects to purchase shall be enumerated in Appendix D or by subsequent addenda.

     N.    Insurance. Carrier has a legal obligation under federal statute to provide bodily injury and property damage insurance to the public for the use of the leased equipment pursuant to 49 U.S.C. 13906 during the term of this Lease. Contractor agrees to carry non-trucking liability (so-called "deadhead and bobtail") insurance with a combined single limit of not less than $500,000 and will provide proof of such coverage to Carrier during the term of this Agreement. Contractor further agrees that it is its sole duty to require and maintain at its expense worker's compensation insurance or other insurance required by the provision of any applicable employer's liability law on all drivers and any other employees required by Contractor or hired by Contractor to perform the services under this Agreement. A certificate of worker's compensation will be furnished upon request. If Contractor elects to obtain and if Contractor maintains that worker's compensation is not required due to statutory exemption, it will provide evidence of comparable occupational accident insurance and otherwise warrants that it will indemnify and hold harmless Carrier against any allegation of cut-through liability.

     If Contractor elects to purchase any insurances from sources available through Carrier, such coverage will be set forth in Appendix D and Carrier will provide Contractor with a copy of each policy upon request, providing to Contractor a certificate of insurance naming the insurer, the policy number, the effective dates, the amount of coverage, the cost to lessor and any deductible.

     O.    Cargo and Accident Deductible. Notwithstanding any public liability insurance or cargo insurance maintained by Carrier, Contractor agrees to pay to Carrier an amount equal to the first $2500 of the expense incurred by Carrier and paid to it any cargo claimant or accident victim as a result of the negligence of Contractor or its employees in the performance of this contract. Prior to any such deductions, Carrier shall provide to Contractor with a written explanation and itemization of any deductions for cargo or property damage made from any compensation of money owed to Contractor.

     P.    Notification Requirement. Contractor further agrees to immediately notify Carrier of any potential cargo claim, accident, fine, citation or out-of-service order incurred by Contractor or its employees in order to ensure Carrier's compliance with its customer and safety obligations.

     If for any reason Contractor fails to return Carrier's equipment or remove placards within 24 hours of termination, Contractor acknowledges that Carrier may seek a writ of replevin and agrees to pay all attendant attorney's fees and costs as well as the cost of recovery incurred by Carrier in recovering its equipment and removing its placards.

Initial Here: D.Y.

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

Q.   Escrow of Funds.  T he Contractor shall deposit with the Carrier a performance bond issued by a Surety Company approved by Carrier in the amount of $2,500.00 per vehicle, or at his option, may furnish in lieu thereof a $500.00 cash bond to guarantee the full, complete and competent performance of the Contractor's obligations under this contract. These obligations include the settlement of all accounts between Contractor, its employees or agents, and Carrier, reimbursement of authorized chargeback items, and the return of all regulatory agency permits, tags and identifications issued in the name of the Carrier and the Contractor upon expiration or termination of the Contract or upon the execution of a receipt for the equipment.

The Contractor shall receive notice through the settlement process of any transaction involving the escrow funds, to include any withdrawals or any other adjustments to the escrow account.  Contractor shall have the right to an accounting for transactions involving the escrow fund at any time.  The Carrier shall compute interest on the escrow funds at least quarterly.  For purposes of calculating the balance of the escrow fund on which interest must be paid, the Carrier may deduct a sum equal to the average advance made to the Contractor during the period of time for which the interest is to be paid.  The interest rate that is to be applicable to said interest payments shall be set at a rate equal to the average yield or equivalent coupon issue yield on 13-week Treasury Bills as established in the weekly auction by the Department of Treasury at the beginning of each period for which interest is to be calculated.

If for any reason Contractor fails to return Carrier's equipment or remove placards within 24 hours of request, Contractor acknowledges that Carrier may seek a writ of replevin and agrees to pay all attendant attorney's fees and court costs as well as the cost of recovery incurred by Carrier in recovering its equipment and removing its placards.

Carrier shall return any remaining escrow funds to Contractor no later than 45 days from the date of termination.

R.   Impermissive Use of Equipment.  The parties contemplate that Contractor may use trailer equipment owned by Carrier to provide the contracted services.  Such equipment may be used without additional charge for the purpose of providing services for Carrier or with Carrier's express permission.  During the term of this Agreement, if Contractor moves or pulls Carrier's trailer from Carrier's terminal or other location without Carrier's authorization, Contractor will be assessed 15¢ per mile for the total number of miles and all other charges incurred in securing and returning such trailer subject to a minimum charge of $50 per day.

2.   Contractor Independence/Control of Operations.

A.   Federal and State Laws.  At all times, Independent Contractor shall remain solely responsible for payment of all federal and state taxes accruing as a result of its maintenance and use of the leased vehicle, retention and payment of driver personnel to perform services under this agreement.  Contractor warrants that it is familiar with and shall comply with all applicable employment laws and applicable taxes including and not limited to federal and state income tax, state worker's compensation, unemployment compensation taxes, and overtime

Initial Here: 

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

requirements which may be applicable. Contractor shall indemnify and hold Carrier harmless from these obligations.

To the extent not inconsistent with federal, state and safety regulations, including but not limited to hours of service requirements, highway speed limits and other restrictions, Contractor shall be free to set the method and time of performance for all delivery of loads accepted by it. The parties agree and understand that federal and state laws and regulations impose duties on carriers including the maintaining of records of Contractor operations, equipment maintenance, hours of service, reporting for state tax purposes all miles run by the vehicle as well as additional obligations imposed by Carrier's insurer whose federal filings are a prerequisite of operations. Contractor agrees to comply with these federal duties and statutes with respect to the equipment leased to Carrier and will provide all necessary supporting documents as required by law. Contractor warrants that it will only permit driver personnel to perform service under this Contract who have been credentialed and approved by Carrier in accordance to US DOT requirements.

B.     Customer-Specific Requirements.  The parties agree that in the performance of this contract, Carrier in its sole discretion will tender Contractor individual loads, subject to its equipment availability on a load-by-load basis. It is agreed that any load may have customer-imposed service requirements which will be conveyed to the Contractor at time of tender. Contractor agrees to accept or reject the load tender and is not subject to forced dispatch. In accepting the load, Contractor agrees to perform in accordance with any special ground rules imposed by the customer and further warrants that the expected service can be provided in a safe and non-negligent fashion in accordance with its drivers' available hours of service.

