# Exhibit 2

**In the Matter Of:**

HYDE V. 316 TOWING & ROAD SERVICE

2:22-cv-103-RWS

---

**REYNALDO BROWN**

*September 28, 2023*

---



800.211.DEPO (3376)
EsquireSolutions.com

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF GEORGIA
 2                     GAINESVILLE DIVISION

 3
     DUSTIN HYDE, Individually,   )
 4   and on Behalf of All Other   )
     Similarly Situated,          )
 5                                )  CIVIL ACTION FILE
               Plaintiff,         )
 6                                )  NO. 2:22-cv-103-RWS
          vs.                     )
 7                                )
     316 TOWING & ROAD SERVICE,   )
 8   INC., and MAKSIM LISOVSKIY,  )
                                  )
 9             Defendants.        )
     _____)
10

11

12              Deposition of REYNALDO BROWN, taken on

13        behalf of the Defendants, pursuant to Notice

14        and agreement of counsel, in accordance with

15        the Federal Rules of Civil Procedure, before

16        Cynthia B. Gatewood, Certified Court Reporter,

17        at 3390 Peachtree Road NE, Suite 520, Atlanta,

18        Georgia, on the 28th day of September 2023,

19        commencing at the hour of 3:10 p.m.

20

21

22   _____

23

24

25
```



```
 1                    INDEX TO EXAMINATIONS

 2    EXAMINATION                                    PAGE

 3    Cross-Examination by MR. Handschuh                4

 4

 5                     INDEX TO EXHIBITS

 6    DEFENDANTS'
        EXHIBIT           DESCRIPTION              PAGE
 7
        D-1        Third Amended Notice to Take       5
 8                 Deposition of Reynaldo Ricardo
                   Brown
 9
        D-2        Driver Application               34
10
        D-3        not tendered
11
        D-4        Responses to Defendants' First   30
12                 Interrogatories, Requests for
                   Production, and Requests for
13                 Admission

14      D-5        Independent Contractor and Lease 44
                   Agreement
15
        D-6        Towbook Log                      78
16
        D-7        Canceled Job Log                 81
17
        D-8        Damages Table                    97
18
        D-9        Invoice                         100
19
        D-10       IRS Response                    103
20

21

22                       -   -   -

23

24

25
```



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                              4

```
 1              (Whereupon, the witness was duly sworn.)
 2              MR. HANDSCHUH:  This deposition is conducted
 3         pursuant to the Federal Rules of Civil Procedure,
 4         pursuant to notice and agreement of counsel, and
 5         it may be used for any purpose authorized by the
 6         Federal Rules of Civil Procedure.
 7                        REYNALDO BROWN,
 8    having been first duly sworn, was examined and
 9    testified as follows:
10                   CROSS-EXAMINATION
11    BY MR. HANDSCHUH:
12         Q.   Would you please state your name and spell
13    it for the record.
14         A.   Reynaldo Brown, R-e-y-n-a-l-d-o, B-r-o-w-n.
15         Q.   Okay.  And can you please state your
16    address.
17         A.   ██████████████████████  Conyers, Georgia.
18              MR. HANDSCHUH:  Okay.  A housekeeping
19         matter.  Sean, do you agree that all objections,
20         except as to the form of question, are reserved
21         until trial?
22              MR. SHORT:  Yes.
23              MR. HANDSCHUH:  Okay.  And then we'll
24         consider, as we did before, the decision to waive
25         signature at the end?
```



```
 1              MR. SHORT:  Right.
 2              MR. HANDSCHUH:  We'll try to remember each
 3       time.
 4  BY MR. HANDSCHUH:
 5       Q.    Mr. Brown, my name is Jeremy Handschuh.  I'm
 6  an attorney, and I represent 316 Towing and Road
 7  Service, Inc., as well as Maksim Lisovskiy in the
 8  lawsuit pending in the Northern District of Georgia
 9  with Civil Action File Number 2:22-cv-103-RWS.
10              MR. HANDSCHUH:  Notice?
11              (Exhibit Number D-1 was marked for
12       identification.)
13              MS. ELLIOTT:  I'm handing you what's been
14       marked as Exhibit 1.
15  BY MR. HANDSCHUH:
16       Q.    Would you take a moment to look at that, and
17  when you're finished let me know.
18       A.    All right.
19       Q.    Mr. Brown, this is a deposition in which I'm
20  going to ask you questions, and you must answer them
21  truthfully, unless your attorney advises you clearly
22  and distinctly not to answer that question.  Do you
23  understand?
24       A.    Uh-huh (affirmative).
25       Q.    Okay.
```



```
 1        A.    Yes.
 2        Q.    And although no judge is present, as you can
 3   tell, this is a formal legal proceeding.  It's just as
 4   if you're testifying at trial.  And so you're under the
 5   same legal obligations to tell the truth, the whole
 6   truth, nothing --
 7        A.    And nothing but the truth --
 8        Q.    Correct.
 9        A.    -- so help me God.
10        Q.    Correct.  It's just simply -- I know it's a
11   little more informal, but this is a serious legal
12   proceeding.  We do have Cindy here who is taking
13   through transcription for purposes of typing into a
14   transcript what I am saying, as well as what your
15   responses will be.
16        A.    All right.
17        Q.    Sometimes for these documents -- or, excuse
18   me, not the documents, but in the transcripts we -- in
19   verbal conversation we might nod our head to express,
20   you know, affirmation, a yes, or nod our head side to
21   side with a no.  I will try when necessary just so that
22   Cindy can --
23        A.    To speak.
24        Q.    To speak.  So if I --
25        A.    There you go.
```



1        Q.    So if you note that, it's just me asking --
2   you know, I understand you're communicating.  But if
3   it's not written down, then it didn't happen.  So I
4   just want to make sure that if you answer yes, we'll
5   make --
6        A.    I get you.
7        Q.    -- sure to get that down.
8              (Reporter admonition.)
9   BY MR. HANDSCHUH:
10       Q.    Yeah, this is just a function of I will
11  extend the courtesy to you of finishing your answer,
12  and you just allow me to finish my question.
13  Otherwise, we'll just receive gaps, and there's
14  over-talking.  Okay.  Is that agreeable to you?
15       A.    (Witness nods head affirmatively.)
16       Q.    All right.  So, for example, you're agreeing
17  yes with a thumbs up.
18       A.    Yes.
19       Q.    Okay.  All right.  You notice, yeah, that
20  wouldn't have shown up on the paper, so I'm just kind
21  of verbalizing it.  So if you see any of that, that's
22  why we're doing it.  Just I know it can be a little
23  awkward.  Going forward, I do want to ask that if I ask
24  you a question and you don't understand it that you
25  please let me know right away.  I will rephrase it.  I



1   don't want you answering questions you don't

2   understand.

3       A.   Okay.

4       Q.   Okay.  And then also, you know, if, as we

5   just spoke about, you need to answer or you need to

6   clarify an earlier answer, please let me know.

7       A.   All right.

8       Q.   You've seen what's been marked as Exhibit 1;

9   correct?

10      A.   Yes.

11      Q.   Have you seen this document before?  I'll

12  represent to you it's just the notice for today's

13  deposition.

14      A.   No, I haven't seen it.

15      Q.   Okay.

16      A.   Just now I have.

17      Q.   Okay.  Okay.  But you understand you're here

18  to testify in relation to the matter that's set forth

19  on Exhibit 1; correct?

20      A.   Yes.

21      Q.   Okay.  And do you understand that the oath

22  that you were given today is just as binding as if you

23  were sitting in front of a jury?

24      A.   Yes.

25      Q.   Okay.  Do you have anything on your mind



REYNALDO BROWN
HYDE V. 316 TOWING & ROAD SERVICE

September 28, 2023
9

```
1   today that might make it difficult for you to

2   concentrate about today's testimony, anything

3   distracting you in particular, any kind of, you know,

4   illness or family emergency?

5        A.    No.

6        Q.    No?  Okay.  So you're able to focus today

7   without outside distraction.

8        A.    Yes.

9        Q.    Okay.  Would you let me know if that changes

10  at any time?

11       A.    Yes.

12       Q.    Okay.  Is there anything that you're aware

13  of today that would keep you from giving full,

14  complete, and accurate answers today?

15       A.    No.

16       Q.    Okay.  All right.  And I would suggest we go

17  about hour and a half to two hours before we have our

18  first break, if not just be --

19       A.    Wow.

20       Q.    -- finished.  But if you need to use the

21  restroom, please just, you know, let me know, and we

22  can go off the record and you can go to the restroom.

23       A.    All right.

24       Q.    During those breaks, I do ask that you just

25  refrain from discussing your testimony during those
```





```
 1   breaks.
 2        A.    Okay.
 3        Q.    And you heard me ask your attorney whether
 4   or not they would waive signature, and that just means
 5   that at the end of the deposition you'll have the
 6   opportunity to decide if you want to read over the
 7   transcript to see if there are any errors in
 8   transcription.
 9        A.    Uh-huh, yeah.
10        Q.    Do you understand that?
11        A.    Uh-huh (affirmative).
12        Q.    Okay.  Do you have any questions about what
13   I've just covered?
14        A.    No.
15        Q.    Okay.  I may ask you -- can you advise, did
16   you refer to ███████████ as your current address?
17        A.    Yes.
18        Q.    Did you at one point in time live at ████
19   ██████████████████████████████████ Macon,
20   Georgia?
21        A.    That's where my wife lives.
22        Q.    Okay.  Do you live with your wife?
23        A.    No.
24        Q.    Okay.  Are you separated or just --
25        A.    Yes.
```



1      Q.    Okay.  Did you at any point in time live at

2    that apartment in Macon?

3      A.    For a few months.

4      Q.    Okay.  Do you know just -- I'm just trying

5    to get an understanding of your residential history

6    over let's say the last few years.  So currently you're

7    at Starr Road.  Do you know about when you moved to

8    Starr Road from Macon?

9      A.    A few months.  I was only staying at my

10   wife's house for one month in Macon.

11     Q.    Really?  Okay.  Do you know about -- it

12   sounds like 2023.  Do you know what month?

13     A.    This is '23 now; right?

14     Q.    Uh-huh (affirmative).

15     A.    She's probably been there for three months

16   now.

17     Q.    Okay.  So very recently you were there, but

18   no longer.

19     A.    No.

20     Q.    Okay.  Before the Macon address, where were

21   you?  Were you in Conyers?

22     A.    I was in Conyers first because that's my

23   brother's house.

24     Q.    Okay.

25     A.    Then me and my wife was living at ██████



```
 1   ███████████████████ --
 2        Q.    Okay.
 3        A.    -- in Buford.  And then she found a place in
 4   Macon.  We moved to Macon.  Didn't work out.  I moved
 5   back in with my brother.
 6        Q.    I see.  Okay.  And is all of this -- were
 7   you living at any point in ██████████████████████
 8   with your wife during 2023, this year?  Just trying to
 9   get the time line.
10        A.    Yes, before she moved to Macon.
11        Q.    How long did you live at ████?  I'll just
12   say ████████████████.
13        A.    Probably about two years.
14        Q.    Two years.  Okay.  Where did you live prior
15   to that?
16        A.    Conyers.
17        Q.    Back to that one.
18        A.    With my brother.
19        Q.    Bouncing around a little bit.  Okay.  I see.
20   And can you state your date of birth, please.
21        A.    ████████████████.
22        Q.    Okay.  And this matter may end up at a jury
23   trial.  And as a part of the jury trial, they'll send
24   out notices to basically citizens of the Northern
25   District.  Unfortunately, those can include some people
```



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                              13

```
 1   who may be your family or even your spouse.  And so

 2   some of the questions I'm asking is just so for

 3   purposes of the jury pool selection we can weed out

 4   whether there's anyone that has a personal connection

 5   to you.  With that said, I understand you're married.

 6   Can you please state your wife's name.

 7        A.    Shatoya Brown.

 8        Q.    Okay.  Can you spell that?

 9        A.    S-h-a-t-o-y-a, Brown, like the color,

10   B-r-o-w-n.

11        Q.    Have you ever been married previously?

12        A.    No.

13        Q.    Okay.  So only one marriage to Ms. Brown.

14        A.    Uh-huh, yes.

15        Q.    Do you have any children?

16        A.    Yes.

17        Q.    Okay.  Can you state their names?

18        A.    Why is my kids' names being stated in this?

19        Q.    Again, it's -- are they minors?

20        A.    Yes.

21        Q.    They're all -- okay.  Do you know what the

22   age of the oldest is?

23        A.    12.

24        Q.    Okay.  Given they wouldn't be called for

25   jury duty -- any other children that are older than 12?
```



1          A.    No.

2          Q.    No?  Okay.  Any other children that you're

3     caring for --

4          A.    Her name's wrong on that paper too, by the

5     way.

6          Q.    Okay.  No, no problem.  I'm not -- since

7     they're all under 18, I won't ask.  But I'm just asking

8     aside from -- these are all children with Ms. Brown?

9          A.    The names are wrong, but yeah.

10         Q.    Okay.  Any other children that are fathered

11    by you, not with Ms. Brown?

12         A.    Yeah.  I've got a son in New York.

13         Q.    What's his name?  Is he over 18?

14         A.    He's 12 also.

15         Q.    He's 12?  Okay.  So that's four, or is that

16    three?

17         A.    Three because that other kid in there is not

18    my kid.

19         Q.    Okay.  Okay.  And I see you pointing to

20    names.  Like I said, I won't mention them given they're

21    all minors.  But if you happen to recollect any

22    children that are over 12, or over age 18, just let me

23    know.

24               Okay.  I asked you earlier whether you were,

25    you know, unable to testify today, whether you were



1   distracted.  A related question is are you under the
2   influence of any alcohol or drugs that would affect
3   your testimony today?
4        A.    No way.
5        Q.    Okay.  You'd be surprised.
6        A.    I bet.  I was just watching this skit on
7   TikTok.  It had Denzel Washington in that movie Flight.
8   And he told the Court, he said, "I'm drunk now.  I was
9   drunk Tuesday.  I was drunk Wednesday," when he crashed
10  the plane.
11       Q.    Yeah, uh-huh.
12       A.    I was like, yeah, I bet.  People probably --
13       Q.    No, look, I don't figure, but you never
14  quite know.  And I just want to make sure that, you
15  know, we don't have to do this over again or, you know,
16  you have an issue where, you know, your testimony would
17  change for any of those reasons.  So much of them I
18  don't expect to be a yes, but I'm simply just to be
19  thorough going through them.  Have you ever been
20  arrested?
21       A.    Yes.
22       Q.    Okay.  I noted that perhaps it was as a
23  minor.  Have you ever been arrested over the age of 18?
24       A.    Yes.
25       Q.    Okay.  Can you identify for me those



```
 1  arrests?

 2        A.    There's like 13, man.

 3        Q.    13.  Okay.  Are any of them felonies?

 4        A.    Yes.

 5        Q.    Okay.  Let's start out with the 13.  I'll

 6  try to slice this thing.  Of the felonies, can you

 7  identify how many are felonies?

 8        A.    One.

 9        Q.    Which was that one?

10        A.    I beat somebody up in public.  And then --

11        Q.    Was that battery?

12        A.    It was --

13        Q.    Or assault?

14        A.    It was -- I got into a fight in the street.

15  And then my home boy went in the guy's car and started

16  throwing muffins.  I guess he was delivering muffins to

17  a bakery.  And my home boy was throwing the muffins in

18  the street being stupid.  Went to court and turned out

19  that was robbery because you move something from

20  someone a certain amount of feet from the person, it's

21  robbery.

22        Q.    Okay.  So that felony was for a robbery

23  charge.

24        A.    Yeah.

25        Q.    Okay.  Do you think you were also charged
```



1    for assault there?

2         A.    Yeah.

3         Q.    Okay.  Did you serve any prison time?

4         A.    I only did six months.

5         Q.    Okay.  Where was that?

6         A.    New York, Rikers Island.

7         Q.    Did you move to Georgia from New York?  I'm

8    starting to pick up a little bit about your past.

9         A.    I moved to Georgia from New Mexico.

10        Q.    Oh, New Mexico.  Okay.  From previous to New

11   Mexico, were you living in New York?

12        A.    After New York I moved to New Mexico to help

13   take care of my dad, and then we moved to Georgia with

14   him.

15        Q.    Okay.  So that leaves 12 misdemeanors.  Do

16   they have groupings or any way you could summarize

17   these?  I'm looking for do any of them involve fraud?

18        A.    None.

19        Q.    Do any of them involve any other kinds of

20   theft?

21        A.    None.

22        Q.    Any of them involve dishonesty?

23        A.    No.

24        Q.    Forgery?

25        A.    Just like little just like disorderly



 1   conducts, little fights in the street, little stuff
 2   like that.  Just --
 3        Q.    Are any of them related to money, meaning --
 4        A.    No.
 5        Q.    Okay.  Any of them relating to falsehoods or
 6   lies or forgeries?
 7        A.    None.
 8        Q.    No.  Okay.  Did you graduate high school?
 9        A.    Yes.
10        Q.    Okay.  Where did you go to high school?
11        A.    Brentwood, New York.
12        Q.    Okay.  Do you recall the name of the high
13   school?
14        A.    Ross High School.
15        Q.    Can you spell that?
16        A.    R-o-s-s.
17        Q.    Okay.  Did you happen to attend any college?
18        A.    Yes.
19        Q.    Okay.  What college did you attend?
20        A.    Taylor Business Institute.
21        Q.    Okay.  First I'll go with any other schools,
22   and then I'll flip back to ask times.
23        A.    TCI.
24        Q.    Okay.
25        A.    Technical Career Institute.  And I went to



1   Eastern Suffolk Wilson Tech.

2        Q.    Okay.  Any way, in looking at all three of

3   those, did you graduate with degrees from any of them?

4        A.    Well, Taylor Business Institute closed down.

5   I was going for business administration.  Then I had to

6   go to an open house for a new school, and I went to

7   TCI.  And then I moved, so I stopped going to school

8   there.  I went back to Long Island.  Then I went to

9   school -- that one.

10       Q.    Eastern Suffolk?

11       A.    Eastern Suffolk Wilson Tech.  I went to

12  school for oil burner installments, and I got my

13  certificates.  I graduated that one twice.  Well, both

14  courses.

15       Q.    Okay.  When did you graduate?

16       A.    I don't know the years of neither --

17       Q.    Roughly?

18       A.    I have no idea.  I'm bad with dates, like

19  real bad.

20       Q.    If you're 40, do you think you graduated in

21  early twenties, thirties?  You don't know?

22       A.    I don't honestly.  I meant to call them the

23  other day because I wanted to get them to mail me my

24  certificates so I could put them on the wall.  But --

25       Q.    They never sent it to you, huh?



1      A.    I never called.  I never called.  I did it

2   before.  I had to pay $5 for them but lost them again.

3   But now I want to hang them up, so --

4      Q.    Well, good.  Good for you.  Have you ever

5   been suspended from school?

6      A.    Yes.

7      Q.    Okay.  Any of these, you know, colleges?

8      A.    No.

9      Q.    Okay.  Maybe you're just speaking to minors

10  and --

11     A.    High school stuff.

12     Q.    -- high school?

13     A.    Yeah, junior high, stuff like that.  Not

14  in --

15     Q.    Have you ever been expelled?

16     A.    No.

17     Q.    Okay.  Other than your degree -- what was

18  that in, by the way?  Was that a BBA too, business

19  administration?

20     A.    It was a certificate.

21     Q.    What certificate was that?

22     A.    Oil burner installments.

23     Q.    Oh, you did say that.

24     A.    It's almost like HVAC.

25     Q.    Got it.



REYNALDO BROWN                                      September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                              21

1        A.    But not.

2        Q.    I guess for like an oil furnace?

3        A.    Oil burners, hot water tanks.

4        Q.    Okay.

5        A.    Stuff like that.

6        Q.    Any other certifications beyond the oil

7    burner in terms of licenses or degrees?

8        A.    CPR.

9        Q.    Okay.  Can you describe what that is, what

10   that stands for?

11       A.    CPR?  Like when someone is chocking you've

12   got to give them CPR.

13       Q.    Oh, CPR.  I'm sorry.  I heard CPI.  Okay.

14   CPR certification.  All right.  Anything else?

15       A.    No.

16       Q.    Did you ever attend commercial driver's

17   license school?

18       A.    No.

19       Q.    Have you ever obtained your CDL?

20       A.    No.

21       Q.    Okay.  Do you presently work?

22       A.    No.

23       Q.    Okay.  When was the last time you worked?

24       A.    Probably about, the last one, two months ago

25   probably.



1       Q.    This will get somewhat chronological, so can

2  you advise me as to your most recent employer who you

3  were working for two months ago?

4       A.    I was working for a guy named -- geez,

5  what's his name?  I forgot his name, but it's in my

6  phone.  It was a security company.

7       Q.    Okay.

8       A.    We was doing security for AMC movie

9  theaters.  It was like a -- kind of like an agency.

10 They move you from one movie theater to another movie

11 theater.

12      Q.    Okay.

13      A.    And that was it.

14      Q.    Where was that?  Was that here in Georgia?

15      A.    Yeah, it was -- yeah, in Georgia.

16      Q.    Was that in Macon, or was that before you

17 moved?

18      A.    I don't remember the name of the town.

19      Q.    Really?  Okay.

20      A.    Sugarloaf.

21      Q.    Sugarloaf?

22      A.    Sugarloaf AMC.  I just can't remember the

23 name of the guy I worked for either though.

24      Q.    You think it was an individual?

25      A.    Yeah.



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                               23

1          Q.    Okay.  How long did you work there?  So this
2     takes us back -- if I'm just doing rough math, it's,
3     what, September?  So maybe June or July you worked
4     there?
5          A.    Probably, yeah.
6          Q.    Okay.  How long -- if we're ending in --
7          A.    Probably two months.
8          Q.    Before June 2023, can you state who you
9     worked for before the security?
10          A.    Sometimes I just stay home and help take
11     care of my dad.
12          Q.    Okay.
13          A.    Because he can't walk.
14          Q.    Where would that have occurred?
15          A.    Conyers at home.
16          Q.    Okay.  I'm taking it just your dad lives
17     with your brother.
18          A.    Yeah.
19          Q.    Okay.  How long do you believe you were
20     assisting with home care?  Meaning, I'll keep going
21     back, before the home care what was your last?
22          A.    Just back and forth since -- for years I've
23     been doing it back and forth.
24          Q.    What is -- meaning going from security and
25     home care?



1          A.    No, I wasn't doing that security before

2    then.

3          Q.    But then -- I'm just going chronologically

4    here.  Before the home care what was -- we have you

5    were working, at least in 2023, with the AMC folks, the

6    security.  Before that you're doing home care.  When do

7    you think you had the last job since home care?

8          A.    I had a job at Kroger in Buford.

9          Q.    Okay.  Do you remember about when?

10         A.    No.

11         Q.    Okay.  Do you know where you worked -- and

12   basically leading up to 316 is where I'm going to end

13   up.  Before --

14         A.    Yeah.  Well, that's probably -- I don't

15   remember all the jobs and the years and all that stuff.

16         Q.    Okay.  Before Kroger do you recall, you

17   know, just going to -- back just about two years, do

18   you recall any other jobs, you know, going from today

19   to back to June of 2021?  Any other jobs that we

20   haven't mentioned?

21         A.    Yeah, but it's a lot of jobs back and forth

22   probably.

23         Q.    Really?  Any of them involve operating a tow

24   truck?

25         A.    Hemphill Towing.



1      Q.    Hemphill Towing?  Okay.  Any others?

2      A.    I don't know the names of the other -- most

3   of the jobs I worked for.  I could look in my phone and

4   probably find some though.

5      Q.    Any other tow truck companies?

6      A.    I don't know.

7      Q.    Did you happen to work at Hemphill Towing

8   with Dustin Hyde?

9      A.    No.

10     Q.    You never worked there with him?

11     A.    No.

12     Q.    Okay.  Did you happen to hear about Hemphill

13   Towing from Justin Hyde?

14     A.    No.  Met a girl at a gas station driving a

15   truck.

16     Q.    Oh, really?  Okay.

17     A.    And I asked her about it, and she gave me

18   the number.

19     Q.    Okay.  So it just sounds perhaps

20   coincidental --

21     A.    Yeah.

22     Q.    -- if that's -- okay.

23     A.    They knew of him.

24     Q.    Okay.  Do you have -- you know, sometimes

25   folks have a full-on job.  Do you have any secondary



1   jobs or moonlight jobs or -- you know, people call them
2   hustles or anything you do for income?
3        A.   No, just help out with my dad sometimes, and
4   that's it.
5        Q.   Okay.  But that's not for pay of any kind?
6        A.   No.
7        Q.   Okay.  Are you still on public assistance?
8        A.   No.
9        Q.   No?  When did that end?
10       A.   Where did it say I was on public assistance?
11  I don't recall being on it out here.  I recall being on
12  it in New York.
13       Q.   That's in New York.
14       A.   Yeah.
15       Q.   Okay.  I remember you testified to it, but
16  it wasn't here in Georgia.
17       A.   I don't think so.  I got -- I got -- maybe
18  this is public assistance.  What's it called?  A card
19  where you get -- they give you money if you don't have
20  a job.
21       Q.   EBT?
22       A.   No.
23       Q.   No?  Food stamps?
24       A.   Unemployment card.
25       Q.   Unemployment.  Okay.



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                               27

1        A.    Yeah.  But that only gave me something for
2  like once and never came back again.
3        Q.    Really?
4        A.    Yeah.
5        Q.    Okay.  Do you remember when you went onto
6  unemployment?
7        A.    No.
8        Q.    Okay.  Did you ever work at -- and this goes
9  back to New York -- Dave & Buster's?
10       A.    Yes.
11       Q.    Okay.  Do you remember roughly when you
12  worked there?
13       A.    Okay.  I'm 40.  My son was probably four,
14  and he's 12 now.
15       Q.    Maybe 2015, thereabouts, but a long time,
16  eight years?
17       A.    Probably, yeah.
18       Q.    What about Bundle of Joy?
19       A.    That's the daycare center my mom used to
20  own --
21       Q.    Really?
22       A.    -- before she sold her house and moved to
23  Georgia.
24       Q.    Was that prior to Dave & Buster's?  If that
25  was eight years ago, you think that was before or



1  after?

2       A.    I don't -- probably during.

3       Q.    During?  Okay.

4       A.    Because it was my mom's home daycare.

5       Q.    Okay.

6       A.    So what I would do is sweep up and mop after

7  work when she finished, you know, stuff like that.

8       Q.    What about A1 Quality Towing, LLLP?

9       A.    That's a business I was supposed to start

10  with my wife because I was one day going to buy a tow

11  truck, but instead a bought a house.

12       Q.    I see.  Okay.

13       A.    So I didn't never use it.  I was going to

14  buy a truck.

15       Q.    So, to understand, you're stating you recall

16  creating the entity, but it never operated?

17       A.    Yeah, because I bought a house.  I found a

18  house for sale online for like 90-something K and

19  offered them 70-something, and they took it.

20       Q.    Okay.  Where was that?

21       A.    That house?

22       Q.    Uh-huh (affirmative).

23       A.    In Macon.

24       Q.    Macon.  Okay.  Do you still own that home?

25       A.    No.  My brother does now.



1        Q.    Okay.  Shatoya Hayes, is that -- I believe

2    that's your wife's name.

3        A.    That's her husband's last name, her

4    ex-husband.

5        Q.    Ex-husband.  Okay.

6        A.    Before she married me.

7        Q.    Does she -- so now -- that was her former

8    name.  Now legally you understand it to be Shatoya

9    Brown.

10       A.    Uh-huh (affirmative).

11       Q.    Okay.  Same person.

12       A.    Uh-huh (affirmative).

13       Q.    Okay.  Did A1 ever -- you know, I'll just

14   make it very easy, tow a single truck ever?

15       A.    We never had a truck.

16       Q.    So you didn't lease one, you didn't rent

17   one?

18       A.    Never.

19       Q.    All right.  Drawing our attention to 316, do

20   you recall, you know, signing up and perhaps reaching

21   out to become a driver for 316?

22       A.    Yes.

23       Q.    Okay.  Can you explain just how you found

24   316 and how you, you know, became a driver for them?

25       A.    I don't remember.  Maybe I seen somebody



1  towing a car at a gas station and probably asked them

2  if they were hiring or something like that.  But that

3  sounds -- that's how I usually -- I ask people if their

4  jobs are hiring if I see somebody outside with a logo

5  on their shirt or something.

6          (Exhibit Number D-4 was marked for

7      identification.)

8          MS. ELLIOTT:  I'm handing you now what's

9      been marked as Exhibit 4.

10     A.    All right.  Am I supposed to read this whole

11  thing?

12  BY MR. HANDSCHUH:

13     Q.    No, no.  I'll draw your attention.  If you

14  could turn to Interrogatory Number 5, that is on

15  page --

16     A.    5 of 22?

17     Q.    If you would, take a moment for me, read

18  Interrogatory Number 5 and then Answer Number 5, and

19  let me know when you're finished.

20     A.    I don't see a question here.

21     Q.    No, no.  Just once you're done -- you've had

22  a chance to read it?

23     A.    Uh-huh (affirmative).

24     Q.    Okay.  But I'm just -- there's a question,

25  an interrogatory, and then an answer.  I just want to



1    make sure for Number 5 you've read both of them.

2         A.    Yeah.

3         Q.    Okay.  So going back to my question just

4    about how you perhaps, you know, got linked up with

5    316, does Answer Number 5 refresh your memory?

6              MR. SHORT:  It continues.  So the answer

7         starts here, and it goes on to the next page.

8              THE WITNESS:  Oh, so turn the page.

9    BY MR. HANDSCHUH:

10        Q.    Yes.  So please read the entire thing, and

11   then let me know --

12        A.    Oh, geez.  All right.  What does that

13   have to -- are you trying to ask how did I hear about

14   316?

15        Q.    Right.  Just drawing your attention to

16   316 --

17        A.    But this is talking about the interview.

18        Q.    Right.  I'm just trying to -- you mentioned

19   you weren't quite sure, but I recalled that some of

20   your response to this interrogatory was responsive.

21        A.    All right.  What part?

22        Q.    No, no.  So do you recall having gone to 316

23   in or about June of 2021 with an application to become

24   a driver?

25        A.    All right.



1    Q.    Okay.  And it appears that you've stated

2  that there was a coworker who introduced you to them,

3  and that tracks with what you're saying.  You usually

4  got referrals for potential jobs, at least with the tow

5  truck companies it sounds like.

6    A.    Yeah.  All right.

7    Q.    Okay.  Does that track?  If this changes and

8  you say, "Oh, no, this is wrong.  I don't remember

9  this," I'm just -- for purposes of our discussion, this

10  appears you got a referral.  It says that you were

11  certified to drive flatbed trucks.  What does that

12  mean?  Like do you get a certificate from some --

13    A.    I never had --

14    Q.    -- company?

15    A.    -- a certificate before.  I rode with -- I

16  think Dustin trained me.  I rode with him for a few

17  days.

18    Q.    Okay.

19    A.    And then -- I think it was him, unless it

20  was another guy.

21            MR. KUDRIN:  Dustin did.

22            THE WITNESS:  Dustin?  All right.  Yeah.

23    And then --

24  BY MR. HANDSCHUH:

25    Q.    Do you recall -- I'm just asking, "certified



1  to drive flatbed trucks," does that mean that there's a

2  company or an organization that gave you some kind of

3  diploma or certificate for that purpose?

4      A.    I think when I was training to do it and I

5  was okay to do it, they said -- yeah, Dustin trained me

6  to do it.  So I guess that means I was good when I

7  learned how to do it.

8      Q.    Okay.  So you're not referring --

9      A.    But, no, I don't have no certificate or

10 nothing like that for driving a truck, no.

11     Q.    So you're not -- any type of certification

12 or being certified, to the extent it involves 316,

13 you're just referring to perhaps riding around with

14 Dustin to see how it's done.  It's nothing more than

15 that?

16     A.    Well, yeah.  He trained me how to do it, how

17 to operate the flatbed and stuff.

18     Q.    Did Hemphill happen to train you previous to

19 this or -- like did they give you a certificate of some

20 kind?

21     A.    No.

22     Q.    Okay.  Can you tell me a little -- just for

23 drawing our attention to, you know, your being hired by

24 316, does June 1st, 2021, sound correct?

25     A.    If it's there.  I don't know the dates and



1   months and stuff like that.

2        Q.    Okay.

3             (Exhibit Number D-2 was marked for

4        identification.)

5             MS. ELLIOTT:   Handing you now what's been

6        marked Exhibit 2.

7        A.    Okay.  Close this one?

8   BY MR. HANDSCHUH:

9        Q.    Sure.  Yeah, we may refer to them.  As we

10  do, feel free to just keep a stack, and then we'll just

11  come back to it.  Certainly I want to make sure you

12  have it in front of you.  So if ever we're going too

13  fast, just let us know.

14       A.    All right.

15       Q.    But, if you could, flip through these pages.

16  And once you're done, just let me know.  Have you had a

17  chance to thumb through this?

18       A.    Huh?

19       Q.    Have you had a chance to review this

20  document I've placed in front of you?

21       A.    I flipped through the pages.

22       Q.    Okay.  Drawing your attention to the last

23  two pages.

24       A.    All right.

25       Q.    All right.  This is a -- and this is a



```
 1   document that's entitled Independent Contractor
 2   Application Checklist.
 3        A.    Uh-huh (affirmative).
 4        Q.    Do you see that?  And then is that your
 5   name?
 6        A.    Yes, that's my name.
 7        Q.    Does that appear to be your handwriting?
 8        A.    Yes.
 9        Q.    Okay.  And did you date this document
10   June 18, 2021?
11        A.    Looks like it.
12        Q.    Okay.  So if you look at the next page, is
13   that your signature at the bottom?
14        A.    Yes.
15        Q.    And does that appear to be June 18, 2021?
16        A.    Yes.
17        Q.    So just for purposes of, you know, getting
18   the time line here, does this single application -- and
19   I just picked one example -- refresh your recollection
20   that this was back in June of 2021 that you were
21   interviewed and hired by 316?
22        A.    Yes.
23        Q.    Okay.  Did you work for 316 for only about
24   two weeks?
25        A.    I don't know how long I worked there.
```



REYNALDO BROWN
HYDE V. 316 TOWING & ROAD SERVICE

September 28, 2023
36

1        Q.    Okay.  If I were to represent to you that it

2    was only two weeks, would you have any reason to

3    believe that it was longer?

4        A.    Probably, probably not.  If it is, that's

5    what it says.  I don't know how long I worked at

6    neither one -- none of the places.

7        Q.    Do you know if it was -- do you think it was

8    over -- and I just want to make sure.  Do you think it

9    was several months, or do you think, you know, it's

10   closer to just a matter of weeks?

11       A.    Probably a matter of weeks.

12       Q.    Okay.  Do you recall who hired you?

13       A.    Yes.

14       Q.    Okay.  Can you walk me through basically --

15   you know, tell me the story.  Somebody it looks like

16   referred you.  Do you recall who that was?

17       A.    I don't know if I met someone at the gas

18   station or looked it up online.  I think I probably met

19   -- seen like somebody towing a car at a gas station and

20   I said, "Hey, are you guys hiring?"  And they said,

21   "Oh, yeah.  Call this number," probably.

22       Q.    Okay.

23       A.    That happens a lot because I'm always

24   looking for a job somewhere.

25       Q.    And for purpose of 316, somebody, you know,



 1 │ gave you a lead and you --

 2 │     A.    Yeah.

 3 │     Q.    Either you called or reached out.  Just walk

 4 │ me through what happened from there.

 5 │     A.    After calling, I was able to come in.  I

 6 │ filled out an application.  I had a huge packet to

 7 │ just, you know, sign away.  And I was in a room similar

 8 │ to this one.  I think the table might have been round.

 9 │ I'm not sure.  With Eli and Max something.

10 │     Q.    You do think that person was Max?

11 │     A.    I can't remember his full name, but

12 │ something -- Max something.

13 │     Q.    Maksim Lisovskiy?

14 │     A.    Yeah.  All right.

15 │     Q.    It was him.  Okay.  Going back to --

16 │     A.    Can I take this for two seconds?

17 │     Q.    We can take a break.  Sure.

18 │     A.    I just want to tell them I'm here.  I'll

19 │ call back.

20 │           MR. HANDSCHUH:  Sure.  Go off the record for

21 │     a moment.

22 │           (An off-the-record discussion was held.)

23 │ BY MR. HANDSCHUH:

24 │     Q.    Going back, you said you were in a room.

25 │ And now going back to what's been marked as



 1   Exhibit 2 -- it's the interrogatories -- 4, excuse me.

 2   Going back to Response Number 5, it states here, you

 3   wrote, "I was in a room with Eli and another guy.  I

 4   don't know if it was Max or not."  And I'm just asking

 5   now here you say you weren't sure, but now you think

 6   you are sure?

 7        A.    I don't know his full name.  I just knew it

 8   was Max something.

 9        Q.    Max.  Okay.

10        A.    Yeah.  I just knew that part.  I didn't know

11   the -- I still don't remember the rest of it you said,

12   Maksim whatever.

13        Q.    But here you maybe weren't sure if it was

14   his name, but you don't think it could have been

15   another person?

16        A.    No.  I wasn't sure how the rest of the name

17   from Max --

18        Q.    Okay.

19        A.    What follows after that.

20        Q.    And at that point in time, do you recall if

21   Eli gave you the paperwork, or was it Max?

22        A.    It was just me and them at the table.

23        Q.    Okay.  Did you have a chance to take that

24   paperwork home?

25        A.    No.  I signed everything there.



1       Q.    You signed it there?  Okay.

2       A.    On the table.

3       Q.    Have you had a chance to thumb through

4   what's been marked as Exhibit 2.

5       A.    Which one?  This?

6       Q.    Right, correct.  Can you turn to the page --

7   it's about three pages in.  The fourth page -- one page

8   before.  Yep.  If you would, please review that

9   document.

10      A.    All right.

11      Q.    And six pages until you come to a page

12  called Information Data Sheet.

13      A.    Six?  All right.  What about it?

14      Q.    Right.  I just mean for the pages you have

15  in your left hand, just review those, and then just let

16  me know once you've had a chance to look.  I'm going to

17  ask you some questions about it, so take a moment to

18  look at it.

19      A.    All right.

20      Q.    Okay.  And does this document appear to be

21  the application that you would have filled out?

22      A.    Yes.

23      Q.    At the time?

24      A.    Yes.

25      Q.    And is this your handwriting?



1        A.     No.

2        Q.     Okay.  Do you know whose handwriting this

3   is?

4        A.     No.

5        Q.     You don't know --

6        A.     Might be my wife because her name is on here

7   too.

8        Q.     Okay.

9        A.     But it's not my handwriting, no.

10       Q.     Looking at the information, is any of the

11  information wrong?

12       A.     No.

13       Q.     Okay.  Is this document dated June 1, 2021,

14  at the top?

15       A.     Yes.

16       Q.     Okay.  So that tracks with just we've

17  identified that June 2021 is when you, you know,

18  engaged with 316 as a driver.

19       A.     All right.

20       Q.     Okay.  Is that correct?

21       A.     I guess.

22       Q.     Okay.  I mean, if there's another month you

23  think other than June, let me know.

24       A.     I'm bad with months, so I wouldn't -- but if

25  it's there, then, yeah, that's it.



1    Q.    Okay.  Turn to the next page, and just let

2  me know if any of that is --

3    A.    I went through --

4    Q.    -- filled out --

5    A.    -- all them already, the six pages.

6    Q.    Is anything -- given it's not your

7  handwriting but it appears to be --

8    A.    No, it's not.

9    Q.    -- filled out on your behalf --

10   A.    This page is my handwriting (indicating).

11   Q.    Just the second page?

12   A.    Motor Carrier History.

13   Q.    The second page, just let me know if there's

14  anything wrong here.

15   A.    No, everything's fine.

16   Q.    So you mentioned that you think this may be

17  your wife's handwriting?

18   A.    Yeah.

19   Q.    Okay.  Do you think perhaps you took the

20  application home, as I mentioned, and that's where she

21  would have had a chance to fill it out?

22   A.    I think she came up there with me.

23   Q.    Oh, she was with you.

24   A.    Uh-huh (affirmative).

25   Q.    Do you know if anyone else was with you at



1    this meeting?

2        A.    No, no one else.

3        Q.    So it was just the four of you.

4        A.    I guess so.

5        Q.    Okay.  And you think that, if she did fill

6    it out, the portions that appear to be her handwriting,

7    which were the first page, the second page, and then

8    the third page -- if you'd turn to that one.

9        A.    First page, second page, third page.

10       Q.    First, second, third.

11       A.    All right.

12       Q.    Anything on the third page that's wrong?

13   And that's the one that says Driving Experience at the

14   top.

15       A.    Yes.

16       Q.    That's correct?

17       A.    Yeah.

18       Q.    Okay.  And then the following page, you

19   mentioned that this appears -- it states Motor Carrier

20   History.  That looks like more your handwriting.

21       A.    Yeah.

22       Q.    Okay.  And then that's where it sets forth

23   Dave & Buster's and Bundle of Joy?

24       A.    Uh-huh (affirmative).

25       Q.    Okay.  If you could, please, flip through



1  two more pages, and you'll just see the signature page.

2      A.    All right.

3      Q.    And this is the document that -- the

4  paragraph above the signature states, "This certifies

5  that this application was completed by me and that all

6  entries on it and information in it are true and

7  complete to the best of my knowledge."  Do you see

8  that?

9      A.    Yes.

10     Q.    Okay.  And underneath there there's an

11 applicant's signature.  Now, you mentioned, and I want

12 to be clear, that someone else may have been -- look, I

13 understand.  I can sympathize -- had better handwriting

14 than you and filled it out for you.  But is that your

15 signature --

16     A.    Yes.

17     Q.    -- there?  Okay.  And that's dated --

18     A.    6/18/21.

19     Q.    Well, no, the one that's next to you.

20     A.    6/1/21.

21     Q.    Okay.  And then it appears that there may

22 have been another signature, Eli Kudrin, and that's

23 June 18, '21?

24     A.    Yeah.

25     Q.    Okay.  Any reason to believe that you didn't



1  turn this application in on June 1st, 2021?

2       A.   No.

3            MR. HANDSCHUH:  Can we get the CI agreement?

4            (Exhibit Number D-5 was marked for

5       identification.)

6            MS. ELLIOTT:  I'm handing you now what's

7       been marked as Exhibit 5.

8       A.   All right.

9  BY MR. HANDSCHUH:

10      Q.   If you could, please flip through Exhibit 5

11  and let me know when you're finished.

12      A.   All right.

13      Q.   So I think we have established that your

14  wife was with you that day.  Is it fair to say that she

15  may have filled in your name at the top of this

16  document?

17      A.   It's possible.  I don't --

18      Q.   Did you fill in that name?

19      A.   Definitely not my handwriting.

20      Q.   Okay.  Is this your initial down at the

21  bottom right -- or left rather?

22      A.   It doesn't look like it.

23      Q.   Does that appear to be your wife's

24  handwriting?

25      A.   I don't really know.  But that's not how I



REYNALDO BROWN                                        September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                                    45

```
 1   do my initials for sure.
 2        Q.   Okay.  Flipping to page -- once we get to
 3   the signature line on this Exhibit Number 5.
 4        A.   On the back?
 5        Q.   Yes.  You see here where it sets forth that
 6   this agreement is dated June 1st, 2021?
 7        A.   Yes.
 8        Q.   Okay.  And then it has your name, and is
 9   that your signature underneath your name?
10        A.   Yes.
11        Q.   Okay.  So you did sign this document.
12        A.   Yes.
13        Q.   Okay.  Turning to the following page and
14   then actually three or four pages later to Addendum to
15   Contractor Agreement.
16        A.   All right.
17        Q.   And does that appear to be your signature at
18   the bottom of that page?
19        A.   Yeah.
20        Q.   Okay.  And is that June 1st, 2021?
21        A.   This isn't mine though down here.
22        Q.   Right.
23        A.   Yeah.
24        Q.   Do you know -- you know, do you have any
25   idea as to who may have set forth your initials if it
```



1   wasn't you?

2          A.     No.  But it's my signature.

3          Q.     Do you think that Eli or Max did that?

4          A.     I don't -- I didn't say that.

5          Q.     Okay.  No, I'm just asking.  If it wasn't

6   your wife, do you have an idea as to who it was?

7          A.     No, I don't.

8          Q.     Do you have any reason to believe that any

9   of these pages weren't a part of the agreement you

10  signed?

11         A.     I don't know.

12         Q.     Okay.  But testifying right now, you don't

13  have an opinion that, in fact, pages are missing or

14  this is the wrong document?

15         A.     Neither.

16         Q.     Okay.  So returning back now to what's been

17  marked as Exhibit 4, if you could pull that one up.

18  And then we're going to go back to Admission Number 15,

19  which is on page 19 of 22.  Can you read Request for

20  Admission Number 15 as well as the response and let me

21  know once you're finished.

22         A.     Read 15 and what else?

23         Q.     There's a request for admission --

24         A.     Oh, all right.  All right.

25         Q.     Yeah.  Had you ever seen these responses



1    before they were sent out?

2        A.    This?

3        Q.    Uh-huh (affirmative).

4        A.    I only seen this now.

5        Q.    Okay.  And for purposes of this response, I

6    just want to clear up any confusion.  Do you know

7    whether or not there's any other independent contractor

8    and lease agreement that was signed between you and

9    316?

10       A.    I don't know.

11       Q.    Okay.

12       A.    All I know is the papers they gave me to

13   sign, I just signed the papers.  It was a big packet,

14   you know.  So --

15       Q.    Okay.  So if you think there's another

16   document, can you commit to me to produce that in this

17   action?

18       A.    I don't have any of this stuff.

19       Q.    Okay.  So you don't have any of it.

20       A.    No.

21       Q.    I just want to make sure that you don't

22   have --

23       A.    Oh, yeah, huh-uh (negative).

24       Q.    -- your versions in a drawer at home --

25       A.    No.



1      Q.    -- okay, and it's not this one.  Okay.  So

2  to the extent you denied it, it was denied on the basis

3  that it wasn't attached.  But now having gone through

4  this, you've testified that, yes, this does appear to

5  be the agreement that you signed with 316.

6      A.    Yes.

7      Q.    Okay.  Any reason why you think upon further

8  inquiry your opinion there might change, or do you feel

9  pretty confident?

10     A.    My opinion about what?

11     Q.    That you signed this agreement.

12     A.    No, that's my signature.

13     Q.    Okay.  Let me ask you how -- when you first

14  began working for 316, how did you set your pay?

15     A.    I think I picked up a check; right?

16     Q.    Sorry.  For purposes of the depo, we can't

17  have questions.  So if you don't know, just say you

18  don't remember.

19     A.    I don't remember.  I think I picked up a

20  check though.  I don't want to be wrong, but I think I

21  did.

22     Q.    Just not necessarily how you were paid, but

23  can you discuss the subject as to how you determined

24  what the pay rate was to be?  Meaning you went to the

25  application process.  You signed the paperwork.



1      A.    Oh, the pay rate was supposed to be 950 a

2  week.

3      Q.    Okay.

4      A.    And that was I think a flat rate.

5      Q.    Okay.  Was that paid weekly?

6      A.    I think it was weekly.

7      Q.    Okay.  Do you believe it was paid on some

8  other basis besides weekly?

9      A.    There's weekly and biweekly, but I think it

10 was weekly, I think, yeah.

11     Q.    Did you ever receive any raises while you

12 worked there?

13     A.    No.

14     Q.    Okay.  Did you ever have pay docked for

15 missing work?

16     A.    No.

17     Q.    Okay.  Did you ever negotiate the 950 with

18 anybody?  Did they start you out at a lower rate?  Were

19 you at a higher rate?

20     A.    I was always 950.

21     Q.    950.  Did you ever ask for say 1,100?

22     A.    No.

23     Q.    Or a thousand?

24     A.    Not that I remember.  I don't think so.  I

25 don't think I was there long enough.



REYNALDO BROWN                                           September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                                       50

1          Q.    And would those discussions about your pay,

2     who would you have had those discussions with, do you

3     recall?

4          A.    What discussions?

5          Q.    To whatever extent how much you'd be paid

6     weekly, who was talking to you about that?

7          A.    I didn't ask for a raise.

8          Q.    Not a raise.  Just we know you were there

9     employed for just a brief time.

10         A.    Oh, like I couldn't --

11         Q.    I'm just asking -- yeah, no raises.  But

12    when it comes to how much you were to be paid, do you

13    remember who --

14         A.    We discussed --

15         Q.    -- you talked to?

16         A.    Yeah, we discussed it in the office when I

17    was doing the application.

18         Q.    Okay.  And so that's where you settled on

19    the 950.

20         A.    Yeah.

21         Q.    Do you remember who was taking the charge of

22    your rate, meaning on behalf of 3 -- were you dealing

23    with Eli, dealing with Max?

24         A.    Max.

25         Q.    You were dealing with Max.



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                          51

1        A.    Yeah, because we were in the office together
2   at the table.
3        Q.    Okay.  So Eli didn't have any involvement
4   with you for purposes --
5        A.    Eli had involvement with me because we would
6   write each other messages on WhatsApp.  That's an app.
7   It's called WhatsApp.  And sometimes through text.  But
8   in the office when we spoke about the pay, it was the
9   other guy.
10        Q.    It was -- okay.
11        A.    Max.
12        Q.    Was Eli present during that conversation?
13        A.    Yes.
14        Q.    Okay.  Was anyone else -- I guess your wife
15   was present as well?
16        A.    Yeah, she was with me.
17        Q.    Okay.  Turning your attention now back to
18   what's been marked as Exhibit 2, the final page.  If
19   you'd go to the very last page -- the last two pages
20   rather and then read that document.  Yeah, if you'd
21   take a minute and read it and let me know when you're
22   done.
23        A.    I didn't bring my reading glasses.
24        Q.    Are you able to without your reading glasses
25   read the text?



1        A.    Yeah, I can read it.  It just might take a
2   while.

3        Q.    Okay.  Take your time.  We have time.

4        A.    All right.

5        Q.    Okay.  And for these two documents, do you
6   recognize these documents as being a part of the
7   application for 316 Towing?

8        A.    If that's what this is, an application.  I
9   know I filled it out, but I don't know if the paper --
10  yeah, I guess.

11       Q.    Whatever the paper --

12       A.    Yeah.

13       Q.    -- that starts with Independent Contractor
14  Application Checklist --

15       A.    All right.

16       Q.    -- on the top left-hand corner that sets
17  forth a name, Reynaldo Brown, that looks like your
18  handwriting.  Is that yours?

19       A.    Which one?

20       Q.    The second one.

21       A.    This one?

22       Q.    Yeah -- no, I'm sorry, the one right before
23  the last, second to last.  See that name --

24       A.    Yep, that's my handwriting.

25       Q.    That's you.



1      A.    That we know already.

2      Q.    And you dated it June 18, 2021?

3      A.    Yeah.

4      Q.    Okay.  Turning the page, does that appear to

5  be your signature down at the bottom?

6      A.    Yes.

7      Q.    Okay.  And I'm just going to go through the

8  questions that begin on "The Work."  Do you see that?

9      A.    Yeah.

10      Q.    Okay.  And it sets for that "You will be an

11  independent contractor driver and responsible for your

12  own food and lodging on the road unless authorized.  Do

13  you understand this?"  And you checked off yes.

14      A.    Uh-huh (affirmative).

15      Q.    Okay.  Is that correct?  That's what you

16  checked off?

17      A.    Yep.

18      Q.    All right.  And then it says, "As an

19  independent contractor driver, you could be subjected

20  to a pre-employment, random, post-accident, and/or a

21  reasonable cause drug test.  Do you understand this?"

22  And you checked off yes.

23      A.    Uh-huh (affirmative).

24      Q.    Okay.  And next it says, "316 Towing and

25  Road Service pays independent contractors when



1  contracts, including drivers, driver's daily logs, and

2  support paperwork, are complete and turned in on time.

3  All settlements and advances are on the EFS system.  Do

4  you understand?"  And you checked yes.

5       A.    Uh-huh (affirmative).

6       Q.    All right.  Then it states, "As an

7  independent contractor, you will receive a 1099 form at

8  the end of the year and not a W-2 form.  You will be

9  responsible for your own taxes.  This means that 316

10  Towing and Road Service will not withhold any taxes or

11  Social Security from your settlement, and you will

12  receive your full settlement.  Do you understand this?"

13       A.    Uh-huh (affirmative).

14       Q.    And you checked yes.  Then it states, "If

15  transporting vehicles over 10,000 on this job, you are

16  required to keep a DOT logbook."  And then it asks, "Do

17  you know how to keep a logbook, or can someone teach

18  you before you become an independent contractor?"  And

19  you checked yes?

20       A.    Uh-huh (affirmative).

21       Q.    All right.  Then it asks in a final

22  question, "Do you still wish to apply for independent

23  contractor status?"  And you checked yes.

24       A.    Uh-huh (affirmative).

25       Q.    All right.  And then that's, as we



1    mentioned, June 18th, '21.

2            Okay.  Going back to what's been marked as

3    Exhibit 5, if you could for me flip to the eighth page.

4    You might be two ahead of where I'm trying to get you

5    to.  Can you go two back?  There should be a paragraph

6    D at the bottom, independent contractor --

7        A.    Yep.

8        Q.    -- status.  Can you read that paragraph and

9    let me know when you're done.

10       A.    All right.

11       Q.    All right.  And it states right there that

12   "It is the intent of the parties for contractor to

13   retain the status of an independent contractor in

14   business for federal and state law purposes."  Is that

15   what that says?

16       A.    I don't know.  Yes, yeah.

17       Q.    Okay.  Now, going back to the beginning of

18   this contract, can you confirm for me that you are

19   referred to in this document as the contractor?

20       A.    I guess.  That's not my handwriting or my

21   initials on the thing either though.

22       Q.    Right.  But at least for purposes of the

23   filled-in space, it does identify your name, Reynaldo

24   Brown?

25       A.    Yes, it is.  It does.



1     Q.    Okay.  And so that would refer to the

2   contractor.  And here it states that there was an

3   understanding between 316 and yourself that you were to

4   be an independent contractor.

5     A.    All right.

6     Q.    Is that correct?

7     A.    Yes.

8     Q.    Okay.  Further, if you could go to the page

9   with the signature pages on it.

10    A.    Yes, that's my signature.

11    Q.    Okay.

12    A.    I looked at it.

13    Q.    If you could go to the paragraph 9 above

14  that signature.

15    A.    All right.

16    Q.    Do you see there where it states that "The

17  parties agree that any dispute concerning the terms of

18  this agreement will be submitted to mediation followed

19  by binding arbitration before a tribunal convened under

20  the rules of the American Arbitration Association at

21  Atlanta, Georgia"?

22    A.    I don't know what none of those words mean,

23  but I see it.

24    Q.    You do see it.  Okay.  Do you know whether

25  or not your participation in this matter, did you



1    participate in any mediation?

2         A.    What is that?

3         Q.    Did you happen to meet to try to settle the

4    case before the lawsuit?

5         A.    No.

6         Q.    Okay.  So you never met in any place where

7    there was a third party trying to facilitate a

8    negotiation between the parties?

9         A.    No.

10        Q.    Okay.  Did you -- are you aware of any

11   arbitration -- and if you don't know, you don't know,

12   but any arbitration that's been filed to resolve any

13   claims that you may have in this action?

14        A.    I don't know what arbitration is.

15        Q.    Okay.  So for all intents and purposes, no

16   arbitration has been filed, and you haven't been

17   involved in it.

18        A.    I don't know what arbitration is.

19        Q.    Okay.  I'll represent to you that it is

20   referred to as alternative dispute resolution.  So

21   instead of a court, it typically is going to be a

22   private person, most often an attorney but not always

23   or a retired judge, who will be making the decision

24   similar to a jury, but it's less formal than a

25   courtroom lawsuit.  Have you been involved in any



 1  | process like that for this particular claim?

 2  |      A.    No.

 3  |      Q.    Okay.  Do you know why this matter wasn't

 4  | submitted to arbitration in the first place?

 5  |      A.    No.

 6  |      Q.    Need to take a break?

 7  |      A.    No, I'm fine.

 8  |      Q.    Were you ever -- during the onboarding ever

 9  | offered any other benefits or incentives beyond the

10  | $950 a week?

11  |      A.    No.

12  |      Q.    Okay.  Were you offered any stock or

13  | ownership interest in 316?

14  |      A.    No.

15  |      Q.    Okay.  After you filled out this

16  | application, can you just walk me through -- obviously

17  | you became a driver.  Do you remember the timing about

18  | how quickly that may have happened?

19  |      A.    The day I started?

20  |      Q.    We're back in June.  Do you think it was,

21  | you know, relative -- do you recall your start date by

22  | chance?

23  |      A.    No.

24  |      Q.    Okay.  Do you know if it was relatively soon

25  | after your meeting?  Was it --



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                              59

1        A.    It was soon.  I just don't know the date.

2        Q.    Okay.  Do you think it was a matter of

3   months or just relatively quick?

4        A.    Relatively quick.

5        Q.    Okay.  Can you describe your duties while

6   you were a driver?

7        A.    Yeah.  It was a tow truck driver.  My job

8   was to tow cars.

9        Q.    Go ahead.  I'm listening.

10       A.    Give jump starts, change tires, do

11  lock-outs.  That's where someone locks their keys in

12  their car.

13       Q.    Okay.

14       A.    And just wait for -- you know, wait for a

15  call.  I'd sit at a gas station close by the house or a

16  parking lot, like Walmart or any store really, and just

17  do calls as they come in.

18       Q.    Okay.  So it sounds as though, if I can

19  summarize, they were all driver-type duties related to

20  responding to calls.

21       A.    Driver type, like driving to go get calls?

22       Q.    Correct.  Meaning did you have any other

23  duties that wasn't related to driving the truck?  And,

24  if so, what were those?

25       A.    Do you mean like changing a tire?



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                              60

1        Q.    I under -- right.  So at least responding to

2   calls, whatever type of service they would have needed,

3   a changed tire, lock-out, maybe fill up the gas --

4        A.    And jump starts.

5        Q.    -- if they ran out of gas and jump starts.

6        A.    Yeah.

7        Q.    But then aside from responding to the caller

8   and the needs that they had and driving the vehicle,

9   were you performing any other duties on behalf of 316?

10       A.    Oh, no, that was it.

11       Q.    Okay.  So there was no need to go to the

12  office to fill out paperwork or to place ads?  You

13  weren't in charge of any -- I just want to be certain

14  that you don't recall any other types of duties while

15  you were working there.

16       A.    No.

17       Q.    Okay.  You weren't in charge of any office

18  type work or administrative type work?

19       A.    Just a tow truck driver.

20       Q.    Okay.  Just to be clear, and you think that

21  was consistent and remained the same the entire time

22  that you were a driver?

23       A.    Yes.

24       Q.    Okay.  If for any reason during our depo

25  right now -- deposition rather -- you think you had



 1  more duties, please let me know.

 2      A.    (Witness nods head affirmatively.)

 3      Q.    Okay?

 4      A.    All right.

 5      Q.    I just want to be clear on that.  If you

 6  thought you did more, just let me know.

 7      A.    Copy.

 8      Q.    So no one ever asked you to perform any

 9  other duties beyond being a driver.

10      A.    Like what?

11      Q.    I don't know.

12      A.    Me neither.

13      Q.    Okay.  All right.  Who was your supervisor

14  while -- or someone that you reported to while you

15  worked at 316?

16      A.    If I'm not mistaken, I think they made

17  Dustin the supervisor or the go-to guy for me to report

18  stuff to.  But I spoke to -- I think I spoke to Eli

19  kind of regularly doing a text message.

20      Q.    Okay.  Now, when you speak to Dustin, did

21  Dustin at that time have the title of driver manager?

22      A.    Something like that.

23      Q.    You understood that --

24      A.    Yeah.

25      Q.    -- he was perhaps, you know, in a position



 1   of supervision higher than the drivers --

 2        A.   Well, I just knew he trained me, so I

 3   figured --

 4        Q.   Oh, okay.

 5        A.   -- just call him, you know, if I needed

 6   advice on a car.

 7        Q.   Did he ever disclose his title of driver

 8   manager saying to you, "I'm the driver manager"?

 9        A.   I would just say he's, you know -- I don't

10   think he ever said it, but I would just --

11        Q.   Did you understand that to be true, meaning

12   he would train you but also other drivers?

13        A.   I don't know about other drivers, if he

14   trained any others or not.

15        Q.   Really?  Okay.

16        A.   But I know he trained me.  So if I needed

17   help with something, I'd just ask him, "Hey, I can't

18   find the hook points underneath this car."  He'll tell

19   me where to look, and I'll find it, and then --

20        Q.   Okay.

21        A.   -- stuff like that.

22        Q.   But if it wasn't Dustin, then you recall it

23   was Eli; correct?

24        A.   Oh, I wouldn't ask Eli for advice to tow a

25   car because it would be like you don't know what you're



REYNALDO BROWN                                September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                          63

1  doing.  You know?  I wouldn't call him for that.

2       Q.    But at least when it came to who you

3  reported to, did you ever report anything or, you know,

4  feel as though Eli was managing you from day to day, or

5  was this primarily Dustin?

6       A.    Well, I didn't feel like -- well, Dustin

7  wasn't really managing me.  He was just on the road

8  too.  But I got the calls from I think dispatch, and I

9  think they were from somewhere out of the country.  I

10  can't remember where.

11       Q.    But those dispatch calls were Eli or Max.

12       A.    No.  But I would speak to Eli and Max about

13  the calls.  Like they told me -- they would tell me,

14  "Be nice to the dispatchers because they're real nice."

15  You know, I guess some people get hot-headed.  So they

16  just let me know, "Be nice.  You know, don't ever" --

17  you know?  And I was like, "Yeah, I'm always nice

18  anyway."

19       Q.    You're from New York.  Nice guy.  Turning

20  your attention to Exhibit 4 and going to the back on

21  page 20 of 22.

22       A.    All right.

23       Q.    So here on Admission Number 20 it states,

24  "Please admit that Lisovskiy" --

25       A.    Number 20?



```
1        Q.    Correct.

2        A.    All right.

3        Q.    Oh, you got that.  Okay.  Great.  It says

4   that, "Please admit that Lisovskiy" -- and I'll

5   represent to you that that is Max's last name --

6   "personally neither hired nor fired you."  And you

7   admitted that.

8        A.    All right.

9        Q.    Do you see that?  So does that -- is that

10  true, that just as you reflect on your earlier response

11  here that Max simply wasn't involved in hiring or

12  firing you?

13       A.    No.

14       Q.    Okay.  Can you explain --

15       A.    Well, which part, hired or fired?

16       Q.    Either one.

17       A.    Well, he hired me in the office as Eli

18  handed me the paperwork to sign.  And when I got fired,

19  I tried to call Eli because he was the number I had to

20  contact, and he told me Max didn't want me working no

21  more.

22       Q.    Really?  Okay.  Did he put that in writing

23  at all or --

24       A.    No.  I was on the phone with him.

25       Q.    That was just on the phone.
```



1        A.     I called him because I wanted my job, but --

2        Q.     Now, moving on to Request for Admission

3    Number 21, could you read that and then let me know.

4        A.     All right.

5        Q.     Okay.  And there you admitted that

6    "Lisovskiy" -- again, Max -- "personally neither

7    supervised nor controlled your work schedule, duties,

8    protocols, applications, or assignments with 316

9    Towing."  And you admitted that.

10       A.     Because the calls came from the dispatcher.

11   He wasn't the dispatcher.

12       Q.     Okay.  But is there any reason to doubt your

13   response to Request for Admission Number 21, which you

14   admitted?

15       A.     Well, he didn't control the duties really

16   because I was doing them myself.  So he wasn't like --

17   you know?  And the dispatcher, the calls came from the

18   dispatcher.  So I don't know what --

19       Q.     Okay.  So I'm just checking to see if you

20   thought there was any reason that 21 would not be a

21   proper admission.

22       A.     Yeah, I didn't have a supervisor.  I was on

23   the road by myself.  There was nobody in the car with

24   me.

25       Q.     Okay.  Okay.  Let me ask you how did you and



1   when did you meet Dustin Hyde?

2       A.   I don't know.  I don't remember.

3       Q.   Okay.  Would it just have been incidental or

4   at the same time you were working at 316?

5       A.   Like I said, I don't know if I seen him in

6   the street and asked him if his job was hiring or if I

7   met him at the job when I looked up -- if I looked it

8   up online.  I don't remember how I met him.

9       Q.   Did you have any relationship with him prior

10  to --

11      A.   No.

12      Q.   -- hiring?

13      A.   Never hung out, nothing -- like nothing.

14      Q.   Since your role at 316, have you ever hung

15  out with Mr. Hyde?

16      A.   Who?  Dustin?

17      Q.   Correct.

18      A.   Never.

19      Q.   Have you ever spoken to Mr. Hyde about this

20  case?

21      A.   No.

22      Q.   Okay.  Have you ever spoken about -- with

23  Mr. Hyde about your testimony today?

24      A.   No.  I haven't even seen him or heard from

25  him.  I just got a phone call from a lawyer, and --



1            MR. SHORT:  Well, he doesn't want to know

2       about conversations with the lawyer.

3            THE WITNESS:  All right.

4  BY MR. HANDSCHUH:

5       Q.    I take it you're going to mention scheduling

6  perhaps, but yeah.  Let's see.  At the time, did you

7  understand -- what did you understand Hyde's role to

8  be?

9       A.    A tow truck driver.

10      Q.    Okay.  And he at least was someone -- you

11 weren't sure of his official title, but he did

12 ultimately help train you.

13      A.    Yes.

14      Q.    Okay.  Did you understand whether or not

15 Dustin Hyde had duties different than you, similar to a

16 driver manager?

17      A.    Just driving, towing, jump starts, tire

18 changes, same thing.

19      Q.    Did Hyde ever direct your work or tell you

20 what to do?

21      A.    No.  We were in two separate trucks.

22      Q.    Okay.  Did you ever observe personally --

23 and you may or may not have -- observe Hyde performing

24 any other duties for 316 other than driving the truck?

25      A.    No.



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                              68

1        Q.    Do you recall who may have set your schedule
2   while you worked at 316?
3        A.    No.
4        Q.    Okay.  Do you remember what your schedule
5   was?
6        A.    7:00 to 7:00, five days a week.
7        Q.    Okay.  And was that 7:00 a.m. to 7:00 p.m.?
8        A.    It was 7:00 a.m. to 7:00 p.m., and then it
9   changed to 7:00 p.m. to 7:00 a.m., or vice versa.  I
10  can't remember which one.
11       Q.    Okay.  Going back to the document you have
12  there, if you turn back to the beginning page 4.
13       A.    All right.
14       Q.    And then if you -- I'm going to ask you to
15  read over Interrogatory Number 3 on the previous page
16  through to the end of your answer, and just let me know
17  when you're done.
18       A.    So --
19       Q.    Yes.  Yeah, right there, Interrogatory 3.
20       A.    All the way to 4?
21       Q.    Yeah.  Just once you're at 4, let me know.
22       A.    You're not going to read this after I
23  finish, are you?
24       Q.    I'll represent I'm interested in the last
25  paragraph, but I want to make sure you have a chance to



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                              69

 1   read the whole thing.

 2        A.    All right.

 3        Q.    Okay.  So we were -- prior to reviewing

 4   Interrogatory Number 3 and its response, you had

 5   mentioned that your schedule was for 12-hour shifts,

 6   whether those were from 7:00 a.m. to 7:00 p.m. or vice

 7   versa; is that correct?

 8        A.    Uh-huh, yes.

 9        Q.    Do you recall about how long you worked for

10   316?

11        A.    No.  I think you said about two weeks;

12   right?

13        Q.    Yeah.  Does that sound about right?

14        A.    It's possible.

15        Q.    Okay.  Do you think it was longer?

16        A.    It might have been; it might have not have

17   been.  I honestly don't remember --

18        Q.    Okay.

19        A.    -- how long I worked there.

20        Q.    Was it a short period of time?

21        A.    Yes.

22        Q.    Okay.  Can you identify here what types of

23   jobs you were doing after your regular shift, what that

24   means?  It says, "There could be an extra job after my

25   shift ended at 7:00 p.m. that I would have to do, which



1    would take another one to two hours."

2         A.    Oh, no.  Like if I was to get a call or a

3    text if I could pick up a -- if I could drop one car

4    off somewhere else and I'm off, I'd just go do it.

5         Q.    Do you recall utilizing a software on your

6    phone called Towbook?

7         A.    Yes, sometimes.  They would usually come

8    through Towbook.  Sometimes I'd just get them in a --

9    the address in a text message.

10        Q.    Okay.  During this proceeding, do you recall

11   ever -- and this is just if you don't know I'll just

12   ask you to commit to produce them.  Did you produce any

13   of the text messages of trips that you believe you

14   received during this time period?

15        A.    No, I haven't.

16        Q.    Okay.  Are those available to you to produce

17   copies to us?

18        A.    I don't even have that phone.  No.

19        Q.    You don't have that phone anymore.  Okay.

20        A.    I've been through three phones since then.

21        Q.    You don't know.

22        A.    No.

23        Q.    Meaning there's no --

24        A.    No.

25        Q.    -- proof of --



1    A.    No, no.

2    Q.    Okay -- the jobs.  And even though you

3  changed phones, you don't have the other phone

4  available to you?

5    A.    No.

6    Q.    Okay.  You turned it back in, and it's gone?

7    A.    I honestly don't remember.

8    Q.    Okay.  But it's not --

9    A.    I probably lost a phone, got a new phone,

10  lost all my contacts, had to start over, stuff like

11  that.

12    Q.    But it's not the old phone that might

13  contain text messages isn't at home or something.

14    A.    No.

15    Q.    Okay.  You stated also that you had to be

16  available Saturday and Sunday to take jobs.  Do you

17  recall whether or not you ever actually had to take

18  those jobs?

19    A.    Yeah.  If I was to have the truck, if I was

20  to keep it home and I got off on Saturday -- or Sunday

21  rather -- no, Friday, excuse me.  If I was to get off

22  Friday and keep the truck at home, if there was a call,

23  I'd get the call.

24    Q.    Okay.  Do you recall about how often that

25  happened, a Saturday or Sunday job?



1       A.    No.

2       Q.    Okay.  Was it a lot of times or just maybe

3   once or twice?

4       A.    A few.

5       Q.    Okay.  Was there ever variation -- I know

6   you mentioned you went from what appeared to be a

7   nighttime shift to a daytime shift.  Do you recall when

8   that might have occurred?

9       A.    No.

10      Q.    Okay.  Was it pretty consistent?  Did it

11  switch around each week, or was this --

12      A.    I just switched once.

13      Q.    Switched once.

14      A.    I can't remember from what to what though.

15  I can't remember if I started off working 7:00 a.m. and

16  stopped at 7:00 p.m. or if I started off the other way

17  around.

18      Q.    Okay.  Did you ever have to report to the

19  316 office for work, meaning drive there for some

20  reason?

21      A.    If I'm not mistaken, I did.

22      Q.    You did drive there from time to time.  But

23  in order -- were you allowed to during your shift drive

24  to where you'd like while you weren't responding to a

25  job awaiting the next dispatch?



REYNALDO BROWN                                        September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                                    73

 1      A.   I had to either wait at a parking lot or a

 2 gas station.  Usually I would wait at a Walmart parking

 3 lot in the back away from other cars so I'm not in the

 4 way.

 5      Q.   Okay.  Who told you that you had to wait

 6 somewhere?

 7      A.   You always have to wait somewhere when you

 8 drive a tow truck.  If you keep driving, you'll burn

 9 the gas up.

10      Q.   I'm just asking did anyone point out the

11 specific location, or could you chose?

12      A.   It depends on the area.  Like if I have a

13 call and it's going that way, I have to wait somewhere

14 that way.  It just depends on wherever I drop the car

15 off at.

16      Q.   But, to make it more clear, I'm inquiring --

17 Eli and Max didn't give you like certain places where

18 you had to --

19      A.   As long as it was a parking lot.

20      Q.   As long as it was a parking lot.

21      A.   Yeah, as long as I'm like out on the road.

22      Q.   Were you allowed to return home during the

23 times you were on your shift?

24      A.   While I was on the clock?

25      Q.   Excuse me?



REYNALDO BROWN                                      September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                                74

1        A.    Like between the 12 hours while working?

2        Q.    Sure.

3        A.    No.

4        Q.    Okay.  Did you ever try?

5        A.    I'd try to go home to try to get a sandwich

6   or something, but usually I just eat in the street.

7        Q.    Okay.  But you could from time to time go

8   home to eat.

9        A.    No.

10       Q.    You didn't?

11       A.    No.  I ate McDonald's, Burger King, Taco

12   Bell.

13       Q.    But you don't -- was anything prohibiting

14   you, if you so chose, to go home and eat at home?

15       A.    If I'm on the clock, no.  Yeah, I can't go

16   there.

17       Q.    You can't go?

18       A.    No.  Home and eat, no.

19       Q.    Who told you that?

20       A.    The bosses.

21       Q.    Who are they?

22       A.    Max and Eli.

23       Q.    They said you can't go home?

24       A.    From what I recall, yeah.

25       Q.    Okay.  Do you know if that was in writing



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                               75

```
 1  anywhere?

 2       A.    No.  I spoke to them on the phone.

 3       Q.    On the phone?

 4       A.    Yeah.

 5       Q.    Okay.

 6       A.    Just like when I told you they fired me, it

 7  was on the phone.  They didn't have that in writing --

 8  I didn't have it in writing.

 9       Q.    Okay.  Over the phone?

10       A.    Yeah.

11       Q.    Okay.  Turning your attention to page 24,

12  Request for Admission 24.

13       A.    On 4?

14       Q.    On 4, yes, sir.  Yeah, same doc.

15       A.    24.  You said page what?

16       Q.    20 of 22, and then it's Request for

17  Admission Number 24.

18       A.    All right.

19       Q.    If you could read that and then let me know

20  once you're done.

21       A.    Which one again?  22?

22       Q.    No, I'm sorry, Request for Admission Number

23  24 and its response.

24       A.    I see that.

25       Q.    Okay.  So here you were asked to admit that
```



1   "During the time you were scheduled to be on call, you

2   would spend at least part of your on-call period at

3   home or engaged in personal activities."  And you

4   admitted the same and stated, "Plaintiff would go home

5   for like 10 or 15 minutes" --

6        A.    I went home twice to use the bathroom while

7   I've been working for 316, but that was it -- it wasn't

8   personal activities -- because I would hate to use the

9   bathroom in a gas station.  But other than that,

10  sometimes, if I'm not around the house.  But if I'm

11  somewhere close, I go there to make a number 2.

12       Q.    Okay.

13       A.    But that was it.

14       Q.    Okay.  Any restriction based on your

15  response to Admission -- Request for Admission Number

16  24 which says that, you know, even if you didn't, you

17  know, choose to spend time at home, you weren't

18  restricted from spending that time at home; is that

19  right?

20       A.    Let me try to read that one more time.  I

21  don't know what personal activities are, but --

22       Q.    Okay.  Just to make it simpler, would you

23  change your response to Admission Number 24 in any way?

24       A.    Yeah, because personal activities is no.

25  Like I said, I only went home probably twice since I



1   worked there, and that was just to use the bathroom.

2        Q.    Okay.

3        A.    And that was it.

4        Q.    Turning now to Request for Admission Number

5   26, which is on the next page.

6        A.    Uh-huh (affirmative).

7        Q.    If you could read that one and let me know.

8        A.    All right.

9        Q.    Did you -- here it appears you denied the

10  personal responsibilities piece; is that correct?

11       A.    I don't know -- I don't even know what that

12  means.

13       Q.    Okay.  Or personal errands, meaning little

14  tasks you need to do throughout the day.

15       A.    What about it?

16       Q.    It asks while you were on call whether you

17  would attend to personal responsibilities, which you

18  don't understand, or whether you would attend to

19  personal errands while you were on call.  And you

20  denied that.

21       A.    That means like driving a tow truck to go do

22  stuff for myself?

23       Q.    Correct.

24       A.    I never did that.

25       Q.    Okay.  Were you prohibited from doing that?



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                              78

1         A.    I never needed to.  I never did ask to.

2         Q.    Okay.

3         A.    I just was there to do my job.  I could do

4    errands when I'm off.

5         Q.    And while you weren't responding to a job,

6    you were parked in I think you mentioned a parking lot

7    of some kind.

8         A.    Yeah.

9         Q.    And you could choose which parking lot.

10        A.    Yes.  I just parked -- just parked wherever

11   the closest call was.  Like if I drop a car off here,

12   find a gas station nearby, and wait for the next call.

13        Q.    Okay.  You mentioned earlier that you were

14   familiar with the Towbook tracking app and having

15   installed it on your phone; correct?

16        A.    Yes.

17        Q.    Okay.  Were you ever issued any phone from

18   316?

19        A.    No.

20        Q.    Okay.  Were you ever issued any kind of iPad

21   or --

22        A.    No.

23        Q.    -- any other product?  Okay.

24              (Exhibit Number D-6 was marked for

25        identification.)



1            MS. ELLIOTT:  I'm handing you what's been

2       marked as Exhibit 6.

3       A.    All right.

4    BY MR. HANDSCHUH:

5       Q.    Okay.  And I'll represent to you that this

6    is a production from Towbook for your activity for 316.

7    And if you look, it sets forth June 14, 2021, as the

8    initial dispatch date followed by a final dispatch of

9    June 29, 2021.

10      A.    All right.

11      Q.    Do you see that?

12      A.    Uh-huh (affirmative).

13      Q.    Was it your understanding that Towbook would

14   have captured any of the jobs you did while working for

15   316?

16      A.    I don't know.

17      Q.    You don't know.  Okay.  So do you know

18   whether or not this reflects the total number of jobs

19   that you performed for 316?

20      A.    Some of them probably, yeah.

21      Q.    Do you know whether or not you believe any

22   jobs, you know, you worked during the months of July or

23   August after June?

24      A.    I don't know.

25      Q.    You don't know.  Okay.



1        A.    No.

2        Q.    So do you have any reason to believe that

3   these particular trips are inaccurate in any way?

4        A.    No.

5        Q.    Do you have any other veri -- or documents

6   that would reflect any work on behalf of 316 beyond the

7   month of June 2021?

8        A.    No, I don't.

9        Q.    Okay.  If you do have such documents, will

10  you produce them for your attorney to give to us?

11       A.    Uh-huh (affirmative).

12       Q.    Okay.  Had you ever seen the Towbook reports

13  for you prior to today?

14       A.    This one?

15       Q.    Uh-huh (affirmative).

16       A.    No.

17       Q.    Okay.  Do you have any reason to believe

18  that this report is inaccurate?  I think you testified

19  no; correct?

20       A.    No.

21       Q.    Okay.  Do you recall an ability to accept or

22  reject jobs?

23       A.    No.

24       Q.    Okay.

25       A.    I wasn't able to reject a job.



1           (Exhibit Number D-7 was marked for

2      identification.)

3           MS. ELLIOTT:   I'm handing you now what's

4      been marked as Exhibit 7.

5      A.    All right.

6  BY MR. HANDSCHUH:

7      Q.    And I'll represent to you that this is a

8  cancellation log maintained by 316 for trips offered to

9  you that were rejected.  Have you ever seen this

10 document?

11     A.    No.

12     Q.    Okay.  Do you have any reason to believe

13 that the rejections set forth here -- and please take a

14 moment to carefully review them -- whether any of them

15 are inaccurate?

16     A.    Yes.

17     Q.    Why is that?

18     A.    Because I never rejected a call.  I had no

19 reason to.

20     Q.    Okay.  Do you know whether or not, for jobs

21 that you were dispatched to, whether any of those jobs

22 may have been canceled?

23     A.    If I go there to pick up a car and it's gone

24 already because another tow truck arrived or if the

25 person happened to get their vehicle to start or



1  someone came and fixed the tire for them before I got

2  there, stuff like that.  But I never turned down a job.

3  I never pressed ignore.  When the phone ring, it give

4  you two options, accept or cancel.  I never pressed

5  cancel on neither one ever.

6        Q.    Okay.

7        A.    I just go do the job.

8        Q.    What does "car too big for wheel lift," what

9  does that mean?

10       A.    I don't know.  I never drove a wheel lift.

11       Q.    You never -- okay.

12       A.    I had a flatbed.

13       Q.    Do you recall whether or not any of the tow

14  trips that you would have undertaken, did any of those

15  cross into another state?

16       A.    No.

17       Q.    Okay.  Did you ever go to South Carolina?

18       A.    Another state?  No.

19       Q.    No?  Okay.  So just with certainty, you

20  don't recall South Carolina or another state.

21       A.    Unless I just didn't know I was in another

22  state, but I don't think so.

23       Q.    Okay.  This was in the Winder, Georgia,

24  area?

25       A.    Yes.



1      Q.    Okay.  While you worked for 316, were you

2  ever involved in collecting any payments from any of

3  the customers?

4      A.    No.  Used Towbook.

5      Q.    No?  Okay.  When you say "used Towbook,"

6  does that mean you used Towbook to collect payments, or

7  am I misunderstanding that?

8      A.    I didn't personally collect money.  I just

9  towed the cars.  If I did collect, I don't remember.

10  But it's possible because I have done it before, but

11  it's been so long.

12      Q.    Okay.  But you just don't recall

13  regularly --

14      A.    I don't recall collecting anything

15  from working 316, no.

16      Q.    Okay.  That would include collecting cash?

17      A.    Yeah.

18      Q.    And collecting it by some type of telephone

19  system like Square or Clover?

20      A.    I get you.  Okay.

21      Q.    You didn't do either one of those?

22      A.    No.

23      Q.    Okay.  Do you think you may have done that

24  just once or just never?

25      A.    It's possible that I don't remember doing



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                              84

1    it.  I don't remember doing it.

2         Q.    But it wasn't something that was routine?

3         A.    No.

4         Q.    Okay.  Were you ever disciplined for

5    rejecting a job?

6         A.    I never rejected a job.

7         Q.    Okay.  Fair enough.  Hey, easy.  You drove a

8    Dodge Ram 5500?

9         A.    Yes, I think so.

10        Q.    Okay.

11        A.    Sounds about right.

12        Q.    Do you know that particular vehicle to have

13   a gross vehicle weight rating of about 19,000 pounds?

14        A.    I don't know how much it -- I wasn't taught

15   that part.

16        Q.    Do you know if it was over 10,000 pounds?  I

17   mean, I know you might not know 19, but did you know it

18   was over 10,000?

19        A.    The tow truck?  I don't know how much a tow

20   truck weighs.

21        Q.    Okay.  If the tow truck simply set forth a

22   gross vehicle weight rating on the door, would you have

23   any reason to doubt that?

24        A.    If it said how much the tow truck weighs on

25   the door?



1    Q.    Correct.

2    A.    I never seen it if it was there.

3    Q.    I'm just asking, you know, are you familiar

4    with trucks can have a gross vehicle weight rating?

5    A.    No, I don't know that.

6    Q.    Oh, you did not.  Okay.

7    A.    No.  Like on the door of the car it'll tell

8    you how much the truck weighs?

9    Q.    Correct.

10   A.    I've never seen that.

11   Q.    Okay.  Are you familiar with just sizes of

12   trucks are, you know, given gross vehicle weight

13   ratings?

14   A.    No.

15   Q.    Okay.  So you just don't know about gross

16   vehicle weight ratings.

17   A.    Never heard of it.

18   Q.    Okay.  Until today?

19   A.    Yeah.

20   Q.    Okay.  Learn something every day.

21   A.    Yeah.

22   Q.    All right.

23   A.    Gross vehicle weight ratings?

24   Q.    Correct.  Just the size of the truck,

25   meaning it can -- you know, over 10,000, over 26,000 --



1         A.    All right.

2         Q.    -- different sizes.  Who owned that Dodge

3    Ram that you were using?

4         A.    Max.

5         Q.    Okay.  But not you.

6         A.    No.

7         Q.    Okay.  Were you ever required to were

8    uniforms?

9         A.    I had a T-shirt.

10        Q.    T-shirt?  It said 316?

11        A.    Uh-huh (affirmative).

12        Q.    Okay.  Did you buy that T-shirt?

13        A.    No.

14        Q.    Okay.  It was just given to you?

15        A.    Yes.

16        Q.    Okay.  Were you ever provided a system to

17   track your hours?

18        A.    Not that I recall.

19        Q.    Okay.  Do you recall back in this

20   application -- if you'd turn back to Exhibit 2, and

21   then the last page --

22        A.    Which one?

23        Q.    It's got 2 at the front.

24        A.    On the last page?

25        Q.    Uh-huh (affirmative).



1      A.    All right.

2      Q.    And you see the number 5?

3      A.    Uh-huh (affirmative).

4      Q.    It states that, "If transporting vehicles

5   over 10K on this job, you are required to keep a DOT

6   logbook."

7      A.    Yes.

8      Q.    Okay.  And you set forth yes.  So at that

9   point in time during this application, did you

10  understand that you might have needed to fill out a

11  logbook?

12     A.    Yes, but I was never given one.

13     Q.    Okay.

14     A.    I think I might have had a book, a sheet of

15  paper, I think.

16     Q.    Really?

17     A.    It sounds familiar, a little bit.

18     Q.    If you could thumb through and come back --

19           MR. HANDSCHUH:  How many pages is that?

20           MS. ELLIOTT:  It was page 26.

21  BY MR. HANDSCHUH:

22     Q.    If I could have you flip through several

23  pages.  If you don't mind just to make this -- speed it

24  up --

25           MS. ELLIOTT:  Eight pages prior to the last.



```
 1        A.    Thanks.
 2   BY MR. HANDSCHUH:
 3        Q.    Sure.  Turning your attention to a document
 4   that's titled Driver's Daily Log Compliance.
 5        A.    Uh-huh (affirmative).
 6        Q.    Can you read that, and then let me know once
 7   you're finished.
 8        A.    All right.
 9        Q.    Okay.  And that set forth -- just on this
10   topic of you think you may have received a paper, you
11   set forth here that you received a copy of 316's
12   Driver's Daily Log Compliance policy.
13        A.    Uh-huh (affirmative).
14        Q.    Okay.  And you further set forth that "I'm
15   further aware I must keep an updated medical card on my
16   person when driving or operating vehicles over 10,000
17   GVW."
18        A.    Uh-huh (affirmative).
19        Q.    Do you know the Dodge Ram 5500 to be over
20   the 10,000 gross vehicle weight rating?
21        A.    I have no idea --
22        Q.    You just don't know.
23        A.    -- how much the truck weighs.
24        Q.    But down at the bottom you set forth your
25   name and signed.
```



REYNALDO BROWN                                          September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                                      89

```
 1          A.     Uh-huh (affirmative).

 2          Q.     And it sets forth June 18?

 3          A.     Uh-huh (affirmative).

 4          Q.     That would have been June 18, 2021?

 5          A.     Probably.

 6          Q.     Okay.  Did you ever, while you worked for

 7   316, perform work for any other companies while you

 8   were scheduled on a shift or on call?

 9          A.     No.

10          Q.     Okay.  Did you ever do -- you never worked

11   for A1?

12          A.     No.

13          Q.     Okay.

14          A.     I never bought a truck.

15          Q.     Okay.  Did you earn any other source of

16   income aside from public assistance of any kind?  And I

17   want to get -- I'm getting to income that might be

18   derived, you know, passively from owning property or

19   selling stocks or --

20          A.     Neither.

21          Q.     -- selling sneakers or hats.

22          A.     Nothing.  All I was doing was 316.

23          Q.     It was all 316.  Okay.  Do you recall

24   whether or not you had a good relationship with any of

25   the dispatchers?
```



```
1        A.    Everybody was nice.

2        Q.    Really?  Were you nice to them?

3        A.    Yeah.

4        Q.    Okay.  Do you remember Valeria and Viktoria

5   as being dispatchers?

6        A.    I can't remember their names it's been so

7   long, but probably.

8        Q.    Okay.  And did you have a good rapport with

9   them?

10       A.    We never had any arguments.

11       Q.    Okay.  Do you know whether or not they ever

12  complained about you?

13       A.    No, I don't.

14       Q.    Okay.  Does your termination of on or about

15  June 29, 2021, sound --

16       A.    What page is this?

17       Q.    No, it's just a question.

18       A.    Oh.

19       Q.    Do you know whether or not, you know, just

20  towards the end of June, you know, again, you're

21  beginning in June and now towards the end of June, you

22  know, it's my understanding you were terminated; is

23  that right?

24       A.    Yes.

25       Q.    Okay.  And the date of that termination
```



1  would have been late June 2021?

2       A.    I don't know the date.

3       Q.    Okay.  Do you know whether or not looking at

4  what's been marked Exhibit 6 -- this is the Towbook

5  log.  Do you see at the bottom there just a final --

6       A.    Yep, that was it.

7       Q.    -- dispatch of June 29th?

8       A.    Uh-huh (affirmative).

9       Q.    Okay.  So that was your last day working --

10      A.    Yes.

11      Q.    -- for 316?  Okay.  And if we look here in

12  this Towbook log, the first one begins on June 14th.

13      A.    The same truck?

14      Q.    I'm just looking more for the time period.

15  That appears to be dispatched jobs for you for a period

16  between June 14 to June 29.

17      A.    Yeah.  But why is all these jobs the same

18  truck, a black Dodge Ram 2020?

19      Q.    Was that the truck you were driving?

20      A.    Oh, maybe.  I thought it was the truck I was

21  towing.  I thought it was the vehicle I was towing.

22      Q.    I'm just interested more in pinning down,

23  since you don't remember from your own recollection,

24  whether this Towbook would refresh your memory that it

25  looks like you were only working for about 15 days.



1       A.    It would have refreshed my memory if it had
2    the vehicles I was towing on it.
3       Q.    Do you think any jobs are missing from this
4    Towbook?
5       A.    I don't know what jobs because I don't see
6    it.  I don't see the vehicles on here.
7       Q.    Okay.  Do you have any reason to believe
8    that you did not work for 316 Towing for any time other
9    than the month of June 2021?
10      A.    No.
11      Q.    Can you explain the reason for your
12   departure?
13      A.    They didn't tell me.
14      Q.    Okay.  Can you -- just tell me the story.
15   What happened?
16      A.    I think the first was a text saying that --
17   I think I might have got a text saying I was not to
18   come back in.  And then I called and asked --
19      Q.    Who sent you that?
20      A.    I think Eli sent it to me.
21      Q.    Eli?  Okay.
22      A.    And then when I called and asked him, he
23   told me that Max didn't want me working.
24      Q.    Really?
25      A.    Yeah.  And then that was the last that I



1   heard from them.  But they didn't tell me -- he didn't

2   explain why or nothing like that to me.  He just got

3   off the phone after that.

4       Q.   Did you ever smoke in the truck?

5       A.   Did I ever smoke, like cigarettes and stuff?

6       Q.   Uh-huh (affirmative).

7       A.   I don't recall.

8       Q.   Okay.  Do you ever recall whether or not you

9   were advised not to smoke in the trucks --

10      A.   No.

11      Q.   -- while working?

12      A.   I don't recall that either.

13      Q.   Okay.  Do you recall whether or not you were

14  advised you weren't following directions at the time of

15  your termination?

16      A.   No.

17      Q.   So you weren't aware of any smoking

18  complaints or failure to adhere to directions?

19      A.   No.  As a matter of fact -- smoking in the

20  truck.  I think I do recall somebody saying something

21  about smoking in the truck.

22      Q.   Okay.  So maybe that happened.  Maybe there

23  was a complaint --

24      A.   I think so.

25      Q.   -- about smoking.  Okay.  Let me ask you, if



1    Towbook did not capture any of the jobs you were

2    responding to and you didn't produce them in your text

3    messages in this case, do you know where else these

4    jobs would -- you'd be able to ascertain --

5         A.    I don't know.

6         Q.    Okay.  So there's nothing that you would

7    refer to as to any, you know, source of information

8    that could help you figure out --

9         A.    (Witness shakes head negatively.)

10        Q.    No?  If that changes, will you let me know?

11        A.    Sure.

12        Q.    Okay.  Did you ever have any complaints from

13   any of the female dispatchers?

14        A.    No.

15        Q.    Okay.  So there's never been any complaints

16   with how you were interacting with them?

17        A.    I didn't really interact with them.  I just

18   got my calls from them and just went on my calls.

19        Q.    So it would be surprising to you if you were

20   to learn that there may have been complaints --

21        A.    Yes.

22        Q.    -- made against you?

23        A.    Definitely.

24        Q.    All right.  Let me ask you what you consider

25   to be the damages in terms of unpaid overtime that you



1  believe 316 owes you.

2        A.    Well, they didn't pay me my last check when

3  I left.  When they told me not to come back in, I never

4  got my last paycheck.

5        Q.    Okay.  Setting that to the side for a

6  moment -- and we'll come back to that.  Besides --

7        A.    I didn't go over it yet.

8        Q.    You didn't go overtime?

9        A.    I didn't go over it yet, like calculate what

10  it would be.

11        Q.    Okay.  So we have a period of about two

12  weeks of working.  And I'm just asking you to, you

13  know, right now explain aside -- we'll come back to the

14  final check, but what amount of overtime have you not

15  been compensated for?

16        A.    I didn't go over it yet.

17        Q.    So you don't know?

18        A.    No, not yet.

19        Q.    Okay.  What would you need to look at in

20  order for you to figure that out?

21        A.    What is overtime supposed to be.

22        Q.    Really?

23        A.    Yeah.

24        Q.    Okay.  And --

25        A.    And then my hours.



1        Q.    Okay.  So does that mean that if I

2    represented to you overtime would kick in after

3    40 hours, you would maybe look at your shifts, add up

4    the time for that week, and then say whatever was over

5    40 hours is your overtime?

6        A.    Probably.

7        Q.    Okay.  So let's take one week, just one

8    given week in June back in 2021.  You're just stating

9    that if you had a weekly shift of 12 hours each day,

10   you believe that you're entitled to 60 hours

11   compensation?

12       A.    I didn't go over it yet.

13       Q.    Well, I'm just asking you now --

14       A.    I don't know yet.  I don't know.

15       Q.    It's two weeks.  I mean, you know, did you

16   work over 40 hours the first week, the second week?

17   Can you speak to that?

18       A.    I don't know.  I don't know.

19       Q.    Okay.  So do you believe you were asking for

20   20 hours of overtime?

21       A.    (Witness shakes head negatively.)

22       Q.    You just don't know?

23       A.    Not yet.

24       Q.    Okay.  How will you derive the amount that

25   you believe you're due in terms of the hours, do you



 1  know?

 2       A.    I'd use a calculator.

 3       Q.    Okay.  And what numbers would you punch in?

 4       A.    I don't know yet.

 5       Q.    Did you prepare today --

 6       A.    No.

 7       Q.    Okay.  So you haven't reviewed any records

 8  to figure out --

 9       A.    No.  I haven't even seen my Towbook log yet.

10       Q.    Okay.  When making the decision whether or

11  not to join in this collective action, did you believe

12  you were not paid overtime?

13       A.    I wasn't paid that, and I wasn't paid my

14  last check when they told me not to come back to work.

15       Q.    Okay.  Now referring to your last check,

16  have you ever made any complaints to Eli or Max about

17  that unpaid check?

18       A.    I don't remember.  I -- I don't remember.  I

19  think before I was able to I got hung up on on the

20  phone.

21            (Exhibit Number D-8 was marked for

22       identification.)

23            MS. ELLIOTT:  I'm handing you now what's

24       been marked as Exhibit 8.

25  /  /  /



1   BY MR. HANDSCHUH:

2       Q.    I'll represent to you that this is a demand

3   from your attorneys for your claimed overtime for these

4   two weeks.  Do you know where those numbers come from?

5           MR. SHORT:  I can't answer for you.

6       A.    Oh.  No.

7   BY MR. HANDSCHUH:

8       Q.    Do you agree with those numbers?

9       A.    I don't know.

10      Q.    Do you know in a dollar amount what amount

11  you believe for overtime purposes you haven't been

12  paid?

13      A.    No.

14      Q.    Turning your attention back to Exhibit 4,

15  and this time it'll be Admission Number 7.  Once you

16  have a chance to read that and the response, let me

17  know.  Oh, I'm sorry.  Not interrogatory.  This is

18  page 17, request for admission.  Sorry.  I'll draw your

19  attention to this.  Much shorter.  There you go down at

20  the bottom of the following page.

21      A.    Which number?

22      Q.    Number 7, please.

23      A.    All right.

24      Q.    And there you were asked to admit that you

25  never performed more than 40 hours of work for 316



1    Towing in any given week between the years 2019 through

2    '22.  And you denied that admission, and I'd like to

3    know why that was denied.

4          A.    I probably heard the question wrong because

5    it sounds backwards.

6          Q.    Okay.  So do you think --

7          A.    "Please admit that" --

8          Q.    -- you should have admitted?

9          A.    I'm not sure how -- hang on.  "Please admit

10   that you never performed" --

11         Q.    Okay.  Did you ever work over 40 hours?

12         A.    Yes.

13         Q.    Okay.  When was that?

14         A.    I don't know.

15         Q.    Okay.

16         A.    Because when I --

17         Q.    Every week that you were there?

18         A.    Yeah, because I never got off at -- I don't

19   know the dates and the times.  But when I wasn't --

20   when I wasn't doing the Towbook call, like I said, I'd

21   get a call through a text.  But, like I said, I don't

22   have it.  So --

23         Q.    Okay.  I'm just asking just whether or not

24   you have any basis for determining what amount of

25   overtime you think you're due.



REYNALDO BROWN                                September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                          100

1        A.    No.

2        Q.    Okay.  With respect to this final check, can

3   you explain or recall how many checks in total you

4   received?

5        A.    Two.

6        Q.    Two?  Okay.

7              (Exhibit Number D-9 was marked for

8         identification.)

9              MS. ELLIOTT:  I'm handing you what's been

10        marked as Exhibit 9.

11   BY MR. HANDSCHUH:

12        Q.    Could you take a look at this document and

13   let me know.

14        A.    All right.

15        Q.    Was this an invoice prepared by you and sent

16   to 316 Towing for payment?

17        A.    I don't know.

18        Q.    Okay.  Do you have any other invoices that

19   refer to this period of time?

20        A.    Invoices?

21        Q.    Correct.  Do you recall --

22        A.    I don't know what an invoice is.

23        Q.    Okay.  Do you recall for purposes of your

24   pay that each week you would prepare an invoice and

25   send it to 316?



REYNALDO BROWN                                  September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                            101

1        A.    So I worked two weeks for 316, so I got two

2   checks.

3        Q.    Okay.

4        A.    All right.  I was mistaken then.  Because

5   if -- I thought I worked three weeks.

6        Q.    And this was at least for -- it's labeled

7   Invoice Number 2.  This appears to be the second of

8   your invoices.

9        A.    Checks?

10       Q.    Invoice.  I'm just pointing that out, the

11  document itself that we're looking at.

12       A.    All right.

13       Q.    Had you ever seen this document?

14       A.    No, I don't think so.

15       Q.    You never prepared this?

16       A.    I don't think so.  I might -- I don't

17  recall.

18       Q.    Okay.  Do you know whether or not there are

19  any other invoices that you haven't produced in this

20  action that --

21       A.    I don't know what an invoice is.

22       Q.    I think you -- I want to make sure I'm

23  getting this clearly.  When you were hired as an

24  independent contractor driver, you were then asked to

25  submit invoices to receive your pay.  Do you recall



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                              102

1   that?

2        A.    No.

3        Q.    You never did --

4        A.    I might have and don't remember.  Just like

5   I -- you said I only worked two weeks, and I got two

6   paychecks.

7        Q.    Okay.

8        A.    So I was wrong on that part, I guess.

9        Q.    Okay.  So, in fact, just your testimony

10  today is perhaps you were mistaken as to not receiving

11  the last paycheck?

12       A.    Yes.

13       Q.    Okay.  Did you ever at any point in time in

14  any invoice or any other writing set forth any request

15  from -- to Eli or anyone else on behalf of 316 for

16  unpaid overtime?

17       A.    No.

18       Q.    Did you ever call or text anyone to discuss

19  that?

20       A.    Well, like when I tried to -- I didn't get

21  far in the conversation because I got hung up on.

22       Q.    When was -- what are you referring to?

23       A.    When I tried to call about work.

24       Q.    Okay.  Was that --

25       A.    Yeah.  So I didn't bother calling back



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                           103

1   because I didn't want to bother nobody too much.

2        Q.   Was that when you were terminated you were

3   hung up on?

4        A.   Yeah.

5        Q.   Okay.  Were you intending to discuss with

6   them at that time overtime?

7        A.   No.

8        Q.   Okay.  So just to be clear as well, if in

9   your records you believe that you have any other

10  documents that constitute an invoice to 316, will you

11  make sure to produce those to us?

12       A.   Yes.

13       Q.   Okay.  Did you ever raise any complaints to

14  anybody about your compensation?

15       A.   No.

16       Q.   Or attempt to negotiate raises?

17       A.   No.

18       Q.   Okay.

19            (Exhibit Number D-10 was marked for

20       identification.)

21            MS. ELLIOTT:  I'm handing you now what's

22       been marked as Exhibit 10.

23            THE WITNESS:  A who?

24            MS. ELLIOTT:  This has been marked as

25       Exhibit 10.



1              THE WITNESS:  Oh, Exhibit 10.

2              MR. HANDSCHUH:  Tell you what.  We'll go off

3        the record.

4              (A brief recess was taken.)

5   BY MR. HANDSCHUH:

6        Q.    Returning from our break, Mr. Brown, you

7   were previously handed an exhibit --

8        A.    (Indicating).

9        Q.    -- yes, marked as Exhibit 10.  I don't

10  recall whether you've had a chance to thumb through

11  this document.  If not, if you could do so for me.

12       A.    All right.

13       Q.    Okay.  Does this appear to be your joint tax

14  return for the fiscal year 2021?

15       A.    Yes.

16       Q.    Okay.  And during that year you filed

17  jointly with your wife, Shatoya Brown?

18       A.    I guess she did.  I don't do -- she does

19  that stuff.

20       Q.    Okay.

21       A.    I don't even know how to file it.

22       Q.    Okay.  Have you ever seen your tax return

23  here from 2021?

24       A.    No.

25       Q.    Okay.  I wanted to ask a question.  If you



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                            105

1  could -- let's see.  It's not numbered, so I'm going to

2  have to draw your attention to it.  Can I borrow yours

3  for a moment?  I'll turn to it.

4        A.    Sure.

5        Q.    Thanks.

6        A.    You're welcome.

7        Q.    Drawing your attention to Form 8995, we

8  mentioned that A1 Quality Towing was an entity that you

9  claimed was created but never had a truck and never

10 started operating; correct?

11       A.    Yes.

12       Q.    Do you know why on this tax return it sets

13 forth an income for A1 Quality Towing of 13,000?

14       A.    No.

15       Q.    Okay.  So you don't have any personal

16 understanding as to why that company reflected $13,000

17 in income that year?

18       A.    No.

19       Q.    Okay.  Do you know whether that to be an

20 error?

21       A.    No.

22       Q.    Okay.  Was --

23       A.    I know we used the card.  I know she had

24 a -- like a credit card in her name for it, for the

25 company.  We used it, but we never did any work with



1   it.  Like we probably transferred money from one

2   account to another to each other, stuff like that, but

3   we never did no work at all.

4        Q.    Okay.  So no customers ever paid A1 Quality

5   Towing.

6        A.    Never.

7        Q.    Okay.  So you just have no basis to

8   understand why --

9        A.    We used the card.  Like we had a credit

10  card, and we transferred money to each other.  But we

11  definitely never did no work.  I never had a truck.  I

12  never changed a tire under that name or anything like

13  that.  Definitely not.

14       Q.    And going back to -- if you flip back about

15  three pages for me, that's not too bad, you'll see --

16  one more page.

17       A.    All right.

18       Q.    Sorry.  I meant the other way.  It's hard to

19  describe.  Yep, one more.  There we go.  Oh, I'm sorry.

20  I'll do it again.  I'll grab it from you and bring us

21  to the page.  Okay.  Bringing you to what's listed here

22  as Form 1040.

23       A.    Uh-huh (affirmative).

24       Q.    If you could, briefly take a look at that

25  and then let me know when you're finished.



1      A.    I'm finished.

2      Q.    Okay.  Do you see line item number 1?

3      A.    Yes.

4      Q.    Did your wife work during fiscal year 2021?

5      A.    I don't know --

6      Q.    You don't know?

7      A.    -- what she -- I don't know.  I'm never

8   there.  She does her thing.  I don't even --

9      Q.    Okay.  So you just -- you wouldn't know one

10  way or another.

11     A.    No.

12     Q.    Do you know based on the line item number 1,

13  $6,800 and -- $6,815, do you see that --

14     A.    Yes.

15     Q.    -- line item?  Was that your income, or was

16  that your wife's income?

17     A.    I don't know.  I honestly don't know tax

18  stuff like this.

19     Q.    You don't know?

20     A.    No.

21     Q.    Okay.

22     A.    She does this stuff.  Like when my tax form

23  comes in the mail, I don't even bother with it.  She

24  does whatever she does.

25     Q.    Okay.  And so you also I guess by extension



1    wouldn't know why A1 was reporting income of about

2    $13,000 for that year?

3         A.    Like I said, we probably send each other

4    money using cards, like transfer money from one account

5    to another.  Or if she can't find her cards, she'll

6    send it to me on my phone, and I use my cards or back

7    and forth, stuff like that.  But that's it.

8         Q.    Okay.  But you weren't using A1 Quality to

9    tow --

10        A.    Never.

11        Q.    -- trucks.

12        A.    Never towed anything.

13        Q.    Okay.

14        A.    Never had a tow truck.  Never used a tow

15   truck, other than being employed.  And -- never.  Never

16   did any roadside assistance or none of that stuff with

17   it.

18        Q.    Okay.  Do you recall who may have prepared

19   this return?

20        A.    No.  I know my wife started -- made the LLC

21   for us because at one point I wanted to buy a tow

22   truck, but I didn't.  Never bought one.

23        Q.    Does she use a software like Turbo Tax, or

24   does she go to like H & R, do you know?

25        A.    I have no idea.



REYNALDO BROWN                                    September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                             109

1        Q.    No idea?  Okay.

2        A.    I never heard of Turbo Tax, but I seen the

3   H & R Block store before driving down the street.

4        Q.    And during 2021, did you ever declare any

5   income to the IRS?

6        A.    I don't know.

7        Q.    Okay.

8        A.    Is that like with W-2s and stuff?

9        Q.    Correct.  Or 1099?

10       A.    She might have.  I don't -- like I said, she

11   does the mail, all this stuff.

12       Q.    And if you worked for two weeks at 950 a

13   week for 316, that would have been about $1,900 total?

14       A.    I don't know.

15       Q.    You don't know?

16       A.    (Witness shakes head negatively.)

17       Q.    Okay.  Do you know how much you earned while

18   working at 316 in total?

19       A.    I think the paper said one check was 950 and

20   the other check was probably 850.

21       Q.    Okay.  So that's 800?

22       A.    Yes.

23       Q.    Okay.  Excuse me, 1,800.

24       A.    I guess, if you added it.

25       Q.    Do you remember whether or not 316 issued to



1   you a 1099 at the end of the year for 2021?

2         A.    Those come in the mail; right?

3         Q.    Uh-huh (affirmative).

4         A.    I wouldn't have known -- she would have

5   had -- my wife would have got it.

6         Q.    Okay.

7         A.    When you said issued, I didn't know if you

8   meant if they handed it to me or did it come in the

9   mail.

10        Q.    Yeah.  Do you recall seeing it?

11        A.    Yeah, I don't.  She would have got it.

12        Q.    Okay.  Turning back now our attention, just

13  a few more questions, to Exhibit 4.

14        A.    Close this one back?

15        Q.    Please, yes, sir.  If you could look at, I'm

16  sorry, Interrogatory Number 6 on page 6.  Are you

17  finished reading Number 6?

18        A.    Oh, you want me to read it?

19        Q.    Please, yeah, if you don't mind, because I

20  just have a question for you once you're done reading

21  it.

22        A.    You want me to read the question and the

23  answer?

24        Q.    Please.

25        A.    All right.



1    Q.    All right.  And this just refers to your use

2    of the cell phone during your particular -- or while

3    you were working for 316; correct?

4    A.    Yes.

5    Q.    Okay.  Is there anything else that you would

6    add to your use of the cell phone for?

7    A.    No.

8    Q.    Okay.  As we mentioned, you never collected

9    any payments from anyone with the cell phone; correct?

10   A.    No.

11   Q.    Okay.  What about any other device for

12   purposes of collecting payment?

13   A.    No.

14   Q.    Okay.  If you give us a moment, we're just

15   going to look at our notes, and we may be finished.

16   A.    Take your time.  I only got a two-hour drive

17   home.

18   Q.    All right.  Turning your attention to the

19   final page of Exhibit 4, Request for Admission Number

20   30 at the bottom there.

21   A.    Uh-huh (affirmative).

22   Q.    If you'd read that and let me know when

23   you're finished.

24   A.    All right.

25   Q.    All right.  So that says, "Please admit that



1  you never raised objections to 316 Towing concerning

2  your classification as an independent contractor," and

3  you admitted that.  And just as my final question, I'd

4  just like to know whether you would change your

5  response there in any way?  And, if so, why?

6       A.    I don't remember this question really, but I

7  didn't -- I'm just now figuring out what an independent

8  contractor is because I really don't know much about

9  it.  So -- and I still don't.  I was literally just a

10  tow truck driver.

11       Q.    Okay.  Do you see any reason currently right

12  now for you to change your response to Admission Number

13  30?  And, if so, why?

14       A.    I was an employee.

15       Q.    Okay.  Why is that?

16       A.    I worked for them.  I worked for them.  I

17  had the uniform.  I drove their truck.  I did what they

18  told me to do.  I didn't find my own calls to do.  I

19  did their calls.

20       Q.    Okay.  And so I'm just trying to get an

21  understanding.  Would you change that response?  You

22  admitted it here.

23       A.    Yeah, because I didn't know what it was,

24  what it meant.  But --

25       Q.    Did you review these requests with your



REYNALDO BROWN                              September 28, 2023
HYDE V. 316 TOWING & ROAD SERVICE                        113

1    attorney prior to submitting the responses?

2         A.    I don't know who I was on the phone with

3    when I did this.

4         Q.    Okay.

5         A.    Or wherever this is from.

6         Q.    Okay.  And specifically for this question,

7    not just whether or not you think you should have been

8    classified as an independent contractor or not, but

9    rather during your employment you never raised any

10   objections.

11        A.    Well, learning what an independent

12   contractor is, I'm not an independent contractor.  I'm

13   an employee, or was an employee.

14        Q.    Okay.  But you're saying that you learned

15   that today.

16        A.    I didn't say today.  You said today.  I said

17   learning that, what an independent contractor is,

18   learning that, I'm not.  I was an employee.

19        Q.    Well, I think you did testify that, you

20   know, initially when you responded to this you were

21   unsure what independent contractor meant.

22        A.    Yeah.

23        Q.    Okay.  And so at least in terms of

24   objections, I'm just asking what would be the basis for

25   changing your admission that you didn't object to it?



1      A.    Because I just said I learned what an

2    independent contractor is.

3      Q.    When?

4      A.    A few days ago probably.

5      Q.    Okay.  Was that after your employment?

6      A.    Well, a few days ago was after?  Yeah, it

7    was way after my employment.

8           MR. HANDSCHUH:  All right.  No further

9       questions.

10          MR. SHORT:  No further questions from us.

11          MR. HANDSCHUH:  Would you like to reserve

12      signature?

13          MR. SHORT:  We don't need to read and sign.

14          (Deposition concluded at 5:55 p.m.)

15                         -  -  -

16

17

18

19

20

21

22

23

24

25



```
1                    C E R T I F I C A T E

2

3    STATE OF GEORGIA:

4    PAULDING COUNTY:

5

6            I hereby certify that the foregoing

7        transcript was taken down, as stated in the

8        caption, and the questions and answers thereto

9        were reduced to the written page under my

10       direction and that the foregoing pages 1

11       through 114 represent a true and correct

12       transcript of the evidence given.

13            I further certify that I am not of kin

14       or counsel to the parties in the case, am not

15       in the regular employ of counsel for any of

16       said parties, nor am I anywise interested in

17       the result of said case.  The witness did not

18       reserve the right to read and sign the

19       transcript.

20            This, the 10th day of October 2023.

21

22

23

24       _____
         CYNTHIA B. GATEWOOD, CCR-B-1400
25
```



1                          DISCLOSURE

2    STATE OF GEORGIA:
     COUNTY OF PAULDING:
3
                    Deposition of REYNALDO BROWN
4
              Pursuant to Article 10.B of the Rules and
5    Regulations of the Board of Court Reporting of the
     Judicial Council of Georgia, I make the following
6    disclosure:

7             I am a Georgia Certified Court Reporter.  I am
     here as a representative of Regency-Brentano, Inc.
8

9             I am not disqualified for a relationship of
     interest under the provisions of O.C.G.A. §9-11-28(c).
10

11            Regency-Brentano, Inc., was contacted by Esquire
     Deposition Solutions to provide court reporting
12   services for this deposition.

13
              Regency-Brentano, Inc., will not be taking this
14   deposition under any contract that is prohibited by
     O.C.G.A. §15-14-37 (a) and (b).
15

16            Regency-Brentano, Inc., has no exclusive
     contract to provide reporting services with any party
17   to the case, any counsel in the case, or any reporter
     or reporting agency from whom a referral might have
18   been made to cover this deposition.

19
              Regency-Brentano, Inc., will charge its usual
20   and customary rates to all parties in the case, and a
     financial discount will not be given to any party to
21   this litigation.

22

23                              _Cynthia Gatewood_

24
                              CYNTHIA B. GATEWOOD, CCR-B-1400
25                            Date:  September 28, 2023



```
 1   Reference No.: 10069142

 2

 3   Case:  HYDE V. 316 TOWING & ROAD SERVICE

 4

           DECLARATION UNDER PENALTY OF PERJURY
 5
           I declare under penalty of perjury that
 6   I have read the entire transcript of my Depo-
     sition taken in the captioned matter or the
 7   same has been read to me, and the same is
     true and accurate, save and except for
 8   changes and/or corrections, if any, as indi-
     cated by me on the DEPOSITION ERRATA SHEET
 9   hereof, with the understanding that I offer
     these changes as if still under oath.
10

11           _____

12           Reynaldo Brown

13

14           NOTARIZATION OF CHANGES

15               (If Required)

16

17   Subscribed and sworn to on the _____ day of

18

19   _____, 20____ before me,

20

21   (Notary Sign)_____

22

23   (Print Name)                    Notary Public,

24

25   in and for the State of _____
```



```
 1   Reference No.: 10069142
     Case:  HYDE V. 316 TOWING & ROAD SERVICE
 2

 3   Page No._____Line No._____Change to:_____

 4   _____

 5   Reason for change:_____

 6   Page No._____Line No._____Change to:_____

 7   _____

 8   Reason for change:_____

 9   Page No._____Line No._____Change to:_____

10   _____

11   Reason for change:_____

12   Page No._____Line No._____Change to:_____

13   _____

14   Reason for change:_____

15   Page No._____Line No._____Change to:_____

16   _____

17   Reason for change:_____

18   Page No._____Line No._____Change to:_____

19   _____

20   Reason for change:_____

21   Page No._____Line No._____Change to:_____

22   _____

23   Reason for change:_____

24
     SIGNATURE:_____DATE:_____
25   Reynaldo Brown
```



```
1    Reference No.: 10069142
     Case:  HYDE V. 316 TOWING & ROAD SERVICE
2

3    Page No._____Line No._____Change to:_____

4    _____

5    Reason for change:_____

6    Page No._____Line No._____Change to:_____

7    _____

8    Reason for change:_____

9    Page No._____Line No._____Change to:_____

10   _____

11   Reason for change:_____

12   Page No._____Line No._____Change to:_____

13   _____

14   Reason for change:_____

15   Page No._____Line No._____Change to:_____

16   _____

17   Reason for change:_____

18   Page No._____Line No._____Change to:_____

19   _____

20   Reason for change:_____

21   Page No._____Line No._____Change to:_____

22   _____

23   Reason for change:_____

24
     SIGNATURE:_____DATE:_____
25   Reynaldo Brown
```



Exhibits

10069142 Re
ynaldo.
Brown.
EXHIBIT1
    2:7 5:14
    8:8,19

10069142 Re
ynaldo.
Brown.
EXHIBIT2
    2:9 34:6
    38:1 39:4
    51:18
    86:20

10069142 Re
ynaldo.
Brown.
EXHIBIT4
    2:11 30:9
    46:17
    63:20
    98:14
    110:13
    111:19

10069142 Re
ynaldo.
Brown.
EXHIBIT5
    2:14
    44:7,10
    45:3 55:3

10069142 Re
ynaldo.
Brown.
EXHIBIT6
    2:15 79:2
    91:4

10069142 Re
ynaldo.
Brown.
EXHIBIT7

                2:16 81:4

10069142 Re
ynaldo.
Brown.
EXHIBIT8
    2:17
    97:24

10069142 Re
ynaldo.
Brown.
EXHIBIT9
    2:18
    100:10

10069142 Re
ynaldo.
Brown.
EXHIBIT10
    2:19
    103:22,25
    104:1,9

——————————

       $

$1,900
    109:13

$13,000
    105:16
    108:2

$5
    20:2

$6,800
    107:13

$6,815
    107:13

$950
    58:10

——————————

       1

1
    5:14 8:8,

        19 40:13
    107:2,12

1,100
    49:21

1,800
    109:23

10
    76:5
    103:22,25
    104:1,9

10,000
    54:15
    84:16,18
    85:25
    88:16,20

1040
    106:22

1099
    54:7
    109:9
    110:1

10K
    87:5

12
    13:23,25
    14:14,15,
    22 17:15
    27:14
    74:1 96:9

12-hour
    69:5

13
    16:2,3,5

13,000
    105:13

14
    79:7
    91:16

14th
    91:12

15
    46:18,20,
    22 76:5
    91:25

17
    98:18

18
    14:7,13,
    22 15:23
    35:10,15
    43:23
    53:2
    89:2,4

18th
    55:1

19
    46:19
    84:17

19,000
    84:13

1904
    10:19

1956
    4:17
    10:16

1983
    12:21

1st
    33:24
    44:1
    45:6,20

——————————

       2

2
    34:6 38:1
    39:4
    51:18
    76:11
    86:20,23
    101:7

20
    63:21,23,
    25 75:16
    96:20

2015
    27:15

2019
    99:1

2020
    91:18

2021
    24:19
    31:23
    33:24
    35:10,15,
    20 40:13,
    17 44:1
    45:6,20
    53:2
    79:7,9
    80:7 89:4
    90:15
    91:1 92:9
    96:8
    104:14,23
    107:4
    109:4
    110:1

2023
    11:12
    12:8 23:8
    24:5

21
    43:23
    55:1
    65:3,13,
    20

22
    30:16
    46:19
    63:21
    75:16,21
    99:2



**23**
  11:13

**24**
  75:11,12,
  15,17,23
  76:16,23

**26**
  77:5
  87:20

**26,000**
  85:25

**29**
  79:9
  90:15
  91:16

**29th**
  91:7

**2:22-cv-
103-rws**
  5:9

—————————

**3**

**3**
  50:22
  68:15,19
  69:4

**30**
  111:20
  112:13

**316**
  5:6 24:12
  29:19,21,
  24 31:5,
  14,16,22
  33:12,24
  35:21,23
  36:25
  40:18
  47:9
  48:5,14
  52:7

**40**
  19:20
  27:13
  96:3,5,16
  98:25
  99:11

**4658**
  10:18

**4711**
  11:25
  12:7,11

—————————

**5**

**5**
  30:14,16,
  18 31:1,5
  38:2
  44:7,10
  45:3 55:3
  87:2

**5500**
  84:8
  88:19

—————————

**6**

**6**
  79:2 91:4
  110:16,17

**6/1/21**
  43:20

**6/18/21**
  43:18

**60**
  96:10

—————————

**7**

**7**
  81:4

**53:24
54:9 56:3
58:13
60:9
61:15
65:8
66:4,14
67:24
68:2
69:10
72:19
76:7
78:18
79:6,15,
19 80:6
81:8
83:1,15
86:10
89:7,22,
23 91:11
92:8 95:1
98:25
100:16,25
101:1
102:15
103:10
109:13,
18,25
111:3
112:1**

**316's**
  88:11

—————————

**4**

**4**
  30:9 38:1
  46:17
  63:20
  68:12,20,
  21 75:13,
  14 98:14
  110:13
  111:19

**98:15,22**

**70-
something**
  28:19

**7:00**
  68:6,7,8,
  9 69:6,25
  72:15,16

—————————

**8**

**8**
  97:24

**800**
  109:21

**850**
  109:20

**8995**
  105:7

—————————

**9**

**9**
  56:13
  100:10

**90-
something**
  28:18

**950**
  49:1,17,
  20,21
  50:19
  109:12,19

**9th**
  12:21

—————————

**A**

**a.m.**
  68:7,8,9

**69:6
72:15**

**A1**
  28:8
  29:13
  89:11
  105:8,13
  106:4
  108:1,8

**ability**
  80:21

**accept**
  80:21
  82:4

**account**
  106:2
  108:4

**accurate**
  9:14

**action**
  5:9 47:17
  57:13
  97:11
  101:20

**activities**
  76:3,8,
  21,24

**activity**
  79:6

**add**
  96:3
  111:6

**added**
  109:24

**Addendum**
  45:14

**address**
  4:16
  10:16
  11:20
  70:9



adhere
   93:18

administrat
ion
   19:5
   20:19

administrat
ive
   60:18

admission
   46:18,20,
   23 63:23
   65:2,13,
   21 75:12,
   17,22
   76:15,23
   77:4
   98:15,18
   99:2
   111:19
   112:12
   113:25

admit
   63:24
   64:4
   75:25
   98:24
   99:7,9
   111:25

admitted
   64:7
   65:5,9,14
   76:4 99:8
   112:3,22

admonition
   7:8

ads
   60:12

advances
   54:3

advice
   62:6,24

advise
   10:15
   22:2

advised
   93:9,14

advises
   5:21

affect
   15:2

affirmation
   6:20

affirmative
   5:24
   10:11
   11:14
   28:22
   29:10,12
   30:23
   35:3
   41:24
   42:24
   47:3
   53:14,23
   54:5,13,
   20,24
   77:6
   79:12
   80:11,15
   86:11,25
   87:3
   88:5,13,
   18 89:1,3
   91:8 93:6
   106:23
   110:3
   111:21

affirmative
ly
   7:15 61:2

age
   13:22
   14:22
   15:23

agency
   22:9

agree
   4:19
   56:17
   98:8

agreeable
   7:14

agreeing
   7:16

agreement
   44:3
   45:6,15
   46:9 47:8
   48:5,11
   56:18

ahead
   55:4 59:9

alcohol
   15:2

allowed
   72:23
   73:22

alternative
   57:20

AMC
   22:8,22
   24:5

American
   56:20

amount
   16:20
   95:14
   96:24
   98:10
   99:24

and/or
   53:20

answering
   8:1

answers
   9:14

anymore
   70:19

apartment
   10:19
   11:2

app
   51:6
   78:14

appeared
   72:6

appears
   32:1,10
   41:7
   42:19
   43:21
   77:9
   91:15
   101:7

applicant's
   43:11

application
   31:23
   35:2,18
   37:6
   39:21
   41:20
   43:5 44:1
   48:25
   50:17
   52:7,8,14
   58:16
   86:20
   87:9

application
s
   65:8

apply
   54:22

arbitration
   56:19,20

57:11,12,
   14,16,18
   58:4

area
   73:12
   82:24

arguments
   90:10

arrested
   15:20,23

arrests
   16:1

arrived
   81:24

ascertain
   94:4

asks
   54:16,21
   77:16

assault
   16:13
   17:1

assignments
   65:8

assistance
   26:7,10,
   18 89:16
   108:16

assisting
   23:20

Association
   56:20

ate
   74:11

Atlanta
   56:21

attached
   48:3

attempt
   103:16



**attend**
18:17,19
21:16
77:17,18

**attention**
29:19
30:13
31:15
33:23
34:22
51:17
63:20
75:11
88:3
98:14,19
105:2,7
110:12
111:18

**attorney**
5:6,21
10:3
57:22
80:10
113:1

**attorneys**
98:3

**August**
79:23

**authorized**
53:12

**awaiting**
72:25

**aware**
9:12
57:10
88:15
93:17

**awkward**
7:23

_____

**B**

B-R-O-W-N

4:14
13:10

**back**
12:5,17
18:22
19:8
23:2,21,
22,23
24:17,19,
21 27:2,9
31:3
34:11
35:20
37:15,19,
24,25
38:2 45:4
46:16,18
51:17
55:2,5,17
58:20
63:20
68:11,12
71:6 73:3
86:19,20
87:18
92:18
95:3,6,13
96:8
97:14
98:14
102:25
106:14
108:6
110:12,14

**backwards**
99:5

**bad**
19:18,19
40:24
106:15

**bakery**
16:17

**based**
76:14

107:12

**basically**
12:24
24:12
36:14

**basis**
48:2 49:8
99:24
106:7
113:24

**bathroom**
76:6,9
77:1

**battery**
16:11

**BBA**
20:18

**beat**
16:10

**began**
48:14

**begin**
53:8

**beginning**
55:17
68:12
90:21

**begins**
91:12

**behalf**
41:9
50:22
60:9 80:6
102:15

**Bell**
74:12

**benefits**
58:9

**bet**
15:6,12

**big**
47:13
82:8

**binding**
8:22
56:19

**birth**
12:20

**bit**
12:19
17:8
87:17

**biweekly**
49:9

**black**
91:18

**Block**
109:3

**book**
87:14

**borrow**
105:2

**bosses**
74:20

**bother**
102:25
103:1
107:23

**bottom**
35:13
44:21
45:18
53:5 55:6
88:24
91:5
98:20
111:20

**bought**
28:11,17
89:14
108:22

**Bouncing**
12:19

**boy**
16:15,17

**break**
9:18
37:17
58:6
104:6

**breaks**
9:24 10:1

**Brentwood**
18:11

**briefly**
106:24

**bring**
51:23
106:20

**Bringing**
106:21

**brother**
12:5,18
23:17
28:25

**brother's**
11:23

**Brown**
4:14 5:5,
19 13:7,
9,13
14:8,11
29:9
52:17
55:24
104:6,17

**Buford**
12:3 24:8

**Bundle**
27:18
42:23

**Burger**



74:11

burn
73:8

burner
19:12
20:22
21:7

burners
21:3

business
18:20
19:4,5
20:18
28:9
55:14

Buster's
27:9,24
42:23

buy
28:10,14
86:12
108:21

———————

C

———————

calculate
95:9

calculator
97:2

call
19:22
26:1
36:21
37:19
59:15
62:5 63:1
64:19
66:25
70:2
71:22,23
73:13
76:1

77:16,19
78:11,12
81:18
89:8
99:20,21
102:18,23

called
13:24
20:1
26:18
37:3
39:12
51:7 65:1
70:6
92:18,22

caller
60:7

calling
37:5
102:25

calls
59:17,20,
21 60:2
63:8,11,
13 65:10,
17 94:18
112:18,19

cancel
82:4,5

canceled
81:22

cancellatio
n
81:8

capture
94:1

captured
79:14

car
16:15
30:1
36:19

59:12
62:6,18,
25 65:23
70:3
73:14
78:11
81:23
82:8 85:7

card
26:18,24
88:15
105:23,24
106:9,10

cards
108:4,5,6

care
17:13
23:11,20,
21,25
24:4,6,7

Career
18:25

carefully
81:14

caring
14:3

Carolina
82:17,20

Carrier
41:12
42:19

cars
59:8 73:3
83:9

case
57:4
66:20
94:3

cash
83:16

CDL

21:19

cell
111:2,6,9

center
27:19

certainty
82:19

certificate
20:20,21
32:12,15
33:3,9,19

certificate
s
19:13,24

certificati
on
21:14
33:11

certificati
ons
21:6

certified
32:11,25
33:12

certifies
43:4

chance
30:22
34:17,19
38:23
39:3,16
41:21
58:22
68:25
98:16
104:10

change
15:17
48:8
59:10
76:23
112:4,12,

21

changed
60:3 68:9
71:3
106:12

changing
59:25
113:25

charge
16:23
50:21
60:13,17

charged
16:25

check
48:15,20
95:2,14
97:14,15,
17 100:2
109:19,20

checked
53:13,16,
22 54:4,
14,19,23

checking
65:19

Checklist
35:2
52:14

checks
100:3
101:2,9

children
13:15,25
14:2,8,
10,22

chocking
21:11

choose
76:17
78:9



chose
   73:11
   74:14

chronologic
al
   22:1

chronologic
ally
   24:3

CI
   44:3

cigarettes
   93:5

Cindy
   6:12,22

citizens
   12:24

Civil
   5:9

claim
   58:1

claimed
   98:3
   105:9

claims
   57:13

clarify
   8:6

classificat
ion
   112:2

classified
   113:8

clear
   43:12
   47:6
   60:20
   61:5
   73:16
   103:8

clock
   73:24
   74:15

close
   34:7
   59:15
   76:11
   110:14

closed
   19:4

closer
   36:10

closest
   78:11

Clover
   83:19

coincidenta
l
   25:20

collect
   83:6,8,9

collected
   111:8

collecting
   83:2,14,
   16,18
   111:12

collective
   97:11

college
   18:17,19

colleges
   20:7

color
   13:9

commercial
   21:16

commit
   47:16
   70:12

communicati
ng
   7:2

companies
   25:5 32:5
   89:7

company
   22:6
   32:14
   33:2
   105:16,25

compensated
   95:15

compensatio
n
   96:11
   103:14

complained
   90:12

complaint
   93:23

complaints
   93:18
   94:12,15,
   20 97:16
   103:13

complete
   9:14 43:7
   54:2

completed
   43:5

Compliance
   88:4,12

concentrate
   9:2

conducts
   18:1

confident
   48:9

confirm

55:18

confusion
   47:6

connection
   13:4

consistent
   60:21
   72:10

constitute
   103:10

contact
   64:20

contacts
   71:10

continues
   31:6

contract
   55:18

contractor
   35:1
   45:15
   47:7
   52:13
   53:11,19
   54:7,18,
   23 55:6,
   12,13,19
   56:2,4
   101:24
   112:2,8
   113:8,12,
   17,21
   114:2

contractors
   53:25

contracts
   54:1

control
   65:15

controlled
   65:7

convened
   56:19

conversatio
n
   6:19
   51:12
   102:21

conversatio
ns
   67:2

Conyers
   4:17
   11:21,22
   12:16
   23:15

copies
   70:17

copy
   61:7
   88:11

corner
   52:16

correct
   6:8,10
   8:9,19
   33:24
   39:6
   40:20
   42:16
   53:15
   56:6
   59:22
   62:23
   64:1
   66:17
   69:7
   77:10,23
   78:15
   80:19
   85:1,9,24
   100:21
   105:10
   109:9
   111:3,9



country
63:9

courses
19:14

court
15:8
16:18
57:21

courtesy
7:11

courtroom
57:25

covered
10:13

coworker
32:2

CPI
21:13

CPR
21:8,11,
12,13,14

crashed
15:9

created
105:9

creating
28:16

credit
105:24
106:9

cross
82:15

current
10:16

customers
83:3
106:4

——————————
        D
——————————

D-1
5:11

D-10
103:19

D-2
34:3

D-4
30:6

D-5
44:4

D-6
78:24

D-7
81:1

D-8
97:21

D-9
100:7

dad
17:13
23:11,16
26:3

daily
54:1
88:4,12

damages
94:25

Data
39:12

date
12:20
35:9
58:21
59:1 79:8
90:25
91:2

dated

40:13
43:17
45:6 53:2

dates
19:18
33:25
99:19

Dave
27:9,24
42:23

day
19:23
28:10
44:14
58:19
63:4
77:14
85:20
91:9 96:9

daycare
27:19
28:4

days
32:17
68:6
91:25
114:4,6

daytime
72:7

dealing
50:22,23,
25

decide
10:6

decision
4:24
57:23
97:10

declare
109:4

degree
20:17

degrees
19:3 21:7

delivering
16:16

demand
98:2

denied
48:2
77:9,20
99:2,3

Denzel
15:7

departure
92:12

depends
73:12,14

depo
48:16
60:24

deposition
5:19 8:13
10:5
60:25

derive
96:24

derived
89:18

describe
21:9 59:5
106:19

determined
48:23

determining
99:24

device
111:11

difficult
9:1

diploma
33:3

direct
67:19

directions
93:14,18

disciplined
84:4

disclose
62:7

discuss
48:23
102:18
103:5

discussed
50:14,16

discussing
9:25

discussion
32:9
37:22

discussions
50:1,2,4

dishonesty
17:22

disorderly
17:25

dispatch
63:8,11
72:25
79:8 91:7

dispatched
81:21
91:15

dispatcher
65:10,11,
17,18

dispatchers
63:14
89:25
90:5
94:13



dispute
  56:17
  57:20

distinctly
  5:22

distracted
  15:1

distracting
  9:3

distraction
  9:7

District
  5:8 12:25

doc
  75:14

docked
  49:14

document
  8:11
  34:20
  35:1,9
  39:9,20
  40:13
  43:3
  44:16
  45:11
  46:14
  47:16
  51:20
  55:19
  68:11
  81:10
  88:3
  100:12
  101:11,13
  104:11

documents
  6:17,18
  52:5,6
  80:5,9
  103:10

Dodge

84:8 86:2
88:19
91:18

dollar
  98:10

door
  84:22,25
  85:7

DOT
  54:16
  87:5

doubt
  65:12
  84:23

draw
  30:13
  98:18
  105:2

drawer
  47:24

drawing
  29:19
  31:15
  33:23
  34:22
  105:7

drive
  10:19
  32:11
  33:1
  72:19,22,
  23 73:8
  111:16

driver
  29:21,24
  31:24
  40:18
  53:11,19
  58:17
  59:6,7,21
  60:19,22
  61:9,21
  62:7,8

67:9,16
101:24
112:10

driver's
  21:16
  54:1
  88:4,12

driver-type
  59:19

drivers
  54:1
  62:1,12,
  13

driving
  25:14
  33:10
  42:13
  59:21,23
  60:8
  67:17,24
  73:8
  77:21
  88:16
  91:19
  109:3

drop
  70:3
  73:14
  78:11

drove
  82:10
  84:7
  112:17

drug
  53:21

drugs
  15:2

drunk
  15:8,9

due
  96:25
  99:25

Dustin
  25:8
  32:16,21,
  22 33:5,
  14 61:17,
  20,21
  62:22
  63:5,6
  66:1,16
  67:15

duties
  59:5,19,
  23 60:9,
  14 61:1,9
  65:7,15
  67:15,24

duty
  13:25

─────────

E

─────────

earlier
  8:6 14:24
  64:10
  78:13

early
  19:21

earn
  89:15

earned
  109:17

Eastern
  19:1,10,
  11

easy
  29:14
  84:7

eat
  74:6,8,
  14,18

EBT
  26:21

EFS
  54:3

eighth
  55:3

Eli
  37:9
  38:3,21
  43:22
  46:3
  50:23
  51:3,5,12
  61:18
  62:23,24
  63:4,11,
  12 64:17,
  19 73:17
  74:22
  92:20,21
  97:16
  102:15

ELLIOTT
  5:13 30:8
  34:5 44:6
  79:1 81:3
  87:20,25
  97:23
  100:9
  103:21,24

emergency
  9:4

employed
  50:9
  108:15

employee
  112:14
  113:13,18

employer
  22:2

employment
  113:9
  114:5,7

end
  4:25 10:5



12:22
24:12
26:9 54:8
68:16
90:20,21
110:1

**ended**
69:25

**ending**
23:6

**engaged**
40:18
76:3

**entire**
31:10
60:21

**entitled**
35:1
96:10

**entity**
28:16
105:8

**entries**
43:6

**errands**
77:13,19
78:4

**error**
105:20

**errors**
10:7

**established**
44:13

**everything'**
**s**
41:15

**ex-husband**
29:4,5

**excuse**
6:17 38:1

71:21
73:25
109:23

**exhibit**
5:11,14
8:8,19
30:6,9
34:3,6
38:1 39:4
44:4,7,10
45:3
46:17
51:18
55:3
63:20
78:24
79:2
81:1,4
86:20
91:4
97:21,24
98:14
100:7,10
103:19,
22,25
104:1,7,9
110:13
111:19

**expect**
15:18

**expelled**
20:15

**Experience**
42:13

**explain**
29:23
64:14
92:11
93:2
95:13
100:3

**express**
6:19

**extend**
7:11

**extension**
107:25

**extent**
33:12
48:2 50:5

**extra**
69:24

———————————
        **F**
———————————

**facilitate**
57:7

**fact**
46:13
93:19
102:9

**failure**
93:18

**fair**
44:14
84:7

**falsehoods**
18:5

**familiar**
78:14
85:3,11
87:17

**family**
9:4 13:1

**fast**
34:13

**fathered**
14:10

**federal**
55:14

**feel**
34:10
48:8

63:4,6

**feet**
16:20

**felonies**
16:3,6,7

**felony**
16:22

**female**
94:13

**fight**
16:14

**fights**
18:1

**figure**
15:13
94:8
95:20
97:8

**figured**
62:3

**figuring**
112:7

**file**
5:9
104:21

**filed**
57:12,16
104:16

**fill**
41:21
42:5
44:18
60:3,12
87:10

**filled**
37:6
39:21
41:4,9
43:14
44:15
52:9

58:15

**filled-in**
55:23

**final**
51:18
54:21
79:8 91:5
95:14
100:2
111:19
112:3

**find**
25:4
62:18,19
78:12
108:5
112:18

**fine**
41:15
58:7

**finish**
7:12
68:23

**finished**
5:17 9:20
28:7
30:19
44:11
46:21
88:7
106:25
107:1
110:17
111:15,23

**finishing**
7:11

**fired**
64:6,15,
18 75:6

**firing**
64:12

**fiscal**



104:14
107:4

**fixed**
82:1

**flat**
49:4

**flatbed**
32:11
33:1,17
82:12

**Flight**
15:7

**flip**
18:22
34:15
42:25
44:10
55:3
87:22
106:14

**flipped**
34:21

**Flipping**
45:2

**focus**
9:6

**folks**
24:5
25:25

**food**
26:23
53:12

**forgeries**
18:6

**Forgery**
17:24

**forgot**
22:5

**form**
4:20

54:7,8
105:7
106:22
107:22

**formal**
6:3  57:24

**forward**
7:23

**found**
12:3
28:17
29:23

**fourth**
39:7

**fraud**
17:17

**free**
34:10

**Friday**
71:21,22

**front**
8:23
34:12,20
86:23

**full**
9:13
37:11
38:7
54:12

**full-on**
25:25

**function**
7:10

**furnace**
21:2

———————

**G**

———————

**gaps**
7:13

**gas**
25:14
30:1
36:17,19
59:15
60:3,5
73:2,9
76:9
78:12

**gave**
25:17
27:1  33:2
37:1
38:21
47:12

**geez**
22:4
31:12

**Georgia**
4:17  5:8
10:20
17:7,9,13
22:14,15
26:16
27:23
56:21
82:23

**girl**
25:14

**give**
21:12
26:19
33:19
59:10
73:17
80:10
82:3
111:14

**giving**
9:13

**glasses**
51:23,24

**go-to**

61:17

**God**
6:9

**good**
20:4  33:6
89:24
90:8

**grab**
106:20

**graduate**
18:8
19:3,15

**graduated**
19:13,20

**Great**
64:3

**gross**
84:13,22
85:4,12,
15,23
88:20

**groupings**
17:16

**guess**
16:16
21:2  33:6
40:21
42:4
51:14
52:10
55:20
63:15
102:8
104:18
107:25
109:24

**guy**
22:4,23
32:20
38:3  51:9
61:17
63:19

**guy's**
16:15

**guys**
36:20

**GVW**
88:17

———————

**H**

———————

**half**
9:17

**hand**
39:15

**handed**
64:18
104:7
110:8

**handing**
5:13  30:8
34:5  44:6
79:1  81:3
97:23
100:9
103:21

**Handschuh**
4:18,23
5:2,4,5,
10,15  7:9
30:12
31:9
32:24
34:8
37:20,23
44:3,9
67:4  79:4
81:6
87:19,21
88:2
98:1,7
100:11
104:2,5
114:8,11



**handwriting**
35:7
39:25
40:2,9
41:7,10,
17 42:6,
20 43:13
44:19,24
52:18,24
55:20

**hang**
20:3 99:9

**happen**
7:3 14:21
18:17
25:7,12
33:18
57:3

**happened**
37:4
58:18
71:25
81:25
92:15
93:22

**hard**
106:18

**hate**
76:8

**hats**
89:21

**Hayes**
29:1

**He'll**
62:18

**head**
6:19,20
7:15 61:2
94:9
96:21
109:16

**hear**

25:12
31:13

**heard**
10:3
21:13
66:24
85:17
93:1 99:4
109:2

**held**
37:22

**Hemphill**
24:25
25:1,7,12
33:18

**Hey**
36:20
62:17
84:7

**high**
18:8,10,
12,14
20:11,12,
13

**higher**
49:19
62:1

**hired**
33:23
35:21
36:12
64:6,15,
17 101:23

**hiring**
30:2,4
36:20
64:11
66:6,12

**history**
11:5
41:12
42:20

**home**
16:15,17
23:10,15,
20,21,25
24:4,6,7
28:4,24
38:24
41:20
47:24
71:13,20,
22 73:22
74:5,8,
14,18,23
76:3,4,6,
17,18,25
111:17

**honestly**
19:22
69:17
71:7
107:17

**hook**
62:18

**hot**
21:3

**hot-headed**
63:15

**hour**
9:17

**hours**
9:17 70:1
74:1
86:17
95:25
96:3,5,9,
10,16,20,
25 98:25
99:11

**house**
11:10,23
19:6
27:22
28:11,17,
18,21

59:15
76:10

**housekeepin
g**
4:18

**huge**
37:6

**huh-uh**
47:23

**hung**
66:13,14
97:19
102:21
103:3

**husband's**
29:3

**hustles**
26:2

**HVAC**
20:24

**Hyde**
25:8,13
66:1,15,
19,23
67:15,19,
23

**Hyde's**
67:7

————————

**I**

————————

**idea**
19:18
45:25
46:6
88:21
108:25
109:1

**identificat
ion**
5:12 30:7

34:4 44:5
78:25
81:2
97:22
100:8
103:20

**identified**
40:17

**identify**
15:25
16:7
55:23
69:22

**ignore**
82:3

**illness**
9:4

**inaccurate**
80:3,18
81:15

**incentives**
58:9

**incidental**
66:3

**include**
12:25
83:16

**including**
54:1

**income**
26:2
89:16,17
105:13,17
107:15,16
108:1
109:5

**independent**
35:1 47:7
52:13
53:11,19,
25 54:7,
18,22



55:6,13
56:4
101:24
112:2,7
113:8,11,
12,17,21
114:2

**indicating**
41:10
104:8

**individual**
22:24

**influence**
15:2

**informal**
6:11

**information**
39:12
40:10,11
43:6 94:7

**initial**
44:20
79:8

**initially**
113:20

**initials**
45:1,25
55:21

**inquiring**
73:16

**inquiry**
48:8

**installed**
78:15

**installments**
19:12
20:22

**Institute**
18:20,25
19:4

**intending**
103:5

**intent**
55:12

**intents**
57:15

**interact**
94:17

**interacting**
94:16

**interest**
58:13

**interested**
68:24
91:22

**interrogatories**
38:1

**interrogatory**
30:14,18,
25 31:20
68:15,19
69:4
98:17
110:16

**interview**
31:17

**interviewed**
35:21

**introduced**
32:2

**invoice**
100:15,
22,24
101:7,10,
21 102:14
103:10

**invoices**
100:18,20
101:8,19,

25

**involve**
17:17,19,
22 24:23

**involved**
57:17,25
64:11
83:2

**involvement**
51:3,5

**involves**
33:12

**ipad**
78:20

**IRS**
109:5

**Island**
17:6 19:8

**issue**
15:16

**issued**
78:17,20
109:25
110:7

**item**
107:2,12,
15

**J**

**Jeremy**
5:5

**job**
24:7,8
25:25
26:20
36:24
54:15
59:7 65:1
66:6,7
69:24

71:25
72:25
78:3,5
80:25
82:2,7
84:5,6
87:5

**jobs**
24:15,18,
19,21
25:3 26:1
30:4 32:4
69:23
71:2,16,
18 79:14,
18,22
80:22
81:20,21
91:15,17
92:3,5
94:1,4

**join**
97:11

**joint**
104:13

**jointly**
104:17

**Joy**
27:18
42:23

**judge**
6:2 57:23

**July**
23:3
79:22

**jump**
59:10
60:4,5
67:17

**June**
23:3,8
24:19
31:23

33:24
35:10,15,
20 40:13,
17,23
43:23
44:1
45:6,20
53:2 55:1
58:20
79:7,9,23
80:7
89:2,4
90:15,20,
21 91:1,
7,12,16
92:9 96:8

**junior**
20:13

**jury**
8:23
12:22,23
13:3,25
57:24

**Justin**
25:13

**K**

**keys**
59:11

**kick**
96:2

**kid**
14:17,18

**kids'**
13:18

**kind**
7:20 9:3
22:9 26:5
33:2,20
61:19
78:7,20
89:16



REYNALDO BROWN
HYDE V. 316 TOWING & ROAD SERVICE

September 28, 2023
Index: kinds..marked

kinds
    17:19

King
    74:11

knew
    25:23
    38:7,10
    62:2

knowledge
    43:7

Kroger
    24:8,16

Kudrin
    32:21
    43:22

            L

labeled
    101:6

late
    91:1

law
    55:14

lawsuit
    5:8  57:4,
    25

lawyer
    66:25
    67:2

lead
    37:1

leading
    24:12

learn
    85:20
    94:20

learned
    33:7
    113:14

114:1

learning
    113:11,
    17,18

lease
    29:16
    47:8

leaves
    17:15

left
    39:15
    44:21
    95:3

left-hand
    52:16

legal
    6:3,5,11

legally
    29:8

license
    21:17

licenses
    21:7

lies
    18:6

lift
    82:8,10

linked
    31:4

Lisovskiy
    5:7  37:13
    63:24
    64:4 65:6

listed
    106:21

listening
    59:9

literally
    112:9

live
    10:18,22
    11:1
    12:11,14

lives
    10:21
    23:16

living
    11:25
    12:7
    17:11

LLC
    108:20

LLLP
    28:8

location
    73:11

lock-out
    60:3

lock-outs
    59:11

locks
    59:11

lodging
    53:12

log
    81:8
    88:4,12
    91:5,12
    97:9

logbook
    54:16,17
    87:6,11

logo
    30:4

logs
    54:1

long
    12:11
    19:8

23:1,6,19
    27:15
    35:25
    36:5
    49:25
    69:9,19
    73:19,20,
    21 83:11
    90:7

longer
    11:18
    36:3
    69:15

looked
    36:18
    56:12
    66:7

lost
    20:2
    71:9,10

lot
    24:21
    36:23
    59:16
    72:2
    73:1,3,
    19,20
    78:6,9

lower
    49:18

            M

Macon
    10:19
    11:2,8,
    10,20
    12:4,10
    22:16
    28:23,24

made
    61:16
    94:22

97:16
    108:20

mail
    19:23
    107:23
    109:11
    110:2,9

maintained
    81:8

make
    7:4,5 9:1
    15:14
    29:14
    31:1
    34:11
    36:8
    47:21
    68:25
    73:16
    76:11,22
    87:23
    101:22
    103:11

making
    57:23
    97:10

Maksim
    5:7 37:13
    38:12

man
    16:2

manager
    61:21
    62:8
    67:16

managing
    63:4,7

marked
    5:11,14
    8:8 30:6,
    9 34:3,6
    37:25
    39:4



44:4,7
46:17
51:18
55:2
78:24
79:2
81:1,4
91:4
97:21,24
100:7,10
103:19,
22,24
104:9

marriage
13:13

married
13:5,11
29:6

math
23:2

matter
4:19 8:18
12:22
36:10,11
56:25
58:3 59:2
93:19

Max
37:9,10,
12 38:4,
8,9,17,21
46:3
50:23,24,
25 51:11
63:11,12
64:11,20
65:6
73:17
74:22
86:4
92:23
97:16

Max's
64:5

Mcdonald's
74:11

meaning
18:3
23:20,24
48:24
50:22
59:22
62:11
70:23
72:19
77:13
85:25

means
10:4 33:6
54:9
69:24
77:12,21

meant
19:22
106:18
110:8
112:24
113:21

mediation
56:18
57:1

medical
88:15

meet
57:3 66:1

meeting
42:1
58:25

memory
31:5
91:24
92:1

mention
14:20
67:5

mentioned

24:20
31:18
41:16,20
42:19
43:11
55:1 69:5
72:6
78:6,13
105:8
111:8

Mercer
10:19

message
61:19
70:9

messages
51:6
70:13
71:13
94:3

met
25:14
36:17,18
57:6
66:7,8

Mexico
17:9,10,
11,12

Mill
12:1,7,12

mind
8:25
87:23
110:19

mine
45:21

minor
15:23

minors
13:19
14:21
20:9

minute
51:21

minutes
76:5

misdemeanor
s
17:15

missing
46:13
49:15
92:3

mistaken
61:16
72:21
101:4
102:10

misundersta
nding
83:7

mom
27:19

mom's
28:4

moment
5:16
30:17
37:21
39:17
81:14
95:6
105:3
111:14

money
18:3
26:19
83:8
106:1,10
108:4

month
11:10,12
40:22
80:7 92:9

months
11:3,9,15
17:4
21:24
22:3 23:7
34:1 36:9
40:24
59:3
79:22

moonlight
26:1

mop
28:6

Motor
41:12
42:19

move
16:19
17:7
22:10

moved
11:7
12:4,10
17:9,12,
13 19:7
22:17
27:22

movie
15:7
22:8,10

moving
65:2

muffins
16:16,17

_____

N

_____

name's
14:4

named
22:4



names
    13:17,18
    14:9,20
    25:2 90:6
nearby
    78:12
necessarily
    48:22
needed
    60:2
    62:5,16
    78:1
    87:10
negative
    47:23
negatively
    94:9
    96:21
    109:16
negotiate
    49:17
    103:16
negotiation
    57:8
nice
    63:14,16,
    17,19
    90:1,2
nighttime
    72:7
nod
    6:19,20
nods
    7:15 61:2
Northern
    5:8 12:24
note
    7:1
noted
    15:22

notes
    111:15
notice
    5:10 7:19
    8:12
notices
    12:24
number
    5:9,11
    25:18
    30:6,14,
    18 31:1,5
    34:3
    36:21
    38:2 44:4
    45:3
    46:18,20
    63:23,25
    64:19
    65:3,13
    68:15
    69:4
    75:17,22
    76:11,15,
    23 77:4
    78:24
    79:18
    81:1 87:2
    97:21
    98:15,21,
    22 100:7
    101:7
    103:19
    107:2,12
    110:16,17
    111:19
    112:12
numbered
    105:1
numbers
    97:3
    98:4,8

O

oath
    8:21
object
    113:25
objections
    4:19
    112:1
    113:10,24
obligations
    6:5
observe
    67:22,23
obtained
    21:19
occurred
    23:14
    72:8
off-the-
record
    37:22
offered
    28:19
    58:9,12
    81:8
office
    50:16
    51:1,8
    60:12,17
    64:17
    72:19
official
    67:11
oil
    19:12
    20:22
    21:2,3,6
older
    13:25

oldest
    13:22
on-call
    76:2
onboarding
    58:8
online
    28:18
    36:18
    66:8
open
    19:6
operate
    33:17
operated
    28:16
operating
    24:23
    88:16
    105:10
opinion
    46:13
    48:8,10
opportunity
    10:6
options
    82:4
order
    72:23
    95:20
organizatio
n
    33:2
over-
talking
    7:14
overtime
    94:25
    95:8,14,
    21 96:2,

5,20
    97:12
    98:3,11
    99:25
    102:16
    103:6
owes
    95:1
owned
    86:2
ownership
    58:13
owning
    89:18

P

p.m.
    68:7,8,9
    69:6,25
    72:16
packet
    37:6
    47:13
pages
    34:15,21,
    23 39:7,
    11,14
    41:5 43:1
    45:14
    46:9,13
    51:19
    56:9
    87:19,23,
    25 106:15
paid
    48:22
    49:5,7
    50:5,12
    97:12,13
    98:12
    106:4



paper
    7:20 14:4
    52:9,11
    87:15
    88:10
    109:19

papers
    47:12,13

paperwork
    38:21,24
    48:25
    54:2
    60:12
    64:18

paragraph
    43:4
    55:5,8
    56:13
    68:25

parked
    78:6,10

parking
    59:16
    73:1,2,
    19,20
    78:6,9

part
    12:23
    31:21
    38:10
    46:9 52:6
    64:15
    76:2
    84:15
    102:8

participate
    57:1

participati
on
    56:25

parties
    55:12
    56:17

57:8

party
    57:7

passively
    89:18

past
    17:8

pay
    20:2 26:5
    48:14,24
    49:1,14
    50:1 51:8
    95:2
    100:24
    101:25

paycheck
    95:4
    102:11

paychecks
    102:6

payment
    100:16
    111:12

payments
    83:2,6
    111:9

pays
    53:25

pending
    5:8

people
    12:25
    15:12
    26:1 30:3
    63:15

perform
    61:8 89:7

performed
    79:19
    98:25
    99:10

performing
    60:9
    67:23

period
    69:20
    70:14
    76:2
    91:14,15
    95:11
    100:19

person
    16:20
    29:11
    37:10
    38:15
    57:22
    81:25
    88:16

personal
    13:4
    76:3,8,
    21,24
    77:10,13,
    17,19
    105:15

personally
    64:6 65:6
    67:22
    83:8

phone
    22:6 25:3
    64:24,25
    66:25
    70:6,18,
    19 71:3,
    9,12
    75:2,3,7,
    9 78:15,
    17 82:3
    93:3
    97:20
    108:6
    111:2,6,9
    113:2

phones
    70:20
    71:3

pick
    17:8 70:3
    81:23

picked
    35:19
    48:15,19

piece
    77:10

pinning
    91:22

place
    12:3 57:6
    58:4
    60:12

places
    36:6
    73:17

Plaintiff
    76:4

plane
    15:10

Plantation
    12:1,7,12

point
    10:18
    11:1 12:7
    38:20
    73:10
    87:9
    102:13
    108:21

pointing
    14:19
    101:10

points
    62:18

policy
    88:12

pool
    13:3

portions
    42:6

position
    61:25

post-
accident
    53:20

potential
    32:4

pounds
    84:13,16

pre-
employment
    53:20

prepare
    97:5
    100:24

prepared
    100:15
    101:15
    108:18

present
    6:2
    51:12,15

presently
    21:21

pressed
    82:3,4

pretty
    48:9
    72:10

previous
    17:10
    33:18
    68:15

previously
    13:11
    104:7



primarily
    63:5

prior
    12:14
    27:24
    66:9 69:3
    80:13
    87:25
    113:1

prison
    17:3

private
    57:22

problem
    14:6

proceeding
    6:3,12
    70:10

process
    48:25
    58:1

produce
    47:16
    70:12,16
    80:10
    94:2
    103:11

produced
    101:19

product
    78:23

production
    79:6

prohibited
    77:25

prohibiting
    74:13

proof
    70:25

proper

65:21

property
    89:18

protocols
    65:8

provided
    86:16

public
    16:10
    26:7,10,
    18 89:16

pull
    46:17

punch
    97:3

purpose
    33:3
    36:25

purposes
    6:13 13:3
    32:9
    35:17
    47:5
    48:16
    51:4
    55:14,22
    57:15
    98:11
    100:23
    111:12

put
    19:24
    64:22

──────────

        Q
──────────

Quality
    28:8
    105:8,13
    106:4
    108:8

question
    4:20 5:22
    7:12,24
    15:1
    30:20,24
    31:3
    54:22
    90:17
    99:4
    104:25
    110:20,22
    112:3,6
    113:6

questions
    5:20 8:1
    10:12
    13:2
    39:17
    48:17
    53:8
    110:13
    114:9,10

quick
    59:3,4

quickly
    58:18

──────────

        R
──────────

R-E-Y-N-A-
L-D-O
    4:14

R-O-S-S
    18:16

raise
    50:7,8
    103:13

raised
    112:1
    113:9

raises
    49:11
    50:11

103:16

Ram
    84:8 86:3
    88:19
    91:18

ran
    60:5

random
    53:20

rapport
    90:8

rate
    48:24
    49:1,4,
    18,19
    50:22

rating
    84:13,22
    85:4
    88:20

ratings
    85:13,16,
    23

reached
    37:3

reaching
    29:20

read
    10:6
    30:10,17,
    22 31:1,
    10 46:19,
    22 51:20,
    21,25
    52:1 55:8
    65:3
    68:15,22
    69:1
    75:19
    76:20
    77:7 88:6
    98:16

110:18,22
    111:22
    114:13

reading
    51:23,24
    110:17,20

real
    19:19
    63:14

reason
    36:2
    43:25
    46:8 48:7
    60:24
    65:12,20
    72:20
    80:2,17
    81:12,19
    84:23
    92:7,11
    112:11

reasonable
    53:21

reasons
    15:17

recall
    18:12
    24:16,18
    26:11
    28:15
    29:20
    31:22
    32:25
    36:12,16
    38:20
    50:3
    58:21
    60:14
    62:22
    68:1 69:9
    70:5,10
    71:17,24
    72:7
    74:24



80:21
82:13,20
83:12,14
86:18,19
89:23
93:7,8,
12,13,20
100:3,21,
23
101:17,25
104:10
108:18
110:10

**recalled**
31:19

**receive**
7:13
49:11
54:7,12
101:25

**received**
70:14
88:10,11
100:4

**receiving**
102:10

**recent**
22:2

**recently**
11:17

**recess**
104:4

**recognize**
52:6

**recollect**
14:21

**recollectio
n**
35:19
91:23

**record**
4:13 9:22

37:20
104:3

**records**
97:7
103:9

**refer**
10:16
34:9 56:1
94:7
100:19

**referral**
32:10

**referrals**
32:4

**referred**
36:16
55:19
57:20

**referring**
33:8,13
97:15
102:22

**refers**
111:1

**reflect**
64:10
80:6

**reflected**
105:16

**reflects**
79:18

**refrain**
9:25

**refresh**
31:5
35:19
91:24

**refreshed**
92:1

**regular**

69:23

**regularly**
61:19
83:13

**reject**
80:22,25

**rejected**
81:9,18
84:6

**rejecting**
84:5

**rejections**
81:13

**related**
15:1 18:3
59:19,23

**relating**
18:5

**relation**
8:18

**relationshi
p**
66:9
89:24

**relative**
58:21

**remained**
60:21

**remember**
5:2
22:18,22
24:9,15
26:15
27:5,11
29:25
32:8
37:11
38:11
48:18,19
49:24
50:13,21

58:17
63:10
66:2,8
68:4,10
69:17
71:7
72:14,15
83:9,25
84:1
90:4,6
91:23
97:18
102:4
109:25
112:6

**rent**
29:16

**rephrase**
7:25

**report**
61:17
63:3
72:18
80:18

**reported**
61:14
63:3

**reporter**
7:8

**reporting**
108:1

**reports**
80:12

**represent**
5:6 8:12
36:1
57:19
64:5
68:24
79:5 81:7
98:2

**represented**
96:2

**request**
46:19,23
65:2,13
75:12,16,
22 76:15
77:4
98:18
102:14
111:19

**requests**
112:25

**required**
54:16
86:7 87:5

**reserve**
114:11

**reserved**
4:20

**residential**
11:5

**resolution**
57:20

**resolve**
57:12

**respect**
100:2

**responded**
113:20

**responding**
59:20
60:1,7
72:24
78:5 94:2

**response**
31:20
38:2
46:20
47:5
64:10
65:13
69:4
75:23



76:15,23
98:16
112:5,12,
21

**responses**
6:15
46:25
113:1

**responsibil
ities**
77:10,17

**responsible**
53:11
54:9

**responsive**
31:20

**rest**
38:11,16

**restricted**
76:18

**restriction**
76:14

**restroom**
9:21,22

**retain**
55:13

**retired**
57:23

**return**
73:22
104:14,22
105:12
108:19

**returning**
46:16
104:6

**review**
34:19
39:8,15
81:14
112:25

**reviewed**
97:7

**reviewing**
69:3

**Reynaldo**
4:14
52:17
55:23

**riding**
33:13

**Rikers**
17:6

**ring**
82:3

**road**
4:17 5:6
10:16
11:7,8
53:12,25
54:10
63:7
65:23
73:21

**roadside**
108:16

**robbery**
16:19,21,
22

**rode**
32:15,16

**role**
66:14
67:7

**room**
37:7,24
38:3

**Ross**
18:14

**rough**
23:2

**roughly**
19:17
27:11

**round**
37:8

**routine**
84:2

**rules**
56:20

────────────

S

────────────

**S-H-A-T-O-
Y-A**
13:9

**sale**
28:18

**sandwich**
74:5

**Saturday**
71:16,20,
25

**schedule**
65:7
68:1,4
69:5

**scheduled**
76:1 89:8

**scheduling**
67:5

**school**
18:8,10,
13,14
19:6,7,9,
12 20:5,
11,12
21:17

**schools**
18:21

**Sean**

4:19

**secondary**
25:25

**seconds**
37:16

**security**
22:6,8
23:9,24
24:1,6
54:11

**selection**
13:3

**selling**
89:19,21

**send**
12:23
100:25
108:3,6

**separate**
67:21

**separated**
10:24

**September**
23:3

**serve**
17:3

**service**
5:7 53:25
54:10
60:2

**set**
8:18
45:25
48:14
68:1
81:13
84:21
87:8
88:9,11,
14,24
102:14

**sets**
42:22
45:5
52:16
53:10
79:7 89:2
105:12

**Setting**
95:5

**settle**
57:3

**settled**
50:18

**settlement**
54:11,12

**settlements**
54:3

**shakes**
94:9
96:21
109:16

**Shatoya**
13:7
29:1,8
104:17

**she'll**
108:5

**sheet**
39:12
87:14

**shift**
69:23,25
72:7,23
73:23
89:8 96:9

**shifts**
69:5 96:3

**shirt**
30:5

**short**
4:22 5:1



31:6 67:1
69:20
98:5
114:10,13

shorter
98:19

shown
7:20

side
6:20,21
95:5

sign
37:7
45:11
47:13
64:18
114:13

signature
4:25 10:4
35:13
43:1,4,
11,15,22
45:3,9,17
46:2
48:12
53:5
56:9,10,
14 114:12

signed
38:25
39:1
46:10
47:8,13
48:5,11,
25 88:25

signing
29:20

similar
37:7
57:24
67:15

simpler
76:22

simply
6:10
15:18
64:11
84:21

single
29:14
35:18

sir
75:14
110:15

sit
59:15

sitting
8:23

size
85:24

sizes
85:11
86:2

skit
15:6

slice
16:6

smoke
93:4,5,9

smoking
93:17,19,
21,25

sneakers
89:21

Social
54:11

software
70:5
108:23

sold
27:22

son
14:12

27:13

sound
33:24
69:13
90:15

sounds
11:12
25:19
30:3 32:5
59:18
84:11
87:17
99:5

source
89:15
94:7

South
82:17,20

Southwest
4:17

space
55:23

speak
6:23,24
61:20
63:12
96:17

speaking
20:9

specific
73:11

specificall
y
113:6

speed
87:23

spell
4:12 13:8
18:15

spend
76:2,17

spending
76:18

spoke
8:5 51:8
61:18
75:2

spoken
66:19,22

spouse
13:1

Square
83:19

stack
34:10

stamps
26:23

stands
21:10

Starr
4:17
10:16
11:7,8

start
16:5 28:9
49:18
58:21
71:10
81:25

started
16:15
58:19
72:15,16
105:10
108:20

starting
17:8

starts
31:7
52:13
59:10
60:4,5

67:17

state
4:12,15
12:20
13:6,17
23:8
55:14
82:15,18,
20,22

stated
13:18
32:1
71:15
76:4

states
38:2
42:19
43:4
54:6,14
55:11
56:2,16
63:23
87:4

stating
28:15
96:8

station
25:14
30:1
36:18,19
59:15
73:2 76:9
78:12

status
54:23
55:8,13

stay
23:10

staying
11:9

stock
58:12



stocks
89:19

stopped
19:7
72:16

store
59:16
109:3

story
36:15
92:14

street
16:14,18
18:1 66:6
74:6
109:3

stuff
18:1
20:11,13
21:5
24:15
28:7
33:17
34:1
47:18
61:18
62:21
71:10
77:22
82:2 93:5
104:19
106:2
107:18,22
108:7,16
109:8,11

stupid
16:18

subject
48:23

subjected
53:19

submit
101:25

submitted
56:18
58:4

submitting
113:1

Suffolk
19:1,10,
11

Sugarloaf
22:20,21,
22

suggest
9:16

summarize
17:16
59:19

Sunday
71:16,20,
25

supervised
65:7

supervision
62:1

supervisor
61:13,17
65:22

support
54:2

supposed
28:9
30:10
49:1
95:21

surprised
15:5

surprising
94:19

suspended
20:5

sweep

28:6

switch
72:11

switched
72:12,13

sympathize
43:13

system
54:3
83:19
86:16

——————————

**T**

——————————

T-SHIRT
86:9,10,
12

table
37:8
38:22
39:2 51:2

Taco
74:11

takes
23:2

taking
6:12
23:16
50:21

talked
50:15

talking
31:17
50:6

tanks
21:3

tasks
77:14

taught
84:14

tax
104:13,22
105:12
107:17,22
108:23
109:2

taxes
54:9,10

Taylor
18:20
19:4

TCI
18:23
19:7

teach
54:17

Tech
19:1,11

Technical
18:25

telephone
83:18

terminated
90:22
103:2

termination
90:14,25
93:15

terms
21:7
56:17
94:25
96:25
113:23

test
53:21

testified
26:15
48:4
80:18

testify

8:18
14:25
113:19

testifying
6:4 46:12

testimony
9:2,25
15:3,16
66:23
102:9

text
51:7,25
61:19
70:3,9,13
71:13
92:16,17
94:2
99:21
102:18

theater
22:10,11

theaters
22:9

theft
17:20

thereabouts
27:15

thing
16:6
30:11
31:10
55:21
67:18
69:1
107:8

thirties
19:21

thought
61:6
65:20
91:20,21
101:5



thousand
   49:23

throwing
   16:16,17

thumb
   34:17
   39:3
   87:18
   104:10

thumbs
   7:17

Tiktok
   15:7

time
   5:3 9:10
   10:18
   11:1 12:9
   17:3
   21:23
   27:15
   35:18
   38:20
   39:23
   50:9 52:3
   54:2
   60:21
   61:21
   66:4 67:6
   69:20
   70:14
   72:22
   74:7
   76:1,17,
   18,20
   87:9
   91:14
   92:8
   93:14
   96:4
   98:15
   100:19
   102:13
   103:6
   111:16

times
   18:22
   72:2
   73:23
   99:19

timing
   58:17

tire
   59:25
   60:3
   67:17
   82:1
   106:12

tires
   59:10

title
   61:21
   62:7
   67:11

titled
   88:4

today
   8:22 9:1,
   6,13,14
   14:25
   15:3
   24:18
   66:23
   80:13
   85:18
   97:5
   102:10
   113:15,16

today's
   8:12 9:2

told
   15:8
   63:13
   64:20
   73:5
   74:19
   75:6
   92:23

95:3
   97:14
   112:18

top
   40:14
   42:14
   44:15
   52:16

topic
   88:10

total
   79:18
   100:3
   109:13,18

tow
   24:23
   25:5
   28:10
   29:14
   32:4
   59:7,8
   60:19
   62:24
   67:9 73:8
   77:21
   81:24
   82:13
   84:19,21,
   24 108:9,
   14,21
   112:10

Towbook
   70:6,8
   78:14
   79:6,13
   80:12
   83:4,5,6
   91:4,12,
   24 92:4
   94:1 97:9
   99:20

towed
   83:9
   108:12

towing
   5:6 24:25
   25:1,7,13
   28:8 30:1
   36:19
   52:7
   53:24
   54:10
   65:9
   67:17
   91:21
   92:2,8
   99:1
   100:16
   105:8,13
   106:5
   112:1

town
   22:18

track
   32:7
   86:17

tracking
   78:14

tracks
   32:3
   40:16

Trail
   12:1,7

train
   33:18
   62:12
   67:12

trained
   32:16
   33:5,16
   62:2,14,
   16

training
   33:4

transcript
   6:14 10:7

transcripti
on
   6:13 10:8

transcripts
   6:18

transfer
   108:4

transferred
   106:1,10

transportin
g
   54:15
   87:4

trial
   4:21 6:4
   12:23

tribunal
   56:19

trips
   70:13
   80:3 81:8
   82:14

truck
   24:24
   25:5,15
   28:11,14
   29:14,15
   32:5
   33:10
   59:7,23
   60:19
   67:9,24
   71:19,22
   73:8
   77:21
   81:24
   84:19,20,
   21,24
   85:8,24
   88:23
   89:14
   91:13,18,
   19,20



93:4,20,
21 105:9
106:11
108:14,
15,22
112:10,17

trucks
32:11
33:1
67:21
85:4,12
93:9
108:11

true
43:6
62:11
64:10

truth
6:5,6,7

truthfully
5:21

Tuesday
15:9

Turbo
108:23
109:2

turn
30:14
31:8 39:6
41:1 42:8
44:1
68:12
86:20
105:3

turned
16:18
54:2 71:6
82:2

Turning
45:13
51:17
53:4
63:19

75:11
77:4 88:3
98:14
110:12
111:18

twenties
19:21

two-hour
111:16

type
33:11
59:21
60:2,18
83:18

types
60:14
69:22

typically
57:21

typing
6:13

———————

U

uh-huh
5:24
10:9,11
11:14
13:14
15:11
28:22
29:10,12
30:23
35:3
41:24
42:24
47:3
53:14,23
54:5,13,
20,24
69:8 77:6
79:12
80:11,15

86:11,25
87:3
88:5,13,
18 89:1,3
91:8 93:6
106:23
110:3
111:21

ultimately
67:12

unable
14:25

underneath
43:10
45:9
62:18

understand
5:23 7:2,
24 8:2,
17,21
10:10
13:5
28:15
29:8
43:13
53:13,21
54:4,12
62:11
67:7,14
77:18
87:10
106:8

understandi
ng
11:5 56:3
79:13
90:22
105:16
112:21

understood
61:23

undertaken
82:14

unemploymen
t
26:24,25
27:6

uniform
112:17

uniforms
86:8

University
10:19

unpaid
94:25
97:17
102:16

unsure
113:21

updated
88:15

utilizing
70:5

———————

V

Valeria
90:4

variation
72:5

vehicle
60:8
81:25
84:12,13,
22 85:4,
12,16,23
88:20
91:21

vehicles
54:15
87:4
88:16
92:2,6

verbal
6:19

verbalizing
7:21

veri
80:5

versa
68:9 69:7

versions
47:24

vice
68:9 69:6

Viktoria
90:4

———————

W

W-2
54:8

W-2S
109:8

wait
59:14
73:1,2,5,
7,13
78:12

waive
4:24 10:4

walk
23:13
36:14
37:3
58:16

wall
19:24

Walmart
59:16
73:2

wanted
19:23



65:1
104:25
108:21

**Washington**
15:7

**watching**
15:6

**water**
21:3

**Wednesday**
15:9

**weed**
13:3

**week**
49:2
58:10
68:6
72:11
96:4,7,8,
16 99:1,
17 100:24
109:13

**weekly**
49:5,6,8,
9,10 50:6
96:9

**weeks**
35:24
36:2,10,
11 69:11
95:12
96:15
98:4
101:1,5
102:5
109:12

**weighs**
84:20,24
85:8
88:23

**weight**
84:13,22

85:4,12,
16,23
88:20

**Whatsapp**
51:6,7

**wheel**
82:8,10

**wife**
10:21,22
11:25
12:8
28:10
40:6
44:14
46:6
51:14
104:17
107:4
108:20
110:5

**wife's**
11:10
13:6 29:2
41:17
44:23
107:16

**Wilson**
19:1,11

**Winder**
82:23

**withhold**
54:10

**words**
56:22

**work**
12:4
21:21
23:1 25:7
27:8 28:7
35:23
49:15
53:8
60:18

65:7
67:19
72:19
80:6 89:7
92:8
96:16
97:14
98:25
99:11
102:23
105:25
106:3,11
107:4

**worked**
21:23
22:23
23:3,9
24:11
25:3,10
27:12
35:25
36:5
49:12
61:15
68:2
69:9,19
77:1
79:22
83:1
89:6,10
101:1,5
102:5
109:12
112:16

**working**
22:3,4
24:5
48:14
60:15
64:20
66:4
72:15
74:1 76:7
79:14
83:15
91:9,25

92:23
93:11
95:12
109:18
111:3

**Wow**
9:19

**write**
51:6

**writing**
64:22
74:25
75:7,8
102:14

**written**
7:3

**wrong**
14:4,9
32:8
40:11
41:14
42:12
46:14
48:20
99:4
102:8

**wrote**
38:3

_____

**Y**

_____

**year**
12:8 54:8
104:14,16
105:17
107:4
108:2
110:1

**years**
11:6
12:13,14
19:16
23:22

24:15,17
27:16,25
99:1

**York**
14:12
17:6,7,
11,12
18:11
26:12,13
27:9
63:19



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

DUSTIN HYDE, individually and on )
Behalf of All Other Similarly Situated )
                                       )
Plaintiff,                             )
                                       )
        v.                             )    Civil Action File No: 2:22-cv-103-RWS
                                       )
316 TOWING & ROAD SERVICE,             )    **JURY TRIAL DEMANDED**
INC., and MAKSIM LISOVSKIY             )
                                       )
Defendants.                            )
                                       )

## THIRD AMENDED NOTICE TO TAKE DEPOSITION OF REYNALDO RICARDO BROWN

TO: Reynaldo Ricardo Brown and his attorneys of record: Josh Sandford, Esq. and

Colby Qualls, Esq., Sanford Law Firm, PLLC and Matthew W. Herrington, Esq.,

Delong, Caldwell, Bridgers, Fitzpatrick & Benjamin

PLEASE TAKE NOTICE that at 2:00 PM (EST) on September 28, 2023 at the office

located at 3390 Peachtree Road, Suite 520, Atlanta, GA 30326, the Defendants in

the above-styled action will, pursuant to F.R.C.P. Rule 30(b), proceed to take the

deposition of Plaintiff Reynaldo Ricardo Brown before an authorized court reporter.

The deposition will continue from day to day until completed. The deposition will

commence before an officer duly authorized by law to administer oaths for the



purposes of discovery and any other purpose allowed under the Federal Rules of

Civil Procedure.

Respectfully submitted this 28th day of July 2023.


MITCHELL - HANDSCHUH                    /s/ Jeremy R. Handschuh
LAW GROUP                               Jeremy R. Handschuh, Esq.
3390 Peachtree Road, NE, Suite 520      Georgia Bar No. 418099
Atlanta, Georgia 30326                  Amanda I. Elliott, Esq.
T: (404) 262 - 9488                     Georgia Bar No. 137633
F: (404) 231 - 3774                     *Counsel for Defendants*
E: jeremy@m-hlawgroup.com
E: amanda@m-hlawgroup.com


*Counsel for the Defendants certifies that this document complies with N.D.Ga. L.R.
5.1B and the N.D.Ga. Standing Order No. 04-01.*

2

# DQ FILE

## TAB 1

___ Copy of Current DL/CDL

___ Copy of Current Medical Card (2 years)

    ___ Med Card National Registry

___ Application

    ___ Employment history CDL 10 years

___ Data Sheet

___ VOE subject to FMCSA___1st,___2nd,___3rd

___ Current MVR

___ Pre-Employment Drug Test

___ Single License

___ Driving Record Authorization

___ Annual Driving Record Review

___ Substance Abuse Awareness Training and Certificate

___ 7 Days HOS (before 1st trip for 6 mnts)

___ Clearinghouse Record and Authorization

EXHIBIT
2



I certify that: I have examined this driver in accordance with (place check mark):

The information I have provided regarding this physical examination is true and complete. A complete Medical Examination Report Form, MCSA-5875, with any attachments embodies my findings completely and correctly, and is on file in my office.

☐ Wearing corrective lenses
☐ Wearing hearing aid

☐ Accompanied by a _____ waiver/exemption
☐ Accompanied by a Skill Performance Evaluation (SPE) Certificate

☐ Driving within an exempt intracity zone (49 CFR 391.62) (Federal)
☐ Qualified by operation of 49 CFR 391.64 (Federal)
☐ Grandfathered from State requirements (State)

Last Name: BROWN    First Name: KEYNALDO

Medical Examiner's Signature

Medical Examiner's Name (print or type): KEYNOLDS _____

Medical Examiner License Number: 8-26-2

☐ MD    ☐ Physician Assistant
☐ DO    ☐ Chiropractor
                ☐ Other Practitioner (specify)

Issuing State: GA

Date Certificate Signed: 1-14-2024

Medical Examiner National Registry Number: 33-45

Medical Certificate Expiration Date: 1-14-2026

Driver's Signature

Driver's Address

Street Address _____    City: Before    State/Province: GA    zip code: 30271    ☐ US    ☐ MX

**Refered by:** _____
**If a 316 Towing and Road Service's independent contractor referred you,**
**please name driver above.**

**Date of Application:** 6 / 1 / 2021

## Driver's Application for Qualification

### *Personal Information*

Name (First, Last Name): REYNALDO, BROWN

Date of birth: ▮▮▮▮▮▮

Can you provide legal proof of legal age?: YES

Are you a U.S. Citizen? YES

Current Address (Street, City, State and Zip): ▮▮▮▮▮▮▮▮▮ BUFORD, GA 30519

How long at this address (years/months): 2 YEARS

Previous addresses for past 3 years (Street, City, State and Zip):

▮▮▮▮▮▮▮▮ _____

CONYERS, GA 30094 _____

_____

Social Security Number: ▮▮▮▮▮▮

Cell phone ▮▮▮▮▮▮

Emergency contact (name and phone number): SHATOYA BROWN ▮▮▮▮

Do you have the legal right to work in the U.S.? YES

Have you ever worked for this company before? NO   If yes, when and reason for leaving

_____

Have you ever been bonded? NO   if yes, name of bonding company_____

Have you ever been convicted of a crime? YES if yes, please explain AS A YOUTHFUL OFFENDER OVER 15+ YEARS AGO

Are you currently on a parole or probation? NO   if yes, please explain_____

Is there any reason you might not be able to perform the functions of the job for whic you have applied? NO

If yes, explain_____

**Accident Record for Past 3 years – Preventable and/or Non-Preventable**

| Date | Location | # of Injuries | # of Fatalities | Hazmat Y/N | Police Report # |
|------|----------|---------------|-----------------|------------|-----------------|
|      |          |               |                 |            |                 |
|      |          |               |                 |            |                 |
|      |          |               |                 |            |                 |
|      |          |               |                 |            |                 |

**Traffic Convictions and Forfeitures for Past 3 years**

| Date | Location | Charged | Convinced Y/N | Commercial Vehicle Y/N |
|------|----------|---------|---------------|------------------------|
| NONE |          |         |               |                        |
|      |          |         |               |                        |
|      |          |         |               |                        |
|      |          |         |               |                        |

Have you ever been denied a license, permit or priviledge to operate a motor vehicle? NO

Has any license, permit or priviledge ever been suspended or revoked? NO

Have you ever been disquilified under the Federal Motor Carrier Safety Regulations for the following? NO

No serious violations? NO           If so, please explain

Operating under the influence of alcohol or drugs? NO

Have you ever been convied of a felony that would preclude your entering any Canadain Providence? NO

## Driving Experience

| Class of Equipment | Circle type of equipment | Dates From (M/Y) to (M/Y) | Approximate Number of Miles |
|---|---|---|---|
| | Van/Reeer/Flatbed/Straight | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

List states operated in for the last 5 years ___GEORGIA___

Do you have any mountain driving experience? ___NO___ if yes, what areas of country_____

Have you had any Defensive Driving Courses? ___YES_____

If yes, what courses and when_____

List any truck schools you have attended _____

Are you capable of driving a vehicle with a standard transmission? ___YES_____

Circle the shift patterns you can drive:  5 speed   10 speed   13 speed   18 speed   other

## Motor Carrier History

**All contractor applications to drive in interstate commerce must provide the following information on all work or employment during the proceeding 3 years. Contractor applicants holding a CDL to drive a commercial motor* vehicle in interstate commerce shall provide 10 years information for work for which the applicant operated such vehicle. (Note: list work history in reverse order starting with the most recent. Add more sheets if necessary.) If driving experience was prior to 10 years ago, list it, to support your driving skills.**

| | |
|---|---|
| Motor Carrier Name: DAVE & BUSTERS | Position Held: Game technicion |
| | Salary/Wage: 12hr |
| Address: islandia | Dates Employed: From              To |
| City, State, Zip: NY | Position held was subject to the FMCSR'S Y___ N___ |
| Contact: | Reason for Leaving: |
| Telephone Number:<br>Fax Number: | Job was designated as a safety sensitive function, subject to alcohol and controlled substance testing as required by 49 CFR Part 40   Yes___No___ |

| | |
|---|---|
| Motor Carrier Name: Bundle of Joy | Position Held: Janitor |
| | Salary/Wage: 11hr |
| Address: 197 Claywood Dr | Dates Employed: From              To |
| City, State, Zip: Blentwood NY | Position held was subject to the FMCSR'S Y___ N___ |
| Contact: 631-575-6782 | Reason for Leaving: |
| Telephone Number:<br>Fax Number: | Job was designated as a safety sensitive function, subject to alcohol and controlled substance testing as required by 49 CFR Part 40   Yes___No___ |

| | |
|---|---|
| Motor Carrier Name: | Position Held: |
| | Salary/Wage: |
| Address: | Dates Employed: From              To |
| City, State, Zip: | Position held was subject to the FMCSR'S Y___ N___ |
| Contact: | Reason for Leaving: |
| Telephone Number:<br>Fax Number: | Job was designated as a safety sensitive function, subject to alcohol and controlled substance testing as required by 49 CFR Part 40   Yes___No___ |

| | |
|---|---|
| Motor Carrier Name: | Position Held: |
| | Salary/Wage: |
| Address: | Dates Employed: From              To |
| City, State, Zip: | Position held was subject to the FMCSR'S Y___ N___ |
| Contact: | Reason for Leaving: |
| Telephone Number:<br>Fax Number: | Job was designated as a safety sensitive function, subject to alcohol and controlled substance testing as required by 49 CFR Part 40   Yes___No___ |

## Motor Carrier History

**All contractor applications to drive in interstate commerce must provide the following information on all work or employment during the proceeding 3 years. Contractor applicants holding a CDL to drive a commercial motor* vehicle in interstate commerce shall provide 10 years information for work for which the applicant operated such vehicle. (Note: list work history in reverse order starting with the most recent. Add more sheets if necessary.) If driving experience was prior to 10 years ago, list it, to support your driving skills.**

| Motor Carrier Name: | Position Held: |
|---|---|
| | Salary/Wage: |
| Address: | Dates Employed: From                    To |
| City, State, Zip: | Position held was subject to the FMCSR'S Y____ N_____ |
| Contact: | Reason for Leaving: |
| Telephone Number:<br>Fax Number: | Job was designated as a safety sensitive function, subject to alcohol and controlled substance testing as required by 49 CFR Part 40     Yes____No_____ |

| Motor Carrier Name: | Position Held: |
|---|---|
| | Salary/Wage: |
| Address: | Dates Employed: From                    To |
| City, State, Zip: | Position held was subject to the FMCSR'S Y____ N_____ |
| Contact: | Reason for Leaving: |
| Telephone Number:<br>Fax Number: | Job was designated as a safety sensitive function, subject to alcohol and controlled substance testing as required by 49 CFR Part 40     Yes____No_____ |

| Motor Carrier Name: | Position Held: |
|---|---|
| | Salary/Wage: |
| Address: | Dates Employed: From                    To |
| City, State, Zip: | Position held was subject to the FMCSR'S Y____ N_____ |
| Contact: | Reason for Leaving: |
| Telephone Number:<br>Fax Number: | Job was designated as a safety sensitive function, subject to alcohol and controlled substance testing as required by 49 CFR Part 40     Yes____No_____ |

| Motor Carrier Name: | Position Held: |
|---|---|
| | Salary/Wage: |
| Address: | Dates Employed: From                    To |
| City, State, Zip: | Position held was subject to the FMCSR'S Y____ N_____ |
| Contact: | Reason for Leaving: |
| Telephone Number:<br>Fax Number: | Job was designated as a safety sensitive function, subject to alcohol and controlled substance testing as required by 49 CFR Part 40     Yes____No_____ |

| Motor Carrier Name: | Position Held: |
|---|---|
| | Salary/Wage: |
| Address: | Dates Employed: From          To |
| City, State, Zip: | Position held was subject to the FMCSR'S Y____N____ |
| Contact: | Reason for Leaving: |
| Telephone Number:<br>Fax Number: | Job was designated as a safety sensitive function, subject to alcohol and controlled substance testing as required by 49 CFR Part 40    Yes____No_____ |

| Motor Carrier Name: | Position Held: |
|---|---|
| | Salary/Wage: |
| Address: | Dates Employed: From          To |
| City, State, Zip: | Position held was subject to the FMCSR'S Y____N____ |
| Contact: | Reason for Leaving: |
| Telephone Number:<br>Fax Number: | Job was designated as a safety sensitive function, subject to alcohol and controlled substance testing as required by 49 CFR Part 40    Yes____No_____ |

* Includes vehicles having a GVWR of 26,001 lbs. or more, vehicles designed to transport 15 or more passengers, or any size vehicle used to transport hazardous materials in a quantity require placarding.

**The federal Motor Carrier Safety Regulations (FMCSRs) apply to anyone operating a motor vehicle on a highway in interstate commerce to transport passengers or property when the vehicle: 1. weighs or has a GVWR of 10,001 lbs. or more. 2. is designed or used to transport 9 or more passengers, or 3. is of any size and is used to transport hazardous materials in a quantity required placarding

---

This certifies that this application was completed by me, and that all entries on it and information in it are true and complete to the best of my knowledge.

Applicant's Signature _____   Date _6/1/21_

Applicant's Printed Name _REYNALDO RICARDO BROWN_

Reviewed by _Eli Kudrin_   Date _06/18/21_

Title _Manager_

# INFORMATION DATA SHEET

## NOTICE TO DRIVERS

THE COMMERCIAL MOTOR VEHICLE SAFETY ACT OF 1986 PROVIDES FOR A NEW SET OF CONTROLS OVER DRIVERS OF COMMERCIAL VEHICLES. THE NEW LAW APPLIES TO ALL DRIVERS OPERATING VEHICLES AND COMBINATIONS WITH A GROSS WEIGHT RATING OVER 26,000 POUNDS, AND TO ANY VEHICLE, REGARDLESS OF WEIGHT, TRANSPORTING HAZARDOUS MATERIALS.

THE FOLLOWING PROVISIONS OF THE LEGISLATION BECOME EFFECTIVE JULY 1, 1987:

1.  NO DRIVER MAY POSSESS MORE THAN ONE LICENSE, AND NO MOTOR CARRIER MAY USE A DRIER HAVING MORE THAN ONE LICENSE. A LIMITED EXCEPTION IS MADE FOR DRIVERS WHO ARE SUBJECT TO NON-RESIDENT LICENSING REQUIREMENTS OF ANY STATE. THIS EXCEPTION DOES NOT APPLY AFTER DECEMBER 31, 1989.

2.  A DRIVER CONVICTED OF A TRAFFIC VIOLATION (OTHER THAN PARKING) IN ANY VEHICLE MUST NOTIFY THE MOTOR CARRIER AND THE STATE WHICH ISSUED THE LICENSE TO THAT DRIVER OF THE CONVICTION WITHIN 30 DAYS.

3.  ANY PERSON APPLYING FOR A JOB AS A COMMERCIAL VEHICLE DRIVER MUST INFORM THE PROSPECTIVE EMPLOYER OF ALL PREVIOUS EMPLOYMENT AS THE DRIVER OF THE COMMERCIAL VEHICLE FOR THE PAST 10 YEARS, IN ADDITION TO ANY OTHER REQUIRED INFORMATION ABOUT THE APPLICANT'S EMPLOYMENT HISTORY.

4.  THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS REQUIRE THAT A DRIVER WHO LOSES ANY PRIVILEGE TO OPERATE A COMMERCIAL VEHICLE, OR WHO IS DISQUALIFIED FROM OPERATING A COMMERCIAL VEHICLE, MUST NOTIFY THE MOTOR CARRIER THE NEXT BUSINESS DAY.

5.  PENALTIES – ANY VIOLATION OF THE ABOVE IS PUNISHABLE BY A FINE NOT TO EXCEED $2,500. WILLFUL VIOLATION OF (1) OR (3), ABOVE, OR FAILURE TO NOTIFY THE MOTOR CARRIER WITHIN 30 DAYS OF THE LOSS OF ANY PRIVILEGE TO OPERATE A COMMERCIAL VEHICLE CAN RESULT IN CRIMINAL PENALTIES NOT TO EXCEED $5,000 AND/OR 90 DAYS IN JAIL.

**THIS CERTIFIES THAT I COMPLETED THIS APPLICATION, AND THAT ALL ENTRIES ON IT AND INFORMATION IN IT ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE. I AUTHORIZE THIS COMPANY TO FURTHER INVESTIGATE MY PAST EMPLOYMENT REFERENCES, CRIMINAL AND CREDIT STANDING AND DRIVING RECORD.**

SIGNED: _____        DATE: 6|1|21

## PAST EMPLOYMENT VERIFICATION

Sent to:_____                    Fax Number _____

Previous Employer

Requested by: **316 Towing and Road Service**              **Phone:**   470-300-7788
**796 Bill Rutledge Rd, Winder, GA 30680**         **Fax:**      678-298-7958

Name of Applicant:_____    Social Security #:_____

Signature of the Driver: _____    Date: _____

Job Title: _____

Hire Date:_____    Termination Date:_____

Resigned: Yes /No                                        Discharged: Yes /No
If Discharged, why?_____

Eligible for Rehire? Yes _____ No _____ Upon Review _____ If No, please explain:_____

Equipment: Type of Tractor/Truck:_____    TrailerLength:_____

            Refrigerated_____ Flatbeds_____ Vans_____ Tanker_____ Other _____

Commodities Hauled: Areas of _____

Operation:_____

Overall Performance: Poor_____    Fair_____ Good_____    Excellent _____

**Accident Information below requested in accordance with FMCSR Part 391.23. (Accidents within last 36 months.)**

Accidents: # Preventable:_____    Description:_____

            # Non-Preventable:_____    Description:_____

**Drug/Alcohol information below requested in accordance with DOT 49 CFR Part 40. (Tests done in last 36 months.)**

Tested positive for controlled substance in last 3 years?                        Yes_____ No_____

Had a breath alcohol test result with a concentration of .04 or greater in the last 3 years?    Yes_____ No _____

Ever refused a required test for drugs or alcohol in the last 3 years?              Yes_____ No_____

Violated other D.O.T. drug/alcohol regulations?                                Yes_____ No_____

Have you received information from a previous employer that this individual has violated
D.O.T. drug/alcohol regulations?                                            Yes_____ No____

If Yes, please give type of test, date of test, and SAP information (if applicable):

Person Providing Information : _____

1.  I hereby authorize the above-mentioned employer/school to release all information as to my character, work habits, performance, experience, fitness, together with reasons for termination concerning my employment to 316 Towing and Road Service (or their authorized agents) which may request such information in connection with my application for employment with 316 Towing and Road Service.

2.  In conformity with 49 CFR part 40, I hereby authorize the above-mentioned employer/school and their agents to furnish 316 Towing and Road Service. the above-requested information concerning D.O.T. drug and alcohol tests including pre-employment tests during the previous 3 years; the dates when I tested positive; the dates when I refused (including a verified adulterated or substituted result) to be tested for drugs and alcohol; and any other violations of 49 CFR part 40 and any information the above-mentioned employer/school and/or their authorized agents have received regarding violations of 49 CFR part 40 from my previous employers covered by D.O.T.

3.  I hereby release the above-mentioned employer/school and their authorized agents from any and all liability of any type as a result of providing the above-requested information to 316 Towing and Road Service

By signing below, I certify that I have read and fully understand Parts 1, 2, and 3 of this release and that I executed this release voluntarily, with the knowledge that any and all information released could affect my being employed with M316 Towing and Road Service

It is expressly acknowledged, understood and agreed that the information provided by the applicant regarding the applicant's employment during the previous three (3) years in accordance with Section 391.21(x)(10) of the Federal Motor Carrier Safety Regulations ("FMCSR") may be used, and the applicant's prior employers may be contacted, for the purpose of investigating the applicant's safety performance history information as required by paragraphs (d) and (e) of Section 391.23 of the FMCSR. The applicant has certain due process rights under the FMCSR regarding the information received as a result of these investigations, as described below.

Applicant's Due Process Rights: 1) The right to review information provided by previous employers; 2) The right to have errors in the information corrected by the previous employer and for that previous employer to re-send the corrected information to 316 Towing and Road Service; and 3) The right to have a rebuttal statement attached to the alleged erroneous information, if the previous employer and the driver cannot agree on the accuracy of the information.

Drivers who have previous Department of Transportation regulated employment history in the preceding three years, and wish to review previous employer-provided investigative information, must submit a written request to the Safety Compliance Manager of 316 Towing and Road Service., which may be done at any time, including when applying, or as late as thirty (30) days after being employed or being notified of denial of employment. 316 Towing and Road Service will provide this information to the applicant within five (5) business days after receiving the written request. If, however, 316 Towing and Road Service. has not yet received the requested information from the previous employer(s), then it will provide the information to the applicant within five (5) business days after it receives the requested safety performance history information. If the driver has not arranged to pick up or receive the requested records within thirty (30) days of 316 Towing and Road Service. making them available, 316 Towing and Road Service will consider the driver to have waived the request to review the records.

DRIVER'S LICENSE REPORT                                         https://app.sambasafety.com/person/5844580

---

**SambaSafety**          PO Box 1970          Rancho Cordova, CA 95741-1970

**GEORGIA Driver Record - E5588**              **Order Date: 06/01/2021**              **Seq #: 0**

| | | | |
|---|---|---|---|
| Host Used: | Online | Bill Code: | |
| Rec Type: | STANDARD | Reference: | |
| Period: | THREE YEAR | License: | |
| | | Name: | BROWN, REYNALDO RICARDO |
| | | Address: | |
| | | City, St: | BUFORD, GA 30519-7212 |

| | | | | | |
|---|---|---|---|---|---|
| Sex: | | Weight: | | DOB: | Age: 38 |
| Eyes: | | Height: | | Iss Date: 07/02/2020 | |
| Hair: | | | | Exp Date: 05/09/2028 | |

Year License First Issued: 07/02/2020                              **STATUS: VALID**

MVR Score: 0 CLEAN

---

**Violations/Convictions    Failures To Appear    Accidents**

\*\*\* NONE TO REPORT \*\*\*

**Suspensions/Revocations**

\*\*\* NO ACTIVITY \*\*\*

**License and Permit Information**

License: PERSONAL          Issue: 07/02/2020          Expire: 05/09/2028    Status: VALID

                           Class: C                   SINGLE VEH < 26K

**CDL Medical Information**

| Self Certificate Type | Issued | Effective | Expiration | Downgraded | Status |
|---|---|---|---|---|---|

**Miscellaneous State Data**

TOTAL STATE POINTS: 0

EXPIRATION DATES IN THIS DOCUMENT MAY HAVE BEEN EXTENDED PURSUANT TO EXECUTIVE
       OR LEGISLATIVE ACTION OF THE ISSUING JURISDICTION RELATED TO COVID-19.
       PLEASE CONSULT WITH THE JURISDICTION FOR FURTHER DETAILS.

SCORE 0: CLEAN

CONFIDENTIAL INFORMATION - TO BE USED AS PER STATE AND FEDERAL LAWS.
MISUSE MAY RESULT IN A CRIMINAL PROSECUTION

---

END OF REPORT FOR BROWN, REYNALDO RICARDO          (CONTROL NUMBER: ACMKCY)

## CERTIFICATION OF COMPLIANCE WITH DRIVER LICENSE REQUIREMENTS

MOTOR CARRIER INSTRUCTIONS: The requirements in Part 383 and 391 apply to every driver who operates in intrastate, interstate, or foreign commerce and operates a commercial vehicle that can transport 15 people or transports hazardous materials that require placarding.

DRIVER REQUIREMENTS: Parts 383 and 391 of the Federal Motor Carrier Safety Regulations contain some requirements of which you as a driver must comply. These requirements are in effect as of July 1, 1987. They are as follows:

1.      POSSESS ONLY ONE LICENSE: You, as a commercial vehicle driver, may not possess more than one motor vehicle operator's license. If you have more than one license, keep the license from your state of residence and return the additional license to the states that issued them. DESTROYING a license does not close the record in the state that issued it; you must notify the state.
2.      NOTIFICATION OF LICNESE SUSPENSION, REVOCATION OR CANCELLATION: Sections 392.42 and 383.33 of the Federal Motor Carrier safety Regulations require that you notify the motor carrier you are contracted to the NEXT BUSINESS DAY of any revocation or suspension of your driver's license. In addition, Section 383.31 requires that any time you violate a state or local traffic law (other than parking), you must report it within 30 days to: 1) the motor carrier with whom you are contracted, and 2) the state that issued your license (if the violation occurs in a state other than the one which issued your license). The notification to both the employer and state must be in writing. This requirement can be met by supplying both with a copy of the citation.

The following license is the only one I posses:

Driver's License Number: ████████      State: GA   Expires: 08/09/2028

Driver's Printed Name: REYNALDO BROWN   Driver's Signature: _____   Date: 6/1/21

Review by: Eli Kudvin   Title: Manager

---

## AUTHORIZATION FOR CHECK OF DRIVING RECORD

I, REYNALDO R. BROWN, authorize 316 Towing and Road Service to perform checks into my driving record, as required by the US DOT Federal Motor Carrier Safety Regulations Part 391.23 (a) (1). I release all parties involved in such investigations from any and all liability resulting from this background check.

A driving record abstract will be obtained from the State of _____ If you have held a driver's license from a state other than the current license issuer in the previous 3 years, list State(s) and license number(s)

Driver's Name (Printed): REYNALDO BROWN   Driver's Signature: _____   Date: 6/1/21

Review by: Eli Kudvin Title: Manager

## ANNUAL CERTIFICATE OF VIOLATIONS AND REVIEW OF DRIVING RECORD

| Driver Name: REYNALDO R. BROWN | License #: | ST: GA |
|---|---|---|

### ANNUAL CERTIFICATE OF VIOLATIONS

*I certify that the following is a true and complete list of traffic violations (other than parking violations) for which I have been convicted or forfeited bond or collateral during the past 12 months.* **[ ] Violations are as listed below.  [ ] I have had no violations.**

| Date of Conviction | Offense | Location | Type of Motor Vehicle operated |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

*If no violations are listed above, I certify that I have not been convicted or forfeited bond or collateral on account of any violation required to be listed during the past 12 months.*

| | Date of Certification: |
|---|---|
| Driver Signature: | |

| Reviewed By: *E. K* | Title: *Manager* |
|---|---|

### ANNUAL REVIEW OF DRIVING RECORD

*In accordance with 49 Code of Federal Regulations Section 391.25, (Federal Motor Carrier Safety Regulations), all information pertinent to the above driver's safety of operation, including the list of violations furnished by him in accordance with 49 CFR Section 391.27, has been reviewed for the past 12 months.*

| Reviewer: | Date: 06/18/21 |
|---|---|

NORTHAMERICAN TRANSPORTATION ASSOCIATION INC.        DRUG AND ALCOHOL SUBSTANCE ABUSE COMPLIANCE HANDBOOK

# DRIVER
## CERTIFICATE OF SUBSTANCE ABUSE AWARENESS TRAINING
### §382.601

I, ___REYNALDO   RICARDO   BROWN_____ certify that

In accordance with 49 CFR, Part 382.601 (b)(1-10). I have received training and education materials relating to my company's or organization's adherence and implementation of 49 CFR, Part 382, Subparts A-F

I further certify that:

I have received a copy of the SUBSTANCE ABUSE AWARENESS TRAINING DRIVER HANDBOOK, and I have reviewed and understood the material contained therein. I have also been informed of the name of the person designated by my company to answer questions about 49 CFR, Part 382, Subparts A-F.

And

I have received a copy of the Company's Written Substance Abuse Policy and Drive Assistance Policy.

___REYNALDO RICARDO BROWN___        ___316 Towing and Road Service___
Driver Printed Name                                      Company Name

_____        ___Eli C._____
Driver's Signature                                        Program Administrator's Name

Signed this ____1 ST_____ day of ___JUNE_____, 2 021

*This form should be torn out and retained in the Driver's Qualification File.*

**— ONLY THIS ORIGINAL, SIGNED FORM IS VALID —**

THE PERFORATED EDGE MUST BE PRESENT IN ORDER FOR THIS FORM TO BE VALID

## SEVEN-DAY PRIOR LOG FORM

### (data sheet for new, casual, or temporary drivers)

NAME: REYNALDO R. BROWN

SSN #:

ADDRESS: 4711 PLANTATION MILL RD
BUFORD, GA 30519

DRIVER'S LICENSE #:

PHONE # (470) 323-7217
(631) 487-9730

STATE: GA

### Instructions:

*At the time of initial employment as a driver, or when being employed occasionally, the regulations of the Department of Transportation [FMCSR 395.8 (j)(2)] require the motor carrier to obtain from you a signed statement giving the total time on duty during the immediately preceding 7 days and the time at which you were last relieved from duty prior to beginning work for the motor carrier. In the spaces below, show the number of hours worked (on duty) in each of the last 7 days.*

| DAY | 1 | 2 | 3 | 4 | 5 | 6 | 7 | TOTAL |
|---|---|---|---|---|---|---|---|---|
| DATE | | | | | | | | |
| HOURS WORKES | | | | | | | | |

**Date and start time of the last __qualified__ 34-hour restart:** _____  _____:_____ am/pm

*I hereby certify that the information given above is correct to the best of my knowledge and belief, and that I was last relieved from work at:*

_____ on _____

| time | day | month | year |

**Signature:** _____

**Witness:** _____   **Date:** _____

**Company Representative**

*316 Towing and Road Service does not provide legal advice to its customers, nor does it advise insureds on employment related issues, therefore the subject matter is not intended to serve as legal or employment advice for any issue(s) that may arise in the operations of its insureds. Legal advice should always be sought from the insured's legal counsel. 316 Towing and Road Service shall have neither liability nor responsibility to any person or entity with respect to any loss, action or inaction alleged to be caused directly or indirectly as a result of the information contained herein.*

## DRUG & ALCOHOL CLEARINGHOUSE
## CONSENT FOR LIMITED QUERIES

**NOTICE TO DRIVER:** The Commercial Driver's License (CDL) Drug & Alcohol Clearinghouse is a federal database containing information about CDL drivers who have violated the Federal Motor Carrier Safety Administration's (FMCSA's) drug or alcohol regulations in 49 CFR Part 382. Whether you have committed such a violation or not, each motor carrier for whom you drive is required to check whether the Clearinghouse has any information about you, both at the time of hire and annually. When conducting an annual inquiry, the motor carrier has the option to request a "limited" report that only indicates whether the Clearinghouse has any information about you. Before a motor carrier may request a limited report, they must have your written authorization, per §382.701(b). This authorization may be valid for more than one year. If a limited query ever reveals that the Clearinghouse has any information about you, you will be required to log in to the Clearinghouse website within 24 hours to grant electronic consent for the motor carrier to obtain your full Clearinghouse record.

**NOTICE TO MOTOR CARRIER:** This consent form authorizes you to run a "limited query" to check whether the Clearinghouse has information about the driver identified below. If it does, then you must obtain a full Clearinghouse record within 24 hours, per §382.701(b). This consent form must be retained until 3 years after the date of the last limited query you perform for this driver, based on the authorization below.

### AUTHORIZATION

I, _REYNALDO  RICARDO  BROWN_ , hereby authorize
    (Driver's printed name)

### 316 Towing and Road Service
(Name of motor carrier)

to conduct limited annual queries of the FMCSA's Drug & Alcohol Clearinghouse, to determine if a Clearinghouse record exists for me. This consent is valid from the date shown below until my employment with the above-named motor carrier ceases or until I am no longer subject to the drug and alcohol testing rules in 49 CFR Part 382 for the above-named motor carrier.

I understand that if any limited query reveals that the Clearinghouse contains information about me, I must grant electronic consent within 24 hours, via the Clearinghouse website, for the motor carrier to obtain my full Clearinghouse record. Refusal to provide such consent will result in my removal from safety-sensitive duties.

Driver's Signature: _____

ID Number: ▮▮▮▮▮▮▮▮        Date: _10/1/21_

Copyright 2019 J. J. Keller & Associates, Inc. All rights reserved.

I have read the above Disclosure Regarding Background Reports provided to me by Prospective Employer and I understand that if I sign this Disclosure and Authorization, Prospective Employer may obtain a report of my crash and inspection history. I hereby authorize Prospective Employer and its employees, authorized agents, and/or affiliates to obtain the information authorized above.

Date: 6|1|2021

Signature

REYNALDO R. BROWN

Name (Please Print)

NOTICE: This form is made available to monthly account holders by NIC on behalf of the U.S. Department of Transportation, Federal Motor Carrier Safety Administration (FMCSA). Account holders are required by federal law to obtain an Applicant's written or electronic consent prior to accessing the Applicant's PSP report. Further, account holders are required by FMCSA to use the language contained in this Disclosure and Authorization form to obtain an Applicant's consent. The language must be used in whole, exactly as provided. Further, the language on this form must exist as one stand-alone document. The language may NOT be included with other consent forms or any other language.

NOTICE: The prospective employment concept referenced in this form contemplates the definition of "employee" contained at 49 C.F.R. 383.5.

*LAST UPDATED 2/11/2016*

# INSPECTIONS/TRAININGS

## TAB 2

___ Substance Abuse Training Booklet receipt

___ CSA / FMCSA Training Booklet Receipt

     Other Training Certificates / Inspections

# Driver Receipt

I acknowledge receipt of J. J. Keller's *CSA: Know the BASICs*
Driver Handbook, which covers the following topics:

- Introduction
- CSA Overview
- Getting to Know the BASICs
  - Unsafe Driving BASIC
  - Hours-of-Service Compliance BASIC
  - Driver Fitness BASIC
  - Controlled Substances and Alcohol BASIC
  - Vehicle Maintenance BASIC
  - Hazardous Materials Compliance BASIC
  - Crash Indicator BASIC
- Safety Measurement System (SMS) Methodology
- BASIC Scores
- Intervention
- Conclusion
- Frequently Asked Questions
- Quiz

Reynaldo Brown
_____
**Driver's Name (Printed)**

RB _____  6-18-21
**Driver's Signature**          **Date**

316 Towing and Road Service
_____
**Company**

Eli Kudrin _____  6-18-21
**Company Official's Signature**   **Date**

Note: This receipt shall be read and signed by the
receiving driver. A responsible company representative
shall countersign the receipt and place it in the driver's
personnel file.

Copyright J. J. Keller & Associates, Inc.

REMOVABLE PAGE - PULL SLOWLY FROM TOP RIGHT CORNER

# DRIVER'S RECEIPT

I acknowledge receipt of J. J. Keller's *Alcohol & Drug Testing: What Drivers Need to Know* Driver Handbook containing the following topics:

- Introduction
- Abbreviations and Definitions of Key Terms
- Who is Covered by the Alcohol and Drug Regulations?
- What is a Safety-sensitive Function?
- What are the Alcohol and Drug Prohibitions?
- What Tests are Required and When Will I Be Tested?
  - Pre-employment
  - Post-accident
  - Random
  - Reasonable suspicion
  - Return-to-duty
  - Follow-up
- What Happens if I Refuse to Be Tested?
- How is Alcohol Testing Performed?
- How is Drug Testing Performed?
- What are the Consequences of Violating the Alcohol and Drug Prohibitions?
- Your Alcohol and Drug Testing Records
- Where Can I Go for Help?
- The Effects of Alcohol and Drugs on the Body

REMOVABLE PAGE - PULL SLOWLY FROM TOP RIGHT CORNER

_____   6-18
Driver's Signature                 Date

316 Towing and Road Service
Company

_____   06/18/21
Trainer's Signature                Date

316 Towing and Road Service
Company

---

**NOTE:** This receipt shall be read and signed by the driver. A responsible company supervisor shall countersign the receipt and place it in the driver's training file.

---

Copyright J. J. Keller & Associates, Inc.

# INSURANCE/ POLICIES

## TAB 3

___  Occupational Accident

___  Company Safety Policy

___  Cell Phone Policy

___  Log Compliance Policy

___  No Rider Policy



## Atlantic Specialty Insurance Company
### Canton, Massachusetts

## DRIVER ENROLLMENT AND BENEFICIARY FORM
### TRUCKERS OCCUPATIONAL ACCIDENT INSURANCE
### 316 Towing and Road Service

Please print:

Name: _Reynaldo Brown_   Male: _✓_ Female: _____

Street Address: ██████████████   City: _Buford_   State: _GA_ Zip: _30519_

Social Security Number: _____ Date of Birth: _____ E-Mail Address: _____

Home Telephone Number: _____ Cell Telephone Number: ██████████████

Name of Beneficiary: _____ Relationship of Beneficiary: _____

CDL or Required License Number: _____ Number of Years Experience: _____

Contracted by (Name of Company): 316 Towing and Road Service   Effective Date of Contract: _____

Street Address: 796 Bill Rutledge Rd   City: Winder   State: GA   Zip: 30680

Motor Carrier Telephone Number: 470-300-7788   Fax Number: 678-298-7958

Motor Carrier E-Mail Address: eli@316towing.com

### FRAUD STATEMENT

It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**In providing this information, I, the undersigned, understand and hereby state that:**

1. to the best of my knowledge and belief, all information on this Form is complete and truthful;
2. this coverage is not a contract for Statutory Workers' Compensation Insurance, and neither I nor my carrier become participants in the Workers' Compensation system by purchasing this insurance; and
3. if, based on the information supplied in this Form, I am not eligible for coverage, premium will be refunded and no claims will be payable.

By my signature below, I, the undersigned, also authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company or any other organization, institution or person that has any records, including any medical records, to furnish such information or copies of records to Atlantic Specialty Insurance Company, the motor carrier or the motor carrier's designee. A photographic copy of this authorization shall be as valid as the original.

### IF THE INFORMATION PROVIDED IN THIS FORM IS FRAUDULENT,
### THE INSURER HAS THE RIGHT TO RETURN PREMIUM AND CANCEL COVERAGE.

In order to verify the information provided in this Form, I, the undersigned, give the Insurer authority to examine the records that are maintained by the motor carrier.

I certify that I am an independent contractor, paid by a 1099 tax form, not as a W-2 employee.

Driver's Signature: _R_____   Date: _6-18_

Motor Carrier Representative's Signature: _E._____

---

**Payment Authorization:** I authorize the above named motor carrier, with whom I have a contract, to take monthly deductions, equal to my premiums, from my settlement account on my behalf, and to remit these funds to Atlantic Specialty Insurance Company.

I UNDERSTAND THAT THE COST OF THE INSURANCE IS MY SOLE OBLIGATION AND RESPONSIBILITY, regardless of the above arrangement of premium payment. I agree that I will forward any amount due and owing to Atlantic Specialty Insurance Company, upon demand, for any insurance at any time my account remains unpaid.

Signature: _____   Date: _____

---

AH TIGIT ENROLL 03.12   Page 1 of 1

## STATEMENT OF COMPANY SAFETY POLICY

It is, and will continue to be the policy of 316 Towing and Road Service to conduct all operations as safely and efficiently as possible.
As a motor carrier we have the ultimate responsibility to perform our work and driving skills in a professional manner. It is our duty and moral responsibility to drive in a manner that reflects a genuine concern for the motoring public, those with whom we share the nation's highways.

To accomplish this, we are assigning the responsibility for our safety program to all management and supervisory personnel. Management and drivers alike will be held accountable for their actions and performance regarding personal and motor transport safety. Compliance with Motor Carrier regulations is expected from each individual within the organization.

Our safety director will be responsible to administer our safety program to insure that safety standards are met throughout the organization. Each person will have the responsibility of performing his/her job in a safe and efficient manner.

**WHEN IT COMES TO SAFETY, AT 316 Towing and Road Service, THERE WILL BE NO CUTTING CORNERS.**

The health and safety of our employees and independent contractors, as well as the monitoring public, is of major importance to the success and longevity of this company and will be addressed accordingly.

## ACKNOWLEDGEMENT

I hereby acknowledge receipt of a copy of 316 Towing and Road Service's Corporate Safety Policy

_____          6-18
**Independent Contractor's Signature**          **Date**

Reynaldo Brown          R. R.
**Independent Contractor's Printed Name**          **Reviewed By**

### 316 Towing and Road Service

### Cell Phone Policy

In order to ensure the safety of our company drivers and to comply with state and federal regulations regarding hand held cell phone usage by commercial motor vehicle drivers. 316 Towing and Road Service has adopted the following policy while operating company vehicles in interstate and intrastate commerce.

1. All independent contractors while driving a commercial motor vehicle (CMV), as defined in 49 CFR Part 390.5, are prohibited from holding, dialing, or reaching for a hand held cellular phone. This includes all push-to-talk type phones, such as Nextel.

2. A driver of a CMV is allowed to initiate, answer, or terminate a call by touching a single button on a mobile phone or headset provided it can be done while seated in a normal manner and seat-belted as required by law. Any such movement must be accomplished without removing the driver's eyes from the roadway. Thus hands-free technology is permissible provide the use does not cause distraction.

3. All independent contractors, operating *any* type of vehicle, are prohibited from texting at all times while operating a company or personal vehicle while engaged in any activity on behalf of the company.

4. All independent contractors must minimize other distractions which take away from concentrating on driving, as driving while distracted constitutes a hazard, and could be a traffic infraction in some states such as Maine. Distractions include, but are not limited to, eating, reading, talking to passengers, and performing other activities which tend to cause the driver to remove their eyes from the road or divert their attention from the task of driving.

**Driving is defined as:** operating a commercial motor vehicle on a highway, including while temporarily stationary because of traffic, traffic control device, or other temporary delays. Driving would not include operating a CMV when the driver has moved the vehicle to the side of, or off, a highway and has halted in a location where the vehicle can remain stationary.

**Exemption:** The regulations and this policy do not prevent drivers of commercial motor vehicles from using a hand held mobile phone to communicate with law enforcement or other emergency services if necessary.

### Acknowledgement

I acknowledge that I have received a written copy of the cell phone and distracted driving policy. I fully understand the policy and agree to abide by the terms, and that I am willing to accept the consequences of failing to follow the policy.

_____          6 - 18
Independent contractor Signature                    Date

# To: ALL D.O.T. and CDL   Drivers

## Driver's Daily Log Compliance

### Acknowledgement

**I hereby acknowledge receipt of a copy of 316 Towing and Road Service Driver's Daily Log Compliance Policy. I am further aware that I must keep an updated medical card on my person when driving or operating vehicles over 10,000 GVW.**

Independent Contractor's Printed Name: _Reynaldo Brown_

Independent Contractor's Signature: _RB_

Date: _6-18_

# NO RIDER POLICY

Unless specifically authorized in writing to do so by **316 Towing and Road Service** under whose authority the commercial motor vehicle is being operated, no driver shall transport any person or permit any person to be transported in any vehicle of the motor carrier.

The ONLY authorized passengers that may be allowed are defined as follows:

1.   The other driver in a driving team contracted to motor carrier

2.   Another contracted driver of the motor carrier as directed by motor carrier's dispatch person.

## ALL OTHER PERSONS ARE UNAUTHORIZED AND
## ARE STRICKLY FORBIDDEN TO BE IN ANY TRACTOR.

Any non-contracted driver caught with an unauthorized passenger may be suspended for one (1) week or their contract may be terminated.

Any contracted driver caught with an unauthorized passenger may have their contract terminated.

Independent Contractor's Acknowledgement:

I have read and completely understand the NO-RIDER POLICY. I agree to follow all guidelines as set forth in this policy.

Executed at Winder, Georgia on _____ 6-18.

For **316 Towing and Road Service**                           INDEPENDENT CONTRACTOR

By: Authorized Agent                                          By: Authorized Agent

# PTI - PRE TRIP INSPECTION

<u>Driver needs to do it every morning when starting the logbook</u>

<u>There are 4 main things that driver should check during his PTI</u>

1) Oil level - very important

2) Coolant level

3) Tires (check with hammer) - the most pricey category for our company, where we spent the most. Make sure you have the hammer and the gauge in the truck. If the sound is not right when slamming the tires, only then use the gauge to measure the PSI (normal PSI for steer tires - 110 PSI, all others - 100 PSI). The only reason the tire can blow out is because of the low PSI for a continuous period of time driving on it.

4) Tire Seals (visually check for any kind of leaks around the tires)

DATE
NAME
SIGNATURE OF ACKNOWLEDGEMENT

_____
_____
_____

# AUTHORIZATIONS/CONTRACT

## TAB 4

____ W-9

____ PSP Record and Authorization

____ Guidelines for Independent Contractors

____ Application Checklist

____ Independent Contractor Agreement

____ Driver's Rights

____ Fair Credit Reporting Act

____ Bank Info

**Form W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the
requester. Do not
send to the IRS.**

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Reynaldo Brown

2 Business name/disregarded entity name, if different from above

3 Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the
following seven boxes.

☐ Individual/sole proprietor or
single-member LLC

☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner.  Do not check
LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is
another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that
is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

4 Exemptions (codes apply only to
certain entities, not individuals; see
instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting
code (if any)

*(Applies to accounts maintained outside the U.S.)*

5 Address (number, street, and apt. or suite no.) See instructions.

■■■■■■■■

Requester's name and address (optional)

6 City, state, and ZIP code

Buford GA 30519

7 List account number(s) here (optional)

**Part I**   **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid
backup withholding. For individuals, this is generally your social security number (SSN). However, for a
resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other
entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a
TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and
Number To Give the Requester* for guidelines on whose number to enter.

Social security number

■■■■■■■■

Employer identification number

■ - ■■■■■■

**Part II**   **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue
Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am
no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because
you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid,
acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments
other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign
Here**

Signature of
U.S. person ▶ *RB*

Date ▶ *1/16-18*

# General Instructions

Section references are to the Internal Revenue Code unless otherwise
noted.

**Future developments.** For the latest information about developments
related to Form W-9 and its instructions, such as legislation enacted
after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an
information return with the IRS must obtain your correct taxpayer
identification number (TIN) which may be your social security number
(SSN), individual taxpayer identification number (ITIN), adoption
taxpayer identification number (ATIN), or employer identification number
(EIN), to report on an information return the amount paid to you, or other
amount reportable on an information return. Examples of information
returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual
funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross
proceeds)

• Form 1099-B (stock or mutual fund sales and certain other
transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest),
1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident
alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might
be subject to backup withholding. See What is backup withholding,
later.*

Cat. No. 10231X

Form **W-9** (Rev. 10-2018)

*THE BELOW DISCLOSURE AND AUTHORIZATION LANGUAGE IS FOR MANDATORY USE BY ALL ACCOUNT HOLDERS*

## IMPORTANT DISCLOSURE

### REGARDING BACKGROUND REPORTS FROM THE *PSP Online Service*

In connection with your application for employment with ___316 Towing and Road Service___ ("Prospective Employer"), Prospective Employer, its employees, agents or contractors may obtain one or more reports regarding your driving, and safety inspection history from the Federal Motor Carrier Safety Administration (FMCSA).

When the application for employment is submitted in person, if the Prospective Employer uses any information it obtains from FMCSA in a decision to not hire you or to make any other adverse employment decision regarding you, the Prospective Employer will provide you with a copy of the report upon which its decision was based and a written summary of your rights under the Fair Credit Reporting Act before taking any final adverse action. If any final adverse action is taken against you based upon your driving history or safety report, the Prospective Employer will notify you that the action has been taken and that the action was based in part or in whole on this report.

When the application for employment is submitted by mail, telephone, computer, or other similar means, if the Prospective Employer uses any information it obtains from FMCSA in a decision to not hire you or to make any other adverse employment decision regarding you, the Prospective Employer must provide you within three business days of taking adverse action oral, written or electronic notification: that adverse action has been taken based in whole or in part on information obtained from FMCSA; the name, address, and the toll free telephone number of FMCSA; that the FMCSA did not make the decision to take the adverse action and is unable to provide you the specific reasons why the adverse action was taken; and that you may, upon providing proper identification, request a free copy of the report and may dispute with the FMCSA the accuracy or completeness of any information or report. If you request a copy of a driver record from the Prospective Employer who procured the report, then, within 3 business days of receiving your request, together with proper identification, the Prospective Employer must send or provide to you a copy of your report and a summary of your rights under the Fair Credit Reporting Act.

Neither the Prospective Employer nor the FMCSA contractor supplying the crash and safety information has the capability to correct any safety data that appears to be incorrect. You may challenge the accuracy of the data by submitting a request to https://dataqs.fmcsa.dot.gov. If you challenge crash or inspection information reported by a State, FMCSA cannot change or correct this data. Your request will be forwarded by the DataQs system to the appropriate State for adjudication.

Any crash or inspection in which you were involved will display on your PSP report. Since the PSP report does not report, or assign, or imply fault, it will include all Commercial Motor Vehicle (CMV) crashes where you were a driver or co-driver and where those crashes were reported to FMCSA, regardless of fault. Similarly, all inspections, with or without violations, appear on the PSP report. State citations associated with Federal Motor Carrier Safety Regulations (FMCSR) violations that have been adjudicated by a court of law will also appear, and remain, on a PSP report.

The Prospective Employer cannot obtain background reports from FMCSA without your authorization.

## AUTHORIZATION

If you agree that the Prospective Employer may obtain such background reports, please read the following and sign below:

I authorize ___316 Towing and Road Service___ ("Prospective Employer") to access the FMCSA Pre-Employment Screening Program (PSP) system to seek information regarding my commercial driving safety record and information regarding my safety inspection history. I understand that I am authorizing the release of safety performance information including crash data from the previous five (5) years and inspection history from the previous three (3) years. I understand and acknowledge that this release of information may assist the Prospective Employer to make a determination regarding my suitability as an employee.

I further understand that neither the Prospective Employer nor the FMCSA contractor supplying the crash and safety information has the capability to correct any safety data that appears to be incorrect. I understand I may challenge the accuracy of the data by submitting a request to https://dataqs.fmcsa.dot.gov. If I challenge crash or inspection information reported by a State, FMCSA cannot change or correct this data. I understand my request will be forwarded by the DataQs system to the appropriate State for adjudication.

I understand that any crash or inspection in which I was involved will display on my PSP report. Since the PSP report does not report, or assign, or imply fault, I acknowledge it will include all CMV crashes where I was a driver or co-driver and where those crashes were reported to FMCSA, regardless of fault. Similarly, I understand all inspections, with or without violations, will appear on my PSP report, and State citations associated with FMCSR violations that have been adjudicated by a court of law will also appear, and remain, on my PSP report.

# 316 Towing and Road Service's
# Guidelines for Independent Contractors

**The following are our driving criteria standards which may be modified by management when other desirable risk characteristics are present:**

- No major violations in the past five (5) years.
- No more than two minor violations in the past three years or not more than one chargeable accident with one minor violation in the past three years.
- Drivers between the ages of 21 and 25 years old will be allowed to operate light to medium duty units. These drivers will be hired on a case to case basis.
- All drivers operating heavy and extra heavy trucks or tractor trailer units must be 25 years old with at least two (2) years experience driving similar type vehicles.
- A physician statement must be obtained on drivers 65 years of age and older. This statement must be signed and dated by a physician.
- All drivers must be reported at inception and throughout the policy term.
- All drivers must have a valid license for the class of vehicle being operated.
- All accidents are considered "at fault" unless the police report is provided with the initial application showing the driver was "not at fault" or not contributing to the occurrence.

## Minor violations include:

- **Failure to Yield**
- **Speeding**
- **Improper Lights**
- **Illegal Passing**
- **Improper Towing**
- **Improper Turning**

## Major violations include:

- **Driving while intoxicated**
- **Illegal possession of alcohol/narcotics in a vehicle**
- **Unlawful use of vehicle**
- **Speed Contest or Racing**
- **Reckless Driving**
- **Driving while license is suspended**
- **Wrong way on a one way street**
- **Wrong side of the Road**
- **Excessive Acceleration**
- **Fleeing/attempting to Elude a Police Officer**

**Independent Contractor
Application Checklist**

Name: _Reynaldo Brown_

Date: _6 - 1 8 - 21_

796 Bill Rutledge Rd
Winder, GA 30680

When filling out the enclosed forms please make sure you fill out all spaces provided.
**PLEASE PRINT NEATLY** or it will slow down the hiring process. It could also result in your not
being considered as our company requires detailed condition reports to be filled out on each
vehicle you will move.

Please complete this checklist to ensure you application is complete. Incomplete submissions
may result in a delay for your hire, or may not be considered at the discretion of the Driver
Hiring Manager.

- **Regular / DOT Drivers** Must complete the Driver's Application for Qualification to
  include **past 3 years** employment, sign and date the application
- **CDL Drivers** Must complete the Driver's Application for Qualification to include **past
  10 years** employment, sign and date the application
- Must provide a copy of **DOT Physical Long Form**
- Must provide clear copy of **Driver's License**
- Must fill out and sign **Certification of Violations and Annual Review**
- Must fill out and sign **Employment and Safety History**
- Must fill out and sign the **Drug and Alcohol Policy Signature Page**
- Must fill out and sign **Request / Consent for Information** from previous employer on
  alcohol and controlled substance testing
- Must fill out and sign **Single License and Compliance Certification and MVR Release**
  Form
- You must get a copy of your **past 3 years driving record** from the **Department of Motor
  Vehicles.** This must not be older than **30 days** when we receive it.

All drivers are required to take a 5 Panel DOT Regulated Drug Screen (to include Chain of
Custody form). You will be instructed where to go once your application has been approved.

### 316 Towing and Road
### Service's
### Pre-Contract
### Questionnaire

**Driving Record**

1. Have you ever been cited for driving while intoxicated or impaired?
   Yes ☐  No ☑

2. Have you ever been cited for careless, reckless driving or as a habitual traffic offender?
   Yes ☐  No ☑

3. Have you ever been cited for driving under the influence or marijuana or other drugs?
   Yes ☐  No ☑

4. Has your licence ever been suspended or revoked for any reason?
   Yes ☑  No ☐

   If yes, please explain:  _Child Support_

5. Have you had more than 2 moving violations in past 3 years?
   Yes ☐  No ☑

6. Have you had more than 2 chargable accidents in past 3 years?
   Yes ☐  No ☑

**The Work**

1. You will be an independent contractor driver and responsible for your own food and lodging on the road (unless authorized). Do you understand this?      Yes ☑  No ☐

2. As an independent contractor driver you could be subjected to a Pre- employment, Random, Post Accident, and /or a Reasonable Cause Drug test. Do you understand this?      Yes ☑  No ☐

3. 316 Towing and Road Service pays independent contractors when contracts including drivers
   Driver's daily logs and support paperwork are complete and turned in on time.
   All settlements and advances are on the EFS System. Do you understand?      Yes ☑  No ☐

4. As an independent contractor you will receive a 1099 form at the end of the year and not a W-2 form. You will be responsible for your own taxes. This means that 316 Towing and Road Service will not withhold any taxes or Social Security from your settlement, and you will receive your full settlement. Do you understand this?      Yes ☑  No ☐

5. If transporting vehicles over 10K on this job you are required to keep a DOT Log Book. Do you know how to keep a log book or can someone teach you before you become an Independent Contractor?      Yes ☑  No ☐

**DO YOU STILL WISH TO APPLY FOR INDEPENDENT CONTRACTOR STATUS**
If Yes Sign Below:      Yes ☑  No ☐

_RR_                    6-18-21

(Applicant's Signature)                         (Date)

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

DUSTIN HYDE, individually and
on Behalf of All Other Similarly
Situated

Plaintiff,

v.

316 TOWING & ROAD
SERVICE, INC., and MAKSIM
LISOVSKIY

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action File No: 2:22-cv-103-
RWS

Defendants.

### PLAINTIFF REYNALDO BROWN'S RESPONSES TO DEFENDANTS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION

Plaintiff Reynaldo Brown ("Plaintiff") by and through his attorney Josh Sanford of Sanford Law Firm, PLLC, hereby submits his Answers to Defendants' First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission, and states as follows:

### INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify the individual(s) who participated in answering these interrogatories, and for each, identify the individual's relationship to you.

**ANSWER NO. 1:** Plaintiff, with the assistance of Counsel.

**INTERROGATORY NO. 2:** Please identify every entity, individual, or organization (including yourself and companies you own) for whom you have performed work in

Page 1 of 22
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Reynaldo Brown's Answers and Responses to Defendants'
First Set of Interrogatories, Requests for Production, and Requests for Admission



exchange for compensation as either an employee, officer, partner, owner, or independent contractor since April 4, 2020.  For each entity, individual, or organization, provide:

    (a) The telephone number, address, EEIN, and full legal name as it appears on any check stub, W-2, or 1099 you may have received;

    (b) The name, contact information, and address of any individual who either supervised, managed, or otherwise directed the work you performed;

    (c) The time periods during which you performed work, including the beginning and end dates of your employment or engagement for each;

    (d) A description of the payment and timekeeping practices relevant to the work you performed, including whether such work was paid on an hourly, salaried, per-job, or piecemeal basis;

    (e)  A description of any programs, software, apps, documents, or records that were used to log or track work performed; and

    (f) A description of the manner of any and all work that you performed, including job descriptions, locations, whether the work was performed remotely or on-site, and your specific duties.

**ANSWER NO. 2:** Objection. This Interrogatory is overbroad and seeks information that is not relevant to the extent that it requests information beyond the scope of the time Plaintiff worked for Defendants.

Regarding the requested information that is within the time Plaintiff worked for Defendants, Defendants already have the information or is more easily accessible by

Page 2 of 22
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Reynaldo Brown's Answers and Responses to Defendants'
First Set of Interrogatories, Requests for Production, and Requests for Admission

Defendants. Additionally, Plaintiff states as follows: I worked for 316 Towing full time. I didn't work for any other company while working for 316 Towing.

**INTERROGATORY NO. 3:** For each workweek from April 4, 2020 through June 1, 2022 that you claim you performed more than 40 hours of work for 316 Towing and for which you allege you were not properly compensated under the Fair Labor Standards Act, state the precise number of hours you claim you worked. For each week for which you cannot give a precise number, state why you are unable to do so. Your answer should be organized by providing responsive information for each separate workweek.

**ANSWER NO. 3:** Objection. This Interrogatory is unduly burdensome because Defendants are legally responsible for maintaining records of hours worked. The Supreme Court established the standard of proof for an award of back wages in FLSA cases where an employer has kept inadequate or inaccurate records in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-88 (1946). In that case, the Court held that when an employer has failed to keep adequate or accurate records of employees' hours, employees should not effectively be penalized by denying them recovery of back wages on the ground that the precise extent of their uncompensated work cannot be established. *Id.* at 687; *see Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997); *Dove v. Coupe*, 759 F.2d 167, 174 (D.C. Cir. 1985). Specifically, the Supreme Court concluded that where an employer has not maintained adequate or accurate records of hours worked, an employee need only prove that "he has in fact performed work for which he was improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. Once the employee establishes the amount of uncompensated work as a

**Page 3 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

matter of "just and reasonable inference," the burden then shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. If the employer fails to meet this burden, the court may award damages to the employee "even though the result be only approximate." *Id.* at 688.

In this case, Plaintiff does not know if Defendants kept records of hours worked by Plaintiff. If Defendants did not keep such records, Plaintiff is entitled to prove his damages under the just and reasonable inference standard enunciated in *Mt. Clemens*.

Regarding Plaintiff's hours worked during his employment with Defendants, Plaintiff states as follows: I was scheduled Monday through Friday, then I would also have to be available Saturday and Sunday to take jobs. I would work 12-hour shifts. It was usually 7am-7pm. I would drive the tow truck they provided me home with me each day. I would normally leave from my house each day. I wasn't paid any overtime. I would work my 12-hour shift, but if I got a call from Eli after I got home, I would have to take the truck out again for a tow job. There could be an extra job after my shift ended at 7pm that I would have to do, which could take another 1-2 hours. I was paid around $950 per week for my entire employment.

**INTERROGATORY NO. 4:** For each workweek from April 4, 2020 through June 1, 2022 that you claim you performed more than 40 hours of work for 316 Towing and for which you allege you were not properly compensated under the Fair Labor Standards Act, describe every physical location from which you performed work for 316 Towing and the number of total hours spent at each location. For time spent at roadside or otherwise

**Page 4 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

unknown locations while assisting 316 Towing customers, you may state "assisting customer" instead of providing an exact physical location. For time spent in transit, you may specify "in transit" or "commuting" instead of providing an exact physical location. For each week for which you cannot give a precise number, state why you are unable to do so. Your answer should be organized by providing responsive information for each separate workweek.

**ANSWER NO. 4:** Objection. This Interrogatory is unduly burdensome in that it seeks discovery of information that is already in possession of Defendants and that is not reasonable to retain in normal personal records or memory. Defendants may access this information as easily, or more easily, than Plaintiff by reviewing Defendants' own records.

Regarding information in Plaintiff's possession, Plaintiff states as follows: I primarily worked in and around Atlanta. It would take about 15 minutes to hook up a car for a tow job, then it would take about 30 minutes to take it where it needed to go. It just depended on what was wrong with the car and where it needed to go.

**INTERROGATORY NO. 5:** Please describe in detail the process by which you were hired or began working for 316 Towing, including detailed descriptions of all conversations, meetings, documents, training materials, offers, benefits information, protocols, handbooks, or agreements that were exchanged between you and any employee or representative of 316 Towing prior to and within the first two weeks of beginning work for 316 Towing.

**ANSWER NO. 5:** This Interrogatory seeks discovery of information that is already in possession of Defendants. Defendants may access this information as easily, or more easily, than myself by reviewing Defendants' own records. Regarding details about the

Page 5 of 22
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Reynaldo Brown's Answers and Responses to Defendants'
First Set of Interrogatories, Requests for Production, and Requests for Admission

process by which I was hired or began working for 316 Towing, here is what I remember: I was certified to drive flatbed trucks and a coworker who was working for 316 introduced me to them. When I interviewed, I was in a room with Eli and another guy. I don't know if it was Max or not. I received a packet of paperwork when I was hired with documents I had to sign, but I don't have copies of those. Once I filled out the paperwork, I started working for them and they gave me a truck to use. When I was fired, Eli just told me to not show up and I didn't get my last paycheck. I was supposed to interview with them recently, but they did not contact me.

**INTERROGATORY NO. 6:** Please identify each cellular phone, smartphone, smartwatch, and any other mobile telecommunication device that you have used to transmit or receive communications, including phone calls, text messages, emails, or other app-based notifications, for or on behalf of any business or organization, including those which you own or have an interest in, since April 4, 2023. For each, please provide the make, model, date acquired, any assigned telephone number, and the name of any entity or individual who supplied or paid for the device or cellular service at any point in time.

**ANSWER NO. 6:** Objection. This Interrogatory is overbroad and seeks information that is not relevant to the extent that it requests information beyond the scope of the time Plaintiff worked for Defendants.

Regarding each cellular phone, smartphone, smartwatch, or any other mobile telecommunication device Plaintiff did use during Plaintiff's employment with Defendants, Plaintiff states as follows: I used my own cell phone while working for them. It was an iPhone. I used the app Towbook to receive jobs. It was the same phone number I have

**Page 6 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

now. I communicated with Eli and other employees with texts, calls and WhatsApp. The phone I was using was stolen, so I don't have access to it any more.

**INTERROGATORY NO. 7:** For each Request for Admission that you have denied, please describe in detail, and not in summary fashion, the factual bases supporting your denial.

**ANSWER NO. 7:** Objection. Plaintiff objects to this Interrogatory to the extent that it seeks information protected by Attorney-Client Privilege and/or the Attorney Work-Product Doctrine. Furthermore, Plaintiff objects to this Interrogatory as duplicative in that in Plaintiff's corresponding Responses to any such Request for Admission(s) that Plaintiff denied, Plaintiff described in detail which aspects of the Request were denied and why. Please see Plaintiff's Response to Defendants' First Set of Requests for Admission.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:** Any and all documents that you believe support the allegations asserted by you in the First or Second Claim for Relief of your Complaint.

**RESPONSE NO. 1:** Most responsive documents relevant to this Request are in Defendants' possession or are more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 2:** Any and all documents relating to the allegation in Paragraphs 22, 27, 28, 72, 83, and 85 of the Complaint.

Page 7 of 22
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Reynaldo Brown's Answers and Responses to Defendants'
First Set of Interrogatories, Requests for Production, and Requests for Admission

**RESPONSE NO. 2:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 3:** Any and all documents relating to your claim for damages and other relief, including but not limited to all documents relating to the claim for damages set forth in the Prayer for Relief of the Complaint and your Initial Disclosures.

**RESPONSE NO.3:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff have no responsive documents.

**REQUEST FOR PRODUCTION NO. 4:** Any and all documents relating to any admission you contend 316 Towing or Lisovskiy has made at any time from April 4, 2020 through the present in relation to any of the allegations of the Complaint.

**RESPONSE NO. 4:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 5:** Any and all documents evidencing or relating to any facts you believe or contend refute or contradict any of Defendants' defenses, as asserted in their Answer.

**RESPONSE NO. 5:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**Page 8 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

**REQUEST FOR PRODUCTION NO. 6:** Any and all documents or exhibits that you intend to reference, rely upon, or introduce into evidence at the trial of this Suit.

**RESPONSE NO. 6:** Objection. This Request is unduly burdensome in that it seeks to have Plaintiff marshal all his evidence prior to the end of discovery. Regarding documents that Plaintiff does intend to reference, rely upon, or introduce into evidence at trial, please see Plaintiff's Initial Disclosures and any documents produced in Plaintiff's responses to Defendants' First Set of Requests for Production of Documents.

**REQUEST FOR PRODUCTION NO. 7:** Any and all documents relating to each expert you intend to call as a witness at trial in this Suit, including but not limited to documents and communications sent to or received from each expert, resumes, curriculum vitae, oral or written reports, and any supporting data or information.

**RESPONSE NO. 7:** No expert witnesses have been identified at this time. Plaintiff does not intend to rely on expert witnesses; however, if and when any are identified, Plaintiff will timely supplement this Response.

**REQUEST FOR PRODUCTION NO. 8:** All affidavits, sworn statements, notes, and other documents sent to, received from, or otherwise relating to any person you intend to call as a witness at trial, either in person, through deposition testimony, or through an affidavit regarding any claim or defense in this Suit.

**RESPONSE NO. 8:** Objection. This Request seeks information that is protected by the Attorney Work-Product Doctrine to the extent that it requests unfiled written statements, opt-in forms, consent to join forms, and/or declarations which Plaintiff's attorneys may have drafted or may draft and to the extent that it otherwise requests witness statements to Plaintiff's counsel.

**Page 9 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

Regarding any affidavits, sworn statements, notes or other documents, any affidavits or sworn statements which Plaintiff intends or decides to rely on in support of any motion will be filed and therefore provided to Defendants. To the extent Plaintiff would rely on such documents at trial, Plaintiff will produce them pursuant to these Requests or otherwise in accordance with the Federal Rules of Civil Procedure. Plaintiff has no responsive documents or statements from third-parties pursuant to subpoenas and/or FOIA requests, or otherwise, but will provide such documents if any are obtained.

**REQUEST FOR PRODUCTION NO. 9:** Any and all documents or communications between you and any person or entity (other than your attorney) from April 4, 2020 through present, relating to the allegations in the Complaint, including but not limited to correspondence, emails, handwritten notes, memos, recordings, journal entries, and communications with any government agency.

**RESPONSE NO. 9:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, please see attached.

**REQUEST FOR PRODUCTION NO. 10:** Any and all documents you obtained from any person or entity from March 30, 2020 through present relating to the allegations in the Complaint, including but not limited to any written statements, affidavits, declarations, sworn statements, notes, sworn testimony, documents obtained by subpoena, documents received in response to Freedom of Information Act (FOIA) requests, and documents received from any government agency.

**RESPONSE NO. 10:** Objection. Plaintiff restates and reincorporates Response No. 8 hereto.

**Page 10 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

**REQUEST FOR PRODUCTION NO. 11:** Any and all social media postings or communications relating to the allegations in the Complaint, including but not limited to postings on Facebook, LinkedIn, Twitter, YouTube, Instagram, Snapchat, WhatsApp, Reddit, blogs, wikis, and other social media sites.

**RESPONSE NO. 11:** Objection. This Request is unduly burdensome in that it requests that Plaintiff produce social media postings or communications relating to the allegations in the Complaint not within Plaintiff's own knowledge or possession. Plaintiff cannot reasonably be expected to locate, examine and produce social media postings or communications relating to the allegations in the Complaint that individuals other than Plaintiff possess without knowledge of such items.

Regarding social media postings or communications that Plaintiff may have knowledge of, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 12:** Any and all documents relating to any contracts, agreements, or correspondence in connection with your working relationship with either 316 Towing or Lisovskiy, including but not limited to any compensation or employment agreement or contract for tow truck services, onboarding documents, waivers, manuals, handbooks, training materials, or other written documents from 316 Towing characterize the work you performed or your working relationship with 316 Towing.

**RESPONSE NO. 12:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, please see attached.

Page 11 of 22
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Reynaldo Brown's Answers and Responses to Defendants'
First Set of Interrogatories, Requests for Production, and Requests for Admission

**REQUEST FOR PRODUCTION NO. 13:** Any and all documents relating to any work you performed for 316 Towing, relevant to any claim or defense in this Suit, at any time from April 4, 2020 through June 1, 2022, in exchange for any form of compensation, including but not limited to invoices for tow truck services provided, days and hours worked, shift schedules, calendars, Towbook records, uniforms, safety meetings, routes, store visits, use of electronic devices, product promotions, tips, badges, sales, training, new products, contests, product pricing, customers, paychecks, compensation records, inspection reports, and schedule for completion of work.

**RESPONSE NO. 13:** Plaintiff restates and reincorporates Response No. 1 hereto.

**REQUEST FOR PRODUCTION NO. 14:** Any and all documents relating to any benefits offered or provided to you by 316 Towing or Lisovskiy at any time from April 4, 2020 through present, including but not limited to pension, 401k, profit sharing, stock options, health insurance, life insurance, dental benefits, disability insurance, workers' compensation coverage, unemployment insurance, malpractice insurance, payment of professional dues, fees, or continuing education, reimbursement of moving expenses, business expenses, or tuition, paid time off, paid vacation, and paid sick leave.

**RESPONSE NO. 14:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, please see attached.

**REQUEST FOR PRODUCTION NO. 15:** Any and all documents relating to any expenses you incurred at any time from March 20, 2020 through June 1, 2022 in connection with the work you performed for 316 Towing, including but not limited to mileage, vehicle maintenance and repair, tools, equipment, supplies, meals, travel,

**Page 12 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

uniforms, professional licenses and certifications, attendance at conferences and seminars, tuition, cell phone, fax, postage, and home office.

**RESPONSE NO. 15:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 16:** Any and all documents relating to your efforts to obtain employment or compensation in exchange for work or services at any time from April 4, 2020 through June 1, 2022, including but not limited to all versions of your resume, applications for employment, cover letters, reference letters, job inquiries, offers of employment, employment agreements, contracts, bids, proposals, job advertisements and postings, termination notices, resignation notices, rejection letters, and any other communications with any prospective employer or customer.

**RESPONSE NO. 16:** Objection. This Request seeks information that goes beyond the scope allowed by Rule 26 and has no importance to resolving the issues in this case or establishing any claims or defenses. In *Smith v. FracTech Services, LLC*, the court held, over the defendant's objection, that the plaintiffs' places of employment other than the defendant should be excluded as irrelevant and unfairly prejudicial. 2011 U.S. Dist. LEXIS 3165, *117-118 (E.D. Ark. Jan. 11, 2011). The same reasoning applies here. This lawsuit does not have anything to do with any of Plaintiff's experiences at places of employment or Plaintiff's compensation before or after Plaintiff's employment with Defendants ended. Additionally, Plaintiff objects to this Request to the extent that it seeks documents reflecting Plaintiff's job title for Defendants. It is axiomatic under the FLSA that mere titles and treatment are insufficient to determine a worker's employee status, but

**Page 13 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

rather courts must examine the economic reality of the worker's relationship to the business. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985) (citing *Goldberg v. Whitaker House Co-op, Inc.,* 366 U.S. 28, 33 (1961)).

**REQUEST FOR PRODUCTION NO. 17:** Any and all documents relating to any business, partnership, limited liability company, corporation, sole proprietorship, nonprofit, joint venture, or other entity you have been employed by, owned, served as an officer for, held a stake in, or performed work for in exchange for compensation at any time from April 4, 2020, through June 1, 2022, including but not limited to business logos, business cards and letterhead, documents filed with local, state, or federal governments, documentation of assets, business entity formation and dissolution documents, licenses, customer reviews, referrals and recommendations, offer letters, employment agreements or contracts, independent contractor arrangements, consulting agreements, bills, invoices, paychecks, paystubs, websites and social media accounts, advertising, business directory listings, insurance coverage, including but not limited to general liability and workers' compensation, receipts, settlement payments, statements of work, W2s, Form 1099s, IRS Schedule C, social security benefits, disability benefits, unemployment insurance benefits, workers' compensation benefits, employer identification numbers (EIN or FEIN), building and equipment leases, annual reports, bank accounts, business expenses, mileage logs, loans and other forms of financial assistance, and claims, charges, grievances, or complaints made by or against each such entity.

**RESPONSE NO. 17:** Plaintiff has no responsive documents.

**Page 14 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

**REQUEST FOR PRODUCTION NO. 18:** Any and all documents in which you characterize your working relationship with 316 Towing and/or Lisovskiy, including but not limited to loan and credit applications, resumes, online profiles, and leases.

**RESPONSE NO. 18:** Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 19:** Any and all emails, letters, facsimiles, text messages, social media messages, direct messages, or other communications between you and (i) 316 Towing, (ii) Lisovskiy, or (iii) any other independent contractor or employee of 316 Towing.

**RESPONSE NO. 19:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants in regards to (i) and (ii). With regard to (iii), Plaintiff restates and incorporates Response No. 11 hereto. Additionally, this Request is overbroad and seeks information that is not relevant and that can only be used for a fishing expedition against Plaintiff to the extent that it seeks all emails, letters, facsimiles, text messages, social media messages, direct messages or other communications between Plaintiff and 316 Towing, Lisovskiy or any other independent contractor or employee of 316 Towing, regardless of whether the communications themselves relate to the allegations in this case. The information requested is not proportional to the needs of this case because any communications between Plaintiff and 316 Towing, Lisovskiy or any other independent contractor or employee of 316 Towing are of no importance to resolving the issues in this case or establishing any claims or defences unless they relate to the allegations in the Complaint.

An earlier version of Rule 26 contained language referring to "information reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P.

**Page 15 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

26(b)(1) (amended 2015).  This language was not intended to define the scope of discovery, but because it was incorrectly used in that way, it was removed in 2015.  Fed. R. Civ. P. 26 advisory committee's notes note the 2015 amendment.  This change was "intended to send a signal to district judges to become more hands-on in the process of regulating—mostly limiting—discovery on relevance grounds alone." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 467 (D.N.M. 2018).

While some older cases may reference or quote the old rule, such cases cannot be persuasive where their reasoning is based on deleted language. *ArcelorMittal Ind. Harbor LLC v. Amex Nooter, LLC*, No. 2:15-CV-195-PRC, 2016 U.S. Dist. LEXIS 89117 (N.D. Ind. July 8, 2016).  The standard now requires a party to show that the information sought is relevant to a claim or defense, and the old "reasonably calculated" language should be omitted entirely. *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 U.S. Dist. LEXIS 860 (N.D. Okla. Jan. 3, 2018).  While the scope of discovery remains broad after the 2015 amendments, it does not authorize "fishing expeditions" where a party seeks discovery in hopes of finding evidence that it has no reason to believe exists. *Id.*

Regarding communications in Plaintiff's possession between Plaintiff and 316 Towing, Lisovskiy or any other independent contractor or employee of 316 Towing, please see attached.

### REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** Please admit that you have never been an employee of 316 Towing.

Page 16 of 22
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Reynaldo Brown's Answers and Responses to Defendants'
First Set of Interrogatories, Requests for Production, and Requests for Admission

**ADMISSION NO. 1:** Denied. Plaintiff followed the usual path of employer-employee relationships; Defendants treated them as independent contractors only for tax purposes and for Defendants' convenience. Plaintiff did not have any professional input on the business and did not have any control over his schedule.

**REQUEST FOR ADMISSION NO. 2:** Please admit that you have never been an employee of Lisovskiy.

**ADMISSION NO. 2:** Denied.

**REQUEST FOR ADMISSION NO. 3:** Please admit that you have never been an independent contractor for Lisovskiy.

**ADMISSION NO. 3:** Admit.

**REQUEST FOR ADMISSION NO. 4:** Please admit that you were never required to perform work for 316 Towing outside of the State of Georgia.

**ADMISSION NO. 4:** Admit.

**REQUEST FOR ADMISSION NO. 5:** Please admit that the time you spent answering calls, driving to and from customers, and performing roadside services for 316 Towing's customer was captured by a timekeeping software called "Towbook."

**ADMISSION NO. 5:** Admit.

**REQUEST FOR ADMISSION NO. 6:** Please admit that 316 Towing's records, which include data from Towbook, accurately capture all work that you performed for 316 Towing.

**ADMISSION NO. 6:** Deny.

**REQUEST FOR ADMISSION NO. 7:** Please admit that you never performed more than 40 hours of work for 316 Towing in any given week between 2019 and 2022.

**Page 17 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

**ADMISSION NO. 7:** Deny.

**REQUEST FOR ADMISSION NO. 8:** Please admit that you received additional compensation from 316 Towing for worked performed outside of your scheduled on-call period.

**ADMISSION NO. 8:** Deny.

**REQUEST FOR ADMISSION NO. 9:** Please admit that you have been adequately compensated for all hours of work that you performed for 316 Towing.

**ADMISSION NO. 9:** Deny.

**REQUEST FOR ADMISSION NO. 10:** Please admit that you have received at least $7.25 per hour in compensation for all hours of work performed for 316 Towing.

**ADMISSION NO. 10:** Denied.  Plaintiff has not been able to examine Defendants' time and pay records to determine the amount per hour in compensation for all hours of work performed for 316 Towing. Sometimes, Plaintiff wasn't paid for the hours he was working.  Plaintiff was not paid time-and-a-half for hours over 40.

**REQUEST FOR ADMISSION NO. 11:** Please admit that 316 Towing did not supervise the manner in which you performed work.

**ADMISSION NO. 11:** Denied. They would track Plaintiff's location and make sure he was on schedule.  And they wanted Plaintiff to do things their way.

**REQUEST FOR ADMISSION NO. 12:** Please admit that 316 Towing did not direct the manner in which you performed work.

**ADMISSION NO. 12:** Denied. Plaintiff had to take the jobs they sent through the phone and Plaintiff had to do things their way.

**REQUEST FOR ADMISSION NO. 13:** Please admit that 316 Towing did not

Page 18 of 22
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Reynaldo Brown's Answers and Responses to Defendants'
First Set of Interrogatories, Requests for Production, and Requests for Admission

control the manner in which you performed work.

**ADMISSION NO. 13:** Denied. They controlled Plaintiff's schedule and told Plaintiff what locations he had to be at and where to go.

**REQUEST FOR ADMISSION NO. 14:** Please admit that you completed and signed 316 Towing's "Pre-Contract Questionnaire."

**ADMISSION NO. 14:** Admit.

**REQUEST FOR ADMISSION NO. 15:** Please admit that you completed, initialed, and signed 316 Towing's "Independent Contractor and Lease Agreement."

**ADMISSION NO. 15:** Plaintiff does not know, but it's not attached to the requests therefore denied.

**REQUEST FOR ADMISSION NO. 16:** Please admit that you agreed in writing that any dispute arising from the terms of the Independent Contractor and Lease Agreement would be submitted to mediation followed by binding arbitration.

**ADMISSION NO. 16:** Denied because it is not attached.

**REQUEST FOR ADMISSION NO. 17:** Please admit that you never signed any contract or other agreement with Lisovskiy, personally, including but not limited to any compensation or employment agreement or contract for your tow truck services.

**ADMISSION NO. 17:** Denied.

**REQUEST FOR ADMISSION NO. 18:** Please admit that you never worked as a tow truck driver for Lisovskiy, personally.

**ADMISSION NO. 18:** Admit, because Plaintiff worked for his company, and he was the main boss there.

Page 19 of 22
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Reynaldo Brown's Answers and Responses to Defendants'
First Set of Interrogatories, Requests for Production, and Requests for Admission

**REQUEST FOR ADMISSION NO. 19:** Please admit that you were never paid by Lisovskiy, personally.

**ADMISSION NO. 19:** Denied as written.

**REQUEST FOR ADMISSION NO. 20:** Please admit that Lisovskiy, personally, neither hired nor fired you.

**ADMISSION NO. 20:** Admit

**REQUEST FOR ADMISSION NO. 21:** Please admit that Lisovskiy, personally, neither supervised nor controlled your work schedule, duties, protocols, applications, or assignments with 316 Towing.

**ADMISSION NO. 21:** Admit.

**REQUEST FOR ADMISSION NO. 22:** Please admit that Lisovskiy, personally, never maintained your payroll records.

**ADMISSION NO. 22:** Plaintiff has insufficient information and knowledge regarding whether Defendant Lisovskiy personally maintained Plaintiff's payroll records, therefore denied.

**REQUEST FOR ADMISSION NO. 23:** Please admit that, during the time that you were scheduled to be on-call, you were not required to report to an office.

**ADMISSION NO. 23:** Admit.

**REQUEST FOR ADMISSION NO. 24:** Please admit that during the time that you were scheduled to be on-call, you would spend at least part of your on-call period at home or engaged in personal activities.

**ADMISSION NO. 24:** Admit. Plaintiff would go home for like 10 or 15 minutes to wait for the next job.

**Page 20 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

**REQUEST FOR ADMISSION NO. 25:** Please admit that during at least part of the time you were scheduled to be on-call, you would perform work for another company or individual from a computer.

**ADMISSION NO. 25:** Deny.

**REQUEST FOR ADMISSION NO. 26:** Please admit that during at least part of the time you were scheduled to be on-call, you would attend to personal responsibilities and errands.

**ADMISSION NO. 26:** Deny.

**REQUEST FOR ADMISSION NO. 27:** Please admit that you frequently rejected calls from potential clients during the time that you were scheduled to be on-call.

**ADMISSION NO. 27:** Deny.

**REQUEST FOR ADMISSION NO. 28:** Please admit that 316 Towing never disciplined or threatened to terminate you for rejecting a request from a potential customer.

**ADMISSION NO. 28:** Denied because that never happened to Plaintiff's knowledge.

**REQUEST FOR ADMISSION NO. 29:** Please admit that you never raised objections to 316 Towing that the compensation you received was inadequate for the amount of work you performed.

**ADMISSION NO. 29:** Denied.

**REQUEST FOR ADMISSION NO. 30:** Please admit that you never raised objections to 316 Towing concerning your classification as an independent contractor.

**ADMISSION NO. 30:** Admit.

**Page 21 of 22**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Reynaldo Brown's Answers and Responses to Defendants'**
**First Set of Interrogatories, Requests for Production, and Requests for Admission**

Respectfully submitted,

**DUSTIN HYDE, Individually
and on Behalf of All Others
Similarly Situated, PLAINTIFF**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

## CERTIFICATE OF SERVICE

I, Josh Sanford, do hereby certify that a true and correct copy of the foregoing was

served via email on May 26, 2023, to the attorneys listed below:

Jeremy R. Handschuh, Esq.
Amanda I. Elliott, Esq.
MITCHELL-HANDSCHUH LAW GROUP
3390 Peachtree Road, NE, Suite 520
Atlanta, Georgia 30326
Telephone: (404) 262-9488
Facsimile: (404) 231-3774
jeremy@m-hlawgroup.com
amanda@m-hlawgroup.com

*/s/ Josh Sanford*
**Josh Sanford**

Page 22 of 22
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Reynaldo Brown's Answers and Responses to Defendants'
First Set of Interrogatories, Requests for Production, and Requests for Admission

## INDEPENDENT CONTRACTOR AND LEASE AGREEMENT

This Independent Contractor Agreement is made between 316 Towing and Road Service (hereinafter referred to as "Carrier") and REYNALDO RiCARDO BROWN, (hereinafter referred to as "Contractor").

WHEREAS, Carrier is a for-hire motor carrier operating in interstate commerce and subject to the rules and regulations of the Federal Motor Carrier Safety Administration, the U.S. Department of Transportation, and other federal and state agencies; and

WHEREAS, Contractor is a (check where applicable):  (1) A Sole Proprietorship ☐; (2) Limited Liability Corporation or Partnership ☑; or (3) A Corporation ☐ which owns or leases the equipment identified in Appendix A attached hereto; and

WHEREAS, the parties desire to enter an independent contractor relationship and lease agreement in accordance with applicable law;

NOW, THEREFORE, the parties agree as follows:

This Agreement shall govern the lease of equipment identified on Appendix A with driver by Contractor to Carrier for the continuing performance of a series of separate transportation contracts, the payment for which shall be determined in accordance with the agreed compensation set forth in Appendix B.

1.      Compliance with Federal Statutes and Regulations.  The parties acknowledge and agree that this contract is governed by Federal Regulation, to wit: 49 C.F.R. 376 and it is the intent of the parties that this Agreement fully comply with such regulations without creating indicia of control which would otherwise frustrate the intent of the parties to create an independent contractor relationship. See 49 C.F.R. 376.12(c)(4).

Accordingly, the parties agree as follows:

A.      Carrier shall exercise that level of dominion and control over the leased equipment required by Federal Motor Carrier Safety Regulations including the execution of an original and 2 copies of this Lease by the parties with a copy or notice of this Lease to be kept on the equipment during its term in accordance with 49 C.F.R. 376.11(a) and 49 C.F.R. 376.12(l).

B.      Receipts specifying the identity of the equipment and stating the date and time possession is transferred shall be issued in the form set forth in Appendix C in the time and manner as required by 49 C.F.R. 376.11(b).

C.      During the period of the Lease, Carrier shall identify the equipment in accordance with FMCSA requirements found at 49 C.F.R. 390.21 and Contractor warrants that it will immediately execute a receipt for return of the equipment as provided for in Appendix C, and remove or submit for removal all identification that the equipment is operated subject to the safety duties and obligations of Carrier. Within five calendar days of termination of the lease,

Initial Here: RRB

EXHIBIT

5

tabbies®

Contractor shall return to Carrier by mail or in person all identification devices, other than those painted directly on the equipment, as well as the executed receipt. Carrier may withhold final payment to Contractor, pursuant to 49 C.F.R. 376.12(f) until this requirement is complied with.

       D.    <u>Records of Equipment</u>. Carrier shall keep records covering each separate job or trip for which Contractor's services are retained in accordance with 376.11(d). Contractor warrants that it will instruct its driver to issue, obtain and carry while in transit bills of lading covering each trip which identify the lading and indicating the point of origin, the time and date of departure, the point of final destination, and confirm that the transportation is provided under the responsibility of Carrier.

       E.    Contractor warrants that it is the title holder or has equitable ownership of the leased equipment in accordance with 49 C.F.R. 376.12(a).

       F.    The Lease shall commence with the time of the giving of the receipt for possession and shall continue from month to month until terminated by either party in accordance with the termination provisions herein.

       G.    To fulfill the exclusive possession and responsibilities of the regulations, the authorized Carrier shall have exclusive possession, control and use of the equipment for the duration of the lease and the concomitant safety duties imposed by the Federal Motor Carrier Safety Administration's regulations. See 49 C.F.R. 376.12(c) and the safety regulations found at 49 C.F.R. 390-399.

       H.    Contractor recognizes Carrier's regulatory duty to *inter alia* maintain driver qualification files, monitor driver's hours of service, conduct pre-employment and random drug and alcohol screening, verify equipment maintenance and repair, ensure proper securement, transport of freight in accordance with reasonable dispatch and highway restrictions governing the transportation of hazardous and overweight and over-dimensional loads. Contractor certifies that it is familiar with these regulatory requirements, will so instruct its driver personnel in proper compliance and will indemnify and hold Carrier harmless from any breach by it or its employees of this duty or failure to offer reasonable cooperation.

       I.    <u>Calculation of Compensation</u>. Compensation set forth in Appendix B is based upon a percentage of the line haul revenue derived from each load or trip tendered by Carrier to Contractor and accepted for transport. Line haul revenue shall be that amount reflected upon the rated freight submitted by Carrier to its customer for payment for the services rendered by Contractor and accordingly shall exclude charges paid to interline carriers, pickup and delivery fees for services not performed by Contractor, expenses for over-dimensional permits, escort service and accessorial charges not earned by line haul equipment or its drivers such as lumpers or rigging expenses. Other expenses not attributable to the services rendered by Contractor shall also be excluded from line haul revenue. In accordance with 49 C.F.R. 376.12(g), Carrier will give Contractor before or at the time of settlement a copy of the rated freight bill or computer-generated document containing the same information. Upon request, Contractor may view other documents as required by regulation. In addition to the agreed

Initial Here: RRB

percentage of line haul revenue, Contractor shall receive 100% of any fuel surcharge, if any, collectible by Carrier as reflected on its rated freight bill.

   J.  Non-Reimbursable Expenses.  For the consideration specified above, Contractor agrees to be solely responsible for the following additional expenses:

     (1) Identification Devices.  (At its expense upon termination of lease, Contractor removing identification devices, offering suitable evidence to Carrier that such devices have been removed, or submit the equipment to Carrier for its removal.)

     (2) Cost of Fuel.

     (3) Fuel Taxes.

     (4) Permits of all types.

     (5) Tolls, ferries, accessorial services, base plate and licenses.

     (6) The hiring and settling of wages for its drivers and the payment of all employment taxes, worker's compensation insurance,

     (7) The maintenance of all equipment in accordance with DOT standards.

     (8) The payment of all operating expenses including Federal Highway Use Taxes, personal property taxes, fines incurred by it.

     (9) Furnishing all tools, including tie-downs and load securement equipment, and safety equipment required by the DOT and/or FMCSA.

     (10) Cost pertaining to the proper training and instruction of Contractor and its employees.

     (11) Compatible on-board computer and tracing technology to meet Shipper's requirements.  Attached hereto as Appendix D is a list of tools and other devices which Contractor is required to provide pursuant to this Agreement which can be purchased or rented to Contractor by Carrier for the fees stated therein.  If Contractor elects to purchase or rent these items by executing the addendum in the place provided, the cost of same will be charged back to settlements until such time as the tool or device is returned in good condition, ordinary wear and tear excepted.

Initial Here: *RLB*

(12)  <u>Property Damage to Carrier's Trailer</u>.  Contractor shall be responsible for any property damage to Carrier's trailer equipment or other equipment beyond ordinary wear and tear.

(13)  <u>Fines for Oversize or Overweight Shipments</u>.  Unless trailers are preloaded and sealed or containerized, Contractor or its employees shall be responsible for confirming that all lading is suitable for transportation in accordance with applicable weight and dimensional limitations imposed by in-transit states or authorized by special permits obtained for transportation of the shipment. Contractor shall be responsible for all fines, penalties and claims resulting from failure to comply with this obligation.

(14)  With respect to fuel purchases set forth in Subparagraph 3 above, Contractor recognizes that Carrier is required by IFTA to file taxes governing fuel taxes for its services and accordingly agrees to purchase sufficient fuel within each state in which its equipment operates to assure payment of fuel taxes.  Contractor agrees to provide Carrier with satisfactory proof of such purchases and to pay any applicable deficiency.

(15)  With respect to base plates, if purchased in the name of Carrier, upon termination of the lease Carrier will transfer the plates to another unit if possible, crediting Contractor with any refund or credit it received.  If Carrier is unable to transfer the plates to another unit, then no refund or credit will be due to Contractor.

(16)  Detention time.

K.  <u>Payment</u>.  In accordance with 49 C.F.R. 376.12(f) Carrier agrees to pay Contractor within 15 days after submission of necessary delivery documents to secure payment from shipper and driver log books required by the U.S. DOT.  Because the parties recognize that the U.S. DOT regulations now require the Carrier to maintain supporting documents including but not limited to trip reports, weight tickets, evidence of toll receipts and fees, as well as other documents, Contractor agrees to submit these additional documents with its settlement.  If such documentation is not provided within 5 working days of Carrier's request, Contractor agrees to a settlement deduction of $50 per occurrence to reimburse Carrier for the administrative expense of re-requesting the documentation.  I

L.  <u>Chargeback Options</u>.  Carrier shall be entitled to chargeback to Contractor and deduct from settlement the following: (1) all payments paid by Carrier for authorized advances and costs incurred by Carrier on behalf of Contractor as a result of Contractor's obligations enumerated in J above.  In addition, any advance specifically confirmed in writing, the purchase of any goods or services from Carrier by Contractor as specifically authorized in this Agreement or otherwise and specifically enumerated fine or penalty may be deducted for the

Initial Here: _lll_

specific amount provided for herein or at Carrier's cost without markup. Contractor will be afforded copies of documents necessary to determine the validity of any charge.

M.    Products, Equipment or Services from Carrier. Contractor is not required to purchase or rent any products, equipment or services from Carrier as a condition of entering this Lease. Any product, equipment or service which Contractor elects to purchase shall be enumerated in Appendix D or by subsequent addenda.

N.    Insurance. Carrier has a legal obligation under federal statute to provide bodily injury and property damage insurance to the public for the use of the leased equipment pursuant to 49 U.S.C. 13906 during the term of this Lease. Contractor agrees to carry non-trucking liability (so-called "deadhead and bobtail") insurance with a combined single limit of not less than $500,000 and will provide proof of such coverage to Carrier during the term of this Agreement. Contractor further agrees that it is its sole duty to require and maintain at its expense worker's compensation insurance or other insurance required by the provision of any applicable employer's liability law on all drivers and any other employees required by Contractor or hired by Contractor to perform the services under this Agreement. A certificate of worker's compensation will be furnished upon request. If Contractor elects to obtain and if Contractor maintains that worker's compensation is not required due to statutory exemption, it will provide evidence of comparable occupational accident insurance and otherwise warrants that it will indemnify and hold harmless Carrier against any allegation of cut-through liability.

If Contractor elects to purchase any insurances from sources available through Carrier, such coverage will be set forth in Appendix D and Carrier will provide Contractor with a copy of each policy upon request, providing to Contractor a certificate of insurance naming the insurer, the policy number, the effective dates, the amount of coverage, the cost to lessor and any deductible.

O.    Cargo and Accident Deductible. Notwithstanding any public liability insurance or cargo insurance maintained by Carrier, Contractor agrees to pay to Carrier an amount equal to the first $2500 of the expense incurred by Carrier and paid to it any cargo claimant or accident victim as a result of the negligence of Contractor or its employees in the performance of this contract. Prior to any such deductions, Carrier shall provide to Contractor with a written explanation and itemization of any deductions for cargo or property damage made from any compensation of money owed to Contractor.

P.    Notification Requirement. Contractor further agrees to immediately notify Carrier of any potential cargo claim, accident, fine, citation or out-of-service order incurred by Contractor or its employees in order to ensure Carrier's compliance with its customer and safety obligations.

If for any reason Contractor fails to return Carrier's equipment or remove placards within 24 hours of termination, Contractor acknowledges that Carrier may seek a writ of replevin and agrees to pay all attendant attorney's fees and costs as well as the cost of recovery incurred by Carrier in recovering its equipment and removing its placards.

Initial Here: _RRB_

Q.     Escrow of Funds.  T he Contractor shall deposit with the Carrier a performance bond issued by a Surety Company approved by Carrier in the amount of $2,500.00 per vehicle, or at his option, may furnish in lieu thereof a $500.00 cash bond to guarantee the full, complete and competent performance of the Contractor's obligations under this contract. These obligations include the settlement of all accounts between Contractor, its employees or agents, and Carrier, reimbursement of authorized chargeback items, and the return of all regulatory agency permits, tags and identifications issued in the name of the Carrier and the Contractor upon expiration or termination of the Contract or upon the execution of a receipt for the equipment.

The Contractor shall receive notice through the settlement process of any transaction involving the escrow funds, to include any withdrawals or any other adjustments to the escrow account. Contractor shall have the right to an accounting for transactions involving the escrow fund at any time. The Carrier shall compute interest on the escrow funds at least quarterly. For purposes of calculating the balance of the escrow fund on which interest must be paid, the Carrier may deduct a sum equal to the average advance made to the Contractor during the period of time for which the interest is to be paid. The interest rate that is to be applicable to said interest payments shall be set at a rate equal to the average yield or equivalent coupon issue yield on 13-week Treasury Bills as established in the weekly auction by the Department of Treasury at the beginning of each period for which interest is to be calculated.

If for any reason Contractor fails to return Carrier's equipment or remove placards within 24 hours of request, Contractor acknowledges that Carrier may seek a writ of replevin and agrees to pay all attendant attorney's fees and court costs as well as the cost of recovery incurred by Carrier in recovering its equipment and removing its placards.

Carrier shall return any remaining escrow funds to Contractor no later than 45 days from the date of termination.

R.     Impermissive Use of Equipment.  The parties contemplate that Contractor may use trailer equipment owned by Carrier to provide the contracted services.  Such equipment may be used without additional charge for the purpose of providing services for Carrier or with Carrier's express permission.  During the term of this Agreement, if Contractor moves or pulls Carrier's trailer from Carrier's terminal or other location without Carrier's authorization, Contractor will be assessed 15¢ per mile for the total number of miles and all other charges incurred in securing and returning such trailer subject to a minimum charge of $50 per day.

2.     Contractor Independence/Control of Operations.

A.     Federal and State Laws.  At all times, Independent Contractor shall remain solely responsible for payment of all federal and state taxes accruing as a result of its maintenance and use of the leased vehicle, retention and payment of driver personnel to perform services under this agreement.  Contractor warrants that it is familiar with and shall comply with all applicable employment laws and applicable taxes including and not limited to federal and state income tax, state worker's compensation, unemployment compensation taxes, and overtime

Initial Here: RRB

requirements which may be applicable.  Contractor shall indemnify and hold Carrier harmless from these obligations.

To the extent not inconsistent with federal, state and safety regulations, including but not limited to hours of service requirements, highway speed limits and other restrictions, Contractor shall be free to set the method and time of performance for all delivery of loads accepted by it. The parties agree and understand that federal and state laws and regulations impose duties on carriers including the maintaining of records of Contractor operations, equipment maintenance, hours of service, reporting for state tax purposes all miles run by the vehicle as well as additional obligations imposed by Carrier's insurer whose federal filings are a prerequisite of operations. Contractor agrees to comply with these federal duties and statutes with respect to the equipment leased to Carrier and will provide all necessary supporting documents as required by law. Contractor warrants that it will only permit driver personnel to perform service under this Contract who have been credentialed and approved by Carrier in accordance to US DOT requirements.

B.     Customer-Specific Requirements.  The parties agree that in the performance of this contract, Carrier in its sole discretion will tender Contractor individual loads, subject to its equipment availability on a load-by-load basis.  It is agreed that any load may have customer-imposed service requirements which will be conveyed to the Contractor at time of tender.  Contractor agrees to accept or reject the load tender and is not subject to forced dispatch. In accepting the load, Contractor agrees to perform in accordance with any special ground rules imposed by the customer and further warrants that the expected service can be provided in a safe and non-negligent fashion in accordance with its drivers' available hours of service.

C.     Routes and Methods.  The parties agree that federal regulation requires a Carrier to be responsible for accounting for all miles run by the involved commercial vehicle while under lease and for the hours of service of the driver operating the leased vehicle, regardless of whether the truck is under dispatch.  Notwithstanding these requirements, Contractor is free to select the routing for performing any dispatch consistent with state and federal highway speed limits, weight and other restrictions.  Carrier will assist Contractor by providing practical routing information for its use. Contractor agrees to indemnify and hold harmless Carrier from any claim, fine, loss or damage which arises from the "deadhead or bobtail" use by it of the equipment.

Contractor agrees to indemnify and hold harmless Contractor from any claim, fine or assessment arising out of its failure to comply with the warranties and representations contained in this paragraph.

D.     Independent Contractor Status.  It is the intent of the parties for Contractor to retain the status of an independent contractor in business for federal and state law purposes. Carrier's control over Contractor shall be limited to that control required by federal and state statutes and regulations governing the conduct of motor carriers.  Contractor shall train all of its driver personnel in accordance with U.S. DOT requirements and shall submit all driver personnel to Carrier for qualification, safety and training to the extent required by federal regulations. Neither Contractor nor its driver employees shall be required to attend other employment

Initial Here: RRB

training meetings held by the company nor shall they be subject to the company employment manual. Contractor shall have the right to substitute other qualified drivers to perform the services subject to Carrier's confirmation that Contractor's driver meets the driver qualifications established by the U.S. DOT and its insurers.

Contractor warrants that no driver will be used until the driver has been qualified by Carrier in accordance with federal safety requirements. At all times, Contractor shall remain responsible for hiring and supervising his employees and for paying their salaries and all relevant taxes. Contractor warrants compliance with all federal and state employment laws and shall indemnify and hold Carrier harmless from its failure to discharge such obligations.

Contractor shall at all times be free to set its hours of operations consistent with the federally imposed hours of service requirements and the scope of the work accepted and the customer's service expectations. Contractor is free to work when and where it chooses and shall accept or reject work assignments on a load by load basis. Contractor agrees to comply with any scope of work requirement imposed by the customer service conditions when accepting a job assignment but is otherwise free to schedule the order of its work.

Where shipper requires same and to facilitate efficient dispatch, Contractor agrees to provide electronic notification of its operating status including when equipment is loaded, unloaded or otherwise available to dispatch. Otherwise no oral or written report other than the supporting documents and logs required by the DOT, bills of lading and shipping documents required by the customer for payments and fuel taxes as required by IFTA shall be required.

Contractor shall be solely responsible for furnishing the power equipment used to provide service and shall keep same in good repair in accordance with federal regulation and inspection requirements. Contractor shall be solely responsible for the payments on the leased equipment on the subject equipment and shall have the right to make all crucial decisions with respect to the maintenance and operation of such equipment.

Consistent with the leasing regulations which require Carrier to have exclusive possession and control of the equipment, Contractor shall be free with notice to work for other carriers or customers. When Contractor works for other carriers or customers, Contractor shall not operate under, or display, the placards or other identifying equipment of Carrier. Contractor shall have the right to discharge any driver it employs at any time. Contractor agrees that it shall reassign any driver which Carrier in its sole discretion determines is unqualified to comply with Carrier's federal imposed safety duties.

Contractor warrants as a condition of this contract that all equipment will be continually operated in accordance with U.S. DOT safety regulations in a non-negligent fashion.

Contractor shall accept work assignments on a job by job or load by load basis and agrees to comply with any ground rules or scope of work requirements established by the shipper as a service condition imposed on the work provided. Carrier does not guarantee Contractor a profit or limit its profit margin for contracts performed.

Initial Here: RRB

3.     Standard Operating Procedures.  Because Carrier's customers require on-board communication to track delivery times, confirm pickups and deliveries and obtain advice about in-transit conditions, Contractor agrees to obtain on-board communication devices compatible with Carrier's system.  Such equipment may be obtained and installed by Contractor in leased unit at its choosing.  If purchased or leased from Carrier, Contractor's decision will be reflected in Appendix D and deduction from settlement will be authorized.

Unless Contractor or its driver notifies Carrier to the contrary, for the parties' mutual benefit, Carrier will tender loads to Contractor's driver using such on-board communications in real time based upon the availability of shipments, the equipment, and notice provided electronically that the leased equipment is available for a new contract consistent with the driver's available hours of service and its location.  To facilitate these standard operating procedures, Contractor agrees to afford Carrier reasonable notice if its driver or unit is otherwise unavailable to accept additional loads.

4.     Contractors, Warranties, and Indemnification. As consideration for entering into this agreement, Contractor warrants as follows:

a.  that it is properly licensed and authorized to conduct its independent trade or business in accordance with local and state laws;

b.  that it will comply with all federal, state, and local taxing authorities that are applicable to its trade or business and will pay all applicable withholding and employment taxes and insurance payments as they come due by reason of its retention of personnel to provide the contracted service;

c.  that it will not accept or incur any payment obligation on behalf of Carrier without its express written approval; and

d.  that it will promptly notify Carrier of any acts that result in any type of loss, shortage, citation, fine, or out of service order incurred in the course of its use or maintenance of the lease equipment during the period of this lease.

5.     Contractor agrees to indemnify and hold Carrier harmless from any breach of the above warranties or if other claim laws or damage arising out of the negligent or willful acts or omission of it, its officers, directors, employees, or agent

6.     Integrated Claim. The Parties agree that this contact sets forth the full understanding of the Parties and shall not be modified or changed in any way except by express written addendum.

7.     Termination. This Contract may be terminated by either party on fifteen (15) days written notice.  If, in the sole opinion of Carrier, the driver qualified by Contractor to provide services fails to comply with the Federal Motor Carrier Safety Regulations, Carrier may terminate this Agreement at any time.

Initial Here: RRB

8.      Claims Notification. The Parties recognize in accordance with federal statute, Carrier has 6 months from the issuance of any freight invoice to file an undercharged claim with its Shipper. Accordingly, the Parties agree that Contractor will review its settlements and notify Carrier not later than 165 days after issuance of its disputed amount or thereafter will be barred.

9.      Alternative Dispute Resolution. The parties agree that any dispute concerning the terms of this Agreement will be submitted to mediation followed by binding arbitration before a tribunal convened under the rules of the American Arbitration Association at Atlanta, GA.

10.     Venue and Jurisdiction. This agreement is made pursuant to the requirements of federal law and otherwise subject to the laws of the State of Georgia. The parties agree that that any lawsuit shall be filed in a court of competent jurisdiction in Gwinnett County.

Dated this ___1ST___ day of ___JUNE___, 20 21.

[CARRIER]:316 Towing and Road Service          [CONTRACTOR]: REYNAUDO BROWN

_____                         _____
Signature                                        Signature

Eli Kudvin                                       REYNAUDO R. BROWN
_____                         _____
Print Name                                       Print Name

Manager                                          Driver
_____                         _____
Title                                            Title

Initial Here: RRB

## APPENDIX A

### IDENTIFICATION OF EQUIPMENT

|         | Make | Year | Serial No. |
|---------|------|------|------------|
| Tractor |      |      |            |
| Trailer |      |      |            |
| Trailer |      |      |            |
| Trailer |      |      |            |
| Trailer |      |      |            |
| Trailer |      |      |            |

Name of Contractor: REYNALDO RICARDO BROWN

Phone: ███████████   Fax: _____

Address: ██████████████████████ BUFORD, GA 30519

FID No. _____ or SSN: ████████████

I certify that the above named Contractor is the title holder or beneficial owner of the identified equipment authorized to receive payments for the use of this equipment pursuant to the terms of this Agreement.

_____
Signature

6/1/21
_____
Date

Initial Here: RRB

**III. BANK FEES:**

Electronic Financial Transaction Charges – The CARRIER utilizes ComData/Fleet One/EFS services for electronic financial transactions. The following ComData/Fleet One/EFS fee schedule applies and will be deducted as incurred regardless of cost to Company:

| | |
|---|---|
| Service Fee for 1st time card use per day | $_____ |
| Service Fee for each card use per day after initial 1st time use | $_____ |
| ATM Withdrawal (U.S.) | $_____ |
| ATM Withdrawal (international Fee) | $_____ |
| ATM Balance Inquiry | $_____ |
| ATM Decline | $_____ |
| Transfer money to a bank account | $_____ |
| POS Debit Transactions | $_____ |
| Comcheck Draft | $_____ |
| Comdata Answer Plus Phone Service | $_____ per minute* |

\* A per call charge of $_____ applies to all calls originating from a payphone.
See ComData informational sheet for additional information regarding ComData services.

**IV. REIMBURSABLES TO CONTRACTOR**

Amount to be reimbursed on the first settlement for travel expense to orientation:

_____ X _____ = _____
Total Miles              Travel Pay                  Total Reimbursement

Travel Pay will be paid at the rate of $_____ per mile for all miles up to 499 from drivers' place of residence to orientation location and at the rate of $_____ per mile for all miles 500 and greater from drivers' place of residence to orientation location.

**V. MAINTENANCE RESERVE**

Maintenance Reserve Participation (circle one)          Accept     Decline

A minimum of $_____ will be deducted from each settlement

2290 Reserve Participation (circle one)                        Accept     Decline

A draw will be made until a maximum of $_____ has been escrowed towards payment of your 2290.

I have reviewed this schedule of initial leasing costs and other associated costs and agree to these deductions from my settlements. I have received a complying certificate of insurance for any insurance which I elect to purchase through Company and understand that a copy of the policy/policies will be provided upon request.

Contractor: _REYNALDO R. BROWN_          Date: _6/1/21_

Witness: _Eli Rudrin_                                    Date: _6/18/21_

Initial Here: _RRB_

## <u>ADDENDUM TO CONTRACTOR AGREEMENT</u>

The parties agree as follows:

(a)   Contractor is free to accept or reject assignments of any load from 316 Towing and Road Service

(b)   Contractor's remuneration is based upon trips or deliveries accomplished.

(c)   Services provided by Contractor will be performed utilizing the vehicle or vehicles leased by Contractor pursuant to the lease.

(d)   The written Lease to which this addendum is attached is in compliance with O.C.G.A. 34-8-35(n)(17).

(e)   Contractor warrants that it knows it is responsible to pay estimated Social Security taxes and federal and state income taxes.

    (i)   **Social Security tax Contractor must pay is higher than the Social Security tax an individual would pay if he or she were an employee.**

    (ii)   **The services or work provided by Contractor are not covered by unemployment compensation laws of Georgia.**

(f)   The written contract does not prohibit Contractor from pickup, transportation or delivery of property for more than one common carrier or any other person or entity when utilizing a motor vehicle agreement other than that leased hereunder.

Contractor Signature

Date: 6\1\21

Initial Here: _RLB_

## APPENDIX C

### RECEIPT FOR EQUIPMENT

This Receipt is issued by Carrier to the beneficial owner  REYNALDO R. BROWN
for VIN No. _____ this date for possession of the
equipment pursuant to an Independent Contractor Agreement. This Receipt shall serve as
compliance with 49 C.F.R. '376.11 as evidence of a continuing 30 day lease for Carrier to
transport general commodities without exception. A copy of the original Lease is kept by Carrier
at _796 Bill Rutledge Rd, Winder, GA 30680___ [address].

Received this _____ day of _____, 20_____ at _____ A.M. / P.M.

By: _____ (Authorized Agent of Carrier)

**RELEASE OF EQUIPMENT** (To be completed upon termination of agreement)

Independent Contractor hereby acknowledges receipt of Equipment described in this Agreement.

Hour _____ A.M. / P.M.  Date_____  Place_____

Independent Contractor Signature_____

Initial Here: RRB

EXHIBIT
6

| Call # | Invoice # | Account | PO # | Truck | Dispatched | Enroute | Completed | Invoice Total | Enroute | On Scene | Towing | Total Time | Unloaded | Loaded |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2135 | | (No Account Specified) | | Truck 416 2020 Dodge Ram 5500 (black) | 6/14/2021 6:23 PM | 6/14/2021 8:26 PM | 6/14/2021 8:26 PM | $130.00 | 0m | 10m | 0m | 0m | 0 | 0 |
| 2137 | | (No Account Specified) | | Truck 416 2020 Dodge Ram 5500 (black) | 6/14/2021 9:14 PM | 6/14/2021 9:30 PM | 6/14/2021 10:14 PM | $110.00 | 28m | 16m | 0m | 44m | 0 | 0 |
| 2136 | | Allstate | 1048195258 | Truck 416 2020 Dodge Ram 5500 (black) | 6/14/2021 10:30 PM | 6/15/2021 1:50 AM | 6/15/2021 1:50 AM | $202.50 | 23m | 2h 23m | 0m | 3h 7m | 23.8 | 48.3 |
| 2156 | | Allstate | 1048130379 | Truck 416 2020 Dodge Ram 5500 (black) | 6/15/2021 8:05 PM | 6/15/2021 8:17 PM | 6/15/2021 9:21 PM | $60.00 | 15m | 30m | 0m | 1h 6m | 12.7 | 8.2 |
| 2157 | | Agero | 544153885 | Truck 416 2020 Dodge Ram 5500 (black) | 6/15/2021 10:09 PM | 6/15/2021 11:23 PM | 6/15/2021 11:23 PM | $376.90 | 15m | 19m | 0m | 0m | 11.9 | 12.7 |
| 2155 | | Allstate | 1048204776 | Truck 416 2020 Dodge Ram 5500 (black) | 6/16/2021 11:18 PM | 6/16/2021 11:23 PM | 6/16/2021 12:13 AM | $45.00 | 0m | 37m | 0m | 1m | 3.3 | 11.9 |
| 2171 | | Agero | 479247165 | Truck 416 2020 Dodge Ram 5500 (black) | 6/16/2021 8:19 PM | 6/16/2021 8:53 PM | 6/16/2021 10:36 PM | $122.55 | 14m | 32m | 0m | 50m | 34.9 | 3.3 |
| 2187 | | Allstate | 1048215579 | Truck 416 2020 Dodge Ram 5500 (black) | 6/17/2021 6:31 PM | 6/17/2021 7:18 PM | 6/17/2021 8:41 PM | $53.00 | 24m | 57m | 0m | 1h 43m | 15.2 | 34.9 |
| 2188 | | Allstate | 1048230849 | Truck 416 2020 Dodge Ram 5500 (black) | 6/17/2021 8:47 PM | 6/17/2021 8:49 PM | 6/17/2021 10:21 PM | $50.70 | 42m | 17m | 0m | 1h 25m | 8 | 14.5 |
| 2190 | | Agero | 353668479 | Truck 416 2020 Dodge Ram 5500 (black) | 6/17/2021 9:51 PM | 6/17/2021 11:19 PM | 6/17/2021 11:05 PM | $53.25 | 1h 31m | 17m | 0m | 1h 32m | 6.9 | 9 |
| 2191 | | Agero | 680383350 | Truck 416 2020 Dodge Ram 5500 (black) | 6/17/2021 11:18 PM | 6/17/2021 11:34 PM | 6/18/2021 12:40 AM | $47.35 | 11m | 21m | 0m | 1h 6m | 9 | 10.3 |
| 2150 | | Allstate | 1048227486 | Truck 416 2020 Dodge Ram 5500 (black) | 6/18/2021 6:57 PM | 6/18/2021 7:39 PM | 6/18/2021 8:26 PM | $55.40 | 23m | 34m | 0m | 1h 6m | 10.3 | 2.9 |
| 2206 | | Allstate | 199929416 | Truck 416 2020 Dodge Ram 5500 (black) | 6/18/2021 9:15 PM | 6/18/2021 9:34 PM | 6/18/2021 11:40 PM | $572.65 | 18m | 1m | 53m | 2h 6m | 0.9 | 14.9 |
| 2209 | | Agero | 1048225055 | Truck 416 2020 Dodge Ram 5500 (black) | 6/18/2021 10:24 PM | 6/18/2021 11:59 PM | 6/19/2021 12:45 AM | $239.86 | 1h 21m | 19m | 0m | 2h 46m | 2.9 | 4.2 |
| 2206 | | Agero | 1048248683 | Truck 416 2020 Dodge Ram 5500 (black) | 6/21/2021 6:54 PM | 6/21/2021 7:21 PM | 6/21/2021 10:19 PM | $60.60 | 1h 58m | 1h 1m | 0m | 2h 6m | 14.9 | 11.7 |
| 2234 | | Allstate | 1048248115 | Truck 416 2020 Dodge Ram 5500 (black) | 6/21/2021 7:21 PM | 6/21/2021 9:11 PM | 6/21/2021 8:59 PM | $51.60 | 26m | 1h 5m | 0m | 2h 6m | 4.2 | 6.2 |
| 2235 | | Allstate | 1048249003 | Truck 416 2020 Dodge Ram 5500 (black) | 6/22/2021 1:21 PM | 6/22/2021 1:53 AM | 6/22/2021 1:03 AM | $148.20 | 18m | 13.5m | 0m | 0m | 15.2 | 16 |
| 2236 | | Allstate | 1048254818 | Truck 416 2020 Dodge Ram 5500 (black) | 6/22/2021 4:21 PM | 6/22/2021 5:00 PM | 6/22/2021 3:56 AM | $815.26 | 1h 22m | 1h 5m | 2h 36m | 16h 56m 5h 57m | 6.2 | 39.4 |
| 2256 | | Allstate | 770544598 | Truck 416 2020 Dodge Ram 5500 (black) | 6/22/2021 6:57 PM | 6/22/2021 8:32 PM | $105.45 | 10h 51m | 1h 32m | 2h 36m | 0m | 134 | 6.2 |
| 2256 | | Agero | | Truck 416 2020 Dodge Ram 5500 (black) | | | 6/23/2021 8:32 PM | $105.45 | 0m | 41m | 0m | 0m | 14.3 | 134 |
| 2256 | | Agero | | Truck 416 2020 Dodge Ram 5500 (black) | | | | | | | | | 30.3 | 14.3 |
| | | | | | | | | | | | | | 4.4 | 30.3 |

tabbles

Towbook - Reports

https://app.towbook.com/Reports/CallAnalysis/?reportType=DriverActivity&ownerU;serId=&...

| User | Call # | Invoice # | Account | PO # | Truck | Dispatched | Enroute | On Scene | Completed | Invoice Total | Enroute (Avg) | On Scene (Avg) | Unloaded (Avg) | Loaded (Avg) | Total Time | Unloaded (Miles) | Loaded (Miles) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2350 | | Agero | 812460056 | Truck 416 2020 Dodge Ram 5500 (black) | 6/22/2023 7:52 PM | 6/22/2023 9:44 PM | | 6/22/2023 10:32 PM | $43.40 | 49m | 0m | 0m | 48m | 1h 17m | 12.1 | 5.1 |
| | 2361 | | Allstate | 1048235738 | Truck 416 2020 Dodge Ram 5500 (black) | 6/22/2023 10:10 PM | 6/22/2023 11:32 PM | | 6/22/2023 11:32 PM | $51.30 | 59m | 33m | 0m | 59m | | 5.4 | 7.1 |
| | 2371 | | Agero | 358623717 | Truck 416 2020 Dodge Ram 5500 (black) | 6/23/2023 6:41 PM | 6/23/2023 9:57 PM | | 6/23/2023 11:20 PM | $56.50 | 28m | 0m | 28m | 1h 23m | | 4.7 | 11.6 |
| | 2372 | | Allstate | 1048264540 | Truck 416 2020 Dodge Ram 5500 (black) | 6/23/2023 7:18 PM | 6/23/2023 7:37 PM | | 6/23/2023 9:59 PM | $130.00 | 2h 0m | 30m | 0m | 2h 2m | | 0 | 0 |
| | 2374 | | Agero | 18782A064 | Truck 416 2020 Dodge Ram 5500 (black) | 6/23/2023 11:13 PM | 6/23/2023 11:23 AM | | 6/23/2023 8:59 PM | $42.40 | 0m | 11m | 1m | | 2h 7m | 11.6 | 3.9 |
| | 2390 | | Agero | 413972255 | Truck 416 2020 Dodge Ram 5500 (black) | 6/24/2023 6:09 PM | 6/24/2023 7:38 PM | | 6/24/2023 8:56 PM | $172.00 | 3m | 1h 4m | 2m | 1h 18m | | 15.5 | 54.5 |
| | 2391 | | (No Account Specified) | | Truck 416 2020 Dodge Ram 5500 (black) | 6/24/2023 11:01 PM | 6/24/2023 11:45 PM | | 6/25/2023 1:52 AM | $110.00 | 57m | 37m | 0m | 33m | 2h 7m | 0 | 0 |
| | 2392 | | (No Account Specified) | | Truck 416 2020 Dodge Ram 5500 (black) | 6/24/2023 11:44 PM | | | 6/25/2023 1:44 AM | $100.00 | 0m | 0m | 0m | 0m | 1h 36m | 0 | 0 |
| | 2393 | | Allstate | 1048280566 | Truck 416 2020 Dodge Ram 5500 (black) | 6/25/2023 8:02 PM | 6/25/2023 8:03 PM | | 6/25/2023 10:03 PM | $152.20 | 52m | 34m | 24m | 26.0m | | 23.4 | 31.8 |
| | 2394 | | Agero | 328672561 | Truck 416 2020 Dodge Ram 5500 (black) | 6/25/2023 8:19 PM | 6/25/2023 10:11 PM | | 6/25/2023 11:43 PM | $76.90 | 18m | 34m | 0m | 1h 32m | | 18.6 | 14.6 |
| | 2395 | | Agero | 120383495 | Truck 416 2020 Dodge Ram 5500 (black) | 6/26/2023 10:18 PM | | | 6/26/2023 12:59 AM | $68.60 | 18m | 0m | 23m | 0m | 1h 6m | 13.4 | 14.4 |
| | 2396 | | Agero | 508828061 | Truck 416 2020 Dodge Ram 5500 (black) | 6/26/2023 8:53 PM | 6/26/2023 8:55 PM | | 6/26/2023 10:32 PM | $95.10 | 13m | 13m | 0m | 1h 9m | | 18.4 | 22 |
| | 2397 | | Allstate | 1048288257 | Truck 416 2020 Dodge Ram 5500 (black) | 6/26/2023 10:47 PM | 6/26/2023 10:53 PM | | 6/27/2023 12:04 AM | $38.70 | 29m | 20m | 42m | 1h 11m | | 15.9 | 13 |
| | 2398 | | Allstate | 1048288308 | Truck 416 2020 Dodge Ram 5500 (black) | 6/27/2023 11:35 PM | 6/27/2023 1:46 AM | | 6/27/2023 2:54 AM | $63.30 | 8m | 9m | 9m | 1h 8m | | 21.9 | 15.9 |
| | 2305 | | Agero | 867304647 | Truck 416 2020 Dodge Ram 5500 (black) | | 6/27/2023 12:46 AM | | 6/27/2023 1:42 AM | $67.80 | 20m | 15m | 56m | 50m | | 16.3 | 9.4 |
| | 2354 | | (No Account Specified) | | Truck 416 2020 Dodge Ram 5500 (black) | 6/28/2023 6:54 PM | 6/28/2023 7:04 PM | | 6/28/2023 7:43 PM | $55.00 | 17m | 12m | 10m | 56m | | 21.2 | |
| | 2335 | | Agero | 145059322 | Truck 416 2020 Dodge Ram 5500 (black) | 6/28/2023 8:29 PM | 6/28/2023 9:36 PM | | 6/28/2023 11:12 PM | $204.15 | 36m | 19m | 39m | 1h 36m | | 28.6 | 33.5 |
| | 2327 | | (No Account Specified) | | Truck 416 2020 Dodge Ram 5500 (black) | 6/28/2023 10:44 PM | 6/28/2023 11:45 PM | | 6/29/2023 2:10 AM | $110.00 | 21m | 19m | 41m | 1h 45m | | 0 | 0 |
| | 2330 | | (No Account Specified) | | Truck 416 2020 Dodge Ram 5500 (black) | 6/29/2023 4:43 AM | 6/29/2023 5:14 AM | | 6/29/2023 7:03 AM | $100.00 | 32m | | 0m | 26.25m | 1h 49m | 0 | 0 |

| Call Number | Cancel Date | Cancel Reason | Cancel Notes | Dispatcher | Driver |
|---|---|---|---|---|---|
| 2136 | 6/14/2021 8:50 PM | Cancelled by Agero digitally. | | Viktoria Yakovenko | Reynaldo Ricardo Brown |
| 2159 | 6/16/2021 5:44 AM | Customer called back to cancel | | Valeria Brovkina | Reynaldo Ricardo Brown |
| 2173 | 6/16/2021 11:30 PM | Gone on Arrival | Customer wants us to bring a tire and we don't do that service | Viktoria Yakovenko | Reynaldo Ricardo Brown |
| 2207 | 6/18/2021 9:33 PM | Gone on Arrival | Reynaldo can't find that car and the cx sent him a pin pointe location and the car isn't there | Viktoria Yakovenko | Reynaldo Ricardo Brown |
| 2210 | 6/18/2021 11:58 PM | Customer cancelled | Reynaldo called the customer and she told him that another towing company would be there in 15 minutes | Viktoria Yakovenko | Reynaldo Ricardo Brown |
| 2232 | 6/22/2021 2:03 AM | Car is too big for wheel lift | | Viktoria Yakovenko | Reynaldo Ricardo Brown |


tabbies®
EXHIBIT

| ID | Date/Time and Notes | | |
|---|---|---|---|
| 2236 | 6/21/2021 8:50 PM Agero called back to cancel | Viktoria Yakovenko | Reynaldo Ricardo Brown |
| 2239 | 6/21/2021 10:36 PM Car without keys, needs wheel lift | Viktoria Yakovenko | Reynaldo Ricardo Brown |
| 2237 | 6/21/2021 11:11 PM Gone on Arrival | The number belongs to the guy mom not him, veh is locked and we cannot contact the customer | Viktoria Yakovenko | Reynaldo Ricardo Brown |
| 2270 | 6/23/2021 7:16 PM Payment Services web site after 24 hours. | Allstate Cancelled: This dispatch is not eligible for a GOA. If you feel this is in error, you may contest a GOA on the | Viktoria Yakovenko | Reynaldo Ricardo Brown |
| 2275 | 6/24/2021 3:54 AM Cancelled by Agero digitally. | Valeria Brovkina | Reynaldo Ricardo Brown |
| 2302 | 6/25/2021 6:52 PM Customer called back to cancel | Viktoria Yakovenko | Reynaldo Ricardo Brown |
| 2326 | 6/28/2021 8:48 PM Allstate at 8:48 PM | Digital Cancel Request Confirmed by | Viktoria Yakovenko | Reynaldo Ricardo Brown |
| 2329 | 6/29/2021 1:30 AM Customer called back to cancel | Valeria Brovkina | Reynaldo Ricardo Brown |

| Name | Overtime Damages | Damages with Liquidation |
|------|------------------|--------------------------|
| ■ | | |
| Brown | $ 25,941.85 | $ 51,883.70 |
| ■ | | |
| **TOTAL:** | | |


EXHIBIT
8



4:59

invoice for week ending 6...

**Invoice**

Name : Reynaldo Brown

Invoice Number: 02

Invoice Date: 6/24/2021

Payment Due: 6/25/2021

Accidental occupational insurance +100.00

total 950.00

Amount Due: 850.00

Bill To
316 Towing and Road Service Inc.
796 Bill Rutledge Road, Winder, GA, 30680

Towing Driver



EXHIBIT
9

Hyde000207

**Department of the Treasury**
Internal Revenue Service
Kansas City MO 64108

MITCHELL HANDSCHUH LAW GROUP
3390 PEACHTREE RD NE STE 520
ATLANTA GA 30326

88500



EXHIBIT

10

NEOPOST            FIRST-CL
07/28/2023
US POSTAGE   $002
                 US.POSTAGE
                 77P3
                 ZIP 6
                 041L1:

**Internal Revenue Service**

Customer Service Center
Kansas City, MO 64999

Official Business
Penalty for Private Use, $300



# RAIVS Requests for Tax Return Photocopy of Taxpayer Filed Returns

| Taxpayer | Date |
|---|---|
| REYNALDO R BROWN | 07/28/2023 |

**Refer to all checked boxes for your request for the taxpayer named above.**

☐ 1. You must resubmit your request on the most current version available of Form 4506. You must also check the box above the Signature Line, which is the Attestation Box, on the revised form.

☐ 2. We can't respond to your request without additional information. You must submit a new Form 4506 with the corrections checkmarked in this form.

☐ 3. We can't provide any of the items you requested.

☐ 4. We are enclosing the items you requested (or providing them to the third party on line 5 of your request) except for those listed below. Please refer to the checked boxes in this letter for more information.

    ☐ Copy of Tax Returns/Forms for tax years:

    ☐ Copy of Tax Returns for tax years mailed to you prevously

☐ 5. We can't accept altered forms (e.g., white-out, line-through, write-overs, labels/stickers, etc.) or required entries on your forms are illegible. Please complete and submit a new Form 4506.

☐ 6. The taxpayer's information does not match our records, is incomplete or is missing. You must submit a new Form 4506 and correct the items checked below:

    ☐ Name (Lines 1a/2a or Line 3)

    ☐ Employer Identification or Social Security Number (Lines 1b/2b)
    **Note:** Please ensure your TIN matches your name (SSN for individuals, EIN for businesses).

    ☐ Address (Lines 3 and/or 4)
    **Note:** Be sure to include your apartment or unit number with your address. If necessary, submit a *Change of Address* (Form 8822).

☐ 7. The taxpayer's address does not match our records. You must provide one of the following when you resubmit your request:

    • Copies of two pieces of identification bearing the taxpayer's signature
    • An original notarized statement affirming the taxpayer's identity
    • A signed statement worded as follows: "I certify under penalty of perjury under laws of the United States of America that I am the taxpayer who filed the return/ forms/transcripts request for the tax periods of

    _____."

☐ 8. You asked us to send information to more than one third party. You must submit a separate Form 4506 for each third party recipient.

☐ 9. The information we need to release taxpayer information to a third party is incomplete. The name and address of the third party should be on line 5 of Form 4506.

☐ 10. Lines 6 through 8 of Form 4506 must be complete.

☐ 11. The tax form listed on Line 6 of Form 4506 is incorrect or invalid.

☐ 12. Your line 6 entry indicates you are requesting tax return information for more than one type of tax form. You must submit a separate Form 4506 for each type of tax form.

☐ 13. We can't provide Form _____ information.

☐ 14. You or your third party will receive a refund for your payment in 4–6 weeks because:

    ☐ Some or all of the products you requested were unavailable.

    ☐ You overpaid.

    ☐ We could not consider your request.

    ☐ Some or all of the products you requested don't require a fee.

☒ 15. We are returning your payment to you or your designated third party.

☐ 16. The refund will be issued to the taxpayer. The box on line 9 of Form 4506 has no designation for the issuance of a refund to anyone other than the taxpayer.

☐ 17. You sent your request without a payment or with an insufficient payment. A fee of $50 is required for each tax year requested.

☐ 18. You must submit a newly-signed request with payment. We are in the process of refunding the payment you sent with your initial request, we can't credit it to a new request. You should receive the refund in 4–6 weeks.

☐ 19. Our office can't process requests for Forms 5500, Annual Return/Report of Employee Benefit Plan. You can get a copy of Form 5500 by writing to:
    Public Disclosure Office, Room N-1513
    Pension and Welfare Benefits Administration
    200 Constitution Ave., NW
    Washington, DC 20210

☐ 20. We can't provide a copy of Form 5500-EZ, the plan period you requested (Dec. 1999 through Dec. 2008) because it is unavailable.

☐ 39. We notified the third party listed on line 5 of your Form 4506 that we couldn't complete your request. However, we can't tell a third party the reasons why. The third party may contact you to get the information we need to complete your request.

You can get the forms, schedules, or publications you need by visiting our website at www.irs.gov/formspubs or calling 1-800-TAX-Form (1-800-829-3676).

If you have questions about the information in this form, you can call the Return and Income Verification Services Team at:

( 816 ) 499-5849_____ or fax us at

( 855 ) 821-0094_____ .

Refer to IDRS #  88500_____ .

For all other inquiries, you can call:
- 1-267-941-1000 for returns with an international address
- 1-800-829-8374 for individual returns with Schedules C, E, F, or Form 2106
- 1-800-829-0922 for individual returns
- 1-800-829-0115 for business returns

Enclosures:

☐ Original or copy of request

☐ Signature letter

☐ Notice 1356

☐ Original taxpayer documents

| efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | DLN: 30211430317652 |
|---|---|---|

**Form 1040** Department of the Treasury—Internal Revenue Service (99)
**U.S. Individual Income Tax Return 2021** OMB No. 1545-0074 IRS Use Only—Do not write or staple in this space.

**Filing Status**
Check only one box

☐ Single ☒ Married filing jointly ☐ Married filing separately (MFS) ☐ Head of Household (HOH) ☐ Qualifying widow(er) (QW)
If you checked the MFS box, enter the name of spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent. ▶

| Your first name and middle initial SHATOYA S & REYNALDO R<BROWN | Last name | Your social security number |
|---|---|---|
| If joint return, spouse's first name and middle initial | Last name | Spouse's social security number |

| Home address (number and street). If you have a P.O. box, see instructions. | | Apt. no. | **Presidential Election Campaign** Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund. |
|---|---|---|---|
| City, town, or post office. If you have a foreign address, also complete spaces below. Buford | State GA | ZIP code 305197212 | |
| Foreign country name | Foreign province/state/county | Foreign postal code | ☐ You ☐ Spouse |

At any time during 2021, did you receive, sell, exchange, or otherwise dispose of any financial interest in any virtual currency? ☐ Yes ☒ No

**Standard Deduction**
Someone can claim: ☐ You as a dependent ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness** You: ☐ Were born before January 2, 1957 ☐ Are blind   Spouse: ☐ Was born before January 2, 1957 ☐ Is blind

**Dependents** (see instructions):

If more than four dependents, see instructions and check here ▶ ☐

| (1) First name   Last name | (2) Social security number | (3) Relationship to you | (4) ✓ if qualifies for (see instructions): Child tax credit | Credit for other dependents |
|---|---|---|---|---|
| | | DAUGHTER | ☑ | ☐ |
| | | DAUGHTER | ☑ | ☐ |
| | | DAUGHTER | ☑ | ☐ |
| | | | ☐ | ☐ |

**Attach Sch. B if required.**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Wages, salaries, tips, etc. Attach Form(s) W-2 | | | | **1** | 6,815 |
| 2a | Tax-exempt interest . | 2a | | b Taxable interest. Attach Sch. B if required | **2b** | |
| 3a | Qualified dividends | 3a | | b Ordinary dividends. Attach Sch. B if required | **3b** | |
| 4a | IRA distributions . . | 4a | | b Taxable amount . . . . . | **4b** | |
| 5a | Pensions and annuities | 5a | | b Taxable amount . . . . . | **5b** | |
| 6a | Social security benefits | 6a | | b Taxable amount . . . . . | **6b** | |
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here | | | ▶ ☐ | **7** | |
| 8 | Other income from Schedule 1, line 10 . . . . . . . . . | | | | **8** | 32,194 |
| 9 | Add lines 1, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** . . . . . . ▶ | | | | **9** | 39,009 |
| 10 | Adjustments to income from Schedule 1, line 26 . . . . . . . . . | | | | **10** | 1,089 |
| 11 | Subtract line 10 from line 9. This is your **adjusted gross income** . . . . . ▶ | | | | **11** | 37,920 |
| 12a | **Standard deduction or itemized deductions** (from Schedule A) | 12a | 25,100 | | | |
| b | Charitable contributions if you take the standard deduction (see instructions) . . . . . . . . . . . . | 12b | | | | |
| c | Add lines 12a and 12b . . . . . . . . . . . . . . . . | | | | **12c** | 25,100 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A . . . . . . . . | | | | **13** | 2,564 |
| 14 | Add lines 12c and 13 . . . . . . . . . . . . . . . . | | | | **14** | 27,664 |
| 15 | **Taxable income.** Subtract line 14 from line 11. If zero or less, enter -0- . . . . | | | | **15** | 10,256 |

**Standard Deduction for –**
● Single or Married filing separately, $12,550
● Married filing jointly or Qualifying widow(er), $25,100
● Head of household, $18,800
● If you checked any box under *Standard Deduction,* see instructions.

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.   Cat. No. 11320B   Form **1040** (2021)

Form 1040 (2021)                                                                                                      Page 2

| | 16 | Tax (see instructions). Check if any from Form(s): 1 ☐ 8814  2 ☐ 4972  3 ☐ _____ | | 16 | 1,028 |
|---|---|---|---|---|---|
| | 17 | Amount from Schedule 2, line 3 . . . . . . . . . . . . . . . . . . ▶ | | 17 | |
| | 18 | Add lines 16 and 17 . . . . . . . . . . . . . . . . . . . . . | | 18 | 1,028 |
| | 19 | Nonrefundable child tax credit or credit for other dependents from Schedule 8812 . . . . . | | 19 | |
| | 20 | Amount from Schedule 3, line 8 . . . . . . . . . . . . . . . . ▶ | | 20 | |
| | 21 | Add lines 19 and 20 . . . . . . . . . . . . . . . . . . . . . | | 21 | |
| | 22 | Subtract line 21 from line 18. If zero or less, enter -0- . . . . . . . . . . . | | 22 | 1,028 |
| | 23 | Other taxes, including self-employment tax, from Schedule 2, line 21 . . . . . | | 23 | 2,178 |
| | 24 | Add lines 22 and 23. This is your total tax . . . . . . . . . . . . . ▶ | | 24 | 3,206 |
| | 25 | Federal income tax withheld from: | | | |
| | a | Form(s) W-2 . . . . . . . . . . . | 25a | | |
| | b | Form(s) 1099 . . . . . . . . . . . | 25b | 1,677 | |
| | c | Other forms (see instructions) . . . . . | 25c | | |
| | d | Add lines 25a through 25c . . . . . . . . . . . . . . . . . . . | | 25d | 1,677 |
| If you have a qualifying child, attach Sch. EIC. | 26 | 2021 estimated tax payments and amount applied from 2020 return . . . . . | | 26 | |
| | 27a | Earned income credit (EIC) . . . . . . . . . . | 27a | 4,104 | |
| | | Check here if you were born after December 31, 1997 and before January 2, 2004, and you satisfy all the other requirements for taxpayers who are at least age 18 to claim the EIC. See instructions. . . . . . . . . . . . . . . . . . . . . ▶ ☐ | | | |
| | b | Nontaxable combat pay election | 27b | | |
| | c | Prior year (2019) earned income | 27c | 0 | |
| | 28 | Refundable child tax credit or additional child tax credit from Schedule 8812 . . . . . . . . . . . . . . | 28 | 6,600 | |
| | 29 | American opportunity credit from Form 8863, line 8 . . . . . | 29 | | |
| | 30 | Recovery rebate credit. See instructions . . . . . . . . . | 30 | 1,400 | |
| | 31 | Amount from Schedule 3, line 15 . . . . . . . . . . | 31 | | |
| | 32 | Add lines 27a and 28 through 31. These are your total other payments and refundable credits . . . . . . . . . . . . . . . . . . . . . . . ▶ | | 32 | 12,104 |
| | 33 | Add lines 25d, 26, and 32. These are your total payments . . . . . . . . . ▶ | | 33 | 13,781 |
| Refund | 34 | If line 33 is more than line 24, subtract line 24 from line 33. This is the amount you overpaid | | 34 | 10,575 |
| Direct deposit? See instructions. | 35a | Amount of line 34 you want refunded to you. If Form 8888 is attached, check here . ▶ ☐ | | 35a | 10,575 |
| | ▶b | Routing number | 044111191 | ▶ c Type: ☑ Checking ☐ Savings | |
| | ▶d | Account number | | | |
| | 36 | Amount of line 34 you want applied to your 2022 estimated tax . . ▶ | 36 | | |
| Amount You Owe | 37 | Amount you owe. Subtract line 33 from line 24. For details on how to pay, see instructions ▶ | | 37 | |
| | 38 | Estimated tax penalty (see instructions) . . . . . . . . ▶ | 38 | | |

| Third Party Designee | Do you want to allow another person to discuss this return with the IRS? See instructions . . . . . . . . . . . . . . . . . . . . . . ▶ ☐ Yes. Complete below. ☑ No | | |
|---|---|---|---|
| | Designee's name ▶ | Phone no. ▶ | Personal identification number (PIN) ▶ |

| Sign Here | Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | | | |
|---|---|---|---|---|
| | Your signature | Date | Your occupation | If the IRS sent you an Identity Protection PIN, enter it here (see inst.) ▶ |
| Joint return? See instructions. Keep a copy for your records. | ****** | 01-30-2022 | Independent Contractor | |
| | Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | If the IRS sent your spouse an Identity Protection PIN, enter it here (see inst.) ▶ |
| | ****** | 01-30-2022 | Independent Contractor | |
| | Phone no. ▉ | Email address | | |

| Paid Preparer Use Only | Preparer's name | Preparer's signature | Date | PTIN | Check if: ☐ Self-employed |
|---|---|---|---|---|---|
| | Firm's name ▶ | | | Phone no. | |
| | Firm's address ▶ | | | Firm's EIN ▶ | |

Go to www.irs.gov/Form1040 for instructions and the latest information.                     Form 1040 (2021)

**Additional Data**                                                          Form 1040 (2021)

|  |  |
|---|---|
| **Software ID:** |  |
| **Software Version:** |  |
| **SSN:** |  |
| **Spouse SSN:** |  |
| **Name:** | SHATOYA S & REYNALDO R<BROWN |
| **Top Right Margin - Refund Product Code:** | POST-REFUND FINANCIAL PRODUCT (REFUND TRANSFER) |
| **Header - Primary Name Control:** | BROW |
| **Header - Spouse Name Control:** | BROW |
| **Standard Deduction - Total Exempt Primary And Spouse Cnt:** | 2 |
| **Dependents - Children Who Lived With You Count:** | 3 |
| **Dependents - Total Exemptions Count:** | 5 |
| **Dependent 1 Name Control:** | PACK |
| **Dependent 2 Name Control:** | HAYE |
| **Dependent 3 Name Control:** | BROW |
| **Line 25b - Form 1099 Tax Withheld:** | 1677 |

| efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | | DLN: 30211430317652 |
|---|---|---|---|

| Form **8995** | **Qualified Business Income Deduction**<br>**Simplified Computation** | OMB No. 1545-2294 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service | ▶Attach to your tax return.<br>▶Go to *www.irs.gov/Form8995* for instructions and the latest information. | **2021**<br>Attachment<br>Sequence No. **55** |

| Name(s) shown on return<br>SHATOYA S & REYNALDO R<BROWN | Your taxpayer identification number |
|---|---|

**Note.** *You can claim the qualified business income deduction **only** if you have qualified business income from a qualified trade or business, real estate investment trust dividends, publicly traded partnership income, or a domestic production activities deduction passed through from an agricultural or horticultural cooperative. See instructions.*
Use this form if your taxable income, before your qualified business income deduction, is at or below $164,900 ($164,925 if married filing separately; $329,800 if married filing jointly), and you aren't a patron of an agricultural or horticultural cooperative.

| 1 | (a) Trade, business, or aggregation name | (b) Taxpayer identification number | (c) Qualified business income or (loss) |
|---|---|---|---|
| i | A1 Quality Towing LLLP | | 12,946 |
| ii | Shatoya S Brown | | 788 |
| iii | Shatoya S Brown | | 325 |
| iv | Shatoya S Brown | | 263 |
| v | | | |

| | | | | |
|---|---|---|---|---|
| 2 | Total qualified business income or (loss). Combine lines 1i through 1v, column (c) | **2** | 14,322 | |
| 3 | Qualified business net (loss) carryforward from the prior year | **3** | ( ) | |
| 4 | Total qualified business income. Combine lines 2 and 3. If zero or less, enter -0- | **4** | 14,322 | |
| 5 | Qualified business income component. Multiply line 4 by 20% (0.20) | | | **5** 2,864 |
| 6 | Qualified REIT dividends and publicly traded partnership (PTP) income or (loss) (see instructions) | **6** | | |
| 7 | Qualified REIT dividends and qualified PTP (loss) carryforward from the prior year | **7** | ( ) | |
| 8 | Total qualified REIT dividends and PTP income. Combine lines 6 and 7. If zero or less, enter -0- | **8** | | |
| 9 | REIT and PTP component. Multiply line 8 by 20% (0.20) | | | **9** |
| 10 | Qualified business income deduction before the income limitation. Add lines 5 and 9 | | | **10** 2,864 |
| 11 | Taxable income before qualified business income deduction | **11** | 12,820 | |
| 12 | Net capital gain (see instructions) | **12** | 0 | |
| 13 | Subtract line 12 from line 11. If zero or less, enter -0- | **13** | 12,820 | |
| 14 | Income limitation. Multiply line 13 by 20% (0.20) | | | **14** 2,564 |
| 15 | Qualified business income deduction. Enter the lesser of line 10 or line 14. Also enter this amount on the applicable line of your return ▶ | | | **15** 2,564 |
| 16 | Total qualified business (loss) carryforward. Combine lines 2 and 3. If greater than zero, enter -0- | | | **16** (0) |
| 17 | Total qualified REIT dividends and PTP (loss) carryforward. Combine lines 6 and 7. If greater than zero, enter -0- | | | **17** (0) |

For Privacy Act and Paperwork Reduction Act Notice, see instructions.       Cat. No. 37806C       Form **8995** (2021)

**Additional Data**

**Software ID:**
**Software Version:**
**SSN:**
**Spouse SSN:**
**Name:**   SHATOYA S & REYNALDO R<BROWN

efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | DLN: 30211430317652

## TY 2021 Other Withholding Statement

**Name:** SHATOYA S & REYNALDO R<BROWN
**SSN:**
**Spouse SSN:**

| Withholding Code or WithholdingTxt | EIN | Withholding Amount |
|---|---|---|
| FORM 1099 | | 1,677 |

efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | DLN: 30211430317652

**SCHEDULE 1**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service

## Additional Income and Adjustments to Income

▶Attach to Form 1040, 1040-SR, or 1040-NR
▶Go to www.irs.gov/Form1040 for instructions and the latest information.

OMB No. 1545-0074

**2021**

Attachment
Sequence No. **01**

Name(s) shown on Form 1040 1040-SR, or 1040-NR
SHATOYA S & REYNALDO R<BROWN

**Your social security number**

### Part I    Additional Income

| | | | |
|---|---|---|---|
| 1 | Taxable refunds, credits, or offsets of state and local income taxes | 1 | 0 |
| 2a | Alimony received | 2a | |
| b | Date of original divorce or separation agreement (see instructions) ▶ _____ | | |
| 3 | Business income or (loss). Attach Schedule C | 3 | 15,411 |
| 4 | Other gains or (losses). Attach Form 4797 | 4 | |
| 5 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 5 | |
| 6 | Farm income or (loss). Attach Schedule F | 6 | |
| 7 | Unemployment compensation | 7 | 16,783 |
| 8 | Other income: | | |
| a | Net operating loss | 8a | ( ) |
| b | Gambling income | 8b | |
| c | Cancellation of debt | 8c | |
| d | Foreign earned income exclusion from Form 2555 | 8d | ( ) |
| e | Taxable Health Savings Account distribution | 8e | |
| f | Alaska Permanent Fund dividends | 8f | |
| g | Jury duty pay | 8g | |
| h | Prizes and awards | 8h | |
| i | Activity not engaged in for profit income | 8i | |
| j | Stock options | 8j | |
| k | Income from the rental of personal property if you engaged in the rental for profit but were not in the business of renting such property | 8k | |
| l | Olympic and Paralympic medals and USOC prize money (see instructions) | 8l | |
| m | Section 951(a) inclusion (see instructions) | 8m | |
| n | Section 951A(a) inclusion (see instructions) | 8n | |
| o | Section 461(l) excess business loss adjustment | 8o | |
| p | Taxable distributions from an ABLE account (see instructions) | 8p | |
| z | Other income. List type and amount ▶ _____ | 8z | |
| 9 | Total other income. Add lines 8a through 8z | 9 | |
| 10 | Combine lines 1 through 7 and 9. Enter here and on Form 1040, 1040-SR, or 1040-NR, line 8 | 10 | 32,194 |

For Paperwork Reduction Act Notice, see your tax return instructions.        Cat. No. 71479F        Schedule 1 (Form 1040) 2021

Schedule 1 (Form 1040) 2021      Page **2**

## Part II    Adjustments to Income

| | | | |
|---|---|---|---|
| 11 | Educator expenses | **11** | |
| 12 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 | **12** | |
| 13 | Health savings account deduction. Attach Form 8889 | **13** | |
| 14 | Moving expenses for members of the Armed Forces. Attach Form 3903 | **14** | |
| 15 | Deductible part of self-employment tax. Attach Schedule SE | **15** | 1,089 |
| 16 | Self-employed SEP, SIMPLE, and qualified plans | **16** | |
| 17 | Self-employed health insurance deduction | **17** | |
| 18 | Penalty on early withdrawal of savings | **18** | |
| 19a | Alimony paid | **19a** | |
| b | Recipient's SSN ▶ | | |
| c | Date of original divorce or separation agreement (see instructions) ▶ | | |
| 20 | IRA Deduction | **20** | |
| 21 | Student loan interest deduction | **21** | |
| 22 | Reserved for future use | **22** | |
| 23 | Archer MSA deduction | **23** | |
| 24 | Other adjustments: | | |

| | | | |
|---|---|---|---|
| a | Jury duty pay (see instructions) | **24a** | |
| b | Deductible expenses related to income reported on line 8k from the rental of personal property engaged in for profit | **24b** | |
| c | Nontaxable amount of the value of Olympic and Paralympic medals and USOC prize money reported on line 8l | **24c** | |
| d | Reforestation amortization and expenses | **24d** | |
| e | Repayment of supplemental unemployment benefits under the Trade Act of 1974 | **24e** | |
| f | Contributions to section 501(c)(18)(D) pension plans | **24f** | |
| g | Contributions by certain chaplains to section 403(b) plans | **24g** | |
| h | Attorney fees and court costs for actions involving certain unlawful discrimination claims (see instructions) | **24h** | |
| i | Attorney fees and court costs you paid in connection with an award from the IRS for information you provided that helped the IRS detect tax law violations | **24i** | |
| j | Housing deduction from Form 2555 | **24j** | |
| k | Excess deductions of section 67(e) expenses from Schedule K-1 (Form 1041) | **24k** | |
| z | Other adjustments. List type and amount ▶ | **24z** | |

| | | | |
|---|---|---|---|
| 25 | Total other adjustments. Add lines 24a through 24z | **25** | |
| 26 | Add lines 11 through 23 and 25. These are your **adjustments to income.** Enter here and on Form 1040 or 1040-SR, line 10, or Form 1040-NR, line 10a | **26** | 1,089 |

Schedule 1 (Form 1040) 2021

**Additional Data**

**Software ID:**
**Software Version:**
**SSN:**
**Spouse SSN:**
**Name:**  SHATOYA S & REYNALDO R<BROWN

eFile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production          DLN: 30211430317652

| SCHEDULE 2 (Form 1040) | Additional Taxes | OMB No. 1545-0074 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 1040, 1040-SR, or 1040-NR. ▶Go to www.irs.gov/Form1040 for instructions and the latest information. | **2021** Attachment Sequence No. 02 |

Name(s) shown on Form 1040, 1040-SR or 1040-NR
SHATOYA S & REYNALDO R<BROWN

Your social security number

## Part I   Tax

| | | | |
|---|---|---|---|
| 1 | Alternative minimum tax. Attach Form 6251 . . . . . . . . . . . . . . . | 1 | |
| 2 | Excess advance premium tax credit repayment. Attach Form 8962 . . . . . . . . | 2 | |
| 3 | Add lines 1 and 2. Enter here and include on Form 1040, 1040-SR, or 1040-NR, line 17 . . . . . . . | 3 | |

## Part II   Other Taxes

| | | | |
|---|---|---|---|
| 4 | Self-employment tax. Attach Schedule SE . . . . . . . . . . . . . . . | 4 | 2,178 |
| 5 | Social security and Medicare tax on unreported tip income.   Attach Form 4137 . . . . . . . . . . . . . . . . . . . . . . **5** | | |
| 6 | Uncollected social security and Medicare tax on wages. Attach Form 8919 **6** | | |
| 7 | Total additional social security and Medicare tax. Add lines 5 and 6 . . . . . . . . . . | 7 | |
| 8 | Additional tax on IRAs or other tax-favored accounts. Attach Form 5329 if required . . . . . . | 8 | |
| 9 | Household employment taxes. Attach Schedule H . . . . . . . . . . . . . . | 9 | |
| 10 | Repayment of first-time homebuyer credit. Attach Form 5405 if required . . . . . . . . | 10 | |
| 11 | Additional Medicare Tax. Attach Form 8959 . . . . . . . . . . . . . . . | 11 | |
| 12 | Net investment income tax. Attach Form 8960 . . . . . . . . . . . . . . . | 12 | |
| 13 | Uncollected social security and Medicare or RRTA tax on tips or group-term life insurance from Form W-2, box 12 . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | |
| 14 | Interest on tax due on installment income from the sale of certain residential lots and timeshares . . . | 14 | |
| 15 | Interest on the deferred tax on gain from certain installment sales with a sales price over $150,000 . . . | 15 | |
| 16 | Recapture of low-interest housing credit. Attach Form 8611 . . . . . . . . . . . . | 16 | |

*(continued on page 2)*

For Paperwork Reduction Act Notice, see your tax return instructions.          Cat. No. 71478U          Schedule 2 (Form 1040) 2021

Schedule 2 (Form 1040) 2021                    X ORIGINAL     Page 2

**Part II**    **Other Taxes** *(continued)*

| 17 | Other additional taxes: | | |
|---|---|---|---|
| a | Recapture of other credits. List type, form number, and amount ▶_____ | 17a | |
| b | Recapture of federal mortgage subsidy. If you sold your home in 2021, see instructions . . . . . . . . . . . . . . . . . . . . | 17b | |
| c | Additional tax on HSA distributions. Attach Form 8889 . . . . . | 17c | |
| d | Additional tax on an HSA because you didn't remain an eligible individual. Attach Form 8889 . . . . . . . . . . . . . . . . | 17d | |
| e | Additional tax on Archer MSA distributions. Attach Form 8853 . . . | 17e | |
| f | Additional tax on Medicare Advantage MSA distributions. Attach Form 8853 | 17f | |
| g | Recapture of a charitable contribution deduction related to a fractional interest in tangible personal property . . . . . . . . . . . . | 17g | |
| h | Income you received from a nonqualified deferred compensation plan that fails to meet the requirements of section 409A . . . . . . . . | 17h | |
| i | Compensation you received from a nonqualified deferred compensation plan described in section 457A . . . . . . . . . . . . . . . | 17i | |
| j | Section 72(m)(5) excess benefits tax . . . . . . . . . . . | 17j | |
| k | Golden parachute payments . . . . . . . . . . . . . . | 17k | |
| l | Tax on accumulation distribution of trusts . . . . . . . . . . | 17l | |
| m | Excise tax on insider stock compensation from an expatriated corporation . | 17m | |
| n | Look-back interest under section 167(g) or 460(b) from Form 8697 or 8866 | 17n | |
| o | Tax on non-effectively connected income for any part of the year you were a nonresident alien from Form 1040-NR . . . . . . . . . . | 17o | |
| p | Any interest from Form 8621, line 16f, relating to distributions from, and dispositions of, stock of a section 1291 fund . . . . . . . . . | 17p | |
| q | Any interest from Form 8621, line 24 . . . . . . . . . . . | 17q | |
| z | Any other taxes. List type and amount ▶_____ | 17z | |
| 18 | Total additional taxes. Add lines 17a through 17z . . . . . . . . . . . . . . . . . . . | 18 | |
| 19 | Additional tax from Schedule 8812 . . . . . . . . . . . . . | 19 | |
| 20 | Section 965 net tax liability installment from Form 965-A . . . . . . | 20 | |
| 21 | Add lines 4, 7 through 16, 18 and 19. These are your **total other taxes.** Enter here and on Form 1040 or 1040-SR, line 23, or Form 1040-NR, line 23b . . . . . . . . . . . . . . . . . . . . . | 21 | 2,178 |

For Paperwork Reduction Act Notice, see your tax return instructions.     Cat. No. 71478U        Schedule 2 (Form 1040) 2021

**Additional Data**

**Software ID:**
**Software Version:**
**SSN:** ▮▮▮▮▮▮▮▮
**Spouse SSN:** ▮▮▮▮▮▮▮▮
**Name:** SHATOYA S & REYNALDO R<BROWN

efile GRAPHIC print - DO NOT PROCESS ORIGINAL DATA - Production    DLN: 30211430317652

| SCHEDULE 8812 (Form 1040) | **Credits for Qualifying Children and Other Dependents** | OMB No. 1545-0074 |
|---|---|---|
| | ▶ Attach to Form 1040, 1040-SR, or Form 1040-NR. | **2021** |
| Department of the Treasury Internal Revenue Service   (99) | ▶ Go to *www.irs.gov/Schedule8812* for instructions and the latest information. | Attachment Sequence No. **47** |

| Name(s) shown on return | Your social security number |
|---|---|
| SHATOYA S & REYNALDO R<BROWN | |

## Part I-A    Child Tax Credit and Credit for Other Dependents

| | | | | |
|---|---|---|---|---|
| 1 | Enter the amount from line 11 of your Form 1040, 1040-SR, or 1040-NR . . . . . . . . | | **1** | 37,920 |
| 2a | Enter income from Puerto Rico that you excluded . . . . . . . . | **2a** | | |
| b | Enter the amounts from lines 45 and 50 of your Form 2555 . . . . . | **2b** | 0 | |
| c | Enter the amount from line 15 of your Form 4563 . . . . . . . | **2c** | | |
| d | Add lines 2a through 2c . . . . . . . . . . . . . . . . . . | | **2d** | 0 |
| 3 | Add lines 1 and 2d . . . . . . . . . . . . . . . . . . . . . . . | | **3** | 37,920 |
| 4a | Number of qualifying children under age 18 with the required social security number | **4a** | 3 | |
| b | Number of children included on line 4a who were under age 6 at the end of 2021 | **4b** | 1 | |
| c | Subtract line 4b from line 4a . . . . . . . . . . . . . | **4c** | 2 | |
| 5 | If line 4a is more than zero, enter the amount from the **Line 5 Worksheet**; otherwise, enter -0- . . | | **5** | 9,600 |
| 6 | Number of other dependents, including any qualifying children who are not under age 18 or who do not have the required social security number | **6** | 0 | |
| | **Caution:** Do not include yourself, your spouse, or anyone who is not a U.S. citizen, U.S. national, or U.S. resident alien. Also, do not include anyone you inlcluded on line 4a. | | | |
| 7 | Multiply line 6 by $500 . . . . . . . . . . . . . . . . . . . . . | | **7** | |
| 8 | Add lines 5 and 7 . . . . . . . . . . . . . . . . . . . . . . . | | **8** | 9,600 |
| 9 | Enter the amount shown below for your filing status.<br>• Married filing jointly--$400,000.<br>• All other filing statuses--$200,000 . . . . . . . . . . . . . . . . . . . . | | **9** | 400,000 |
| 10 | Subtract line 9 from line 3.<br>• If zero or less, enter -0-.<br>• If more than zero and not a multiple of $1,000, enter the next multiple of $1,000. For example, if the result is $425, enter $1,000; if the result is $1,025, enter $2,000, etc. . . . . . . . . | | **10** | 0 |
| 11 | Miltiply line 10 by 5% (0.05) . . . . . . . . . . . . . . . . . . . . | | **11** | 0 |
| 12 | Subtract line 11 from line 8. If zero or less, enter -0- . . . . . . . . . . . . . . . . | | **12** | 9,600 |
| 13 | Check all the boxes that apply to you (or your spouse if married filing jointly). | | | |
| A | Check here if you (or your spouse if married filing jointly) had a principal place of abode in the United States for more than half of 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . | ☑ | | |
| B | Check here if you (or your spouse if married filing jointly) were a bona fide resident of Puerto Rico for 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ | | |

## Part I-B    Filers Who Check a Box on Line 13

Caution: If you did not check a box on line 13, do not complete Part I-B; instead, skip to Part I-C.

| | | | |
|---|---|---|---|
| 14a | Enter the smaller of line 7 or line 12 . . . . . . . . . . . . . . . . . . | **14a** | 0 |
| b | Subtract line 14a from line 12 . . . . . . . . . . . . . . . . . . . . . | **14b** | 9,600 |
| c | If line 14a is zero, enter -0-; otherwise, enter the amount from the **Credit Limit Worksheet A** . . | **14c** | 0 |
| d | Enter the smaller of line 14a or line 14c . . . . . . . . . . . . . . . . . | **14d** | 0 |
| e | Add lines 14b and 14d . . . . . . . . . . . . . . . . . . . . . . | **14e** | 9,600 |
| f | Enter the aggregate amount of advance child tax credit payments you (and your spouse if filing jointly) received for 2021. See your Letter(s) 6419 for the amounts to include on this line. If you are missing Letter 6419, see the instructions before entering an amount on this line. If you didn't receive any advance child tax credit payments for 2021, enter -0- . . . . . . . . . . . . . . . . . .<br>**Caution:** If the amount on this line doesn't match the aggregate amounts reported to you (and your spouse if filing jointly) on your Letter(s) 6419, the processing of your return will be delayed. | **14f** | 3,000 |
| g | Subtract line 14f from line 14e. If zero or less, enter -0- on lines 14g through 14i and go to Part III | **14g** | 6,600 |
| h | Enter the smaller of line 14d or line 14g. **This is your credit for other dependents.** Enter this amount on line 19 of your Form 1040, 1040-SR, or 1040-NR . . . . . . . . . . . | **14h** | 0 |
| i | Subtract line 14h from line 14g. **This is your refundable child tax credit.** Enter this amount on line 28 of your Form 1040, 1040-SR, or 1040-NR . . . . . . . . . . . . . . . | **14i** | 6,600 |

For Paperwork Reduction Act Notice, see your tax return instructions.    Cat. No. 59761M    Schedule 8812 (Form 1040) 2021

Schedule 8812 (Form 1040) 2021

DO NOT PROCESS

Page **2**

## Part I-C — Filers Who Do Not Check a Box on Line 13

**Caution:** If you checked a box on line 13, do not complete Part I-C.

| | | |
|---|---|---|
| **15a** Enter the amount from the **Credit Limit Worksheet A** . . . . . . . . . . . . | **15a** | |
| **b** Enter the smaller of line 12 or line 15a. | **15b** | |
| Additional child tax credit. Complete Parts II-A through II-C if you meet each of the following items. | | |
| 1. You are not filing Form 2555. | | |
| 2. Line 4a is more than zero. | | |
| 3. Line 12 is more than line 15a. | | |
| **c** If you completed Parts II-A through II-C, enter the amount from line 27; otherwise, enter -0- . . | **15c** | |
| **d** Add lines 15b and 15c . . . . . . . . . . . . . . . . . . . . . . . . . . | **15d** | |
| **e** Enter the aggregate amount of advance child tax credit payments you (and your spouse if filing jointly) received for 2021. See your Letter(s) 6419 for the amounts to include on this line. If you are missing Letter 6419, see the instructions before entering an amount on this line. If you didn't receive any advance child tax credit payments for 2021. enter -0-. . . . . . . . . . . . . . . . . . **Caution:** If the amount on this line doesn't match the aggregate amounts reported to you (and your spouse if filing jointly) on your Letter(s) 6419, the processing of your return will be delayed. | **15e** | |
| **f** Subtract line 15e from line 15d. If zero or less, enter -0- on lines 15f through 15h and go to Part III. | **15f** | |
| **g** Enter the smaller of line 15b or line 15f. **This is your nonrefundable child tax credit and credit for other dependents. Enter this amount on line 19 of your Form 1040, 1040-SR, or 1040-NR** | **15g** | |
| **h** Subtract line 15g from line 15f. **This is your additional child tax credit. Enter this amount on line 28 of your Form 1040, 1040-SR, or 1040-NR** . . . . . . . . . . . . . . . . . . | **15h** | |

## Part II-A — Additional Child Tax Credit (use only if completing Part I-C)

**Caution:** If you file Form 2555, do not complete Parts II-A through II-C; you cannot claim the additional child tax credit.

**Caution:** If you checked a box on line 13, do not complete Parts II-A through II-C; you cannot claim the additional child tax credit.

| | | | |
|---|---|---|---|
| **16a** Subtract line 15b from line 12. If zero, skip Parts II-A and II-B and enter -0- on line 27 . . . . | | **16a** | |
| **b** Number of qualifying children under 18 with the required social security number: x $1,400. Enter the result. If zero, skip Parts II-A and II-B and enter -0- on line 27 . . . . . . . . . . **TIP:** The number of children you use for this line is the same as the number of children you used for line 4a. | | **16b** | |
| **17** Enter the **smaller** of line 16a or line 16b . . . . . . . . . . . . . . . . . . | | **17** | |
| **18a** Earned income (see instructions). . . . . . . . . . . . . . . | **18a** | | |
| **b** Nontaxable combat pay (see instructions) | **18b** | | |
| **19** Is the amount on line 18a more than $2,500? | | | |
| ☐ **No.** Leave line 19 blank and enter -0- on line 20. | | | |
| ☐ **Yes.** Subtract $2,500 from the amount on line 18a. Enter the result | **19** | | |
| **20** Multiply the amount on line 19 by 15% (0.15) and enter the result . . . . . . . . . . . . . . . | | **20** | |
| **Next.** On line 16b, is the amount $4,200 or more? | | | |
| ☐ **No.** If line 20 is zero, enter -0- on line 15c; Otherwise, skip Part II-B and enter the smaller of line 17 or line 20 on line 27. | | | |
| ☐ **Yes.** If line 20 is equal to or more than line 17, skip Part II-B and enter the amount from line 17 on line 27. Otherwise, go to line 21. | | | |

## Part II-B — Certain Filers Who Have Three or More Qualifying Children

| | | | |
|---|---|---|---|
| **21** Withheld social security, Medicare, and Additional Medicare taxes from Form(s) W-2, boxes 4 and 6. If married filing jointly, include your spouse's amounts with yours. If your employer withheld or you paid Additional Medicare Tax or tier 1 RRTA taxes, see instructions . . . . . . . . . | **21** | | |
| **22** Enter the total of the amounts from Schedule 1 (Form 1040), line 15; Schedule 2 (Form 1040), line 5; Schedule 2 (Form 1040), line 6; and Schedule 2 (Form 1040), line 13 . . . . . . . . . . . . . . . | **22** | | |
| **23** Add lines 21 and 22 . . . . . . . . . . | **23** | | |
| **24** 1040 and **1040-SR filers:** Enter the total of the amounts from Form 1040 or 1040-SR, line 27a and Schedule 3 (Form 1040), line 11. **1040-NR filers:** Enter the amount from Schedule 3 (Form 1040), line 11. | **24** | | |
| **25** Subtract line 24 from line 23. If zero or less, enter -0- . . . . . . . . . . | | **25** | |
| **26** Enter the larger of line 20 or line 25 . . . . . . . . . . . . . . . . . . | | **26** | |
| **Next,** enter the **smaller** of line 17 or line 26 on line 27. | | | |

## Part II-C — Additional Child Tax Credit

| | | |
|---|---|---|
| **27** Enter this amount on line 15c . . . . . . . . . . . . . . . . . . . . . . . . | **27** | |

Schedule 8812 (Form 1040) 2021

Schedule 8812 (Form 1040)2021                                                                                                          Page **3**

| **Part III** | **Additional Tax** (use only if line 14g or line 15f, whichever applies, is zero) | | |
|---|---|---|---|
| 28a | Enter the amount from line 14f or line 15e, whichever applies . . . . . . . . . . . | 28a | |
| b | Enter the amount from line 14e or line 15d, whichever applies . . . . . . . . . . | 28b | |
| 29 | Excess advance child tax credit payments. Subtract line 28b from line 28a. If zero, stop; you do not owe the additional tax . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29 | |
| 30 | Enter the number of qualifying children taken into account in determining the annual advance amount you received for 2021. See your Letter 6419 for this number. If you are missing your Letter 6419, you are filing a joint return, or you received more than one Letter 6419, see the instructions before entering a number on this line . . . . . . . . . . . . . . . . . . . . . . . . . **Caution:** If the amount on this line doesn't match the number of qualifying children reported to you (and your spouse if filing jointly) on your Letter(s) 6419, the processing of your return will be delayed. | 30 | |
| 31 | Enter the smaller of line 4a or line 30 . . . . . . . . . . . . . . . . . . . . | 31 | |
| 32 | Subtract line 31 from line 30. If zero, skip to line 40 and enter the amount from line 29; otherwise, continue to line 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 | |
| 33 | Enter the amount shown below for your filing status. • Married filing jointly or Qualifying widow(er)--$60,000. • Head of household--$50,000 • All other filing statuses--$40,000  . . . . . . . . . . . . . . . . . . | 33 | |
| 34 | Subtract line 33 from line 3. If zero or less, enter -0- . . . . . . . . . . . . . . . | 34 | |
| 35 | Enter the amount from line 33 . . . . . . . . . . . . . . . . . . . . . . . | 35 | |
| 36 | Divide line 34 by line 35. Enter the result as a decimal (rounded to at least three places). If the result is 1.000 or more, enter 1.000 . . . . . . . . . . . . . . . . . . . . . . . | 36 | |
| 37 | Multiply line 32 by $2,000 . . . . . . . . . . . . . . . . . . . . . . . | 37 | |
| 38 | Multiply line 37 by line 36 . . . . . . . . . . . . . . . . . . . . . . . | 38 | |
| 39 | Subtract line 38 from line 37 . . . . . . . . . . . . . . . . . . . . . . . | 39 | |
| 40 | Subtract line 39 from line 29. If zero or less, enter -0-. **This is your additional tax. If more than zero, enter this amount on Schedule 2 (Form 1040), line 19** . . . . . . . . . . . | 40 | |

Schedule 8812 (Form 1040) 2021

**Additional Data**

**Software ID:**
**Software Version:**
**SSN:**
**Spouse SSN:**
**Name:** SHATOYA S & REYNALDO R<BROWN

| efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | DLN: 30211430317652 |
|---|---|---|

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

# Profit or Loss From Business
(Sole Proprietorship)

▶ Go to *www.irs.gov/ScheduleC* for instructions and the latest information.
▶ Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships generally must file Form 1065.

OMB No. 1545-0074

## 2021

Attachment
Sequence No. 09

Name of proprietor

Shatoya S Brown

Social security number (SSN)

**A** Principal business or profession, including product or service (see instructions)
Package Delivery

**B** Enter code from instructions
▶ 492000

**C** Business name. If no separate business name, leave blank.

**D** Employer ID number (EIN)/(see instr.)

**E** Business address (including suite or room no.) ▶ ████████████
City, town or post office, state, and ZIP code    Buford,  GA  305197212

**F** Accounting method: **(1)** ☑ Cash    **(2)** ☐ Accrual    **(3)** ☐ Other (specify)

**G** Did you "materially participate" in the operation of this business during 2021? If "No," see instructions for limit on losses ☑ Yes ☐ No

**H** If you started or acquired this business during 2021, check here. . . . . . . . . . . . . . . . . . . . ▶ ☑

**I** Did you make any payments in 2021 that would require you to file Form(s) 1099? (see instructions) . . . . . ☐ Yes ☑ No

**J** If "Yes," did you or will you file required Forms 1099? . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

### Part I   Income

| | | |
|---|---|--:|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked . . . . ▶ ☐    **1** | 848 |
| 2 | Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **2** | |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . .    **3** | 848 |
| 4 | Cost of goods sold (from line 42) . . . . . . . . . . . . . . . . . . . . . . .    **4** | |
| 5 | **Gross profit.** Subtract line 4 from line 3 . . . . . . . . . . . . . . . . . . . .    **5** | 848 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) . . .    **6** | |
| 7 | **Gross income.** Add lines 5 and 6 . . . . . . . . . . . . . . . . . . . . . ▶    **7** | 848 |

### Part II   Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | |
|---|---|--:|---|---|--:|
| 8 | Advertising . . . . . . . | **8** | | 18 Office expense (see instructions) | **18** | |
| 9 | Car and truck expenses (see instructions) . . . . . | **9** | | 19 Pension and profit-sharing plans | **19** | |
| 10 | Commissions and fees . . . | **10** | | 20 Rent or lease (see instructions): | | |
| 11 | Contract labor (see instructions) | **11** | | a Vehicles, machinery, and equipment | **20a** | |
| 12 | Depletion . . . . . . . | **12** | | b Other business property . . | **20b** | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) | **13** | | 21 Repairs and maintenance . . | **21** | |
| | | | | 22 Supplies (not included in Part III) | **22** | |
| | | | | 23 Taxes and licenses . . . . | **23** | |
| 14 | Employee benefit programs (other than on line 19) | **14** | | 24 Travel and meals: | | |
| | | | | a Travel . . . . . . . | **24a** | |
| 15 | Insurance (other than health) | **15** | | b Deductible meals (see instructions) . | **24b** | |
| 16 | Interest (see instructions): | | | 25 Utilities . . . . . . . | **25** | |
| a | Mortgage (paid to banks, etc.) | **16a** | | 26 Wages (less employment credits) | **26** | |
| b | Other . . . . . . . | **16b** | | 27a Other expenses (from line 48) . | **27a** | |
| 17 | Legal and professional services | **17** | | b Reserved for future use . . | **27b** | |

| | | | |
|---|---|---|--:|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a . . . . . ▶ | **28** | |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 . . . . . . . . . . . . . . | **29** | 848 |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions). **Simplified method filers only:** enter the total square footage of: (a) your home: _____ and (b) the part of your home used for business: _____. Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30. | **30** | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. • If a profit, enter on both **Schedule 1 (Form 1040), line 3** and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.** • If a loss, you **must** go to line 32. | **31** | 848 |
| 32 | If you have a loss, check the box that describes your investment in this activity (see instructions). • If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 3** and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions). Estates and trusts, enter on **Form 1041, line 3.** • If you checked 32b, you **must** attach Form 6198. Your loss may be limited. | **32a** ☐ All investment is at risk.    **32b** ☐ Some investment is not at risk. | |

Schedule C (Form 1040) 2021          DO NOT PROCESS                    Page **2**

**Part III**   **Cost of Goods Sold** (see instructions)

**33**  Method(s) used to value closing inventory:

    **a** ☐ Cost      **b** ☐ Lower of cost or market      **c** ☐ Other (attach explanation)

**34**  Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation. . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ **Yes**  ☐ **No**

| | | |
|---|---|---|
| **35**  Inventory at beginning of year. If different from last year's closing inventory, attach explanation . | **35** | |
| **36**  Purchases less cost of items withdrawn for personal use . . . . . . . . . . . . . | **36** | |
| **37**  Cost of labor. Do not include any amounts paid to yourself . . . . . . . . . . . | **37** | |
| **38**  Materials and supplies . . . . . . . . . . . . . . . . . . . . . . | **38** | |
| **39**  Other costs . . . . . . . . . . . . . . . . . . . . . . . . | **39** | |
| **40**  Add lines 35 through 39 . . . . . . . . . . . . . . . . . . . . | **40** | |
| **41**  Inventory at end of year . . . . . . . . . . . . . . . . . . . . | **41** | |
| **42**  **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on line 4 . . . . . . | **42** | |

**Part IV**   **Information on Your Vehicle.** Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562.

**43**  When did you place your vehicle in service for business purposes? (month, day, year) ▶

**44**  Of the total number of miles you drove your vehicle during 2021, enter the number of miles you used your vehicle for:

  **a**  Business _____   **b** Commuting (see instructions) _____   **c** Other _____

**45**  Was your vehicle available for personal use during off-duty hours? . . . . . . . . . .  ☐ **Yes**  ☐ **No**

**46**  Do you (or your spouse) have another vehicle available for personal use? . . . . . . . .  ☐ **Yes**  ☐ **No**

**47a** Do you have evidence to support your deduction? . . . . . . . . . . . . . . .  ☐ **Yes**  ☐ **No**

   **b** If "Yes," is the evidence written? . . . . . . . . . . . . . . . . . . . .  ☐ **Yes**  ☐ **No**

**Part V**   **Other Expenses.** List below business expenses not included on lines 8-26 or line 30.

| | | |
|---|---|---|
| ------------------------------------------------------------------- | | |
| ------------------------------------------------------------------- | | |
| ------------------------------------------------------------------- | | |
| ------------------------------------------------------------------- | | |
| ------------------------------------------------------------------- | | |
| ------------------------------------------------------------------- | | |
| ------------------------------------------------------------------- | | |
| **48**  **Total other expenses.** Enter here and on line 27a . . . . . . . . . . . . . . | **48** | |

Schedule C (Form 1040) 2021

**Additional Data**

|  |  |
|---:|:---|
| **Software ID:** | |
| **Software Version:** | |
| **SSN:** | |
| **Spouse SSN:** | |
| **Name:** | SHATOYA S & REYNALDO R<BROWN |

| efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | DLN: 30211430317652 |
|---|---|---|

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

**Profit or Loss From Business**
(Sole Proprietorship)

▶ Go to *www.irs.gov/ScheduleC* for instructions and the latest information.
▶ Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships generally must file Form 1065.

OMB No. 1545-0074

**2021**

Attachment
Sequence No. **09**

Name of proprietor

Shatoya S Brown

Social security number (SSN)

**A** Principal business or profession, including product or service (see instructions)
Food Delivery

**B** Enter code from instructions
▶ 492000

**C** Business name. If no separate business name, leave blank.

**D** Employer ID number
(EIN)/(see instr.)

**E** Business address (including suite or room no.) ▶
City, town or post office, state, and ZIP code     Buford,    GA   305197212

**F** Accounting method: (1) ☑ Cash   (2) ☐ Accrual   (3) ☐ Other (specify) ▶

**G** Did you "materially participate" in the operation of this business during 2021? If "No," see instructions for limit on losses ☑ Yes ☐ No

**H** If you started or acquired this business during 2021, check here. . . . . . . . . . . . . . ▶ ☑

**I** Did you make any payments in 2021 that would require you to file Form(s) 1099? (see instructions) . . . . ☐ Yes ☑ No

**J** If "Yes," did you or will you file required Forms 1099? . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

### Part I   Income

| | | | |
|---|---|---|---:|
| **1** | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked   .   .   . ▶ ☐ | **1** | 350 |
| **2** | Returns and allowances | **2** | |
| **3** | Subtract line 2 from line 1   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | **3** | 350 |
| **4** | Cost of goods sold (from line 42) | **4** | |
| **5** | **Gross profit.** Subtract line 4 from line 3   .   .   .   .   .   .   .   .   .   .   .   . | **5** | 350 |
| **6** | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions)   .   .   . | **6** | |
| **7** | **Gross income.** Add lines 5 and 6   .   .   .   .   .   .   .   .   .   .   .   .   . ▶ | **7** | 350 |

### Part II   Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | | |
|---|---|---|---|---|---|---:|
| **8** Advertising   .   .   .   .   .   . | **8** | | **18** Office expense (see instructions) | **18** | | |
| **9** Car and truck expenses (see instructions)   .   .   .   . | **9** | | **19** Pension and profit-sharing plans | **19** | | |
| **10** Commissions and fees   .   .   . | **10** | | **20** Rent or lease (see instructions): | | | |
| **11** Contract labor (see instructions) | **11** | | **a** Vehicles, machinery, and equipment   . | **20a** | | |
| **12** Depletion   .   .   .   .   .   . | **12** | | **b** Other business property   .   .   . | **20b** | | |
| **13** Depreciation and section 179 expense deduction (not included in Part III) (see instructions)   .   .   . | **13** | | **21** Repairs and maintenance   .   .   . | **21** | | |
| | | | **22** Supplies (not included in Part III) | **22** | | |
| | | | **23** Taxes and licenses   .   .   .   . | **23** | | |
| | | | **24** Travel and meals: | | | |
| **14** Employee benefit programs (other than on line 19)   .   . | **14** | | **a** Travel   .   .   .   .   .   . | **24a** | | |
| **15** Insurance (other than health) | **15** | | **b** Deductible meals (see instructions) . | **24b** | | |
| **16** Interest (see instructions): | | | **25** Utilities   .   .   .   .   .   . | **25** | | |
| **a** Mortgage (paid to banks, etc.) | **16a** | | **26** Wages (less employment credits) | **26** | | |
| **b** Other   .   .   .   .   .   . | **16b** | | **27a** Other expenses (from line 48)   . | **27a** | | |
| **17** Legal and professional services | **17** | | **b** Reserved for future use   .   .   . | **27b** | | |

| | | | |
|---|---|---|---:|
| **28** | **Total expenses** before expenses for business use of home. Add lines 8 through 27a   .   .   .   .   . ▶ | **28** | |
| **29** | Tentative profit or (loss). Subtract line 28 from line 7   .   .   .   .   .   .   .   .   .   . | **29** | 350 |
| **30** | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions).
**Simplified method filers only:** enter the total square footage of: (a) your home: _____ and (b) the part of your home used for business: _____ . Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30. | **30** | |
| **31** | **Net profit or (loss).** Subtract line 30 from line 29.
• If a profit, enter on both **Schedule 1 (Form 1040), line 3** and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.**
• If a loss, you **must** go to line 32. | **31** | 350 |

| | |
|---|---|
| **32** If you have a loss, check the box that describes your investment in this activity (see instructions).<br>• If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 3** and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions). Estates and trusts, enter on **Form 1041, line 3.**<br>• If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited. | **32a** ☐ All investment is at risk.<br><br>**32b** ☐ Some investment is not at risk. |

For Paperwork Reduction Act Notice, see the separate instructions.     Cat. No. 11334P     Schedule C (Form 1040) 2021

Schedule C (Form 1040) 2021    DO NOT PROCESS   AS DRAFT    Page **2**

| Part III | **Cost of Goods Sold** (see instructions) |
|---|---|

**33** Method(s) used to value closing inventory:

    **a** ☐ Cost    **b** ☐ Lower of cost or market    **c** ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation. . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

| | | | |
|---|---|---|---|
| **35** | Inventory at beginning of year. If different from last year's closing inventory, attach explanation . | **35** | |
| **36** | Purchases less cost of items withdrawn for personal use . . . . . . . . . . . . | **36** | |
| **37** | Cost of labor. Do not include any amounts paid to yourself . . . . . . . . . . . . | **37** | |
| **38** | Materials and supplies . . . . . . . . . . . . . . . . . . . . . | **38** | |
| **39** | Other costs . . . . . . . . . . . . . . . . . . . . . . . | **39** | |
| **40** | Add lines 35 through 39 . . . . . . . . . . . . . . . . . . . | **40** | |
| **41** | Inventory at end of year . . . . . . . . . . . . . . . . . . . | **41** | |
| **42** | **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on line 4 . . . . . . | **42** | |

| Part IV | **Information on Your Vehicle.** Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562. |
|---|---|

**43** When did you place your vehicle in service for business purposes? (month, day, year) ▶ _____

**44** Of the total number of miles you drove your vehicle during 2021, enter the number of miles you used your vehicle for:

  **a** Business _____  **b** Commuting (see instructions) _____  **c** Other _____

**45** Was your vehicle available for personal use during off-duty hours? . . . . . . . . . ☐ Yes ☐ No

**46** Do you (or your spouse) have another vehicle available for personal use? . . . . . . . . ☐ Yes ☐ No

**47a** Do you have evidence to support your deduction? . . . . . . . . . . . . . . ☐ Yes ☐ No

  **b** If "Yes," is the evidence written? . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

| Part V | **Other Expenses.** List below business expenses not included on lines 8–26 or line 30. |
|---|---|

| | |
|---|---|
| ------------------------------------------------------------------------------- | |
| ------------------------------------------------------------------------------- | |
| ------------------------------------------------------------------------------- | |
| ------------------------------------------------------------------------------- | |
| ------------------------------------------------------------------------------- | |
| ------------------------------------------------------------------------------- | |
| ------------------------------------------------------------------------------- | |
| ------------------------------------------------------------------------------- | |

| | | |
|---|---|---|
| **48** | **Total other expenses.** Enter here and on line 27a . . . . . . . . . . . . . . . | **48** | |

Schedule C (Form 1040) 2021

**Additional Data**

**Software ID:**
**Software Version:**
**SSN:**
**Spouse SSN:**
**Name:**  SHATOYA S & REYNALDO R<BROWN

efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production    DLN: 30211430317652

| SCHEDULE C | **Profit or Loss From Business** | OMB No. 1545-0074 |
|---|---|---|
| (Form 1040) | (Sole Proprietorship) | **2021** |
| Department of the Treasury Internal Revenue Service (99) | ▶Go to *www.irs.gov/ScheduleC* for instructions and the latest information. ▶ Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships generally must file Form 1065. | Attachment Sequence No. 09 |

| Name of proprietor | Social security number (SSN) |
|---|---|
| Shatoya S Brown | |

**A** Principal business or profession, including product or service (see instructions)
Food Shopper and Delivery

**B** Enter code from instructions
▶ 812990

**C** Business name. If no separate business name, leave blank.

**D** Employer ID number (EIN)/(see instr.)

**E** Business address (including suite or room no.) ▶
City, town or post office, state, and ZIP code   Buford,   GA   305197212

**F** Accounting method: (1) ☑ Cash   (2) ☐ Accrual   (3) ☐ Other (specify)   ▶

**G** Did you "materially participate" in the operation of this business during 2021? If "No," see instructions for limit on losses   ☑ Yes ☐ No

**H** If you started or acquired this business during 2021, check here .   .   .   .   .   .   .   .   .   .   .   . ▶ ☑

**I** Did you make any payments in 2021 that would require you to file Form(s) 1099? (see instructions)   .   .   .   .   ☐ Yes ☑ No

**J** If "Yes," did you or will you file required Forms 1099?   .   .   .   .   .   .   .   .   .   .   .   .   .   .   ☐ Yes ☐ No

### Part I   Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked   .   .   . ▶ ☐ | 1 | 283 |
| 2 | Returns and allowances | 2 | |
| 3 | Subtract line 2 from line 1   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | 3 | 283 |
| 4 | Cost of goods sold (from line 42)   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | 4 | |
| 5 | **Gross profit.** Subtract line 4 from line 3   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | 5 | 283 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions)   .   .   . | 6 | |
| 7 | **Gross income.** Add lines 5 and 6   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . ▶ | 7 | 283 |

### Part II   Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | | |
|---|---|---|---|---|---|---|
| 8 Advertising   .   .   .   .   .   . | 8 | | 18 Office expense (see instructions) | 18 | |
| 9 Car and truck expenses (see instructions)   .   .   .   .   . | 9 | | 19 Pension and profit-sharing plans | 19 | |
| 10 Commissions and fees   .   .   . | 10 | | 20 Rent or lease (see instructions): | | |
| 11 Contract labor (see instructions) | 11 | | a Vehicles, machinery, and equipment   . | 20a | |
| 12 Depletion   .   .   .   .   .   . | 12 | | b Other business property   .   .   . | 20b | |
| 13 Depreciation and section 179 expense deduction (not included in Part III) (see instructions)   .   .   . | 13 | | 21 Repairs and maintenance   .   .   . | 21 | |
| | | | 22 Supplies (not included in Part III) | 22 | |
| | | | 23 Taxes and licenses   .   .   .   .   . | 23 | |
| 14 Employee benefit programs (other than on line 19)   .   . | 14 | | 24 Travel and meals: | | |
| | | | a Travel   .   .   .   .   .   .   . | 24a | |
| 15 Insurance (other than health) | 15 | | b Deductible meals (see instructions) . | 24b | |
| 16 Interest (see instructions): | | | 25 Utilities   .   .   .   .   .   .   . | 25 | |
| a Mortgage (paid to banks, etc.) | 16a | | 26 Wages (less employment credits) | 26 | |
| b Other   .   .   .   .   .   .   . | 16b | | 27a Other expenses (from line 48)   . | 27a | |
| 17 Legal and professional services | 17 | | b Reserved for future use   .   .   . | 27b | |

| | | | |
|---|---|---|---|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a   .   .   .   .   . ▶ | 28 | |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7   .   .   .   .   .   .   .   .   .   .   .   .   . | 29 | 283 |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions). **Simplified method filers only:** enter the total square footage of: (a) your home: _____ and (b) the part of your home used for business: _____. Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30.   .   .   .   .   .   .   . | 30 | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29.<br>• If a profit, enter on both **Schedule 1 (Form 1040), line 3** and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.**<br>• If a loss, you **must** go to line 32. | 31 | 283 |
| 32 | If you have a loss, check the box that describes your investment in this activity (see instructions).<br>• If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 3** and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions). Estates and trusts, enter on **Form 1041, line 3.**<br>• If you checked 32b, you **must** attach Form 6198. Your loss may be limited. | 32a ☐ All investment is at risk.<br>32b ☐ Some investment is not at risk. | |

**For Paperwork Reduction Act Notice, see the separate instructions.**   Cat. No. 11334P   Schedule C (Form 1040) 2021

Schedule C (Form 1040) 2021 ᴼ ᴿ ᴵ ᴳ ᴵ ᴺ ᴬ ᴸ   Page **2**

| Part III | **Cost of Goods Sold** (see instructions) | |
|---|---|---|

**33** Method(s) used to value closing inventory:

    **a** ☐ Cost     **b** ☐ Lower of cost or market     **c** ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
If "Yes," attach explanation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

| | | | |
|---|---|---|---|
| **35** | Inventory at beginning of year. If different from last year's closing inventory, attach explanation | **35** | |
| **36** | Purchases less cost of items withdrawn for personal use . . . . . . . . . . . . . . . | **36** | |
| **37** | Cost of labor. Do not include any amounts paid to yourself . . . . . . . . . . . . | **37** | |
| **38** | Materials and supplies . . . . . . . . . . . . . . . . . . . . . . . | **38** | |
| **39** | Other costs . . . . . . . . . . . . . . . . . . . . . . . . . | **39** | |
| **40** | Add lines 35 through 39 . . . . . . . . . . . . . . . . . . . . . | **40** | |
| **41** | Inventory at end of year . . . . . . . . . . . . . . . . . . . . . | **41** | |
| **42** | **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on line 4 . . . . . . | **42** | |

| Part IV | **Information on Your Vehicle.** |
|---|---|

Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562.

**43** When did you place your vehicle in service for business purposes? (month, day, year) ▶ _____

**44** Of the total number of miles you drove your vehicle during 2021, enter the number of miles you used your vehicle for:

  **a** Business _____   **b** Commuting (see instructions) _____   **c** Other _____

| | | | |
|---|---|---|---|
| **45** | Was your vehicle available for personal use during off-duty hours? . . . . . . . . | ☐ Yes | ☐ No |
| **46** | Do you (or your spouse) have another vehicle available for personal use? . . . . . . | ☐ Yes | ☐ No |
| **47a** | Do you have evidence to support your deduction? . . . . . . . . . . . . | ☐ Yes | ☐ No |
| **b** | If "Yes," is the evidence written? . . . . . . . . . . . . . . . . . . | ☐ Yes | ☐ No |

| Part V | **Other Expenses.** List below business expenses not included on lines 8–26 or line 30. |
|---|---|

-------------------------------------------------- | 
-------------------------------------------------- | 
-------------------------------------------------- | 
-------------------------------------------------- | 
-------------------------------------------------- | 
-------------------------------------------------- | 
-------------------------------------------------- | 
-------------------------------------------------- | 

| | | | |
|---|---|---|---|
| **48** | **Total other expenses.** Enter here and on line 27a . . . . . . . . . . . . . . | **48** | |

Schedule C (Form 1040) 2021

**Additional Data**

**Software ID:**
**Software Version:**
**SSN:**
**Spouse SSN:**
**Name:**   SHATOYA S & REYNALDO R<BROWN

efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | DLN: 30211430317652

| SCHEDULE C | **Profit or Loss From Business** | OMB No. 1545-0074 |
|---|---|---|
| **(Form 1040)** | (Sole Proprietorship) | **2021** |
| Department of the Treasury Internal Revenue Service (99) | ▶ Go to www.irs.gov/ScheduleC for instructions and the latest information. ▶ Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships generally must file Form 1065. | Attachment Sequence No. 09 |

| Name of proprietor | Social security number (SSN) |
|---|---|
| Shatoya S Brown | ▉▉▉▉ |

| **A** Principal business or profession, including product or service (see instructions) Towing Industry | **B** Enter code from instructions ▶ 488000 |
|---|---|

| **C** Business name. If no separate business name, leave blank. A1 Quality Towing LLLP | **D** Employer ID number (EIN)/(see instr.) ▉▉9436 |
|---|---|

**E** Business address (including suite or room no.) ▶ ▉▉▉▉▉▉▉▉▉▉
City, town or post office, state, and ZIP code    Buford,    GA    305197212

**F** Accounting method: **(1)** ☑ Cash    **(2)** ☐ Accrual    **(3)** ☐ Other (specify)    ▶ _____

**G** Did you "materially participate" in the operation of this business during 2021? If "No," see instructions for limit on losses  ☑ Yes ☐ No

**H** If you started or acquired this business during 2021, check here.  .  .  .  .  .  .  .  .  .  .  ▶ ☑

**I** Did you make any payments in 2021 that would require you to file Form(s) 1099? (see instructions)  .  .  .  .  ☐ Yes ☑ No

**J** If "Yes," did you or will you file required Forms 1099?  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ☐ Yes ☐ No

## Part I  Income

| | | |
|---|---|---:|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked  .  .  .  ▶ ☐   **1** | 17,498 |
| 2 | Returns and allowances   **2** | |
| 3 | Subtract line 2 from line 1   **3** | 17,498 |
| 4 | Cost of goods sold (from line 42)   **4** | |
| 5 | **Gross profit.** Subtract line 4 from line 3  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .   **5** | 17,498 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions)  .  .  .   **6** | |
| 7 | **Gross income.** Add lines 5 and 6  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ▶   **7** | 17,498 |

## Part II  Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | |
|---|---|---|---|---|---:|
| **8** Advertising  .  .  .  .  . | **8** | | **18** Office expense (see instructions) | **18** | |
| **9** Car and truck expenses (see instructions)  .  .  .  . | **9** | | **19** Pension and profit-sharing plans | **19** | |
| **10** Commissions and fees  .  .  . | **10** | | **20** Rent or lease (see instructions): | | |
| **11** Contract labor (see instructions) | **11** | | **a** Vehicles, machinery, and equipment | **20a** | |
| **12** Depletion  .  .  .  .  . | **12** | | **b** Other business property  .  .  . | **20b** | |
| **13** Depreciation and section 179 expense deduction (not included in Part III) (see instructions)  .  .  . | **13** | | **21** Repairs and maintenance  .  .  . | **21** | |
| | | | **22** Supplies (not included in Part III) | **22** | |
| | | | **23** Taxes and licenses  .  .  .  .  . | **23** | |
| **14** Employee benefit programs (other than on line 19) | **14** | | **24** Travel and meals: | | |
| | | | **a** Travel  .  .  .  .  .  .  . | **24a** | |
| **15** Insurance (other than health) | **15** | | **b** Deductible meals (see instructions) . | **24b** | |
| **16** Interest (see instructions): | | | **25** Utilities  .  .  .  .  .  .  . | **25** | 2,868 |
| **a** Mortgage (paid to banks, etc.) | **16a** | | **26** Wages (less employment credits) | **26** | |
| **b** Other  .  .  .  .  .  . | **16b** | | **27a** Other expenses (from line 48)  . | **27a** | |
| **17** Legal and professional services | **17** | | **b** Reserved for future use  .  .  . | **27b** | |

| | | | |
|---|---|---|---:|
| **28** | **Total expenses** before expenses for business use of home. Add lines 8 through 27a  .  .  .  .  .  ▶ | **28** | 2,868 |
| **29** | Tentative profit or (loss). Subtract line 28 from line 7  .  .  .  .  .  .  .  .  .  .  .  . | **29** | 14,630 |
| **30** | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions). Simplified method filers only: enter the total square footage of: (a) your home: ____2172____ and (b) the part of your home used for business: ____140____ . Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30. | **30** | 700 |
| **31** | **Net profit or (loss).** Subtract line 30 from line 29. • If a profit, enter on both **Schedule 1 (Form 1040), line 3** and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.** • If a loss, you **must** go to line 32. | **31** | 13,930 |

**32** If you have a loss, check the box that describes your investment in this activity (see instructions).
• If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 3** and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions). Estates and trusts, enter on **Form 1041, line 3.**
• If you checked 32b, you **must** attach Form 6198. Your loss may be limited.

**32a** ☐ All investment is at risk.
**32b** ☐ Some investment is not at risk.

For Paperwork Reduction Act Notice, see the separate instructions.    Cat. No. 11334P    Schedule C (Form 1040) 2021

Schedule C (Form 1040) 2021                                                                                                                 Page **2**

| Part III | **Cost of Goods Sold** (see instructions) |
|---|---|

**33**  Method(s) used to
value closing inventory:
     **a** ☐ Cost     **b** ☐ Lower of cost or market     **c** ☐ Other (attach explanation)

**34**  Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
If "Yes," attach explanation. · · · · · · · · · · · · · · · · · · · · · · · · · · ·         ☐ Yes   ☐ No

| | | | |
|---|---|---|---|
| **35** | Inventory at beginning of year. If different from last year's closing inventory, attach explanation ·  | **35** | |
| **36** | Purchases less cost of items withdrawn for personal use · · · · · · · · · · · | **36** | |
| **37** | Cost of labor. Do not include any amounts paid to yourself · · · · · · · · · | **37** | |
| **38** | Materials and supplies · · · · · · · · · · · · · · · · · · | **38** | |
| **39** | Other costs · · · · · · · · · · · · · · · · · · · · · | **39** | |
| **40** | Add lines 35 through 39 · · · · · · · · · · · · · · · · · | **40** | |
| **41** | Inventory at end of year · · · · · · · · · · · · · · · · · · | **41** | |
| **42** | **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on line 4 · · · · · · | **42** | |

| Part IV | **Information on Your Vehicle.** |
|---|---|

Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562.

**43**  When did you place your vehicle in service for business purposes? (month, day, year) ▶ _____

**44**  Of the total number of miles you drove your vehicle during 2021, enter the number of miles you used your vehicle for:
**a** Business _____   **b** Commuting (see instructions) _____   **c** Other _____

**45**  Was your vehicle available for personal use during off-duty hours? · · · · · · · · · ☐ Yes  ☐ No

**46**  Do you (or your spouse) have another vehicle available for personal use? · · · · · · ☐ Yes  ☐ No

**47a**  Do you have evidence to support your deduction? · · · · · · · · · · · ☐ Yes  ☐ No

  **b**  If "Yes," is the evidence written? · · · · · · · · · · · · · · · · · · · · ☐ Yes  ☐ No

| Part V | **Other Expenses.** List below business expenses not included on lines 8–26 or line 30. |
|---|---|

--------------------------------------------------------------------------------------------------
--------------------------------------------------------------------------------------------------
--------------------------------------------------------------------------------------------------
--------------------------------------------------------------------------------------------------
--------------------------------------------------------------------------------------------------
--------------------------------------------------------------------------------------------------
--------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| **48** | **Total other expenses.** Enter here and on line 27a · · · · · · · · · · · · · · · | **48** | |

Schedule C (Form 1040) 2021

**Additional Data**

**Software ID:**
**Software Version:**
**SSN:**
**Spouse SSN:**
**Name:** SHATOYA S & REYNALDO R<BROWN

| efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | | DLN: 30211430317652 |
|---|---|---|---|

**SCHEDULE EIC**
(Form 1040)

Department of the Treasury
Internal Revenue Service   (99)

# Earned Income Credit
Qualifying Child Information

► Complete and attach to Form 1040 or 1040-SR only if you have a qualifying child.
► Go to *www.irs.gov/ScheduleEIC* for the latest information.



OMB No. 1545-0074

# 2021

Attachment
Sequence No. **43**

Name(s) shown on return
SHATOYA S & REYNALDO R<BROWN

Your social security number

If you are separated from your spouse, filing a separate return and meet the requirements to claim the EIC (see insctructions), check here ☐

**Before you begin:**

● See the instructions for Form 1040 lines 27a, 27b, and 27c, to make sure that **(a)** you can take the EIC, and **(b)** you have a qualifying child.
● Be sure the child's name on line 1 and social security number (SSN) on line 2 agree with the child's social security card. Otherwise, at the time we process your return, we may reduce your EIC. If the name or SSN on the child's social security card is not correct, call the Social Security Administration at 1-800-772-1213.
● If you have a child who meets the conditions to be your qualifying child for purposes of claiming the EIC, but that child doesn't have an SSN as defined in the instructions for Form 1040, lines 27a, 27b, and 27c, see the instructions.



● You can't claim the EIC for a child who didn't live with you for more than half of the year.
● If your child doesn't have an SSN as defined in the instructions for Form 1040, lines 27a, 27b, and 27c, see the instructions.
● If you take the EIC even though you are not eligible, you may not be allowed to take the credit for up to 10 years. See the instructions for details.
● It will take us longer to process your return and issue your refund if you do not fill in all lines that apply for each qualifying child.

## Qualifying Child Information

| | | Child 1 | Child 2 | Child 3 |
|---|---|---|---|---|
| **1** | **Child's name** <br> If you have more than three qualifying children, you have to list only three to get the maximum credit. | First name    Last name <br> ▮▮▮▮▮▮▮▮ | First name    Last name <br> ▮▮▮▮▮▮▮▮ | First name    Last name <br> ▮▮▮▮▮▮▮▮ |
| **2** | **Child's SSN** <br> The child must have an SSN as defined in the instructions for Form 1040 lines 27a, 27b, and 27c, unless the child was born and died in 2021 or you are claiming the self-only EIC (see instructions). If your child was born and died in 2021 and did not have an SSN, enter "Died" on this line and attach a copy of the child's birth certificate, death certificate, or hospital medical records showing a live birth. | ▮▮▮▮▮▮▮▮ | ▮▮▮▮▮▮▮▮ | ▮▮▮▮▮▮▮▮ |
| **3** | **Child's year of birth** | Year   2011 <br> *If born after 2002 and the child is younger than you (or your spouse, if filing jointly), skip lines 4a and 4b; go to line 5.* | Year   2015 <br> *If born after 2002 and the child is younger than you (or your spouse, if filing jointly), skip lines 4a and 4b; go to line 5.* | Year   2021 <br> *If born after 2002 and the child is younger than you (or your spouse, if filing jointly), skip lines 4a and 4b; go to line 5.* |
| **4a** | Was the child under age 24 at the end of 2021, a student, and younger than you (or your spouse, if filing jointly)? | ☐ Yes <br> *Go to line 5.*    ☐ No <br> *Go to line 4b.* | ☐ Yes <br> *Go to line 5.*    ☐ No <br> *Go to line 4b.* | ☐ Yes <br> *Go to line 5.*    ☐ No <br> *Go to line 4b.* |
| **b** | Was the child permanently and totally disabled during any part of 2021? | ☐ Yes <br> *Go to line 5.*    ☐ No <br> *The child is not a qualifying child.* | ☐ Yes <br> *Go to line 5.*    ☐ No <br> *The child is not a qualifying child.* | ☐ Yes <br> *Go to line 5.*    ☐ No <br> *The child is not a qualifying child.* |
| **5** | **Child's relationship to you** <br> (for example, son, daughter, grandchild, niece, nephew, eligible foster child, etc.) | DAUGHTER | DAUGHTER | DAUGHTER |
| **6** | **Number of months child lived with you in the United States during 2021** <br><br> ● If the child lived with you for more than half of 2021 but less than 7 months, enter "7". <br><br> ● If the child was born or died in 2021 and your home was the child's home for more than half the time he or she was alive during 2021, enter "12." | 12 months <br> *Do not enter more than 12 months.* | 12 months <br> *Do not enter more than 12 months.* | 12 months <br> *Do not enter more than 12 months.* |

**For Paperwork Reduction Act Notice, see your tax return instructions.**   Cat. No. 13339M   **Schedule EIC (Form 1040) 2021**

efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | DLN: 30211430317652

**SCHEDULE SE**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

# Self-Employment Tax

▶ Go to *www.irs.gov/ScheduleSE* for instructions and the latest information.

▶ Attach to Form 1040, 1040-SR, or 1040-NR.

OMB No. 1545-0074

**2021**

Attachment
Sequence No. **17**

Name of person with self-employment income (as shown on Form 1040, 1040-SR, or 1040-NR)
Shatoya S Brown

Social security number of person
with **self-employment** income ▶

**Part I**   **Self-Employment Tax**

**Note:** If your only income subject to self-employment tax is **church employee income,** see instructions for how to report your income and the definition of church employee income.

**A**   If you are a minister, member of a religious order, or Christian Science practitioner **and** you filed Form 4361, but you had $400 or more of **other** net earnings from self-employment, check here and continue with Part I . . . . . . . . . . . . . ▶ ☐

Skip lines 1a and 1b if you use the farm optional method in Part II. See instructions.

| | | | |
|---|---|---|---|
| **1a** | Net farm profit or (loss) from Schedule F, line 34, and farm partnerships, Schedule K-1 (Form 1065), box 14, code A. . . . . . . . . . . . . . . . . . . . . . . . . . | **1a** | |
| **b** | If you received social security retirement or disability benefits, enter the amount of Conservation Reserve Program payments included on Schedule F, line 4b, or listed on Schedule K-1 (Form 1065), box 20, code AH . . . . . . . . . . . . . . . . . . . . . . . . . | **1b** | ( ) |

Skip line 2 if you use the nonfarm optional method in Part II. See instructions.

| | | | |
|---|---|---|---|
| **2** | Net profit or (loss) from Schedule C, line 31; and Schedule K-1 (Form 1065), box 14, code A (other than farming). See instructions for other income to report or if you are a minister or member of a religious order. | **2** | 15,411 |
| **3** | Combine lines 1a, 1b, and 2 . . . . . . . . . . . . . . . . . . . . . . . . | **3** | 15,411 |
| **4a** | If line 3 is more than zero, multiply line 3 by 92.35% (0.9235). Otherwise, enter amount from line 3 . . . | **4a** | 14,232 |
| | **Note:** If line 4a is less than $400 due to Conservation Reserve Program payments on line 1b, see instructions. | | |
| **b** | If you elect one or both of the optional methods, enter the total of lines 15 and 17 here . . . . . . . | **4b** | |
| **c** | Combine lines 4a and 4b. If less than $400, **stop;** you don't owe self-employment tax. **Exception:** If less than $400 and you had **church employee income,** enter -0- and continue . . . . ▶ | **4c** | 14,232 |
| **5a** | Enter your **church employee income** from Form W-2. See instructions for definition of church employee income . . . . . . . . . | **5a** | | |
| **b** | Multiply line 5a by 92.35% (0.9235). If less than $100, enter -0- . . . . . . . . . . . . . | **5b** | 0 |
| **6** | Add lines 4c and 5b . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | 14,232 |
| **7** | Maximum amount of combined wages and self-employment earnings subject to social security tax or the 6.2% portion of the 7.65% railroad retirement (tier 1) tax for 2021 . . . . . . . . . | **7** | $142,800 |
| **8a** | Total social security wages and tips (total of boxes 3 and 7 on Form(s) W-2) and railroad retirement (tier 1) compensation. If $142,800 or more, skip lines 8b through 10, and go to line 11 . . . . . . . . . . . | **8a** | 6,815 | |
| **b** | Unreported tips subject to social security tax from Form 4137, line 10 . . | **8b** | | |
| **c** | Wages subject to social security tax from Form 8919, line 10 . . . . . | **8c** | | |
| **d** | Add lines 8a, 8b, and 8c . . . . . . . . . . . . . . . . . . . . . . . | **8d** | 6,815 |
| **9** | Subtract line 8d from line 7. If zero or less, enter -0- here and on line 10 and go to line 11 . . . . . ▶ | **9** | 135,985 |
| **10** | Multiply the **smaller** of line 6 or line 9 by 12.4% (0.124) . . . . . . . . . . . . . . . | **10** | 1,765 |
| **11** | Multiply line 6 by 2.9% (0.029) . . . . . . . . . . . . . . . . . . . . . | **11** | 413 |
| **12** | **Self-employment tax.** Add lines 10 and 11. Enter here and on **Schedule 2 (Form 1040), line 4.** . . | **12** | 2,178 |
| **13** | Deduction for one-half of self-employment tax. Multiply line 12 by 50% (0.50). Enter here and on **Schedule 1 (Form 1040), line 15.** . . . . . . . . . . . . . . . | **13** | 1,089 |

**Part II**   **Optional Methods To Figure Net Earnings** (see instructions)

**Farm Optional Method.** You may use this method **only** if **(a)** your gross farm income[1] wasn't more than $8,820, or **(b)** your net farm profits[2] were less than $6,367.

| | | | |
|---|---|---|---|
| **14** | Maximum income for optional methods. . . . . . . . . . . . . . . . | **14** | $5,880 |
| **15** | Enter the **smaller** of: two-thirds ($^2/_3$) of gross farm income[1] (not less than zero) **or** $5,880. Also include this amount on line 4b above . . . . . . . . . . . . . . . . . . . . . . | **15** | |

**Nonfarm Optional Method.** You may use this method **only** if **(a)** your net nonfarm profits[3] were less than $6,367 and also less than 72.189% of your gross nonfarm income,[4] **and (b)** you had net earnings from self-employment of at least $400 in 2 of the prior 3 years. **Caution:** You may use this method no more than five times.

| | | | |
|---|---|---|---|
| **16** | Subtract line 15 from line 14 . . . . . . . . . . . . . . . . . . . . . . | **16** | |
| **17** | Enter the **smaller** of: two-thirds ($^2/_3$) of gross nonfarm income[4] (not less than zero) **or** the amount on line 16. Also include this amount on line 4b above . . . . . . . . . . . . . . | **17** | |

[1]From Sch. F, line 9, and Sch. K-1 (Form 1065), box 14, code B.
[2]From Sch. F, line 34, and Sch. K-1 (Form 1065), box 14, code A - minus the amount you would have entered on line 1b had you not used the optional method.

[3]From Sch. C, line 31; and Sch. K-1 (Form 1065), box 14, code A.
[4]From Sch. C, line 7; and Sch. K-1 (Form 1065), box 14, code C.

**For Paperwork Reduction Act Notice, see your tax return instructions.**    Cat. No. 11358Z    **Schedule SE (Form 1040) 2021**

| efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | | DLN: 30211430317652 |
|---|---|---|---|

| a Employee's social security number | OMB No. 1545-0008 | Safe, accurate, FAST! Use *efile* | Visit the IRS website at www.irs.gov/efile. |
|---|---|---|---|

| b Employer identification number (EIN) ████ 7535 | | 1 Wages, tips, other compensation 6,739 | 2 Federal income tax withheld |
|---|---|---|---|
| c Employer's name, address, and ZIP code DEL TACO LLC  25521 Commercentre Drive SUITE 200  LAKE FOREST, CA 92630 | | 3 Social security wages 6,739 | 4 Social security tax withheld 418 |
| | | 5 Medicare wages and tips 6,739 | 6 Medicare tax withheld 98 |
| | | 7 Social security tips | 8 Allocated tips |
| d Control number ████ 5101 | | 9 | 10 Dependent care benefits |
| e Employee's first name and initial      Last name      Suff.  Shatoya S Brown | | 11 Nonqualified plans | 12a See instructions for box 12 |
| | | 13 Statutory employee ☐   Retirement plan ☐   Third-party sick pay ☐ | 12b |
| f Employee's address and ZIP code ████  Buford, GA 305197212 | | 14 Other | 12c |
| | | | 12d |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| GA | ████ | 6,739 | 228 | | | |

Form **W-2**  **Wage and Tax Statement**  **2021**

Department of the Treasury—Internal Revenue Service

**Copy B—To Be Filed With Employee's FEDERAL Tax Return.**
This information is being furnished to the Internal Revenue Service.

**Additional Data**                                              DO NOT PROCESS                        SPATS print

|  |  |
|---|---|
| **Software ID:** | |
| **Software Version:** | |
| **SSN:** | |
| **Spouse SSN:** | |
| **Name:** | SHATOYA S & REYNALDO R<BROWN |
| **Standard or NonStandard Cd:** | S |
| **Line C - Employer Name Control:** | DELT |

L DATA  efile GRAPHIC print - DO NOT PROCESS   ORIGINAL DATA - Production                    DLN: 30211430317652

| | a Employee's social security number | | |
|---|---|---|---|
| | OMB No. 1545-0008 | Safe, accurate, FAST! Use | *e~file* | Visit the IRS website at www.irs.gov/efile. |

**b** Employer identification number (EIN)
0000

| 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|
| 76 | |
| 3 Social security wages | 4 Social security tax withheld |
| 76 | 5 |
| 5 Medicare wages and tips | 6 Medicare tax withheld |
| 76 | 1 |
| 7 Social security tips | 8 Allocated tips |

**c** Employer's name, address, and ZIP code
United States Postal Service
Eagan Accounting Service Center
2825 Lone Oak Parkway

Eagan, MN  551219617

**d** Control number

| 9 | 10 Dependent care benefits |
|---|---|

**e** Employee's first name and initial    Last name    Suff.

S S HAYES

| 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|

| 13 Statutory employee | Retirement plan | Third-party sick pay | 12b |
|---|---|---|---|
| ☐ | ☐ | ☐ | |

| 14 Other | 12c |
|---|---|
| | 12d |

**f** Employee's address and ZIP code

BUFORD, GA  305197212

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| GA | | 76 | 0 | | | |

Form **W-2**   **Wage and Tax Statement**   **2021**   Department of the Treasury—Internal Revenue Service

**Copy B—To Be Filed With Employee's FEDERAL Tax Return.**
This information is being furnished to the Internal Revenue Service.

**Additional Data**

| | |
|---:|:---|
| **Software ID:** | |
| **Software Version:** | |
| **SSN:** | |
| **Spouse SSN:** | |
| **Name:** | SHATOYA S & REYNALDO R<BROWN |
| **Standard or NonStandard Cd:** | S |
| **Line C - Employer Name Control:** | UNIT |