## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

DUSTIN HYDE, individually and on )
Behalf of All Others Similarly )
Situated )
                               )
Plaintiff, )
                               )
  v. )     Civil Action File No: 2:22-cv-103-RWS
                               )
316 TOWING & ROAD SERVICE, )
INC., and MAKSIM LISOVSKIY )
                               )
Defendants.

## RESPONSE TO DEFENDANTS' MOTION FOR
## DECERTIFICATION OF COLLECTIVE ACTION

## I.    INTRODUCTION

This Court should deny the Motion for Decertification of Collective Action (ECF No. 59) filed by Defendants 316 Towing & Road Service, Inc., and Maksim Lisovskiy (collectively "Defendants") and instead grant final certification of the small group of opt-in Plaintiffs for trial. The evidence establishes that the opt-ins are similarly situated such that this case should proceed to trial as a collective action. In arguing to the contrary, Defendants rely on inconsequential differences to create the illusion of significant variation among Plaintiffs and Opt-In Plaintiffs (hereinafter collectively referred to as "Plaintiffs"). However, the evidence in this case

Page 1 of 25
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Response to Defendants' Motion for Decertification of Collective Action

demonstrates that Plaintiffs are similar in ways that matter to the liability issues to be tried. Further, what differences exist are readily manageable, particularly given the size of the collective.

If this Court should decide decertification is appropriate, then Opt-In Plaintiffs Kevin Brindley, Brent Johnson, and Reynaldo Brown should be joined as Plaintiffs pursuant to Fed. R. Civ. P. 20. Allowing Plaintiffs to proceed collectively serves the purposes envisioned by the FLSA: a group of similarly situated laborers coming together to have their claims heard with efficiency and expediency. The number of Plaintiffs in this case is so small that this Court should permit all Plaintiffs to appear at trial and testify on their own behalf regardless of whether this case proceeds as a collective under the FLSA or through the joinder provisions of the Federal Rules. Defendants' request for decertification is simply an unnecessary step toward the same result and should be denied.

## II.    LEGAL STANDARDS

Section 216(b) of the FLSA states as follows: "An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *See* 29 U.S.C. § 216(b).  One primary purpose of a collective action is to allow for the resolution of common issues of law and fact arising from the same alleged activity in one proceeding, as opposed to numerous proceedings. *Hoffmann-La Roche v. Sperling*,

Page 2 of 25
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

493 U.S. 165, 170 (1989).  Another purpose is to lower the cost of vindicating congressionally identified rights by pooling of resources.  *Id.*

"[T]o maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). The FLSA does not provide a definition of "similarity," nor has the Eleventh Circuit adopted a "precise definition of the term," but courts must determine "whether employees are similarly situated—not whether their positions are identical." *Id*. at 1259–60. Some factual variation among collective members does not warrant decertification, so long as the collective members are similarly situated with respect to the relevant factual circumstances. *See Bobbitt v. Broadband Interactive, Inc.*, No. 8:11-cv-2855-T-24 MAP, 2013 U.S. Dist. LEXIS 150854, at *45 (M.D. Fla. Oct. 21, 2013).[1] As many courts have aptly noted, "[i]f one zooms in close enough on anything, differences will abound . . . but those distinctions must make a difference relevant to the legal issues presented." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011) (citing *Frank*

---

[1]    *See also Kelly v. Healthcare Servs. Grp., Inc.*, 106 F. Supp. 3d 808, 816 (E.D. Tex. 2015) ("most courts acknowledge that there will be 'numerous differences' and 'legitimate differences' in the plaintiffs' testimony. The question for the court is whether these differences are so material as to prevent Plaintiffs from being similarly situated to one another") (internal citations and editing marks omitted); *Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674, 688 (W.D. Tex. 2014) ("the Court concludes [defendant] has adeptly identified numerous differences between individual plaintiffs, but none so material as to prevent them from being similarly situated to one another"); *Thompson*, 967 F. Supp. 2d at 1220 ("Rare would be the collective action - or class action for that matter - where the employees labored under the exact same circumstances").

Page 3 of 25
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Response to Defendants' Motion for Decertification of Collective Action

*v. Gold'n Plump Poultry, Inc.*, No. 04-CV-1018 (PJS/RLE), 2007 U.S. Dist. LEXIS 71179, at **11–12 (D. Minn. Sep. 24, 2007)); *see also, e.g.*, *Thompson v. Bruister & Assocs.*, 967 F. Supp. 2d 1204, 1220 (M.D. Tenn. 2013) (same). Where differences exist, the Court should ask whether those differences "outweigh the similarities of the practices to which they were allegedly subjected." *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012).

