# Exhibit A

**In the Matter Of:**

HYDE V. 316 TOWING & ROAD SERVICE

2:22-cv-103-RWS

---

**DUSTIN L. HYDE**

*September 28, 2023*

---



800.211.DEPO (3376)

*EsquireSolutions.com*

**Exhibit D, Hyde Dep.**

1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF GEORGIA
2                     GAINESVILLE DIVISION

3
DUSTIN HYDE, Individually,       )
4   and on Behalf of All Other   )
Similarly Situated,              )
5                                )  CIVIL ACTION FILE
                  Plaintiff,     )
6                                )  NO. 2:22-cv-103-RWS
          vs.                    )
7                                )
316 TOWING & ROAD SERVICE,       )
8   INC., and MAKSIM LISOVSKIY,  )
                                 )
9                 Defendants.    )
_____ )

10

11

12              Videotaped deposition of DUSTIN L. HYDE,

13         taken on behalf of the Defendants, pursuant to

14         Notice and agreement of counsel, in accordance

15         with the Federal Rules of Civil Procedure,

16         before Cynthia B. Gatewood, Certified Court

17         Reporter, at 3390 Peachtree Road NE, Suite 520,

18         Atlanta, Georgia, on the 28th day of September

19         2023, commencing at the hour of 10:06 a.m.

20

21

22

23

24

25



```
 1                        INDEX TO EXAMINATIONS

 2    EXAMINATION                                          PAGE

 3    Cross-Examination by Mr. Handschuh                     6

 4

 5                         INDEX TO EXHIBITS

 6    DEFENDANTS'
        EXHIBIT              DESCRIPTION                   PAGE
 7

 8      D-1       Notice of Deposition                      15

 9      D-2       Complaint                                 17

10      D-3       Driver Application                        18

11      D-4       Independent Contractor and Lease          31
                  Agreement
12
        D-5       Invoices                                  40
13
        D-6       Invoices                                  41
14
        D-7       Responses to Defendants' First            48
15                Interrogatories, Requests for
                  Production of Documents and
16                Admissions

17      D-8       3/10/21 Text Message                      59

18      D-9       6/17/21 Text Message                      60

19      D-10      6/24/21 Text Message                      63

20      D-11      1/21/21 Text Message                      84

21      D-12      6/20/21 Text Message                      84

22      D-13      Towbook Log                               91

23      D-14      Canceled Job Log                          91

24      D-15      5/11/21 Text Message                     123

25
```



**Exhibit D, Hyde Dep.**

```
1                        INDEX TO EXHIBITS
                           (Continued)
2
     DEFENDANTS'
3      EXHIBIT              DESCRIPTION                    PAGE

4
        D-16         Damages Spreadsheet                  144
5
        D-17         Declaration of Dustin Hyde           145
6
        D-18         7/16/21 Text Message                 153
7
        D-19         IRS Response                         156
8

9
                              -   -   -
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1    APPEARANCES OF COUNSEL:

 2

 3    On behalf of the Plaintiff:

 4          SEAN SHORT
            Attorney at Law
            Sanford Law Firm PLLC
 5          Suite 510, Kirkpatrick Plaza
            10800 Financial Centre Parkway
 6          Little Rock, Arkansas 72211
            Phone:  (501) 904-1650
 7          Email:  sean@sanfordlawfirm.com

 8

 9    On behalf of the Defendants:

10          JEREMY R. HANDSCHUH
            AMANDA I. ELLIOTT
            Attorneys at Law
11          Mitchell-Handschuh Law Group
            3390 Peachtree Road NE
12          Suite 520
            Atlanta, Georgia 30326
13          Phone:  (404) 262-9488
            Email:  jeremy@m-hlawgroup.com
14          Email:  amanda@m-hlawgroup.com

15

16    Videographer:

17          Rick Richey
            Esquire Deposition Solutions
            Phone:  (404) 495-0777
18

19    Also Present:

20          Maksim Lisovskiy
            Eli Kudrin
21

22                            -  -  -

23

24          (Disclosure, as required by the Georgia
      Board of Court Reporting, was made by the court
25      reporter, a written copy of which is attached
      hereto.)
```



**Exhibit D, Hyde Dep.**

```
 1                 (VIDEO CAMERA ON.)

 2         THE VIDEOGRAPHER:  Good morning, ladies and

 3    gentlemen.  This is the beginning of Media Number

 4    1 in the video-recorded deposition of Dustin L.

 5    Hyde.  Today's date is September 28th, 2023.  It's

 6    10:06 a.m. Eastern Daylight Time.  The case is

 7    Dustin Hyde, individually, and on behalf of all

 8    others similarly situated versus 316 Towing & Road

 9    Service, Inc., and Maksim Lisovskiy, Case Number

10    2:22-cv-103-RWS in the United States District

11    Court, Northern District of Georgia, Gainesville

12    Division.

13         Today's deposition is being held at the Law

14    Offices of Mitchell and Handschuh, 3390 Peachtree

15    Road, Atlanta, Georgia 30326.  My name is Rick

16    Richey.  I'm the videographer.  The court reporter

17    is Cindy Gatewood, and we represent Esquire

18    Deposition Solutions.

19         Would the attorneys please introduce

20    themselves.

21         MR. SHORT:  Sean Short of Sanford Law Firm

22    for the plaintiff.

23         MR. HANDSCHUH:  Jeremy Handschuh on behalf

24    of the defendants, along with co-counsel, Amanda

25    Elliott.
```



**Exhibit D, Hyde Dep.**

1   ever signed this document?

2       A.    Do not recall, and I don't see a signature

3   other than initials.

4       Q.    But you do -- just drawing your attention to

5   the pages within Exhibit 4, you note that there are

6   initials on each page and that is your initial?

7       A.    Yes, sir, it appears to be.

8       Q.    Okay.  Do you recall at the end at the

9   signature block -- this is going to be marked as 316

10  Towing 141.

11      A.    All right.

12      Q.    Do you see what appears to be your name,

13  Dustin Hyde, written there?

14      A.    Yeah, I see that.

15      Q.    Is that your handwriting?

16      A.    No, it's not.

17      Q.    Okay.  Is that your initial at the bottom of

18  that page on the bottom left?

19      A.    After looking at this, it looks like all of

20  these were written by the same person and doesn't look

21  like that is actually my handwriting.

22      Q.    Do you recall whether or not you initialed

23  this?