C.     Routes and Methods.  The parties agree that federal regulation requires a Carrier to be responsible for accounting for all miles run by the involved commercial vehicle while under lease and for the hours of service of the driver operating the leased vehicle, regardless of whether the truck is under dispatch. Notwithstanding these requirements, Contractor is free to select the routing for performing any dispatch consistent with state and federal highway speed limits, weight and other restrictions. Carrier will assist Contractor by providing practical routing information for its use. Contractor agrees to indemnify and hold harmless Carrier from any claim, fine, loss or damage which arises from the "deadhead or bobtail" use by it of the equipment.

Contractor agrees to indemnify and hold harmless Contractor from any claim, fine or assessment arising out of its failure to comply with the warranties and representations contained in this paragraph.

D.     Independent Contractor Status.  It is the intent of the parties for Contractor to retain the status of an independent contractor in business for federal and state law purposes. Carrier's control over Contractor shall be limited to that control required by federal and state statutes and regulations governing the conduct of motor carriers.  Contractor shall train all of its driver personnel in accordance with U.S. DOT requirements and shall submit all driver personnel to Carrier for qualification, safety and training to the extent required by federal regulations. Neither Contractor nor its driver employees shall be required to attend other employment

Initial Here: D.H.

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

training meetings held by the company nor shall they be subject to the company employment manual.  Contractor shall have the right to substitute other qualified drivers to perform the services subject to Carrier's confirmation that Contractor's driver meets the driver qualifications established by the U.S. DOT and its insurers.

Contractor warrants that no driver will be used until the driver has been qualified by Carrier in accordance with federal safety requirements.  At all times, Contractor shall remain responsible for hiring and supervising his employees and for paying their salaries and all relevant taxes.  Contractor warrants compliance with all federal and state employment laws and shall indemnify and hold Carrier harmless from its failure to discharge such obligations.

Contractor shall at all times be free to set its hours of operations consistent with the federally imposed hours of service requirements and the scope of the work accepted and the customer's service expectations.  Contractor is free to work when and where it chooses and shall accept or reject work assignments on a load by load basis.  Contractor agrees to comply with any scope of work requirement imposed by the customer service conditions when accepting a job assignment but is otherwise free to schedule the order of its work.

Where shipper requires same and to facilitate efficient dispatch, Contractor agrees to provide electronic notification of its operating status including when equipment is loaded, unloaded or otherwise available to dispatch.  Otherwise no oral or written report other than the supporting documents and logs required by the DOT, bills of lading and shipping documents required by the customer for payments and fuel taxes as required by IFTA shall be required.

Contractor shall be solely responsible for furnishing the power equipment used to provide service and shall keep same in good repair in accordance with federal regulation and inspection requirements.  Contractor shall be solely responsible for the payments on the leased equipment on the subject equipment and shall have the right to make all crucial decisions with respect to the maintenance and operation of such equipment.

Consistent with the leasing regulations which require Carrier to have exclusive possession and control of the equipment, Contractor shall be free with notice to work for other carriers or customers.  When Contractor works for other carriers or customers, Contractor shall not operate under, or display, the placards or other identifying equipment of Carrier.  Contractor shall have the right to discharge any driver it employs at any time.  Contractor agrees that it shall reassign any driver which Carrier in its sole discretion determines is unqualified to comply with Carrier's federal imposed safety duties.

Contractor warrants as a condition of this contract that all equipment will be continually operated in accordance with U.S. DOT safety regulations in a non-negligent fashion.

Contractor shall accept work assignments on a job by job or load by load basis and agrees to comply with any ground rules or scope of work requirements established by the shipper as a service condition imposed on the work provided.  Carrier does not guarantee Contractor a profit or limit its profit margin for contracts performed.

Initial Here: D.H.

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

3.    Standard Operating Procedures.  Because Carrier's customers require on-board communication to track delivery times, confirm pickups and deliveries and obtain advice about in-transit conditions, Contractor agrees to obtain on-board communication devices compatible with Carrier's system.  Such equipment may be obtained and installed by Contractor in leased unit at its choosing.  If purchased or leased from Carrier, Contractor's decision will be reflected in Appendix D and deduction from settlement will be authorized.

Unless Contractor or its driver notifies Carrier to the contrary, for the parties' mutual benefit, Carrier will tender loads to Contractor's driver using such on-board communications in real time based upon the availability of shipments, the equipment, and notice provided electronically that the leased equipment is available for a new contract consistent with the driver's available hours of service and its location.  To facilitate these standard operating procedures, Contractor agrees to afford Carrier reasonable notice if its driver or unit is otherwise unavailable to accept additional loads.

4.    Contractors, Warranties, and Indemnification.  As consideration for entering into this agreement, Contractor warrants as follows:

a.  that it is properly licensed and authorized to conduct its independent trade or business in accordance with local and state laws;

b.  that it will comply with all federal, state, and local taxing authorities that are applicable to its trade or business and will pay all applicable withholding and employment taxes and insurance payments as they come due by reason of its retention of personnel to provide the contracted service;

c.  that it will not accept or incur any payment obligation on behalf of Carrier without its express written approval; and

d.  that it will promptly notify Carrier of any acts that result in any type of loss, shortage, citation, fine, or out of service order incurred in the course of its use or maintenance of the lease equipment during the period of this lease.

5.    Contractor agrees to indemnify and hold Carrier harmless from any breach of the above warranties or if other claim laws or damage arising out of the negligent or willful acts or omission of it, its officers, directors, employees, or agent

6.    Integrated Claim.  The Parties agree that this contact sets forth the full understanding of the Parties and shall not be modified or changed in any way except by express written addendum.

7.    Termination.  This Contract may be terminated by either party on fifteen (15) days written notice.  If, in the sole opinion of Carrier, the driver qualified by Contractor to provide services fails to comply with the Federal Motor Carrier Safety Regulations, Carrier may terminate this Agreement at any time.

Initial Here: D.H.