To assist with the final certification stage analysis, courts generally consider the following factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff, and (3) fairness and procedural considerations." *Morgan*, 551 F.3d at 1261–62.

## III.    ARGUMENT

Defendants' request for decertification relies on decontextualizing and mischaracterizing Plaintiffs' deposition testimony as well as statements that treat unresolved merits issues as if they are foregone conclusions. A glance at Defendants' implicit admissions of similarity and a closer examination of Plaintiffs' deposition testimony shows that decertification is improper in this case.

**Page 4 of 25**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

**A.     The Facts and Employment Settings of Plaintiffs Weigh Against Decertification.**

The first factor analyzed at the decertification stage—disparate factual and employment settings of plaintiffs—weighs in favor of continued certification. As further detailed below, all Plaintiffs were hired on in the same manner, performed the same duties, worked the same schedule, received work assignments in the same manner, were paid according to the same scheme, and reported to the same supervisor. Even Plaintiff Hyde, who performed manager duties for a period of time, performed the same duties and was paid in the same manner as the class both while he was a driver manager and during the time that he was exclusively a driver. By hyper-focusing on each specific tree, Defendants attempt to misdirect the Court's attention from the forest, but the facts are clear: in essentials, Plaintiffs worked in both factually and legally uniform settings. Therefore, Defendants' request for decertification must be denied.

1.     <u>Plaintiffs performed the same duties.</u>

Plaintiffs do not have to be "identically" situated in order to proceed collectively, which inherently means that some differences are permissible. *See Morgan*, 551 F.3d at 1261–62 (citing *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007)). The issue is whether those differences render the case unmanageable as a collective. *See Collinge v. Intelliquick Delivery, Inc.*, No. 2:12-

**Page 5 of 25**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

cv-00824 JWS, 2015 U.S. Dist. LEXIS 35858, at *34 (D. Ariz. Mar. 23, 2015) ("Even if there are some differences among the drivers' work conditions, these differences do not appear to be so great that they would render a collective action unmanageable."). Here, Plaintiffs are similarly situated and the differences identified by Defendants do not render the case unmanageable.

To begin with, Defendants implicitly admit that Plaintiffs who performed driving duties are similarly situated, in that Defendants gave these duties a collective label to use throughout their Motion. *See* Br. in Supp. of Mot. for Decertification, p. 5, ECF No. 59 ("each of the Opt-Ins' duties consisted solely of responding to customer calls, towing vehicles, performing roadside assistance, and tasks incidental to those duties ("Driver Duties")). Defendants then attempt to create a distinction by noting that Plaintiffs Brindley, Brown and Johnson exclusively performed Driver Duties, but Plaintiff Hyde also performed duties as a "Driver Manager." According to Plaintiff Hyde, however, he performed the same regular driver duties as the others for 60 hours per week and only performed manager duties when he was not on one of his scheduled 12-hour driving shifts. Dep. of Dustin Hyde ("Dep. Hyde") 54:24–55:7, attached as Ex. 1. Thus, Plaintiff Hyde performed the exact same duties as the other Plaintiffs; he simply performed additional duties during the time that he would otherwise be off.

Page 6 of 25
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

This is not the same picture of "two pairs of employees paint[ing] radically different pictures of the work environment" such that "a jury confronted with their different testimony would likely have a hard time concluding that they were even talking about the same job" that Defendants cite to in *Florence v. Deli Mgmt.*, No. 1:18-cv-04303-SCJ, 2021 U.S. Dist. LEXIS 116229, at *13 (N.D. Ga. Mar. 8, 2021). Plaintiff Hyde's description of his driver duties aligned exactly with the descriptions from the other Plaintiffs such that there can be no question that the collective performed identical duties when driving. *See* Dep. Hyde 55:5–7; Dep. of Kevin Brindley ("Dep. Brindley") 56:11–13, attached as Ex. 2; Dep. of Reynaldo Brown ("Dep. Brown") 59:5–1, attached as Ex. 32; Dep. of Brent Johnson ("Dep. Johnson") 49:22–50:21, attached as Ex. 4.