24      A.    I mean, to be quite honest with you, there's

25  a lot of papers that I initialed.  I mean, I don't have



1      Q.    Okay.  Is or is that not your initial --

2      A.    I cannot confirm that.

3      Q.    Okay.  But you can't deny it either.

4      A.    I'm not trying to.

5      Q.    Okay.  So you're just not sure.

6      A.    I'm not sure.

7      Q.    Okay.  So if these were maintained as the

8   records of 316 during the time of the application,

9   would you have any other different documentation of

10   that which you initialed?

11      A.    I'm unsure of that as well.  However, when

12   it comes to my initials on these papers, when I look

13   down and see my name written and I know 100 percent

14   well that it's not my handwriting, I cannot confirm any

15   other pages in this docket.

16      Q.    And that's the only basis for not being able

17   to confirm is just that handwritten name at the end?

18      A.    I mean, if it's not my signature and I

19   didn't sign it, then --

20      Q.    Is that a signature or is that your name

21   written out?

22      A.    It's my name written out.

23      Q.    Okay.  Okay.  Do you know who may have

24   written that?  Was that Eli?

25      A.    I mean, you're asking me to make



1  presumptions on something I wasn't there when it was

2  signed or written, so --

3      Q.    Okay.  But you have no -- other than your

4  testimony that the fact that your name is written down,

5  no other basis or other documentation to show that this

6  is not the version that you initialed during --

7      A.    As far as I'm concerned, sir, this right

8  here is fraudulent.

9      Q.    Okay.  And what is the basis for your

10 contention?

11     A.    That is not my handwriting.

12     Q.    Okay.  Anything else?

13     A.    I don't have anything else.

14     Q.    Okay.  But you don't have any other

15 documentation that you purport to be any agreements

16 that you signed --

17     A.    No.

18     Q.    -- that you haven't produced in this action.

19     A.    No.

20     Q.    Okay.  But you do recall initialing

21 documents, paperwork.

22     A.    Yeah, I initialed some documents, sure.

23     Q.    All right.  Looking in the -- what's been

24 marked as Exhibit 3, could you identify for me within

25 this packet what other documents you initialed?



1        Q.    Okay.  But you don't recall an incidence

2    where that actually happened to you.

3        A.    No, because I hardly rarely ever got sick,

4    so --

5        Q.    Okay.  During your time of onboarding, did

6    you ever happen to discuss whether you would receive

7    any stock or ownership interest in 316 Towing?

8        A.    No.

9        Q.    What about any benefits, employment benefits

10   or the like?

11       A.    No.

12       Q.    And when you were hired, did you have the

13   role of driver manager?

14       A.    Not in the beginning.

15       Q.    Okay.  How were you hired initially?

16       A.    I was the only driver.

17       Q.    Okay.  So you were hired as a driver, and

18   then later on --

19       A.    As they hired more employees, I became --

20       Q.    Then you became --

21       A.    -- driver manager.

22       Q.    Go ahead.  I'm sorry.

23       A.    Then that was when the driver manager

24   started.

25       Q.    Okay.  Do you recall I think based on the



**Exhibit D, Hyde Dep.**

1      A.    I think Kevin came after I was no longer

2   driver manager.  I'm not sure.

3      Q.    Okay.  What about Brent Johnson?

4      A.    I believe so.

5      Q.    Okay.  What about Anthony Lewis?

6      A.    Yes.

7      Q.    Were there any other driver managers --

8      A.    No.

9      Q.    -- during your time?

10     A.    No other driver managers.

11     Q.    So if there were other drivers that happened

12   to work while you were working, you were their manager.

13     A.    Uh-huh (affirmative).

14     Q.    Okay.  Were there any other driver managers

15   during your time --

16     A.    No.

17     Q.    -- at 316 Towing?  Okay.  Do you recall why

18   this manager role may have been offered initially?

19     A.    Again, it wasn't really offered.  It was

20   something me and Eli discussed between us to try to

21   help move the company forward.  He would be more so

22   managing the dispatchers and office side, and I would

23   answer to him about the drivers.

24     Q.    Okay.  And did you have any other duties?

25   Were you still acting as a driver at that time?



**Exhibit D, Hyde Dep.**

1  the towing industry would have been valuable to 316?

2      A.    Potentially could have been, but that wasn't

3  why I was hired.  I was hired because I can do the job.

4      Q.    Okay.  So you just -- you never spoke about

5  your ability to operate a towing business with them?

6      A.    Why would I?  It wasn't my business.

7      Q.    Okay.  In your role as a manager, can you

8  describe on say a weekly basis how much time was

9  devoted to your manager duties?

10     A.    Anywhere from two to six hours a day

11 potentially.

12     Q.    Okay.  So break that down for me.  What

13 would two hours of management time, what would that

14 break out into?  What would you be doing?

15     A.    Getting things for the drivers' trucks or

16 changing different things for them to be able to switch

17 trucks or to get out on the road with what they got to

18 do.  I mean --

19     Q.    When you --

20     A.    -- it could have been getting supplies for

21 the truck.

22     Q.    When you refer to things, are you referring

23 to equipment --

24     A.    Yeah --

25     Q.    -- repair parts?



Exhibit D, Hyde Dep.

1   issues with Brown; correct?

2        A.    Yes.

3        Q.    Okay.  And at this point in time, it appears

4   it had reached the level of a decision as to whether or

5   not to let Mr. Brown go, correct, or fire him?

6        A.    Yeah.  I mean, that's where it led to, yes.

7        Q.    Okay.  And so your input was at least

8   supplied for purposes of Brown's status as a driver

9   within 316.

10       A.    Sure.  I mean, I could speak, and he could

11  choose to listen or not.

12       Q.    Now, we spoke about that brief moment where

13  you quit on a Friday and then were rehired on a

14  Saturday.  And then we're coming up to a period of time

15  in which we had another instance where you no longer

16  worked for 316; correct?

17       A.    At some point, yes.

18       Q.    Was that on or about August of 2021?

19       A.    Potentially.  I don't know the exact dates.

20       Q.    When you were rehired, do you recall when

21  you were rehired?

22       A.    I don't.

23       Q.    Could it have been around or about

24  November 2021?

25       A.    Potentially.



1      Q.    Okay.  At the time of rehire, did you no

2  longer have the role as driver manager?

3      A.    If that's the last time that there was a

4  separation, then yes.  When I came back, I was no

5  longer driver manager.