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

8.    Claims Notification. The Parties recognize in accordance with federal statute, Carrier has 6 months from the issuance of any freight invoice to file an undercharged claim with its Shipper. Accordingly, the Parties agree that Contractor will review its settlements and notify Carrier not later than 165 days after issuance of its disputed amount or thereafter will be barred.

9.    Alternative Dispute Resolution.  The parties agree that any dispute concerning the terms of this Agreement will be submitted to mediation followed by binding arbitration before a tribunal convened under the rules of the American Arbitration Association at Atlanta, GA.

10.    Venue and Jurisdiction. This agreement is made pursuant to the requirements of federal law and otherwise subject to the laws of the State of Georgia.  The parties agree that that any lawsuit shall be filed in a court of competent jurisdiction in Gwinnett County.

Dated this _____ day of _____, 20 _____.

[CARRIER]:316 Towing and Road Service          [CONTRACTOR]: ~~316 Towing~~

_Dustin Hyde_

_____                          _____
Signature                                          Signature

_Eli Kudrin_                                       

_____                          _____
Print Name                                         Print Name

_Manager_                                          _Driver_

_____                          _____
Title                                              Title

Initial Here: _D.H_

APPENDIX A

## IDENTIFICATION OF EQUIPMENT

|         | Make       | Year  | Serial No. |
|---------|------------|-------|------------|
| Tractor | RAM 5500   | 2021  |            |
| Trailer |            |       |            |
| Trailer |            |       |            |
| Trailer |            |       |            |
| Trailer |            |       |            |
| Trailer |            |       |            |

Name of Contractor: _____

Phone: _____ Fax: _____

Address: _____

FID No. _____ or SSN: _____

I certify that the above named Contractor is the title holder or beneficial owner of the identified equipment authorized to receive payments for the use of this equipment pursuant to the terms of this Agreement.

_____
Signature

_____
Date

Initial Here: _____

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

APPENDIX B

## COMPENSATION

For use of Contractor's:    Tractor:    \_\_\_\_\_% of adjusted gross revenue

                                   Trailer:    \_\_\_\_\_% of adjusted gross revenue or

                                                 \_\_\_\_\_¢ per mile loaded and

                                                 \_\_\_\_\_¢ per mile empty

Initial Here: D.H.

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

APPENDIX C

## RECEIPT FOR EQUIPMENT

This Receipt is issued by Carrier to the beneficial owner _____
for VIN No. _____ this date for possession of the
equipment pursuant to an Independent Contractor Agreement. This Receipt shall serve as
compliance with 49 C.F.R. '376.11 as evidence of a continuing 30 day lease for Carrier to
transport general commodities without exception. A copy of the original Lease is kept by Carrier
at 796 Bill Rutledge Rd, Winder, GA 30680 ____ [address].

Received this _____ day of _____, 20_____ at _____ A.M. / P.M.

By: _____ (Authorized Agent of Carrier)

**RELEASE OF EQUIPMENT** (To be completed upon termination of agreement)

Independent Contractor hereby acknowledges receipt of Equipment described in this Agreement.

Hour _____ A.M. / P.M.  Date _____ Place _____

Independent Contractor Signature _____

Initial Here: _____

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

APPENDIX D

Equipment Owner_____

Tractor Number _____ Trailer Number _____

Jeep _____ Booster _____ Stinger _____

## I. INITIAL START-UP COSTS TO BE PAID BY CONTRACTOR:

| | |
|---|---|
| Tractor Base Plate – Owner to furnish own base plate | ☐ Yes   ☐ No |
| CARRIER to furnish base plate at a charge of | $ _____ |
| Trailer Plate – Owner to furnish own trailer plate | ☐ Yes   ☐ No |
| CARRIER to furnish trailer plate at a charge of | $ _____ |
| Permit Package – 48 State | No Charge |
| Truck Escrow – In lieu of providing a Performance Bond as identified in the Independent Contractor Agreement, CONTRACTOR may post escrow money in the amount of | $ _____ |
| Owner to provide Surety Bond | ☐ Yes   ☐ No |
| Owner to escrow money | $ _____ |
| Initial Leasing Cost Total | $ _____ |

CONTRACTOR authorizes CARRIER to withhold from Contractor's weekly settlements in payments of $ _____ for ten (10) of the first eleven (11) settlements to pay the Initial Leasing Cost Total.

## II. INSURANCE:

Insurance Charges – Owner will furnish required insurance at minimum levels as identified in the Independent Contractor Lease Agreement for:

| | |
|---|---|
| Occupational Accident | ☐ Yes   ☐ No |
| Bobtail | ☐ Yes   ☐ No |
| Physical Damage | ☐ Yes   ☐ No |

CARRIER will make available to CONTRACTOR insurance at the following:

| | | |
|---|---|---|
| Occupational Accident | $_____ | per week |
| Bobtail | $_____ | per month |
| Physical Damage | $_____ | per $1000 |

Initial Here: D.H.

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

## III. BANK FEES:

Electronic Financial Transaction Charges – The CARRIER utilizes ComData/Fleet One/EFS services for electronic financial transactions. The following ComData/Fleet One/EFS fee schedule applies and will be deducted as incurred regardless of cost to Company:

| | |
|---|---|
| Service Fee for 1st time card use per day | $_____ |
| Service Fee for each card use per day after initial 1st time use | $_____ |
| ATM Withdrawal (U.S.) | $_____ |
| ATM Withdrawal (international Fee) | $_____ |
| ATM Balance Inquiry | $_____ |
| ATM Decline | $_____ |
| Transfer money to a bank account | $_____ |
| POS Debit Transactions | $_____ |
| Comcheck Draft | $_____ |
| Comdata Answer Plus Phone Service | $_____ per minute* |

* A per call charge of $_____ applies to all calls originating from a payphone.
See ComData informational sheet for additional information regarding ComData services.

## IV. REIMBURSABLES TO CONTRACTOR

Amount to be reimbursed on the first settlement for travel expense to orientation:

_____ X _____ = _____
Total Miles                Travel Pay              Total Reimbursement

Travel Pay will be paid at the rate of $_____ per mile for all miles up to 499 from drivers' place of residence to orientation location and at the rate of $_____ per mile for all miles 500 and greater from drivers' place of residence to orientation location.