Regardless, even if Plaintiff Hyde's manager role renders him dissimilar from the class while he was Driver Manager, which Plaintiffs do not concede, Defendants utterly ignore the fact that Plaintiff Hyde only performed manager duties for a small amount of time during the statutory period. Plaintiff Hyde took on management duties after working for Defendants exclusively as a driver for a year, and then left the company and returned a few months later to again perform driver duties exclusively. Dep. Hyde 52:12–21, 64:20–65:8, 118:11–16. Accordingly, Plaintiff Hyde worked the exact same job and performed the exact same duties as the other

Page 7 of 25
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Response to Defendants' Motion for Decertification of Collective Action

Plaintiffs during the statutory period and is inarguably similarly situated during those weeks.

2.    <u>Plaintiffs worked the same hours.</u>

Defendants again hone in on Plaintiff Hyde's testimony regarding his hours worked to create an illusion of dissimilarity where none exists. At the beginning of his employment, Plaintiff Hyde indeed worked the "on-call" schedule that Defendants outline in their Motion. However, Plaintiff Hyde also testified that once Defendants hired more drivers, he was placed on the same identical 12-hour shift schedule as the other Plaintiffs. Every single Plaintiff testified that he was scheduled to work 12-hour shifts—a uniform schedule to perform uniform duties. Dep. Hyde 67:5–10; Dep. Brindley 67:11–17; Dep. Brown 68:4–10; Dep. Johnson 57:18–25. Accordingly, although each Plaintiff was scheduled to work a different 12-hour period during the day to ensure 24-hour coverage, the collective worked a similar schedule for purposes of determining similarity under the FLSA.

Defendants next claim that a determination of hours worked is too individualized because no two Plaintiffs responded to the same number of calls during a shift and thus all worked varying compensable hours. Importantly, whether Plaintiffs' time spent waiting on calls while on shift is compensable is a merits question that is not properly before the Court. *See Benton v. Deli Mgmt.*, 396 F. Supp. 3d 1261, 1285 (N.D. Ga. 2019) (stating that the defendant must raise merits

**Page 8 of 25**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

arguments "before the jury, and not the Court in a motion to decertify."). But Defendants are treating this very crucial merits question as if it's a foregone conclusion that Plaintiffs were not "working" while they were waiting to be called to a customer's assistance.

A closer look at Plaintiffs' testimony with respect to "wait time" shows that this issue is also reflective of their similarity. Defendants highlight some irrelevant differences in testimony, but each Plaintiff testified that he was required to be nearby and on task such that he was able to respond to a call within a specific time frame. Dep. Hyde 74:25–75:17 (stating that drivers were required to remain in the "home area" when on shift and not free to go where they pleased) 80:18–25 (stating that drivers were required to be in the area and respond within a certain time frame), 178:13–179:19 (same); Dep. Brindley 68:4–69:12 (stating that drivers were required to be within the coverage zone when on shift); Dep. Brown 72:22–73:21 (stating that because drivers had to be available and nearby when a call came through, Plaintiff Brown would wait in parking lots); Dep. Johnson 63:2–65:9 (stating the drivers needed to be within the area and available to respond to calls when on shift). Thus, each Plaintiff was subject to the same policy requiring them to be within a certain area and available to accept calls for assistance while on shift.

Page 9 of 25
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Response to Defendants' Motion for Decertification of Collective Action

3.     <u>Plaintiffs had the same supervisor and were subject to the same policies.</u>

Plaintiffs uniformly testified that their direct supervisor was Defendants' General Manager, Eli Kudrin. Dep. Hyde 65:9–11; Dep. Brindley 58:2–4; Dep. Brown 61:13–19; Dep. Johnson 129:4–8. Plaintiffs Brown and Johnson noted that they also sought input from Plaintiff Hyde "when he was deemed a supervisor," but considered Mr. Kudrin to be the final say in their day-to-day duties and questions. Dep. Johnson 129:4–8. *See also* Dep. Brown 61:16–19 (stating that Mr. Kudrin directed Plaintiff Brown's work via text), 67:14–25 (stating that Plaintiff Hyde never directed his work or told him what to do), 74:17–22 (stating that "Max and Eli" were Plaintiff Brown's "bosses"). Defendants' attempts to couch this clear and uniform testimony as dissimilar borders on the ridiculous.

Moreover, Plaintiffs in this case were subject to the exact same policies, most notably the policy classifying them as independent contractors. *See* Br. in Supp. of Mot. for Decertification, p. 3–4, ECF No. 59. Defendants' policy for onboarding new drivers is uniform: each Plaintiff submitted an application, underwent an interview, signed an employment agreement, and began work. Dep. Hyde 16:12–18, 39:11–16; Dep. Brindley 21:17–22, 22:19–23:19; Dep. Brown 52:5–10, 58:15–59:4; Dep. Johnson 14:23–25, 16:1–6, 18:13–19:1. As outlined above, Plaintiffs were subject to the same policy that required them to be on standby within a specific area when they were on shift. Dep. Hyde 74:25–75:17, 80:18–25, 178:13–179:19; Dep.