6      Q.    Okay.  So the last period of time you worked

7  for 316, you were no longer a driver manager.

8      A.    That's correct.

9      Q.    Okay.  While you were a driver for 316, who

10  supervised you?

11      A.    Eli.

12      Q.    Okay.  Did you ever get managed by Maksim --

13  he goes by Max -- Mr. Lisovskiy?

14      A.    I mean, theoretically he manages the whole

15  show.  He's the owner.

16      Q.    Okay.  But did he in his day to day

17  supervise you?

18      A.    No, not on a regular basis.  He was busy

19  with other duties.

20      Q.    Okay.  When may have Max supervised you, or

21  when did you interact with Max individually?

22      A.    Only if I couldn't get something through to

23  Eli and chose to speak to Max.

24      Q.    Do you recall any instances of that?

25      A.    I mean, there were a couple of times, but I



**Exhibit D, Hyde Dep.**



EXHIBIT

7

9.28.23

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

DUSTIN HYDE, individually and
on Behalf of All Other Similarly
Situated

Plaintiff,

v.

316 TOWING & ROAD
SERVICE, INC., and MAKSIM
LISOVSKIY

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action File No: 2:22-cv-103-
RWS

### PLAINTIFF DUSTIN HYDE'S RESPONSES TO DEFENDANTS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION

Plaintiff Dustin Hyde ("Plaintiff") by and through his attorney Josh Sanford of

Sanford Law Firm, PLLC, hereby submits his Answers to Defendants' First Set of

Interrogatories and Requests for Production of Documents, and states as follows:

### INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify the individual(s) who participated in

answering these interrogatories, and for each, identify the individual's relationship to you.

**ANSWER NO. 1:** No one has helped me in preparing in these answers, except for

my Counsel.

**INTERROGATORY NO. 2:** Please identify the name and contact information of

every individual known to you who you believe has knowledge relevant to the allegations

Page 1 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

of your Complaint. For each individual identified, please state the relevant knowledge that you believe they have.

**ANSWER NO. 2:** See Plaintiff's Initial Disclosures, and additionally Drivers Kevin Brinley, Brent Johnson, Anthony were all drivers who I managed. Maksim and Eli were the ones running the company and knew everything that was going on with the business. They didn't keep records of anything. Eli Kudrin was the office side of the business. He was my manager then was manager over the dispatchers when we hired more people. He hired the dispatchers, and they worked in Ukraine.

**INTERROGATORY NO. 3:** Please describe in reasonable detail the material facts supporting the allegation in Paragraphs 22, 27, 28, 72, 83, and 85 of the Complaint.

**ANSWER NO. 3:** Objection. This Interrogatory is overly broad and vague in that asking Plaintiff to "describe in reasonable detail the material facts supporting the allegation" in Paragraphs 72 and 83 requires legal analysis and conclusions.

Regarding some of the facts supporting Paragraphs 22, 27, 28 and 85, Plaintiff states as follows: I was driving their company tow trucks and would hand out the company's business cards and other company related paraphernalia. When I started, I wore whatever I wanted, but once we started hiring other drivers, we were required to wear uniforms. We had a schedule and set days to work. As a manager I would have to go out on call to help the other drivers. If I called in sick, I would be punished by having $100 docked out of my pay. I worked overtime but was never paid overtime.

**INTERROGATORY NO. 4:** Please identify every entity, individual, or organization (including yourself and companies you own) for whom you have performed work in exchange for compensation as either an employee, officer, partner, owner, or

Page 2 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

independent contractor since June 1, 2019.  For each entity, individual, or organization, provide:

> (a) The telephone number, address, EEIN, and full legal name as it appears on any check stub, W-2, or 1099 you may have received;
>
> (b) The name, contact information, and address of any individual who either supervised, managed, or otherwise directed the work you performed;
>
> (c) The time periods during which you performed work, including the beginning and end dates of your employment or engagement for each;
>
> (d) A description of the payment and timekeeping practices relevant to the work you performed, including whether such work was paid on an hourly, salaried, per-job, or piecemeal basis;
>
> (e)  A description of any programs, software, apps, documents, or records that were used to log or track work performed; and
>
> (f) A description of the manner of any and all work that you performed, including job descriptions, locations, whether the work was performed remotely or on-site, and your specific duties.

**ANSWER NO. 4:** Objection. This Interrogatory is overbroad and seeks information that is not relevant to the extent that it requests information beyond the scope of the time Plaintiff worked for Defendants.

Regarding the requested information that is within the time Plaintiff worked for Defendants, Defendants already have the information or is more easily accessible by Defendants. Additionally, Plaintiff states as follows: From the time I started working for

Page 3 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

Defendants in December 2019, I didn't work for any other company while working for them.

**INTERROGATORY NO. 5:** For each workweek from June 1, 2019 through June 1, 2022 that you claim you performed more than 40 hours of work for 316 Towing and for which you allege you were not properly compensated under the Fair Labor Standards Act, state the precise number of hours you claim you worked. For each week for which you cannot give a precise number, state why you are unable to do so. Your answer should be organized by providing responsive information for each separate workweek.

**ANSWER NO. 5:** Objection. This Interrogatory is unduly burdensome because Defendants are legally responsible for maintaining records of hours worked. The Supreme Court established the standard of proof for an award of back wages in FLSA cases where an employer has kept inadequate or inaccurate records in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-88 (1946). In that case, the Court held that when an employer has failed to keep adequate or accurate records of employees' hours, employees should not effectively be penalized by denying them recovery of back wages on the ground that the precise extent of their uncompensated work cannot be established. *Id.* at 687; *see Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997); *Dove v. Coupe*, 759 F.2d 167, 174 (D.C. Cir. 1985). Specifically, the Supreme Court concluded that where an employer has not maintained adequate or accurate records of hours worked, an employee need only prove that "he has in fact performed work for which he was improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. Once the employee establishes the amount of uncompensated work as a

**Page 4 of 28**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Dustin Hyde's Answers and Responses to Defendants'**
**First Set of Interrogatories and Requests for Production**

matter of "just and reasonable inference," the burden then shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. If the employer fails to meet this burden, the court may award damages to the employee "even though the result be only approximate." *Id.* at 688.