## V. MAINTENANCE RESERVE

Maintenance Reserve Participation (circle one)                Accept    Decline

A minimum of $_____ will be deducted from each settlement

2290 Reserve Participation (circle one)                Accept    Decline

A draw will be made until a maximum of $_____ has been escrowed towards payment of your 2290.

I have reviewed this schedule of initial leasing costs and other associated costs and agree to these deductions from my settlements. I have received a complying certificate of insurance for any insurance which I elect to purchase through Company and understand that a copy of the policy/policies will be provided upon request.

Contractor: _____   Date: _____

Witness: _____   Date: _____

Initial Here: _____

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. A**

# Exhibit B

## INDEPENDENT CONTRACTOR AND LEASE AGREEMENT

This Independent Contractor Agreement is made between 316 Towing and Road Service (hereinafter referred to as "Carrier") and

_____ *Brut Ngohnur* _____, (hereinafter referred to as "Contractor").

WHEREAS, Carrier is a for-hire motor carrier operating in interstate commerce and subject to the rules and regulations of the Federal Motor Carrier Safety Administration, the U.S. Department of Transportation, and other federal and state agencies; and

WHEREAS, Contractor is a (check where applicable): (1) A Sole Proprietorship ☒; (2) Limited Liability Corporation or Partnership ☐; or (3) A Corporation ☐ which owns or leases the equipment identified in Appendix A attached hereto; and

WHEREAS, the parties desire to enter an independent contractor relationship and lease agreement in accordance with applicable law;

NOW, THEREFORE, the parties agree as follows:

This Agreement shall govern the lease of equipment identified on Appendix A with driver by Contractor to Carrier for the continuing performance of a series of separate transportation contracts, the payment for which shall be determined in accordance with the agreed compensation set forth in Appendix B.

1.  Compliance with Federal Statutes and Regulations.  The parties acknowledge and agree that this contract is governed by Federal Regulation, to wit: 49 C.F.R. 376 and it is the intent of the parties that this Agreement fully comply with such regulations without creating indicia of control which would otherwise frustrate the intent of the parties to create an independent contractor relationship. See 49 C.F.R. 376.12(c)(4).

Accordingly, the parties agree as follows:

A.  Carrier shall exercise that level of dominion and control over the leased equipment required by Federal Motor Carrier Safety Regulations including the execution of an original and 2 copies of this Lease by the parties with a copy or notice of this Lease to be kept on the equipment during its term in accordance with 49 C.F.R. 376.11(a) and 49 C.F.R. 376.12(l).

B.  Receipts specifying the identity of the equipment and stating the date and time possession is transferred shall be issued in the form set forth in Appendix C in the time and manner as required by 49 C.F.R. 376.11(b).

C.  During the period of the Lease, Carrier shall identify the equipment in accordance with FMCSA requirements found at 49 C.F.R. 390.21 and Contractor warrants that it will immediately execute a receipt for return of the equipment as provided for in Appendix C, and remove or submit for removal all identification that the equipment is operated subject to the safety duties and obligations of Carrier. Within five calendar days of termination of the lease,

Initial Here: *BNJ*

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

Contractor shall return to Carrier by mail or in person all identification devices, other than those painted directly on the equipment, as well as the executed receipt. Carrier may withhold final payment to Contractor, pursuant to 49 C.F.R. 376.12(f) until this requirement is complied with.

D.    Records of Equipment. Carrier shall keep records covering each separate job or trip for which Contractor's services are retained in accordance with 376.11(d). Contractor warrants that it will instruct its driver to issue, obtain and carry while in transit bills of lading covering each trip which identify the lading and indicating the point of origin, the time and date of departure, the point of final destination, and confirm that the transportation is provided under the responsibility of Carrier.

E.    Contractor warrants that it is the title holder or has equitable ownership of the leased equipment in accordance with 49 C.F.R. 376.12(a).

F.    The Lease shall commence with the time of the giving of the receipt for possession and shall continue from month to month until terminated by either party in accordance with the termination provisions herein.

G.    To fulfill the exclusive possession and responsibilities of the regulations, the authorized Carrier shall have exclusive possession, control and use of the equipment for the duration of the lease and the concomitant safety duties imposed by the Federal Motor Carrier Safety Administration's regulations. See 49 C.F.R. 376.12(c) and the safety regulations found at 49 C.F.R. 390-399.

H.    Contractor recognizes Carrier's regulatory duty to *inter alia* maintain driver qualification files, monitor driver's hours of service, conduct pre-employment and random drug and alcohol screening, verify equipment maintenance and repair, ensure proper securement, transport of freight in accordance with reasonable dispatch and highway restrictions governing the transportation of hazardous and overweight and over-dimensional loads. Contractor certifies that it is familiar with these regulatory requirements, will so instruct its driver personnel in proper compliance and will indemnify and hold Carrier harmless from any breach by it or its employees of this duty or failure to offer reasonable cooperation.

I.    Calculation of Compensation. Compensation set forth in Appendix B is based upon a percentage of the line haul revenue derived from each load or trip tendered by Carrier to Contractor and accepted for transport. Line haul revenue shall be that amount reflected upon the rated freight bill submitted by Carrier to its customer for payment for the services rendered by Contractor and accordingly shall exclude charges paid to interline carriers, pickup and delivery fees for services not performed by Contractor, expenses for over-dimensional permits, escort service and accessorial charges not earned by line haul equipment or its drivers such as lumpers or rigging expenses. Other expenses not attributable to the services rendered by Contractor shall also be excluded from line haul revenue. In accordance with 49 C.F.R. 376.12(g), Carrier will give Contractor before or at the time of settlement a copy of the rated freight bill or computer-generated document containing the same information. Upon request, Contractor may view other documents as required by regulation. In addition to the agreed

Initial Here: *BAT*

percentage of line haul revenue, Contractor shall receive 100% of any fuel surcharge, if any, collectible by Carrier as reflected on its rated freight bill.