Page 10 of 25
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

Brindley 68:4–69:12; Dep. Brown 72:22–73:21; Dep. Johnson 63:2–65:9. Even the manner in which Plaintiffs' work was assigned and tracked is uniform—as Defendants admit in their Motion, Plaintiffs received calls through an app called Towbook, which tracked calls and gave each Plaintiff his assignments while on shift. Br. in Supp. of Mot. for Decertification, p. 6–7, ECF No. 59.

Likewise, Defendants' pay policies applied uniformly across all Plaintiffs. Each Plaintiff received a weekly salary intended to cover all work performed for the week. Dep. Hyde 42:10–44:2; Dep. Brindley 50:2–9; Dep. Brown 49:17–25; Dep. Johnson 37:25–38:6. No Plaintiff negotiated his weekly salary; they merely accepted what was offered upon hire. Dep. Hyde 42:10–44:2; Dep. Brindley 50:2–9; Dep. Brown 49:17–25; Dep. Johnson 37:25–38:16. Plaintiff Hyde's seemingly disparate tactic of "negotiating" a raise actually shows how little each control any Plaintiff had over their pay rates. Plaintiff Hyde had so little negotiating power that he quit the job because he felt he was not paid sufficiently, only to be rehired at a higher rate the following week. Dep. Hyde 42:10–44:2.

Further, all Plaintiffs testified that they were not allowed to reject calls for any reason other than the inability of their truck to handle the load. Dep. Hyde 105:1– 106:8; Dep. Brindley 85:1–16; Dep. Brown 80:21 –25; Dep. Johnson 74:10 –75:21. Plaintiff Hyde testified that Mr. Kudrin threatened to dock certain drivers' pay for rejecting calls. Dep. Hyde 106:1–8.  Plaintiff Brown testified that he did not know

Page 11 of 25
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Response to Defendants' Motion for Decertification of Collective Action

whether he would be disciplined for rejecting a call because he never rejected one. Dep. Brown 84:4 –6. Plaintiff Johnson only rejected calls with Mr. Kudrin's explicit permission, but was aware of discipline threats against other drivers for rejecting calls. Dep. Johnson 74:10–23, 86:19–87:10. Accordingly, Defendants had a uniform policy that required drivers to accept calls assigned through Towbook.

Finally, each Plaintiff worked exclusively for Defendants. Dep. Hyde 126:17–127:16; Dep. Brindley 87:11–13; Dep. Brown 89:15–22; Dep. Johnson 98:6–19. Defendants claim that Plaintiff Brown owned an independent towing company "that generated revenue," but Plaintiff Brown's clear testimony was that the company never had a customer because he never owned a tow truck to perform towing services with. Dep. Brown 105:7–106:13; 108:8–17. The company received funds while he was employed by Defendants because he and his wife deposited money into the account, but the company never performed a single service. *Id*. Likewise, Plaintiff Johnson's towing company only received funds because Plaintiff Johnson deposited money he earned working for Defendants into the account "in order to keep the account active," and not because he actually performed any services under the entity. Dep. Johnson 121:2–23.

Defendants argue that Plaintiffs held different job roles, managed their wait time differently, and had different supervisors, but Defendants failed to establish the relevance of any of these alleged differences. Defendants do not argue that overtime

Page 12 of 25
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

work was compensable for some Plaintiffs but non-compensable for others because they had different job roles, managed their wait time differently and had different supervisors. It is not enough to identify differences—Defendants must show how those differences are relevant to Plaintiffs' claims. *Kelly*, 106 F. Supp. 3d at 829.[2] None of these "differences" matter to the liability issues—Defendants' arguments simply underscore the fact that Plaintiffs are similarly situated in the ways that matter to this case. Allowing this case to proceed collectively precisely serves the goals and purposes of the FLSA.