In this case, Plaintiff does not know if Defendants kept records of hours worked by Plaintiff. If Defendants did not keep such records, Plaintiff is entitled to prove his damages under the just and reasonable inference standard enunciated in *Mt. Clemens.*

Regarding Plaintiff's hours worked during his employment with Defendants, Plaintiff states as follows: When I started working for them, I was working 7 days a week and was on call 24 hours a day. I used the only truck they had. That was for about a year, then we started hiring other drivers. I went on night shifts 8pm to 8am and stayed on that until I left. After I became "Driver Manager", I would have to do other job duties. I would have to have meetings with Eli, inspect trucks, buy supplies for the business, or other various things and wouldn't finish until 11am to 1pm depending on what I had to do. I would say after about 8 months I was working 60 to 80 hours per week. I would occasionally break 40 before this, but 8 months was when it really got busy.

**INTERROGATORY NO. 6:** For each workweek from June 1, 2019 through June 1, 2022 that you claim you performed more than 40 hours of work for 316 Towing and for which you allege you were not properly compensated under the Fair Labor Standards Act, describe every physical location from which you performed work for 316 Towing and the number of total hours spent at each location. For time spent at roadside or otherwise unknown locations while assisting 316 Towing customers, you may state "assisting

Page 5 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

customer" instead of providing an exact physical location. For time spent in transit, you may specify "in transit" or "commuting" instead of providing an exact physical location. For each week for which you cannot give a precise number, state why you are unable to do so. Your answer should be organized by providing responsive information for each separate workweek.

**ANSWER NO. 6:** Objection. This Interrogatory is unduly burdensome in that it seeks discovery of information that is already in possession of Defendants and that is not reasonable to retain in normal personal records or memory. Defendants may access this information as easily, or more easily, than Plaintiff by reviewing Defendants' own records.

Regarding information in Plaintiff's possession, Plaintiff states as follows: Winder, Decula, Auburn, Bethlehem, Monroe, Athens, Jefferson, Gainsville, Beauford, Norcross, Suwanee, Doraville, Liphonia, Decatur, Stone Mountain, Snellville and Loganville were all towns I performed work in. These were the main locations in Georgia that we worked in. The average local tow was about an hour. It could take anywhere from 30 minutes to a couple of hours depending on if it was a wreck or something else that was difficult. The travel time to a tow depended on the job. It could be 10 minutes if it was down the road or it could be an hour or more away depending on where the tow was.

**INTERROGATORY NO. 7:** Please describe in detail the process by which you were hired or began working for 316 Towing, including detailed descriptions of all conversations, meetings, documents, training materials, offers, benefits information, protocols, handbooks, or agreements that were exchanged between you and any employee or representative of 316 Towing prior to and within the first two weeks of beginning work for 316 Towing.

Page 6 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**ANSWER NO. 7:** This Interrogatory seeks discovery of information that is already in possession of Defendants. Defendants may access this information as easily, or more easily, than myself by reviewing Defendants' own records. Regarding details about the process by which I was hired or began working for 316 Towing, here is what I remember. Facebook had a marketplace that had job postings and saw they were hiring. They were 1.3 miles away from my house. I called and spoke to Eli and went down there for a meeting with him. I filled out some very brief paperwork and then started working for them until I ended my employment. I filled out a general application, but then they had me fill me out a 1099, but I didn't understand what it was until later on and figured out they weren't paying me incorrectly.

**INTERROGATORY NO. 8:** Please describe in reasonable detail the material facts supporting your allegation that "Defendant's annual gross volume of sales made or business done is not less than $500,000.00 . . . in each of the three years preceding the filing of this Complaint."

**ANSWER NO. 8:** The information requested is already in Defendants' possession. Defendants may access this information as easily, or more easily, than myself by reviewing Defendants' own records. There's no way for me to calculate that from the information I had at my position in the company.

**INTERROGATORY NO. 9:** Please describe in reasonable detail each fact that supports your assertion that Defendants were engaged in interstate commerce, including a description of each instrumentality of interstate commerce that you used while performing work for 316 Towing.

Page 7 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**ANSWER NO. 9:** I can't remember every fact, but some of the facts are that I had a card that was in Maksim's name that I used for fuel, then we all got fuel cards once we hired more drivers. There were also tows that we picked up in South Carolina and brought back to our area. We would go pick up BMW's at a dealership in South Carolina and bring them back to the dealership in our area. This happened about a maximum of 6 times and these were solo trips. We didn't work in the area at all.

**INTERROGATORY NO. 10:** Please identify each cellular phone, smartphone, smartwatch, and any other mobile telecommunication device that you have used to transmit or receive communications, including phone calls, text messages, emails, or other app-based notifications, for or on behalf of any business or organization, including those which you own or have an interest in, since June 1, 2019. For each, please provide the make, model, date acquired, any assigned telephone number, and the name of any entity or individual who supplied or paid for the device or cellular service at any point in time.

**ANSWER NO. 10:** Objection. This Interrogatory is overbroad and seeks information that is not relevant to the extent that it requests information beyond the scope of the time Plaintiff worked for Defendants.

Regarding each cellular phone, smartphone, smartwatch, or any other mobile telecommunication device Plaintiff did use during Plaintiff's employment with Defendants, Plaintiff states as follows: At first, they gave me an Iphone so they could communicate and keep track of me. Once they discovered Towbook, I used my personal cell phone. The number for my personal cell phone that I used for the majority of the time was 470-

Page 8 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

577-5829. For communication between Eli and the drivers, we would do direct calls and we would use Whatsapp for group messages.

**INTERROGATORY NO. 11:** For each Request for Admission that you have denied, please describe in detail, and not in summary fashion, the factual bases supporting your denial.

**ANSWER NO. 11:** Objection. Plaintiff objects to this Interrogatory to the extent that it seeks information protected by Attorney-Client Privilege and/or the Attorney Work-Product Doctrine. Furthermore, Plaintiff objects to this Interrogatory as duplicative in that in Plaintiff's corresponding Responses to any such Request for Admission(s) that Plaintiff denied, Plaintiff described in detail which aspects of the Request were denied and why. Please see Plaintiff's Response to Defendants' First Set of Requests for Admission.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:** Any and all documents that you believe support the allegations asserted by you in the First or Second Claim for Relief of your Complaint.

**RESPONSE NO. 1:** Most responsive documents relevant to this Request are in Defendants' possession or are more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, please see attached.

**REQUEST FOR PRODUCTION NO. 2:** Any and all documents relating to the allegation in Paragraphs 22, 27, 28, 72, 83, and 85 of the Complaint.