    J.     <u>Non-Reimbursable Expenses</u>.  For the consideration specified above, Contractor agrees to be solely responsible for the following additional expenses:

    (1)    Identification Devices.  (At its expense upon termination of lease, Contractor removing identification devices, offering suitable evidence to Carrier that such devices have been removed, or submit the equipment to Carrier for its removal.)

    (2)    Cost of Fuel.

    (3)    Fuel Taxes.

    (4)    Permits of all types.

    (5)    Tolls, ferries, accessorial services, base plate and licenses.

    (6)    The hiring and settling of wages for its drivers and the payment of all employment taxes, worker's compensation insurance,

    (7)    The maintenance of all equipment in accordance with DOT standards.

    (8)    The payment of all operating expenses including Federal Highway Use Taxes, personal property taxes, fines incurred by it.

    (9)    Furnishing all tools, including tie-downs and load securement equipment, and safety equipment required by the DOT and/or FMCSA.

    (10)    Cost pertaining to the proper training and instruction of Contractor and its employees.

    (11)    Compatible on-board computer and tracing technology to meet Shipper's requirements.  Attached hereto as Appendix D is a list of tools and other devices which Contractor is required to provide pursuant to this Agreement which can be purchased or rented to Contractor by Carrier for the fees stated therein.  If Contractor elects to purchase or rent these items by executing the addendum in the place provided, the cost of same will be charged back to settlements until such time as the tool or device is returned in good condition, ordinary wear and tear excepted.

Initial Here: *BAJ*

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

(12)   Property Damage to Carrier's Trailer.  Contractor shall be responsible for any property damage to Carrier's trailer equipment or other equipment beyond ordinary wear and tear.

(13)   Fines for Oversize or Overweight Shipments.  Unless trailers are preloaded and sealed or containerized, Contractor or its employees shall be responsible for confirming that all lading is suitable for transportation in accordance with applicable weight and dimensional limitations imposed by in-transit states or authorized by special permits obtained for transportation of the shipment. Contractor shall be responsible for all fines, penalties and claims resulting from failure to comply with this obligation.

(14)   With respect to fuel purchases set forth in Subparagraph 3 above, Contractor recognizes that Carrier is required by IFTA to file taxes governing fuel taxes for its services and accordingly agrees to purchase sufficient fuel within each state in which its equipment operates to assure payment of fuel taxes.  Contractor agrees to provide Carrier with satisfactory proof of such purchases and to pay any applicable deficiency.

(15)   With respect to base plates, if purchased in the name of Carrier, upon termination of the lease Carrier will transfer the plates to another unit if possible, crediting Contractor with any refund or credit it received.  If Carrier is unable to transfer the plates to another unit, then no refund or credit will be due to Contractor.

(16)   Detention time.

K.    Payment.  In accordance with 49 C.F.R. 376.12(f) Carrier agrees to pay Contractor within 15 days after submission of necessary delivery documents to secure payment from shipper and driver log books required by the U.S. DOT.  Because the parties recognize that the U.S. DOT regulations now require the Carrier to maintain supporting documents including but not limited to trip reports, weight tickets, evidence of toll receipts and fees, as well as other documents, Contractor agrees to submit these additional documents with its settlement.  If such documentation is not provided within 5 working days of Carrier's request, Contractor agrees to a settlement deduction of $50 per occurrence to reimburse Carrier for the administrative expense of re-requesting the documentation. I

L.    Chargeback Options.  Carrier shall be entitled to chargeback to Contractor and deduct from settlement the following: (1) all payments paid by Carrier for authorized advances and costs incurred by Carrier on behalf of Contractor as a result of Contractor's obligations enumerated in J above.  In addition, any advance specifically confirmed in writing, the purchase of any goods or services from Carrier by Contractor as specifically authorized in this Agreement or otherwise and specifically enumerated fine or penalty may be deducted for the

Initial Here: _BAJ_

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

specific amount provided for herein or at Carrier's cost without markup. Contractor will be afforded copies of documents necessary to determine the validity of any charge.

      M.    <u>Products, Equipment or Services from Carrier</u>. Contractor is not required to purchase or rent any products, equipment or services from Carrier as a condition of entering this Lease. Any product, equipment or service which Contractor elects to purchase shall be enumerated in Appendix D or by subsequent addenda.

      N.    <u>Insurance</u>. Carrier has a legal obligation under federal statute to provide bodily injury and property damage insurance to the public for the use of the leased equipment pursuant to 49 U.S.C. 13906 during the term of this Lease. Contractor agrees to carry non-trucking liability (so-called "deadhead and bobtail") insurance with a combined single limit of not less than $500,000 and will provide proof of such coverage to Carrier during the term of this Agreement. Contractor further agrees that it is its sole duty to require and maintain at its expense worker's compensation insurance or other insurance required by the provision of any applicable employer's liability law on all drivers and any other employees required by Contractor or hired by Contractor to perform the services under this Agreement. A certificate of worker's compensation will be furnished upon request. If Contractor elects to obtain and if Contractor maintains that worker's compensation is not required due to statutory exemption, it will provide evidence of comparable occupational accident insurance and otherwise warrants that it will indemnify and hold harmless Carrier against any allegation of cut-through liability.

      If Contractor elects to purchase any insurances from sources available through Carrier, such coverage will be set forth in Appendix D and Carrier will provide Contractor with a copy of each policy upon request, providing to Contractor a certificate of insurance naming the insurer, the policy number, the effective dates, the amount of coverage, the cost to lessor and any deductible.

      O.    <u>Cargo and Accident Deductible</u>. Notwithstanding any public liability insurance or cargo insurance maintained by Carrier, Contractor agrees to pay to Carrier an amount equal to the first $2500 of the expense incurred by Carrier and paid to it any cargo claimant or accident victim as a result of the negligence of Contractor or its employees in the performance of this contract. Prior to any such deductions, Carrier shall provide to Contractor with a written explanation and itemization of any deductions for cargo or property damage made from any compensation of money owed to Contractor.

      P.    <u>Notification Requirement</u>. Contractor further agrees to immediately notify Carrier of any potential cargo claim, accident, fine, citation or out-of-service order incurred by Contractor or its employees in order to ensure Carrier's compliance with its customer and safety obligations.