## B.    Individual Defenses Do Not Warrant Decertification.

This second factor in the decertification analysis is related to the first factor in that the Court must evaluate whether disparate facts support individualized defenses. *Morgan*, 551 F.3d at 1261. Courts examining this factor "are concerned with whether representative evidence can be used to make class-wide determinations and the extent to which resolution requires such individualized inquiries that the case cannot proceed collectively." *Clay v. New Tech Glob. Ventures, LLC*, No. 16-296-JWD-CBW, 2019 U.S. Dist. LEXIS 34306, at *41-42 (W.D. La. Mar. 4, 2019). "In

---

[2]      *See also Clark*, 44 F. Supp. 3d at 688 (accepting that the defendant had identified "legitimate differences" among class members, but pointing out that the defendant "does not explain why they are material and preclude collective resolution of this case"); *Locurto v. AT&T Mobility Servs. LLC*, 2018 U.S. Dist. LEXIS 161327, at *13 (S.D.N.Y. Sep. 20, 2018) ("In this analysis, Plaintiff and Opt-in Plaintiffs' employment settings need not be identical—an impossible task—to be similar enough for certification as a collective action." (internal quotation marks omitted)).

**Page 13 of 25**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

other words, if 'many different defenses will be raised with respect to each individual defendant,' decertification may be proper." *Id*. at 42 (citing *Reyes v. Texas Ezpawn, L.P.*, No. V-03-128, 2007 U.S. Dist. LEXIS 1461, 2007 WL 101808, at *5 (S.D. Tex. Jan. 8, 2007). In deciding the propriety of collective treatment, a defendant's "right to defend against individualized claims on an individual basis, rather than collectively…must be balanced with the rights of the plaintiffs—many of whom would likely be unable to bear the costs of an individual trial—to have their day in court." *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 453, 460 (N.D.N.Y. 2014).

Turning to the current case, this factor weighs in favor of continued certification because any individualized defenses Defendants may raise do not overwhelm the collective issues, the benefits of proceeding collectively or the goals and purposes of the collective action procedures of the FLSA.

1.   <u>Arbitration is no longer a defense available to Defendants.</u>

Defendants first claim that whether the individual Plaintiffs have agreed to arbitrate their claims renders the claims too individualized to proceed collectively. To begin with, except for Plaintiff Hyde who testified that he did not sign the agreement, Plaintiffs signed the exact same agreement containing the exact same provisions. There is hardly an individualized determination at play, here. Regardless, the mandatory arbitration provision in the employment agreement is likely no longer available to Defendants. Plaintiffs will not belabor a point that is not properly before

Page 14 of 25
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

the Court, but this case has been pending for 18 months and Defendants have "substantially invoke[d] the litigation machinery" such that they have waived any right to enforce the arbitration provision. *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (quoting *S & H Contractors v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990)).

2.    Representative evidence is appropriate for both an independent contractor analysis and a determination of liability.

As detailed above, Plaintiffs performed the exact same duties, answered to the same manager, were subject to the same employment agreement and policies, received their work in the same manner, and spent their shifts engaging in similar activities. Accordingly, Plaintiffs are ideally situated for collective resolution of their claims. *Morgan*, 551 F.3d at 1264 ("Plaintiffs' evidence established that Family Dollar uniformly exempted all store managers from overtime pay requirements, and its exemption did not turn on any individualized factors. Not one.").

Defendants' arguments concerning individual coverage defenses do not hold water upon closer examination. Defendants have provided no evidence that every single vehicle towed or recovered by Plaintiffs originated from within the state, nor have they provided evidence that the Towbook app did not regularly receive and track cars across state lines. *See Spears v. Bay Inn & Suites Foley, LLC*, No. 1:19-00269-C, 2022 U.S. Dist. LEXIS 139469, at *7 (S.D. Ala. Aug. 5, 2022) (finding

Page 15 of 25
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Response to Defendants' Motion for Decertification of Collective Action

that communications with out-of-state hotel guests satisfied the plaintiff's burden to show individual coverage) (citing *St. Elien v. All Cty. Envtl. Servs.*, 991 F.3d 1197 (11th Cir. 2021)). FLSA coverage is not an individualized issue precluding certification.

Regardless, issues of individual coverage go to a week-by-week evaluation of damages, which courts have regularly held to be an insufficient reason to decertify an otherwise similarly situated collective: "individual differences in number of hours worked will not warrant decertification as long as plaintiffs show they are subject to a 'single decision, policy, or plan.'" *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 368 (S.D.N.Y. 2014) (internal editing marks omitted); *Lassen v. Hoyt Livery, Inc.*, No. 13-cv-1529 (VAB), 2016 U.S. Dist. LEXIS 169506, at *37 (D. Conn. Dec. 8, 2016) (same).[3] The need to conduct individualized inquiries to determine damages