Page 9 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**RESPONSE NO. 2:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 3:** Any and all documents relating to your claim for damages and other relief, including but not limited to all documents relating to the claim for damages set forth in the Prayer for Relief of the Complaint and your Initial Disclosures.

**RESPONSE NO.3:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 4:** Any and all documents relating to any admission you contend 316 Towing or Lisovskiy has made at any time from June 1, 2019 through the present in relation to any of the allegations of the Complaint.

**RESPONSE NO. 4:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 5:** Any and all documents evidencing or relating to any facts you believe or contend refute or contradict any of Defendants' defenses, as asserted in their Answer.

**RESPONSE NO. 5:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

Page 10 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**REQUEST FOR PRODUCTION NO. 6:** Any and all documents or exhibits that you intend to reference, rely upon, or introduce into evidence at the trial of this Suit.

**RESPONSE NO. 6:** Objection. This Request is unduly burdensome in that it seeks to have Plaintiff marshal all his evidence prior to the end of discovery. Regarding documents that Plaintiff does intend to reference, rely upon, or introduce into evidence at trial, please see Plaintiff's Initial Disclosures and any documents produced in Plaintiff's responses to Defendants' First Set of Requests for Production of Documents.

**REQUEST FOR PRODUCTION NO. 7:** Any and all documents relating to each expert you intend to call as a witness at trial in this Suit, including but not limited to documents and communications sent to or received from each expert, resumes, curriculum vitae, oral or written reports, and any supporting data or information.

**RESPONSE NO. 7:** No expert witnesses have been identified at this time. Plaintiff does not intend to rely on expert witnesses; however, if and when any are identified, Plaintiff will timely supplement this Response.

**REQUEST FOR PRODUCTION NO. 8:** All affidavits, sworn statements, notes, and other documents sent to, received from, or otherwise relating to any person you intend to call as a witness at trial, either in person, through deposition testimony, or through an affidavit regarding any claim or defense in this Suit.

**RESPONSE NO. 8:** Objection. This Request seeks information that is protected by the Attorney Work-Product Doctrine to the extent that it requests unfiled written statements, opt-in forms, consent to join forms, and/or declarations which Plaintiff's attorneys may have drafted or may draft and to the extent that it otherwise requests witness statements to Plaintiff's counsel.

Page 11 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

Regarding any affidavits, sworn statements, notes or other documents, any affidavits or sworn statements which Plaintiff intends or decides to rely on in support of any motion will be filed and therefore provided to Defendants. To the extent Plaintiff would rely on such documents at trial, Plaintiff will produce them pursuant to these Requests or otherwise in accordance with the Federal Rules of Civil Procedure. Plaintiff has no responsive documents or statements from third-parties pursuant to subpoenas and/or FOIA requests, or otherwise, but will provide such documents if any are obtained.

**REQUEST FOR PRODUCTION NO. 9:** Any and all documents that you referred to, relied upon, consulted, or used in any way to draft the Complaint, your Initial Disclosures, or your response to Declaration of Dustin Hyde.

**RESPONSE NO. 9:** Please see Hyde000001-000078 that Plaintiff produced in Plaintiff's Initial Disclosures.

**REQUEST FOR PRODUCTION NO. 10:** Any and all documents or communications between you and any person or entity (other than your attorney) from June 1, 2019 through present, relating to the allegations in the Complaint, including but not limited to correspondence, emails, handwritten notes, memos, recordings, journal entries, and communications with any government agency.

**RESPONSE NO. 10:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 11:** Any and all documents you obtained from any person or entity from June 1, 2019 through present relating to the allegations in the Complaint, including but not limited to any written statements, affidavits, declarations,

Page 12 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

sworn statements, notes, sworn testimony, documents obtained by subpoena, documents received in response to Freedom of Information Act (FOIA) requests, and documents received from any government agency.

**RESPONSE NO. 11:** Objection. Plaintiff restates and reincorporates Response No. 8 hereto.

**REQUEST FOR PRODUCTION NO. 12:** Any and all social media postings or communications relating to the allegations in the Complaint, including but not limited to postings on Facebook, LinkedIn, Twitter, YouTube, Instagram, Snapchat, WhatsApp, Reddit, blogs, wikis, and other social media sites.

**RESPONSE NO. 12:** Objection. This Request is unduly burdensome in that it requests that Plaintiff produce social media postings or communications relating to the allegations in the Complaint not within Plaintiff's own knowledge or possession. Plaintiff cannot reasonably be expected to locate, examine and produce social media postings or communications relating to the allegations in the Complaint that individuals other than Plaintiff possess without knowledge of such items.

Regarding social media postings or communications that Plaintiff may have knowledge of, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 13:** Any and all documents relating to any contracts, agreements, or correspondence in connection with your working relationship with either 316 Towing or Lisovskiy, including but not limited to any compensation or employment agreement or contract for tow truck services, onboarding documents, waivers, manuals, handbooks, training materials, or other written documents from 316

Page 13 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

Towing characterize the work you performed or your working relationship with 316 Towing.

**RESPONSE NO. 13:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 14:** Any and all documents relating to any work you performed for 316 Towing, relevant to any claim or defense in this Suit, at any time from June 1, 2019 through June 1, 2022, in exchange for any form of compensation, including but not limited to invoices for tow truck services provided, days and hours worked, shift schedules, calendars, Towbook records, uniforms, safety meetings, routes, store visits, use of electronic devices, product promotions, tips, badges, sales, training, new products, contests, product pricing, customers, paychecks, compensation records, inspection reports, and schedule for completion of work.

**RESPONSE NO. 14:** Plaintiff restates and reincorporates Response No. 1 hereto.

**REQUEST FOR PRODUCTION NO. 15:** Any and all documents relating to any benefits offered or provided to you by 316 Towing or Lisovskiy at any time from June 1, 2019 through present, including but not limited to pension, 401k, profit sharing, stock options, health insurance, life insurance, dental benefits, disability insurance, workers' compensation coverage, unemployment insurance, malpractice insurance, payment of professional dues, fees, or continuing education, reimbursement of moving expenses, business expenses, or tuition, paid time off, paid vacation, and paid sick leave.

Page 14 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**RESPONSE NO. 15:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 16:** Any and all documents relating to any expenses you incurred at any time from June 1, 2019 through June 1, 2022 in connection with the work you performed for 316 Towing, including but not limited to mileage, vehicle maintenance and repair, tools, equipment, supplies, meals, travel, uniforms, professional licenses and certifications, attendance at conferences and seminars, tuition, cell phone, fax, postage, and home office.