      If for any reason Contractor fails to return Carrier's equipment or remove placards within 24 hours of termination, Contractor acknowledges that Carrier may seek a writ of replevin and agrees to pay all attendant attorney's fees and costs as well as the cost of recovery incurred by Carrier in recovering its equipment and removing its placards.

Initial Here: _BMJ_

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

Q.   Escrow of Funds.  The Contractor shall deposit with the Carrier a performance bond issued by a Surety Company approved by Carrier in the amount of $2,500.00 per vehicle, or at his option, may furnish in lieu thereof a $500.00 cash bond to guarantee the full, complete and competent performance of the Contractor's obligations under this contract. These obligations include the settlement of all accounts between Contractor, its employees or agents, and Carrier, reimbursement of authorized chargeback items, and the return of all regulatory agency permits, tags and identifications issued in the name of the Carrier and the Contractor upon expiration or termination of the Contract or upon the execution of a receipt for the equipment.

The Contractor shall receive notice through the settlement process of any transaction involving the escrow funds, to include any withdrawals or any other adjustments to the escrow account.  Contractor shall have the right to an accounting for transactions involving the escrow fund at any time.  The Carrier shall compute interest on the escrow funds at least quarterly.  For purposes of calculating the balance of the escrow fund on which interest must be paid, the Carrier may deduct a sum equal to the average advance made to the Contractor during the period of time for which the interest is to be paid.  The interest rate that is to be applicable to said interest payments shall be set at a rate equal to the average yield or equivalent coupon issue yield on 13-week Treasury Bills as established in the weekly auction by the Department of Treasury at the beginning of each period for which interest is to be calculated.

If for any reason Contractor fails to return Carrier's equipment or remove placards within 24 hours of request, Contractor acknowledges that Carrier may seek a writ of replevin and agrees to pay all attendant attorney's fees and court costs as well as the cost of recovery incurred by Carrier in recovering its equipment and removing its placards.

Carrier shall return any remaining escrow funds to Contractor no later than 45 days from the date of termination.

R.   Impermissive Use of Equipment.  The parties contemplate that Contractor may use trailer equipment owned by Carrier to provide the contracted services.  Such equipment may be used without additional charge for the purpose of providing services for Carrier or with Carrier's express permission.  During the term of this Agreement, if Contractor moves or pulls Carrier's trailer from Carrier's terminal or other location without Carrier's authorization, Contractor will be assessed 15¢ per mile for the total number of miles and all other charges incurred in securing and returning such trailer subject to a minimum charge of $50 per day.

2.   Contractor Independence/Control of Operations.

A.   Federal and State Laws.  At all times, Independent Contractor shall remain solely responsible for payment of all federal and state taxes accruing as a result of its maintenance and use of the leased vehicle, retention and payment of driver personnel to perform services under this agreement.  Contractor warrants that it is familiar with and shall comply with all applicable employment laws and applicable taxes including and not limited to federal and state income tax, state worker's compensation, unemployment compensation taxes, and overtime

Initial Here: _BMT_

requirements which may be applicable. Contractor shall indemnify and hold Carrier harmless from these obligations.

To the extent not inconsistent with federal, state and safety regulations, including but not limited to hours of service requirements, highway speed limits and other restrictions, Contractor shall be free to set the method and time of performance for all delivery of loads accepted by it. The parties agree and understand that federal and state laws and regulations impose duties on carriers including the maintaining of records of Contractor operations, equipment maintenance, hours of service, reporting for state tax purposes all miles run by the vehicle as well as additional obligations imposed by Carrier's insurer whose federal filings are a prerequisite of operations. Contractor agrees to comply with these federal duties and statutes with respect to the equipment leased to Carrier and will provide all necessary supporting documents as required by law. Contractor warrants that it will only permit driver personnel to perform service under this Contract who have been credentialed and approved by Carrier in accordance to US DOT requirements.

B. <u>Customer-Specific Requirements</u>. The parties agree that in the performance of this contract, Carrier in its sole discretion will tender Contractor individual loads, subject to its equipment availability on a load-by-load basis. It is agreed that any load may have customer-imposed service requirements which will be conveyed to the Contractor at time of tender. Contractor agrees to accept or reject the load tender and is not subject to forced dispatch. In accepting the load, Contractor agrees to perform in accordance with any special ground rules imposed by the customer and further warrants that the expected service can be provided in a safe and non-negligent fashion in accordance with its drivers' available hours of service.

C. <u>Routes and Methods</u>. The parties agree that federal regulation requires a Carrier to be responsible for accounting for all miles run by the involved commercial vehicle while under lease and for the hours of service of the driver operating the leased vehicle, regardless of whether the truck is under dispatch. Notwithstanding these requirements, Contractor is free to select the routing for performing any dispatch consistent with state and federal highway speed limits, weight and other restrictions. Carrier will assist Contractor by providing practical routing information for its use. Contractor agrees to indemnify and hold harmless Carrier from any claim, fine, loss or damage which arises from the "deadhead or bobtail" use by it of the equipment.

Contractor agrees to indemnify and hold harmless Contractor from any claim, fine or assessment arising out of its failure to comply with the warranties and representations contained in this paragraph.

D. <u>Independent Contractor Status</u>. It is the intent of the parties for Contractor to retain the status of an independent contractor in business for federal and state law purposes. Carrier's control over Contractor shall be limited to that control required by federal and state statutes and regulations governing the conduct of motor carriers. Contractor shall train all of its driver personnel in accordance with U.S. DOT requirements and shall submit all driver personnel to Carrier for qualification, safety and training to the extent required by federal regulations. Neither Contractor nor its driver employees shall be required to attend other employment

Initial Here: _AAT_

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

training meetings held by the company nor shall they be subject to the company employment manual. Contractor shall have the right to substitute other qualified drivers to perform the services subject to Carrier's confirmation that Contractor's driver meets the driver qualifications established by the U.S. DOT and its insurers.

Contractor warrants that no driver will be used until the driver has been qualified by Carrier in accordance with federal safety requirements. At all times, Contractor shall remain responsible for hiring and supervising his employees and for paying their salaries and all relevant taxes. Contractor warrants compliance with all federal and state employment laws and shall indemnify and hold Carrier harmless from its failure to discharge such obligations.