---

[3]     *See also Randolph v. PowerComm Constr., Inc.*, 309 F.R.D. 349, 368 (D. Md. 2015) ("While there may be differences in hours worked, those differences are inevitable and do not preclude a finding of a similarly situated collective action."); *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 312 (D. Md. 2014) ("While actual hours worked and wages due may vary within the collective, district courts in the Fourth Circuit have clarified that [d]ifferences as to time actually worked, wages actually due and hours involved do not preclude a finding of a 'similarly situated' class"); *Andrako v. United States Steel Corp.*, 788 F. Supp. 2d 372, 382 (W.D. Pa. 2011) ("the prospect of individualized damages defenses should not preclude collective adjudication of the critical issue in this case"); *Senegal v. Fairfield Indus.*, No. H-16-2113, 2018 U.S. Dist. LEXIS 198209 at *26–27 (S.D. Tex. Nov. 21, 2018) ("Decertifying the class because the individuals within the class did not suffer the exact same amount of damages would erroneously result in the decertification of almost all FLSA class actions."); *Cruz v. TMI Hosp., Inc.*, 14-cv-1128 (SRN/FLN), 2015 U.S. Dist. LEXIS 147479, at *47 (D. Minn. Oct. 30, 2015) (rejecting defendant's argument that "'individualized inquiries' render[ed] class certification inappropriate" because "the types of discrepancies alleged—e.g., the amount of time worked off the clock on a given day or the time that a person arrived at work or left after work—have repeatedly been held by judges in this District to be inconsequential"); *Romero v. Fla. Power & Light Co.*, No. 6:09-cv-

Page 16 of 25
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Response to Defendants' Motion for Decertification of Collective Action

is not a basis for decertifying a collective when, as in this case, the circumstances which led to the violation of the FLSA are similar across Plaintiffs. Further, given the small size of the collective in this case, the need to conduct individualized inquiries into damages does not make the collective unmanageable.

Defendants' arguments regarding the MCA Exemption are likewise merely a disguised question of varying damages. The MCA Exemption applies on a week-by-week basis, so the weeks in which a Plaintiff traveled out-of-state will simply be tossed out when damages are calculated. This is hardly any more individualized than the process of determining which Plaintiff worked during which week during the statutory period, which is a necessary and unavoidable aspect of collective treatment of FLSA claims. Plaintiffs who made interstate trips did so very rarely; the few weeks in which these Plaintiffs might have been subject to the MCA Exemption are easily excluded should that become necessary. Dep. Hyde 100:24–101:5 (Plaintiff Hyde traveled out of state between three and six times); Dep. Brindley 82:3–14 (Plaintiff Brindley traveled out of state less than five times); Dep. Brown 82:17–18

---

1401-Orl-36-GJK, 2012 U.S. Dist. LEXIS 197650, at *8 (M.D. Fla. Feb. 22, 2012) ("With respect to disparate amounts of owed overtime and differing periods of employment with FPL, the Court agrees with Plaintiffs that the need for individual plaintiffs to establish the amount of their uncompensated time does not defeat collective action certification."); *Gilmer v. Alameda-Contra Costa Transit Dist.*, No. C 08-05186 CW, 2011 U.S. Dist. LEXIS 126845, at *16 (N.D. Cal. Nov. 2, 2011) ("Variations in damages awards do not justify decertification of this collective action.").

Page 17 of 25
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Response to Defendants' Motion for Decertification of Collective Action

(Plaintiff Brown did not travel out of state); Dep. Johnson 75:22–76:3 (Plaintiff Johnson did not specifically recall traveling out of state).

Finally, Defendants' argument that Plaintiffs' claims are "not susceptible to common proof" because they worked no overtime is another self-serving, merits-based conclusion that has not been settled by this Court and is not properly before it. Plaintiffs have provided ample proof that they worked at least five 12-hour shifts per week, which resulted in a 60-hour workweek, at minimum. Dep. Hyde 67:5–10; Dep. Brindley 67:11–17; Dep. Brown 68:4–10; Dep. Johnson 57:18–25. Whether Plaintiffs' time spent waiting on a call is compensable is a question for the jury and does not affect a determination of similarity.

Defendants have raised no defenses that are so individualized that they impede the efficiency of the collective action procedure, particularly in light of the small size of the collective in this case. Indeed, the issues of liability—whether Plaintiffs were misclassified as independent contractors—are uniform across all Plaintiffs. The "individualized" issues relied upon by Defendant are primarily damages-related or simple to resolve. Accordingly, continued certification is appropriate.