**RESPONSE NO. 16:** Any responsive documents are in Defendants' possession or more easily accessible by Defendants. Regarding any responsive documents relevant to this Request that are in Plaintiff's possession, Plaintiff has no responsive documents.

**REQUEST FOR PRODUCTION NO. 17:** Any and all documents relating to your efforts to obtain employment or compensation in exchange for work or services at any time from June 1, 2019 through June 1, 2022, including but not limited to all versions of your resume, applications for employment, cover letters, reference letters, job inquiries, offers of employment, employment agreements, contracts, bids, proposals, job advertisements and postings, termination notices, resignation notices, rejection letters, and any other communications with any prospective employer or customer.

**RESPONSE NO. 17:** Objection. This Request seeks information that goes beyond the scope allowed by Rule 26 and has no importance to resolving the issues in this case or establishing any claims or defenses. In *Smith v. FracTech Services, LLC*, the court held, over the defendant's objection, that the plaintiffs' places of employment other than

Page 15 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

the defendant should be excluded as irrelevant and unfairly prejudicial. 2011 U.S. Dist. LEXIS 3165, *117-118 (E.D. Ark. Jan. 11, 2011). The same reasoning applies here. This lawsuit does not have anything to do with any of Plaintiff's experiences at places of employment other than with Defendants or Plaintiff's compensation after Plaintiff's employment with Defendants ended.

Additionally, this Request is overbroad and seeks information that is not relevant to the extent that it requests information beyond the scope of the time Plaintiff worked for Defendants.

**REQUEST FOR PRODUCTION NO. 18:** Any and all documents relating to any business, partnership, limited liability company, corporation, sole proprietorship, nonprofit, joint venture, or other entity you have been employed by, owned, served as an officer for, held a stake in, or performed work for in exchange for compensation at any time from June 1, 2019 through June 1, 2022, including but not limited to business logos, business cards and letterhead, documents filed with local, state, or federal governments, documentation of assets, business entity formation and dissolution documents, licenses, customer reviews, referrals and recommendations, offer letters, employment agreements or contracts, independent contractor arrangements, consulting agreements, bills, invoices, paychecks, paystubs, websites and social media accounts, advertising, business directory listings, insurance coverage, including but not limited to general liability and workers' compensation, receipts, settlement payments, statements of work, W2s, Form 1099s, IRS Schedule C, social security benefits, disability benefits, unemployment insurance benefits, workers' compensation benefits, employer identification numbers (EIN or FEIN), building and equipment leases, annual reports, bank accounts, business

Page 16 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

expenses, mileage logs, loans and other forms of financial assistance, and claims, charges, grievances, or complaints made by or against each such entity.

**RESPONSE NO. 18:** Objection. This Request is overbroad and seeks information that is not relevant to the extent that it requests information beyond the scope of the time Plaintiff worked for Defendants.

In regard to the time Plaintiff did work for Defendants, Plaintiff objects to this Response to the extent that it seeks information that goes beyond the scope allowed by Rule 26 and has no importance to resolving the issues in this case or establishing any claims or defenses. In *Smith v. FracTech Services, LLC*, the court held, over the defendant's objection, that the plaintiffs' places of employment other than the defendant should be excluded as irrelevant and unfairly prejudicial. 2011 U.S. Dist. LEXIS 3165, *117-118 (E.D. Ark. Jan. 11, 2011). The same reasoning applies here. This lawsuit does not have anything to do with any of Plaintiff's experiences at places of employment other than with Defendants or Plaintiff's compensation after Plaintiff's employment with Defendants ended.

**REQUEST FOR PRODUCTION NO. 19:** Any and all documents in which you characterize your working relationship with 316 Towing and/or Lisovskiy, including but not limited to loan and credit applications, resumes, online profiles, and leases.

**RESPONSE NO. 19:** Objection. Plaintiff objects to this Request to the extent that it is axiomatic under the FLSA that mere titles and treatment are insufficient to determine a worker's employee status, but rather courts must examine the economic reality of the worker's relationship to the business. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471

Page 17 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

U.S. 290, 301 (1985) (citing *Goldberg v. Whitaker House Co-op, Inc.,* 366 U.S. 28, 33 (1961)).

**REQUEST FOR PRODUCTION NO. 20:** Any and all emails, letters, facsimiles, text messages, social media messages, direct messages, or other communications between you and (i) 316 Towing, (ii) Lisovskiy, or (iii) any other independent contractor or employee of 316 Towing.

**RESPONSE NO. 20:** Objection. This Request is overbroad and seeks information that is not relevant and that can only be used for a fishing expedition against Plaintiff to the extent that it seeks all emails, letters, facsimiles, text messages, social media messages, direct messages or other communications between Plaintiff and 316 Towing, Lisovskiy or any other independent contractor or employee of 316 Towing, regardless of whether the communications themselves relate to the allegations in this case. The information requested is not proportional to the needs of this case because any communications between Plaintiff and 316 Towing, Lisovskiy or any other independent contractor or employee of 316 Towing are of no importance to resolving the issues in this case or establishing any claims or defences unless they relate to the allegations in the Complaint.

An earlier version of Rule 26 contained language referring to "information reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (amended 2015). This language was not intended to define the scope of discovery, but because it was incorrectly used in that way, it was removed in 2015. Fed. R. Civ. P. 26 advisory committee's notes note the 2015 amendment. This change was "intended to send a signal to district judges to become more hands-on in the process of

Page 18 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

regulating—mostly limiting—discovery on relevance grounds alone." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 467 (D.N.M. 2018).

While some older cases may reference or quote the old rule, such cases cannot be persuasive where their reasoning is based on deleted language. *ArcelorMittal Ind. Harbor LLC v. Amex Nooter, LLC*, No. 2:15-CV-195-PRC, 2016 U.S. Dist. LEXIS 89117 (N.D. Ind. July 8, 2016). The standard now requires a party to show that the information sought is relevant to a claim or defense, and the old "reasonably calculated" language should be omitted entirely. *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 U.S. Dist. LEXIS 860 (N.D. Okla. Jan. 3, 2018). While the scope of discovery remains broad after the 2015 amendments, it does not authorize "fishing expeditions" where a party seeks discovery in hopes of finding evidence that it has no reason to believe exists. *Id.*

Regarding communications in Plaintiff's possession between Plaintiff and 316 Towing, Lisovskiy or any other independent contractor or employee of 316 Towing, Plaintiff has no responsive documents.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** Please admit that you never sought input from Lisovskiy, personally, in accordance with your assertion in Hyde Decl. ¶ 7, August 26, 2022.