Contractor shall at all times be free to set its hours of operations consistent with the federally imposed hours of service requirements and the scope of the work accepted and the customer's service expectations. Contractor is free to work when and where it chooses and shall accept or reject work assignments on a load by load basis. Contractor agrees to comply with any scope of work requirement imposed by the customer service conditions when accepting a job assignment but is otherwise free to schedule the order of its work.

Where shipper requires same and to facilitate efficient dispatch, Contractor agrees to provide electronic notification of its operating status including when equipment is loaded, unloaded or otherwise available to dispatch. Otherwise no oral or written report other than the supporting documents and logs required by the DOT, bills of lading and shipping documents required by the customer for payments and fuel taxes as required by IFTA shall be required.

Contractor shall be solely responsible for furnishing the power equipment used to provide service and shall keep same in good repair in accordance with federal regulation and inspection requirements. Contractor shall be solely responsible for the payments on the leased equipment on the subject equipment and shall have the right to make all crucial decisions with respect to the maintenance and operation of such equipment.

Consistent with the leasing regulations which require Carrier to have exclusive possession and control of the equipment, Contractor shall be free with notice to work for other carriers or customers. When Contractor works for other carriers or customers, Contractor shall not operate under, or display, the placards or other identifying equipment of Carrier. Contractor shall have the right to discharge any driver it employs at any time. Contractor agrees that it shall reassign any driver which Carrier in its sole discretion determines is unqualified to comply with Carrier's federal imposed safety duties.

Contractor warrants as a condition of this contract that all equipment will be continually operated in accordance with U.S. DOT safety regulations in a non-negligent fashion.

Contractor shall accept work assignments on a job by job or load by load basis and agrees to comply with any ground rules or scope of work requirements established by the shipper as a service condition imposed on the work provided. Carrier does not guarantee Contractor a profit or limit its profit margin for contracts performed.

Initial Here: _MJ_

3.   Standard Operating Procedures.  Because Carrier's customers require on-board communication to track delivery times, confirm pickups and deliveries and obtain advice about in-transit conditions, Contractor agrees to obtain on-board communication devices compatible with Carrier's system.  Such equipment may be obtained and installed by Contractor in leased unit at its choosing.  If purchased or leased from Carrier, Contractor's decision will be reflected in Appendix D and deduction from settlement will be authorized.

Unless Contractor or its driver notifies Carrier to the contrary, for the parties' mutual benefit, Carrier will tender loads to Contractor's driver using such on-board communications in real time based upon the availability of shipments, the equipment, and notice provided electronically that the leased equipment is available for a new contract consistent with the driver's available hours of service and its location.  To facilitate these standard operating procedures, Contractor agrees to afford Carrier reasonable notice if its driver or unit is otherwise unavailable to accept additional loads.

4.   Contractors, Warranties, and Indemnification.  As consideration for entering into this agreement, Contractor warrants as follows:

    a.  that it is properly licensed and authorized to conduct its independent trade or business in accordance with local and state laws;

    b.  that it will comply with all federal, state, and local taxing authorities that are applicable to its trade or business and will pay all applicable withholding and employment taxes and insurance payments as they come due by reason of its retention of personnel to provide the contracted service;

    c.  that it will not accept or incur any payment obligation on behalf of Carrier without its express written approval; and

    d.  that it will promptly notify Carrier of any acts that result in any type of loss, shortage, citation, fine, or out of service order incurred in the course of its use or maintenance of the lease equipment during the period of this lease.

5.   Contractor agrees to indemnify and hold Carrier harmless from any breach of the above warranties or if other claim laws or damage arising out of the negligent or willful acts or omission of it, its officers, directors, employees, or agent

6.   Integrated Claim.  The Parties agree that this contact sets forth the full understanding of the Parties and shall not be modified or changed in any way except by express written addendum.

7.   Termination.  This Contract may be terminated by either party on fifteen (15) days written notice.  If, in the sole opinion of Carrier, the driver qualified by Contractor to provide services fails to comply with the Federal Motor Carrier Safety Regulations, Carrier may terminate this Agreement at any time.

Initial Here: _BAJ_

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

8.   <u>Claims Notification</u>. The Parties recognize in accordance with federal statute, Carrier has 6 months from the issuance of any freight invoice to file an undercharged claim with its Shipper. Accordingly, the Parties agree that Contractor will review its settlements and notify Carrier not later than 165 days after issuance of its disputed amount or thereafter will be barred.

9.   <u>Alternative Dispute Resolution</u>.  The parties agree that any dispute concerning the terms of this Agreement will be submitted to mediation followed by binding arbitration before a tribunal convened under the rules of the American Arbitration Association at Atlanta, GA.

10.   <u>Venue and Jurisdiction</u>. This agreement is made pursuant to the requirements of federal law and otherwise subject to the laws of the State of Georgia.  The parties agree that that any lawsuit shall be filed in a court of competent jurisdiction in Gwinnett County.

Dated this _MAY_ day of _24_, 20 _21_.

[CARRIER]:316 Towing and Road Service          [CONTRACTOR]:_____

Signature _____                          Signature _____

Brent A. Johnson                                   Eli Kudrin
Print Name                                         Print Name

Tow Truck Driver                                   Manager
Title                                              Title

Initial Here: _BAJ_

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

APPENDIX A

**IDENTIFICATION OF EQUIPMENT**

| | Make | Year | Serial No. |
|---|---|---|---|
| Tractor | *Ken worth T-270* | *2019* | |
| Trailer | | | |
| Trailer | | | |
| Trailer | | | |
| Trailer | | | |
| Trailer | | | |

Name of Contractor: _____

Phone: _____ Fax: _____

Address: _____

FID No. _____ or SSN: _____

I certify that the above named Contractor is the title holder or beneficial owner of the identified equipment authorized to receive payments for the use of this equipment pursuant to the terms of this Agreement.