## C.    Considerations of Fairness, Procedure and Manageability

Finally, considerations of fairness, procedure, and manageability weigh decisively in favor of final certification. Given the size of the collective, the issues to be decided, the uniformity of Defendants' treatment of the collective members

**Page 18 of 25**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

and the resources of the collective members, this case is appropriate for collective adjudication. "One of the most important considerations in a decertification analysis is fairness." *Fezard v. United Cerebral Palsy of Cent. Ark.*, No. 4:13-CV-206-JM, 2014 U.S. Dist. LEXIS 199569, at \*5 (E.D. Ark. Sep. 3, 2014). Indeed, even where a defendant convinces a court that "some differences in employee job settings and individual defenses weighed against class certification, fairness and procedural considerations [may] still justify collective treatment of the [p]laintiffs' claims." *Plewinski v. Luby's, Inc.*, No. H-07-3529, 2010 U.S. Dist. LEXIS 39179, at \*1 (S.D. Tex. Apr. 21, 2010).

In analyzing this factor, courts should consider the policies behind FLSA collective actions: (1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Hoffman-LaRoche*, 493 U.S. at 170; *Bobbitt v. Broadband Interactive, Inc.*, No. 8:11-cv-2855-T-24 MAP, 2013 U.S. Dist. LEXIS 150854, at \*48-49 (M.D. Fla. Oct. 21, 2013). "While the FLSA's remedial goals do not alone justify certification of a collective action, they do at least suggest that a close call as to whether Plaintiffs are similarly situated should be resolved in favor of certification." *Curry v. M-I, LLC*, No. 2:18-CV-306, 2019 U.S. Dist. LEXIS 226102, at \*18 (S.D. Tex. Nov. 21, 2019) (Libby, Magistrate J.) (internal quotation marks omitted); *Brennan v. Qwest Communs. Int'l*, No. 07-2024 ADM/JSM, 2009

Page 19 of 25
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Response to Defendants' Motion for Decertification of Collective Action

U.S. Dist. LEXIS 47898, at *22 (D. Minn. June 4, 2009) ("And to the extent that the question presents a close call, concerns for the purposes of the FLSA as a remedial statute tip the balance decidedly against decertification."). "For many plaintiffs, a collective action is the only practical method of adjudicating their FLSA claims." *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1025 (D. Minn. 2007).

The sole argument Defendants put forth concerning issues of fairness concerns the possibility that Defendants may have to pay damages to Plaintiffs who did not work overtime, but this argument is based on a fundamental misunderstanding of how overtime damages are calculated and a willful ignorance of how relevant case law handles this very issue. In *Benton v. Deli Management*, this Court noted that it "believe[d] that the parties will be capable of fashioning procedures in a manner that will ensure that [the defendant] is not held liable for injuries it did not cause." 396 F. Supp. 3d at 1286 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016)). The Court noted that "[i]t is routine in class actions to have a final phase in which individualized proof must be submitted." *Id*. (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)).

Like in *Benton*, the common issues of misclassification and the extent of overtime hours worked predominates and supports continued certification. *See Senegal v. Fairfield Indus.*, No. H-16-2113, 2018 U.S. Dist. LEXIS 198209, at *29 (S.D. Tex. Nov. 21, 2018) (denying decertification despite the presence of some

**Page 20 of 25**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

individualized issues because of the existence of a predominate issue capable of collective adjudication); *Johnson*, 4 F. Supp. 3d at 462 (denying decertification where common questions of law and fact predominate over questions affecting individual class members); *Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 812-13 (N.D. Ill. 2010).[4]

Not only have Plaintiffs shown there are predominant issues of liability which are similar across Plaintiffs, but the size of this collective is not so large as to preclude individual testimony on damage issues that may require it. *See e.g.*, *Hernandez v. Morning Call Coffee Stand, Inc.*, No. 17-2613, 2018 U.S. Dist. LEXIS 116106, at *9 (E.D. La. July 12, 2018). This is in contrast to those cases, including cases cited by Defendant, in which the sheer size of the collective dictates decertification where individual issues must be addressed. *See Rindfleisch v. Gentiva Health Servs.*, 22 F. Supp. 3d 1295, 1300 (N.D. Ga. 2014) (43 collective members when the class was certified).

Further, in addressing fairness, procedure and manageability, the rights of a defendant "must be balanced with the rights of the plaintiffs, many of whom would

---

[4]     Citing, among other cases, *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) ("[T]he plaintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."); *Chabrier v. Wilmington Finance, Inc.*, No. 06-4176, 2008 U.S. Dist. LEXIS 27761, 2008 WL 938872, at *3 (E.D. Pa. April 4, 2008) ("The need for individual factual determinations is not fatal to certification of a FLSA collective action.").