**ADMISSION NO. 1:** Deny. Denied to the extent that Plaintiff had meetings with Defendant Lisovskiy about issues with the business, as well as any problems he was having with Manager Eli.

Page 19 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**REQUEST FOR ADMISSION NO. 2:** Please admit that you have never been an employee of 316 Towing.

**ADMISSION NO. 2:** Deny. Denied to the extent that Plaintiff followed the usual path of employer-employee relationships; Defendants treated them as independent contractors only for tax purposes and for Defendants' convenience. Plaintiff considered himself an employee and considered it a employer-employee relationship.

**REQUEST FOR ADMISSION NO. 3:** Please admit that you have never been an employee of Lisovskiy.

**ADMISSION NO. 3:** Deny. Denied to the extent that Plaintiff considered Defendant Lisovskiy his boss. Plaintiff would ask Defendant Lisovskiy for input when his duties were not rote or routine. Plaintiff did not financially invest in Defendants' business, share profits or losses in Defendants' business or set prices for services. Defendants' controlled Plaintiff's schedule and compensation for his hours worked.

**REQUEST FOR ADMISSION NO. 4:** Please admit that you have never been an independent contractor for Lisovskiy.

**ADMISSION NO. 4:** Admit.

**REQUEST FOR ADMISSION NO. 5:** Please admit that you were never required to perform work for 316 Towing outside of the State of Georgia.

**ADMISSION NO. 5:** Deny. Denied to the extent that Plaintiff was required to go to South Carolina a couple of times to pick up cars at a BMW dealership to bring them back to Georgia.

**REQUEST FOR ADMISSION NO. 6:** Please admit that the time you spent answering calls, driving to and from customers, and performing roadside services for 316

Page 20 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

Towing's customer was captured by a timekeeping software called "Towbook."

**ADMISSION NO. 6:** Admit in part, deny in part. Admitted in part to the extent that time Plainitiff spent answering calls, driving to and from customers, and performing roadside services for 316 Towing was captured in Towbook, denied in part to the extent that not all time spent answering calls, driving to and from customers, and performing roadside services for 316 Towing was captured in Towbook. If a dispatcher input a job incorrectly, Plaintiff would receive the job through his personal cell phone and would not be recorded in Towbook.

**REQUEST FOR ADMISSION NO. 7:** Please admit that 316 Towing's records, which include data from Towbook, accurately capture all work that you performed for 316 Towing.

**ADMISSION NO. 7:** Deny. Denied to the extent Towbook did not record all work accurately, as some work was not sent through Towbook.

**REQUEST FOR ADMISSION NO. 8:** Please admit that you never performed more than 40 hours of work for 316 Towing in any given week between 2019 and 2022.

**ADMISSION NO. 8:** Deny. Denied to the extent that Plaintiff worked 60-80 hours per week.

**REQUEST FOR ADMISSION NO. 9:** Please admit that you received additional compensation from 316 Towing for worked performed outside of your scheduled on-call period.

**ADMISSION NO. 9:** Deny. Denied to the extent that Plaintiff was only paid his salary.

**REQUEST FOR ADMISSION NO. 10:** Please admit that you have been

**Page 21 of 28**
**Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.**
**U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS**
**Plaintiff Dustin Hyde's Answers and Responses to Defendants'**
**First Set of Interrogatories and Requests for Production**

adequately compensated for all hours of work that you performed for 316 Towing.

**ADMISSION NO. 10:** Deny. Denied to the extent that Plaintiff was never paid overtime for hours worked over 40 in a week, as well as extra hours he never received any type of payment for.

**REQUEST FOR ADMISSION NO. 11:** Please admit that you have received at least $7.25 per hour in compensation for all hours of work performed for 316 Towing.

**ADMISSION NO. 11:** Deny. Denied to the extent that Plaintiff has not been able to view Defendants' time and pay records to determine the amount per hour in compensation for all hours of work performed for 316 Towing.

**REQUEST FOR ADMISSION NO. 12:** Please admit that 316 Towing did not supervise the manner in which you performed work.

**ADMISSION NO. 12:** Deny. Denied to the extent that Plaintiff's work was monitored by Towbook and would receive messages if there was an issue or delay with a tow job he was performing.

**REQUEST FOR ADMISSION NO. 13:** Please admit that 316 Towing did not direct the manner in which you performed work.

**ADMISSION NO. 13:** Deny. Denied to the extent that Plaintiff was told which job they had to take and where to go for each job. If Plaintiff refused a job, then Plaintiff would be disciplined. If Plaintiff had an excuse to terminate a job, Manager Eli would often refuse to cancel it.

**REQUEST FOR ADMISSION NO. 14:** Please admit that 316 Towing did not control the manner in which you performed work.

Page 22 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**ADMISSION NO. 14:** Deny. Denied to the extent that Plaintiff's schedule and the jobs Plaintiff received was controlled by 316 Towing. Plaintiff sought input if his duties were not rote or routine. Plaintiff's location and speed was tracked, and he would be contacted if the job was off schedule. 316 Towing controlled prices that customers were charged for jobs completed by Plaintiff. Plaintiff was also required to wear a company uniform.

**REQUEST FOR ADMISSION NO. 15:** Please admit that you completed and signed 316 Towing's "Pre-Contract Questionnaire."

**ADMISSION NO. 15:** Deny. Denied to the extent that Plaintiff does not remember seeing this document and only remembers filling out an application.

**REQUEST FOR ADMISSION NO. 16:** Please admit that you completed, initialed, and signed 316 Towing's "Independent Contractor and Lease Agreement."

**ADMISSION NO. 16:** Deny. Denied to the extent that Plaintiff doesn't remember signing this document to best of his knowledge.

**REQUEST FOR ADMISSION NO. 17:** Please admit that you agreed in writing that any dispute arising from the terms of the Independent Contractor and Lease Agreement would be submitted to mediation followed by binding arbitration.

**ADMISSION NO. 17:** Deny. Denied to the extent that Plaintiff does not recall signing a document that contained this language.

**REQUEST FOR ADMISSION NO. 18:** Please admit that you never signed any contract or other agreement with Lisovskiy, personally, including but not limited to any compensation or employment agreement or contract for your tow truck services.