_____
Signature  *Burt G Johnson*

_____
Date  *5/24/2021*

Initial Here: *BAJ*

APPENDIX B

**COMPENSATION**

For use of Contractor's:    Tractor:      \_\_\_\_\_% of adjusted gross revenue

                               Trailer:      \_\_\_\_\_% of adjusted gross revenue or

                                                     \_\_\_\_\_¢ per mile loaded and

                                                       \_\_\_\_\_¢ per mile empty

Initial Here: *BAJ*

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

APPENDIX C

## RECEIPT FOR EQUIPMENT

This Receipt is issued by Carrier to the beneficial owner _316 Towing and Road Serv_
for VIN No. _____ this date for possession of the
equipment pursuant to an Independent Contractor Agreement.  This Receipt shall serve as
compliance with 49 C.F.R. '376.11 as evidence of a continuing 30 day lease for Carrier to
transport general commodities without exception.  A copy of the original Lease is kept by Carrier
at _796 Bill Rutledge Rd, Winder, GA 30680_   [address].

Received this _24_ day of _May_ , 20 _21_ at _2:13_ A.M. / P.M.

By: _316 Towing and Road Serv_ (Authorized Agent of Carrier)

**RELEASE OF EQUIPMENT** (To be completed upon termination of agreement)

Independent Contractor hereby acknowledges receipt of Equipment described in this Agreement.

Hour _____ A.M. / P.M.  Date _____ Place _____

Independent Contractor Signature _Brent L Johnson_

Initial Here: _BAJ_

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

## APPENDIX D

Equipment Owner _3/6 Towing and Road Service_

Tractor Number _____   Trailer Number _____

Jeep _____   Booster _____   Stinger _____

## I. INITIAL START-UP COSTS TO BE PAID BY CONTRACTOR:

Tractor Base Plate – Owner to furnish own base plate                    ☐ Yes  ☐ No

CARRIER to furnish base plate at a charge of                             $ _____

Trailer Plate – Owner to furnish own trailer plate                      ☐ Yes  ☐ No

CARRIER to furnish trailer plate at a charge of                         $ _____

Permit Package – 48 State                                               No Charge

Truck Escrow – In lieu of providing a Performance Bond as identified
in the Independent Contractor Agreement, CONTRACTOR
may post escrow money in the amount of                                  $ _____

Owner to provide Surety Bond                                            ☐ Yes  ☐ No

Owner to escrow money                                                   $ _____

Initial Leasing Cost Total                                             $ _____

CONTRACTOR authorizes CARRIER to withhold from Contractor's weekly settlements in
payments of $ _____ for ten (10) of the first eleven (11) settlements to pay the Initial
Leasing Cost Total.

## II. INSURANCE:

Insurance Charges – Owner will furnish required insurance at minimum levels as identified in
the Independent Contractor Lease Agreement for:

    Occupational Accident                                           ☐ Yes  ☐ No
    Bobtail                                                         ☐ Yes  ☐ No
    Physical Damage                                                 ☐ Yes  ☐ No

CARRIER will make available to CONTRACTOR insurance at the following:
    Occupational Accident                                           $_____ per week
    Bobtail                                                         $_____ per month
    Physical Damage                                                 $_____ per $1000

Initial Here: _BAT_

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

**III. BANK FEES:**

Electronic Financial Transaction Charges – The CARRIER utilizes ComData/Fleet One/EFS services for electronic financial transactions.  The following ComData/Fleet One/EFS fee schedule applies and will be deducted as incurred regardless of cost to Company:

| | |
|---|---|
| Service Fee for 1st time card use per day | $_____ |
| Service Fee for each card use per day after initial 1st time use | $_____ |
| ATM Withdrawal (U.S.) | $_____ |
| ATM Withdrawal (international Fee) | $_____ |
| ATM Balance Inquiry | $_____ |
| ATM Decline | $_____ |
| Transfer money to a bank account | $_____ |
| POS Debit Transactions | $_____ |
| Comcheck Draft | $_____ |
| Comdata Answer Plus Phone Service | $_____ per minute* |

\* A per call charge of $_____ applies to all calls originating from a payphone.
See ComData informational sheet for additional information regarding ComData services.

**IV. REIMBURSABLES TO CONTRACTOR**

Amount to be reimbursed on the first settlement for travel expense to orientation:

| _____ | X | _____ | = | _____ |
|---|---|---|---|---|
| Total Miles | | Travel Pay | | Total Reimbursement |

Travel Pay will be paid at the rate of $_____ per mile for all miles up to 499 from drivers' place of residence to orientation location and at the rate of $_____ per mile for all miles 500 and greater from drivers' place of residence to orientation location.

**V. MAINTENANCE RESERVE**

Maintenance Reserve Participation (circle one)                    Accept    Decline

A minimum of $_____ will be deducted from each settlement

2290 Reserve Participation (circle one)                              Accept    Decline

A draw will be made until a maximum of $_____ has been escrowed towards payment of your 2290.

I have reviewed this schedule of initial leasing costs and other associated costs and agree to these deductions from my settlements.  I have received a complying certificate of insurance for any insurance which I elect to purchase through Company and understand that a copy of the policy/policies will be provided upon request.

Contractor: _____          Date: _____

Witness: _____              Date: _____

Initial Here: _____

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**

## ADDENDUM TO CONTRACTOR AGREEMENT

The parties agree as follows:

(a)    Contractor is free to accept or reject assignments of any load from 316 Towing and Road Service

(b)    Contractor's remuneration is based upon trips or deliveries accomplished.

(c)    Services provided by Contractor will be performed utilizing the vehicle or vehicles leased by Contractor pursuant to the lease.

(d)    The written Lease to which this addendum is attached is in compliance with O.C.G.A. 34-8-35(n)(17).

(e)    Contractor warrants that it knows it is responsible to pay estimated Social Security taxes and federal and state income taxes.

        (i)    **Social Security tax Contractor must pay is higher than the Social Security tax an individual would pay if he or she were an employee.**

        (ii)    **The services or work provided by Contractor are not covered by unemployment compensation laws of Georgia.**

(f)    The written contract does not prohibit Contractor from pickup, transportation or delivery of property for more than one common carrier or any other person or entity when utilizing a motor vehicle agreement other than that leased hereunder.

_Burt Johnson_
Contractor Signature

Date: _5/24/2021_

Initial Here: _BRJ_

**Exhibit C, Kudrin Aff., Sept. 12, 2022, Ex. B**