Page 21 of 25
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Response to Defendants' Motion for Decertification of Collective Action

be unable to bear the cost of an individual trial, to have their day in court." *Thompson*, 967 F. Supp. 2d at 1212–22. Even where there are some differences in the factual settings of the plaintiffs, considerations of fairness, procedure and manageability may support continued certification of a class. *Collinge*, 2015 U.S. Dist. LEXIS 35858, at *34; *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 643–645 (S.D.N.Y. 2013) (noting that "the differences among [plaintiffs] are marginal and expected, rather than hyper-individualized and unpredictable"). This balance weighs in favor of Plaintiffs, who are part of a small collective of employees who labored under similar conditions imposed by Defendants that resulted in the FLSA violations at issue in this case.

The issues here are appropriate for collective treatment, and with respect to those limited issues that may require individualized evidence, the remedial purposes of the FLSA tip the scales in favor of continued certification. Accordingly, Defendants' request for decertification must be denied.

**D.    In the Event that Decertification is Granted, Opt-In Plaintiffs Should Be Joined as Named Plaintiffs.**

Alternatively, if this Court should determine that the collective should be decertified, then Opt-In Plaintiffs Brindley, Brown and Johnson should be joined as Named Plaintiffs, converting the lawsuit from a collective action with four Named Plaintiffs and three Opt-In Plaintiffs into a multi-plaintiff action with seven named

**Page 22 of 25**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

plaintiffs. *See, e.g.*, *Hill v. R+L Carriers, Inc.*, No. C 09-1907 CW, 2011 U.S. Dist. LEXIS 54873, at *6 (N.D. Cal. May 23, 2011) ("The Court's decision to de-certify the FLSA collect[ive] action does not preclude joinder.").

As discussed above, Opt-In Plaintiffs' claims are similar to those raised by Named Plaintiff Hyde, and arise out of Plaintiffs' employment with Defendants and Defendants' failure to pay an overtime premium. Therefore, Opt-In Plaintiffs' claims are properly joined with Named Plaintiffs pursuant to Rule 20(a).

## IV.   CONCLUSION

Plaintiffs are similarly situated in the ways that matter to this case. Differences relate primarily to damages and are small and easily managed, particularly given the size of the collective in this case. Accordingly, for the reasons set forth above, Defendants' Motion for Decertification should be denied in its entirety. Alternatively, this Court should allow Opt-In Plaintiffs to be joined as Named Plaintiffs. In the event that this Court grants Defendants' decertification request without joining Opt-In Plaintiffs, the dismissal of Opt-In Plaintiffs should be without prejudice and with a reasonable allowance of time for Opt-In Plaintiffs to re-file their claims in individual lawsuits. *See*, *e.g.*, *Davenport v. Charter Communs., LLC*, No. 4:12-CV-7-AGF, 2017 U.S. Dist. LEXIS 31076, at *99 (E.D. Mo. Mar. 6, 2017).

**Page 23 of 25**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

Respectfully submitted,

**DUSTIN HYDE, Individually and on Behalf of All Others Similarly Situated, PLAINTIFFS**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (800) 615-4946
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm

DELONG, CALDWELL, BRIDERS, FITZPATRICK & BENJAMIN
101 Marietta Street, Suite 2650
Atlanta, Georgia 30303
Telephone: (404) 979-3150

Matthew W. Herrington
Ga. Bar No. 275411
matthew.herrington@dcbflegal.com

*LOCAL COUNSEL FOR PLAINTIFF*

**Page 24 of 25**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned counsel, do hereby certify that on the date imprinted by the

CM/ECF system, a copy of the foregoing RESPONSE was filed via the CM/ECF

system, which will provide notice to the following attorneys of record:

> Jeremy H. Handschuh, Esq.
> Amanda I. Elliot, Esq.
> MITCHELL-HANDSCHUH LAW GROUP
> 3390 Peachtree Road, NE, Suite 520
> Atlanta, Georgia 30326
> Telephone: (404) 262-9488
> Facsimile: (404) 231-3774
> jeremy@m-hlawgroup.com
> amanda@m-hlawgroup.com
> Attorneys for Defendants

*/s/ Josh Sanford*
**Josh Sanford**

**Page 25 of 25**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Response to Defendants' Motion for Decertification of Collective Action**