Page 23 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**ADMISSION NO. 18:** Deny. Denied to the extent that Plaintiff did sign an initial employment application.

**REQUEST FOR ADMISSION NO. 19:** Please admit that you never worked as a tow truck driver for Lisovskiy, personally.

**ADMISSION NO. 19:** Deny. Denied to the extent that Plaintiff did perform jobs for Defendant Lisovskiy, personally. This included hauling a large aluminum pipe to Lisovskiy's personal residence in order to repair the driveway, as well as towing Lisovskiy's car and his friends' cars multiple times without compensation. These jobs were also not sent through Towbook.

**REQUEST FOR ADMISSION NO. 20:** Please admit that you were never paid by Lisovskiy, personally.

**ADMISSION NO. 20:** Admit in part and deny in part. Admitted in part to the extent that Defendant Lisovskiy never used personal checks to pay Plaintiff, denied in part to the extent that all checks Plaintiff received from 316 Towing had Defendant Lisovskiy's signature on them.

**REQUEST FOR ADMISSION NO. 21:** Please admit that Lisovskiy, personally, neither hired nor fired you.

**ADMISSION NO. 21:** Deny. Denied to the extent that Plaintiff met with Eli and Defendant Lisovskiy when he first inquired about the job. Defendant Lisovskiy and Eli, then discussed whether Plaintiff would be hired separately to which Defendant Lisovskiy said yes. Eli told Plaintiff he was hired.

Page 24 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**REQUEST FOR ADMISSION NO. 22:** Please admit that Lisovskiy, personally, neither supervised nor controlled your work schedule, duties, protocols, applications, or assignments with 316 Towing.

**ADMISSION NO. 22:** Deny. Denied to the extent that Plaintiff followed the business policies and rules set forth by Defendant Lisovskiy and if any issues arose regarding the drivers, he would seek input from Lisovskiy on what to do.

**REQUEST FOR ADMISSION NO. 23:** Please admit that Lisovskiy, personally, never maintained your payroll records.

**ADMISSION NO. 23:** Plaintiff has insufficient information and knowledge regarding whether Defendant Lisovskiy personally maintained Plaintiff's payroll records, therefore deny.

**REQUEST FOR ADMISSION NO. 24:** Please admit that, during the time that you were scheduled to be on-call, you were not required to report to an office.

**ADMISSION NO. 24:** Deny. Denied to the extent that Plaintiff would sometimes be required to report to the office for a meeting with Eli or other job duties taking place in the main building for 316 Towing.

**REQUEST FOR ADMISSION NO. 25:** Please admit that during the time that you were scheduled to be on-call, you would spend at least part of your on-call period at home or engaged in personal activities.

**ADMISSION NO. 25:** Admit. Admitted to the extent that on some days Plaintiff did spend some time at home waiting for jobs during the time he was scheduled to be on-call, but spent most of his time waiting in the truck.

Page 25 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**REQUEST FOR ADMISSION NO. 26:** Please admit that during at least part of the time you were scheduled to be on-call, you would perform work for another company or individual from a computer.

**ADMISSION NO. 26:** Deny. Denied to the extent that Plaintiff was not working for another company or individual.

**REQUEST FOR ADMISSION NO. 27:** Please admit that during at least part of the time you were scheduled to be on-call, you would attend to personal responsibilities and errands.

**ADMISSION NO. 27:** Admit. Admitted to the extent that on occasion Plaintiff did spend some time attending to personal responsibilities and errands while he was scheduled to be on-call.

**REQUEST FOR ADMISSION NO. 28:** Please admit that you frequently rejected calls from potential clients during the time that you were scheduled to be on-call.

**ADMISSION NO. 28:** Deny. Denied to the extent that Plaintiff did not frequently reject phone calls from potential clients. Plaintiff only rejected a few phone calls due to unsafe situations or the possibility of having the truck become stuck during a job.

**REQUEST FOR ADMISSION NO. 29:** Please admit that 316 Towing never disciplined or threatened to terminate you for rejecting a request from a potential customer.

**ADMISSION NO. 29:** Deny. Denied to the extent that Plaintiff was threatened with having his pay reduced if he rejected a request from a potential customer.

Page 26 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

**REQUEST FOR ADMISSION NO. 30:** Please admit that you never raised objections to 316 Towing that the compensation you received was inadequate for the amount of work you performed.

**ADMISSION NO. 30:** Deny. Denied to the extent that Plaintiff often complained about his compensation to Defendant Lisovskiy, which caused him to receive a raise at certain times.

**REQUEST FOR ADMISSION NO. 31:** Please admit that you never raised objections to 316 Towing concerning your classification as an independent contractor.

**ADMISSION NO. 31:** Admit.

Respectfully submitted,

**DUSTIN HYDE, Individually
and on Behalf of All Others
Similarly Situated, PLAINTIFF**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

Page 27 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

## CERTIFICATE OF SERVICE

I, Josh Sanford, do hereby certify that a true and correct copy of the foregoing was

served via email on January 17, 2023, to the attorneys listed below:

Jeremy R. Handschuh, Esq.
Amanda I. Elliott, Esq.
MITCHELL-HANDSCHUH LAW GROUP
3390 Peachtree Road, NE, Suite 520
Atlanta, Georgia 30326
Telephone: (404) 262-9488
Facsimile: (404) 231-3774
jeremy@m-hlawgroup.com
amanda@m-hlawgroup.com

                                        */s/ Josh Sanford*
                                        **Josh Sanford**

Page 28 of 28
Dustin Hyde, et al. v. 316 Towing & Road Service, Inc., et al.
U.S.D.C. (N.D. Ga.) No. 2:22-cv-103-RWS
Plaintiff Dustin Hyde's Answers and Responses to Defendants'
First Set of Interrogatories and Requests for Production

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

**DUSTIN HYDE, Individually and on**                                   **PLAINTIFF**
**Behalf of All Others Similarly Situated**

vs.                                            No. 2:22-cv-103-RWS

**316 TOWING & ROAD SERVICE, INC.,**                                  **DEFENDANTS**
**and MAKSIM LISOVSKIY**

## <u>VERIFICATION</u>

I, Dustin Hyde, verify under penalty of perjury that the factual information contained

in the foregoing Answers to Defendants' First Set of Interrogatories is true and correct to

the best of my knowledge, information and belief.

Executed on January 16, 2023.

**DUSTIN HYDE**