## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

DUSTIN HYDE, individually and on )
Behalf of All Other Similarly Situated )
                             )
Plaintiff, )
                             )
    v. )      Civil Action File No: 2:22-cv-103-RWS
                             )
316 TOWING & ROAD SERVICE, )     **JURY TRIAL DEMANDED**
INC., and MAKSIM LISOVSKIY )
                             )
Defendants. )

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION
## TO ARBITRATE AND TO STAY LITIGATION

COME NOW Defendants 316 Towing & Road Service, Inc. ("316 Towing")
and Maksim Lisovskiy ("Lisovskiy") (collectively, "Defendants"), by and through
their counsel of record, and file this Brief in Support of Defendants' Motion to
Arbitrate and to Stay Litigation, stating as follows:

### INTRODUCTION

Plaintiff Dustin Hyde ("Plaintiff"), individually and on behalf of all others
similarly situated, alleges that Defendants violated the overtime provisions of the
Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (the "FLSA").  Prior to being
engaged by 316 Towing as independent contractors to provide tow truck services,
each plaintiff executed an Independent Contractor and Lease Agreement (the

"Agreement") with 316 Towing, in which he agreed, in pertinent part, to submit "any dispute concerning the terms of [the] Agreement" to mediation followed by binding arbitration. Plaintiffs,[1] however, filed their FLSA claims against Defendants in this Court in clear conflict with the terms of the Agreement and the Parties' intent to mediate and, ultimately, arbitrate any such claims.

Despite Defendants' early efforts to secure the consent for the enforcement of the Agreement's arbitration provision, Plaintiffs instead denied signing the Agreement both informally, through counsel, and during written discovery, constraining Defendants to preserve both resources and the issue of and right to arbitrate under the Agreement. It was not until new facts arose during Plaintiffs' relatively recent depositions in late September 2023 that this matter was rendered arbitrable for the first time during this litigation. On April 15, 2024, the Court granted Defendants leave to file this Motion.

Defendants hereby respectfully request the Court compel the mediation and arbitration of Plaintiffs' claims against Defendants as: (1) the Parties entered into an enforceable Agreement, which contains an arbitration provision enforceable under either the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA") or Georgia law; and

---

[1] Following Plaintiff's Motion for Conditional Certification (Dkt. 16) with response (Dkt. 20) and reply (Dkt. 22) briefing, and the Court's Order granting the same (Dkt. 26), by April 14, 2023, Plaintiff filed Consents to Join Collective Action for three opt-in plaintiffs (Dkt. 12, 35, 36) (collectively, "Plaintiffs").

(2) Plaintiffs' claims fall within the broad scope of the Agreement's arbitration provision, which is an issue for the arbitrator to decide.  To the extent necessary, Defendants also show the Court that they have not waived the right to arbitrate under the Agreement where: (i) Defendants gave early, fair notice of, and affirmatively preserved the issue of, right, and intent to, ultimately arbitrate Plaintiffs' claims; (ii) Defendants' participation in discovery is not conclusive of a waiver to arbitrate; (iii) Defendants never litigated the merits of arbitrable issues; and (iv) Defendants are timely moving to compel arbitration following recent deposition testimony that made Plaintiffs' claims arbitrable for the first time.

Finally, because Plaintiffs' claims against both Defendants are based on the exact same intertwined facts and allegations and are inherently inseparable, despite being a non-signatory to the Agreement, equitable estoppel justifies enforcement of the Agreement's arbitration provision as to Plaintiffs' claims against Lisovskiy. Accordingly, and for the reasons set forth below, Defendants respectfully request that this Court grant this Motion and (i) order this matter to mediation followed by binding arbitration of Plaintiffs' claims against Defendants, and (ii) upon such order, pursuant to 9 U.S.C. § 3 and O.C.G.A § 9-9-6(a), stay this action pending completion of such arbitration and any further motion of the Parties to lift the stay.

## <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

Prior to being engaged by 316 Towing as independent contractors to provide

tow truck services, each plaintiff executed an Agreement, which, in pertinent part, states as follows:

> WHEREAS, the parties desire to enter into an independent contractor relationship and lease agreement in accordance with applicable law; . . .
>
> 1. Compliance with Federal Statutes and Regulations. The parties acknowledge and agree that this contract is governed by Federal Regulation, to wit: 49 C.F.R. 376 and it is the intent of the parties that this Agreement fully comply with such regulations without creating indicia of control which would otherwise frustrate the intent of the parties to create an independent contractor relationship. See 49 C.F.R. 376.12(c)(4). . . .
>
> D. Independent Contractor Status. It is the intent of the parties for Contractor [plaintiff] to retain the status of an independent contractor in business for federal and state law purposes. Carrier's control over Contractor shall be limited to that control required by federal and state statutes and regulations governing the conduct of motor carriers. . . .
>
> 9. Alternative Dispute Resolution. The parties agree that any dispute concerning the terms of this Agreement will be submitted to mediation followed by binding arbitration before a tribunal convened under the rules of the American Arbitration Association at Atlanta, GA.

(Dkt. 60-1, at 280, 286, 289; 60-3, at 204, 210, 213; 60-4, at 243, 249, 252; 60-5, at 195, 201, 204.)

## The Pleadings

On June 1, 2022, Plaintiff filed his Original Complaint–Collective Action (Dkt. 1), asserting (i) an individual claim for damages and declaratory relief from alleged FLSA violations and (ii) a collective action claim for the same on behalf of all similarly situated employees. Before filing their Answer to Plaintiff's Complaint,

4

Defendants' counsel discussed arbitration with Plaintiffs' counsel, who refused to acknowledge over the telephone that Plaintiff Hyde signed the Agreement.[2]  (*See* Dkt. 65, at 12.)  On July 12, 2022, Defendants filed their Answer and Affirmative Defenses, asserting and preserving an affirmative defense that "Plaintiff's claims are subject to a mandatory arbitration provision found within [the Agreement] . . . ." (Dkt. 5, at 3.)  Defendants have similarly preserved the issue of and right to arbitrate under the Agreement throughout this litigation.  (*See, e.g.*, Dkt. 14, at 3; 19, at 3; 20, at 12; 44, at 2; 59-1, at 16-17; 65, at 12-13.)

### Discovery and Plaintiffs' Admissions

The Parties have exchanged written discovery on issues of arbitration.  Each plaintiff denied Defendants' written requests that he admit he agreed in writing "that any dispute arising from the terms of the [Agreement] would be submitted to mediation followed by binding arbitration."  (Dkt. 60-2, at 24, No. 17; 60-4, at 237, No. 17; 60-3, at 200, No. 16; 60-5, at 190, No. 16.)  But during each plaintiff's deposition in late September 2023, however, Defendants learned new and clear admissions of fact that would make this matter arbitrable for the first time on this record.[3]  Specifically, all but one plaintiff suddenly and plainly admitted to signing

---

[2] Plaintiffs' counsel similarly refused to acknowledge that the three opt-in plaintiffs signed the Agreement.

[3] Defendants relatively recently received the original deposition transcripts of Plaintiffs Hyde, Johnson, and Brown in this action on or about November 10, 2023 and the original transcript of Plaintiff Brindley on or about December 4, 2023.

the Agreement, including the mandatory arbitration provision contained therein. (Dkt. 60-3 ("Brown Dep.") 45:11-12; Dkt. 60-4 ("Johnson Dep.") 24:8-11; Dkt. 60-5 ("Brindley Dep.") 38:3-7.)  Plaintiff Hyde, however, was unable to confirm that he initialed each page of the Agreement but admitted he was not trying to deny that he did either – simply stating that he was "not sure" if he initialed the Agreement, as he recalled initialing "a lot of papers" before providing his independent contractor tow truck services for 316 Towing.  (Dkt. 60-1 ("Hyde Dep.") 32:24-25, 34:1-6.)

### The Procedural Motions: Decertification and Arbitration

Following these depositions, Defendants filed their procedural Motion for Decertification of Collective Action on November 20, 2023 (Dkt. 59) to confirm whether the opt-in plaintiffs were properly joined and whether issues of arbitration would need to be addressed collectively or within individual actions.  Aside from a response (Dkt. 63) and a reply (Dkt. 65), no litigation occurred while the Motion for Decertification was pending.  On March 20, 2024, the Court entered its Order denying Defendants' Motion for Decertification, finding that the issue of arbitration must be addressed collectively.  (Dkt. 67.)

Just eight (8) days later, Defendants sought leave to file this Motion.  (Dkt. 68.)  "[I]n the interest of judicial efficiency, and given Defendants' prompt action in seeking leave . . . the Court [found] that good cause exists to allow Defendants leave to file" this Motion.  (Dkt. 71.)  The Court further granted Defendants' Motion to

Amend the Scheduling Order (Dkt. 68), extending the Parties' summary judgment deadline until after the Court rules on this Motion.  (Dkt. 71.)

## LEGAL ARGUMENT

## I.   THE COURT SHOULD COMPEL ARBITRATION UNDER THE AGREEMENTS.

The "validity of an arbitration agreement is generally governed by the [FAA]."  Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005).  The 11th Circuit has held that the FAA requires a court to stay (or dismiss) a lawsuit and to compel arbitration where: (1) an enforceable agreement to arbitrate exists under state law and (2) the dispute falls within the scope of the agreement. Lambert v. Austin Ind., 544 F.3d 1192 (11th Cir. 2008); see also Leslie v. Barclays Bank Delaware, No. 117CV02514ELRRGV, 2017 WL 8220505, at *3-4 (N.D. Ga. Oct. 13, 2017), report and recommendation adopted, No. 1:17-CV-02514-ELR, 2018 WL 1320082 (N.D. Ga. Jan. 3, 2018) (holding that the FAA creates a strong policy and presumption in favor of enforcing agreements to arbitrate, and places a burden on the party resisting arbitration to "unequivocally deny that an agreement to arbitrate was reached and [ ] offer some evidence to substantiate the denial. . . .") (citations omitted).  Here, both prongs mandate that this Court compel arbitration and stay this litigation pending the arbitrator's decision.[4]

---

[4] To the extent necessary, Defendants also show, below, that they have not waived the right to arbitrate under the Agreements.

**a.      The Parties Entered into Enforceable Agreements to Arbitrate**

Courts generally apply "ordinary state-law principles governing contract formation" in deciding whether an agreement to arbitrate exists.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  Under Georgia contract law, a "definite offer and complete acceptance, for consideration, create a binding contract."  Moreno v. Strickland, 255 Ga. App. 850, 852 (2002).  "[M]utual promises and obligations of the parties constitute[] sufficient consideration for the contract." Lambert, 544 F.3d at 1195 (citation omitted).

**i.      The Agreements Are Enforceable under Georgia Law.**

Each element exists to find that Plaintiffs and 316 Towing entered into enforceable Agreements.  Here, prior to beginning the tow truck services, 316 Towing offered to engage Plaintiffs as independent contractor drivers pursuant to the terms of the Agreement in exchange for the mutual promises therein, including but not limited to the independent contractor tow truck services to be performed by Plaintiffs for 316 Towing, 316 Towing's payment to Plaintiffs for such services, and the Parties' mutual agreement to arbitrate, and each plaintiff executed an Agreement. ([Dkt. 60-1, at 280-95; 60-3, at 204-17; 60-4, at 243-52; 60-5, at 195-209.)  *See* Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359 (11th Cir. 2005) (recognizing reciprocal promises to arbitrate and be bound by arbitration to constitute sufficient bargained-for consideration supporting a contract).

Three out of four plaintiffs have plainly admitted to signing the Agreement, including the mandatory arbitration provision contained therein. (Brown Dep. 45:11-12; Johnson Dep. 24:8-11; Brindley Dep. 38:3-7.) *See* McBride v. GameStop, Inc., No. 1:10–CV–2376–RWS, 2011 WL 578821 (N.D. Ga. Feb. 8, 2011) (stating that "[t]here are few rules of law more fundamental than that which requires a party to read what he signs and to be bound thereby"). By signing the Agreements, Plaintiffs Brown, Johnson, and Brindley accepted 316 Towing's offers to engage his services pursuant to the terms of the Agreement in exchange for valuable consideration, including the mutual exchange of promises therein. Accordingly, each of these Agreements are enforceable under Georgia law.

Plaintiff Hyde, however, was simply "not sure" if he initialed each page of the Agreement, as he recalled initialing "a lot of papers" before providing tow truck services for 316 Towing. (Hyde Dep. at 32:24-25, 34:1-6.) But Georgia law has long recognized that acceptance and assent "to the terms of a contract may be given other than by signatures . . . . If one of the parties has not signed, his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound." Burson v. Milton Hall Surgical Assocs., LLC, 343 Ga. App. 159 (2017) (citation omitted). Thus, by initialing the Agreement, and subsequently performing the independent contractor tow truck services in full pursuant to the Agreement— and without objection to the Agreement until this suit—Plaintiff Hyde accepted 316

Towing's offers to engage his services pursuant to the terms of the Agreement in exchange for valuable consideration including the mutual exchange of promises therein.  Accordingly, the Agreement between Plaintiff Hyde and 316 Towing is also enforceable under Georgia law.

  ii. <u>The Arbitration Provision within the Agreements Is Enforceable.</u>

  The Agreement stipulates that it is "made pursuant to the requirements of federal law and otherwise subject to the laws of the State of Georgia."  (Dkt. 60-1, at 289; 60-3, at 213; 60-4, at 252; 60-5, at 204.)  Here, the arbitration provision is enforceable under either the FAA or Georgia law.

  *1. The Arbitration Provision Is Enforceable under the FAA.*

  Under Section 2 of the FAA, an agreement to arbitrate is valid, irrevocable, and enforceable when (1) that agreement is in writing and (2) it evidences a transaction that involves commerce.  9 U.S.C. § 2.  Here, the Agreements are in writing, so the first element is satisfied.  (*See* Dkt. 60-1, at 280-95; 60-3, at 204-17; 60-4, at 243-52; 60-5, at 195-209.)  Next, the Agreements plainly "involv[e] commerce" within the broad meaning employed by Section 2 of the FAA.[5]  *See* <u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, 56 (2003) (interpreting "involving

---

[5] The Court need not determine whether the Parties were, in fact, engaged in interstate commerce, as either the FAA or Georgia law, as applicable, mandate enforcement of the Parties' agreement to arbitrate.  Defendants hereby reserve the right to advance alternative merits-based arguments regarding the issue of interstate commerce at the apt time before the Court, or more appropriately, the arbitrator.

commerce" as the functional equivalent of "affecting commerce," signaling the broadest permissible exercise of Congress' Commerce Clause power (citation omitted)).  Accordingly, the arbitration provision is enforceable under the FAA.

> 2.   *Alternatively, the Arbitration Provision Is Enforceable under Georgia Law.*

As an alternative to enforcement under the FAA, the arbitration provision is enforceable under Georgia law.  Georgia law, like federal law, has established a strong, clear public policy in favor of enforcing agreements to arbitrate.  *See* Helms v. Franklin Builders, Inc., 305 Ga. App. 863, 865 (2010).  The Georgia Arbitration Code provides for the enforcement of arbitration provisions in "all disputes in which the parties thereto have agreed in writing to arbitrate."  O.C.G.A § 9-9-2(c).  Similar to the FAA, under Georgia law, once a court has found that a valid agreement to arbitrate exists, the court shall compel the parties to arbitrate.  O.C.G.A § 9-9-6.  Here, as established above, the Agreements containing the Parties' agreement to arbitrate "any dispute concerning the terms of this Agreement" are in writing and enforceable under Georgia law.  Accordingly, a valid and enforceable agreement to arbitrate exists between the Parties under either FAA or Georgia law, satisfying the first prong of the 11th Circuit's test in Lambert.

**b.   Plaintiffs' Claims Fall within the Scope of the Agreement's Arbitration Provision.**

Plaintiffs' claims fall within the scope of the arbitration provision and are

therefore subject to arbitration, satisfying the second prong of the <u>Lambert</u> test.  To determine whether a claim falls within the scope of an arbitration provision, courts must determine whether the factual allegations "touch matters" governed by the parties' agreement.  *See* <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614 (1985).  In doing so, courts must give "due regard . . . to the federal policy favoring arbitration and [resolve] ambiguities as to the scope of the arbitration clause itself in favor of arbitration."  <u>Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 489 (1989); *see also* <u>Holyfield v. GGNSC Atlanta, LLC</u>, No. 1:08CV2669-RWS, 2009 WL 960689, at *2 (N.D. Ga. Apr. 8, 2009) ("doubts about arbitrability must be resolved in favor of arbitration.")).

### i.   The Question of Arbitrability Is for the Arbitrator.

As a threshold issue on this prong, however, the Parties agreed to submit any disputes concerning the terms of the Agreement to mediation "followed by binding arbitration before a tribunal convened under the rules of the American Arbitration Association" ("AAA") and, in incorporating the AAA rules by reference, the Parties clearly and unmistakably agreed to delegate arbitrability questions to an arbitrator.  *See* <u>JPay, Inc. v. Kobel</u>, 904 F.3d 923, 937 (11th Cir. 2018) (citations omitted) (summarizing 11th Circuit precedent that, by incorporating AAA rules into an agreement, parties "clearly and unmistakably evince an intent to delegate questions

of arbitrability.").[6]   As the arbitrator may find the Agreement covers all claims alleged in the Complaint, "the Court has 'no business weighing the merits' of any of those claims."  Nat'l Freight, Inc. v. Consol. Container Co., LP, 166 F. Supp. 3d 1320, 1325 (N.D. Ga. 2015) (citation omitted).  Accordingly, after finding that an enforceable agreement to arbitrate exists, this Court need not analyze Plaintiffs' claims further and must compel arbitration and stay this litigation pending the arbitrator's decision.

> ii.   Even If Not Delegated to an Arbitrator, Plaintiffs' Claims Fall within the Broad Scope of the Arbitration Provision.

To the extent the Court finds that the question of arbitrability has somehow not been delegated to the arbitrator, the Parties' arbitration provision nevertheless broadly encompasses Plaintiffs' claims by providing that the Parties "agree that *any dispute* concerning the terms of this Agreement will be submitted to mediation followed by binding arbitration . . . ." (Dkt. 60-1, at 289; 60-3, at 213; 60-4, at 252; 60-5, at 204 (emphasis added).)  *See* Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1221 (11th Cir. 2000) (construing arbitration provision with similarly inclusive language, "any dispute between them . . ." and holding that "the parties

---

[6] *See also* Am. Arbitration Ass'n, Commercial Arbitration Rules, Rule 7(a), https://www.adr.org/aaa/faces/?doc=ADRSTG_004130 (providing that an arbitrator has the "power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope*, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.") (emphasis added).

agreed to arbitrate any and all claims against each other, with no exceptions"); *see also* Paragon Hammond, Inc. v. Philadelphia Indem. Ins. Co., No. 1:05-CV-478-TCB, 2007 WL 9700877, at *2 (N.D. Ga. Feb. 6, 2007) (citation omitted) (holding that arbitration provisions covering "[a]ny and all disputes and controversies arising under or relating to this Agreement," are intended to be broad enough in scope to reach all disputes or claims asserted). Indeed, where an arbitration clause is broad, the presumption in favor of arbitrability applies with even greater force. *See* AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986).

Here, the Parties' broad arbitration provision reflects their clear intent for mediation followed by binding arbitration to serve as the sole forum for *any* dispute concerning the terms of the Agreement. The Agreement provides, in pertinent part, for the Parties' express "intent [ ] to create an independent contractor relationship" in accordance with applicable law and "to retain the status of an independent contractor in business for federal and state law purposes." (Dkt. 60-1, at 280, 286; 60-3, at 204, 210; 60-4, at 243, 249; 60-5, at 195, 201.) Plaintiffs' factual allegations and claims that they were not acting as independent contractors, but employees entitled to the protections afforded under the FLSA (Dkt. 1, ¶ 28), undoubtedly "touch matters" governed by the Agreement. [7] Thus, Plaintiffs' FLSA claims falls

---

[7] *See* Carter v. Doll House II, Inc., 69 F.Supp.3d 1351 (N.D.Ga. 2014), *aff'd in part*, *vacated in part on other grounds*, 608 Fed. Appx. 903 (11th Cir. 2015) (holding that

within the scope of the Agreement and are subject to arbitration.[8]  But even if any

doubts exist, those doubts should be resolved in favor of arbitration absent "forceful

evidence" to the contrary, which simply does not exist here.  *See* AT&T Techs., 475

U.S. at 650.  Accordingly, having fully satisfied the Lambert test, the Court must

compel arbitration and stay this litigation pending the arbitrator's decision.

### c.  Defendants Have Not Waived Their Right to Arbitrate under the Agreement.

The burden of proving whether a party waived its right to arbitrate rests with

the party seeking waiver.  SGM Magnetics Corporation v. Valerio, No. 1:16-CV-

1656-MLB, 2023 WL 5167361, at *2 (N.D. Ga. July 17, 2023) (citations omitted).

"There is no set rule as to what constitutes waiver of an arbitration agreement;

[instead,] courts review whether a waiver has occurred on a case-by-case basis."  *Id.*

(citing Warrington v. Rocky Patel Premium Cigars, Inc., No. 22-12575, 2023 WL

1818920, at *2 (11th Cir. Feb. 8, 2023) (internal citation omitted)).  A party has

waived its right to arbitrate "if, under the totality of the circumstances, the party has

---

FLSA misclassification claims arising under an independent contractor agreement
were arbitrable where the provision stated that "any dispute regarding this
contract/agreement shall be submitted to arbitration . . . .").

[8] *See* S. Mills, Inc. v. Nunes, No. 1:10-CV-03340-RWS, 2011 WL 2358652, at *5
(N.D. Ga. June 9, 2011) (citing United Steelworkers of America v. Fort Pitt Steel
Casting, 484 F.Supp. 1228, 1231 (W.D.Pa.1980) ("Once a court finds that . . . the
parties are subject to an agreement to arbitrate, and that agreement extends to 'any
difference' between them, [the court] is required to consign the case to arbitration."
(internal citations omitted))).

acted inconsistently with the arbitration right" to a point inconsistent with an intent to arbitrate.[9]  SGM Magnetics, 2023 WL 5167361, at *2 (citing S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990)); see also Fed. Nat'l Mortgage Ass'n v. Prowant, 209 F. Supp. 3d 1295, 1307 (N.D. Ga. 2016) (same). To the extent necessary,[10] Defendants have not substantially participated in this litigation inconsistent with their intent and right to arbitrate.

i.   Defendants Gave Early, Fair Notice of, and Affirmatively Preserved the Issue of, Right, and Intent to Arbitrate.

Courts have considered whether a defendant gave "fair notice" of its intent to exercise its arbitration rights at an early stage of litigation to be a *primary factor* in determining whether the defendant acted inconsistently with the right to arbitrate. See Warrington, 2023 WL 1818920, at *2 (citing Gutierrez v. Wells Fargo Bank, NA, 889 F.3d 1230, 1237 (11th Cir. 2018) (explaining that, "[i]f the court and the opposing party have such notice at an early stage in litigation, they can manage the litigation with this contingency in mind.").  A defendant's fair and early notice of

---

[9] The Supreme Court has likely abrogated the *prejudice* prong of the 11th Circuit's former two-part test to determine whether a party waived its right to arbitrate.  See Morgan v. Sundance, Inc., 596 U.S. 411, 419 (2022); see also Amargos v. Verified Nutrition, LLC, 653 F. Supp. 3d 1269, 1275 (S.D. Fla. Jan. 31, 2023) (recognizing that "the Supreme Court has specifically abrogated the second part of the Eleventh Circuit's test").

[10] On April 8, 2024, Plaintiffs filed their Response to Defendants' Motion for Leave to File a Motion to Arbitrate, asserting premature arguments that Defendants "have waived their right to pursue arbitration."  (Dkt. 69, at 9-12.)  Defendants properly address these arguments here.

their intent to demand arbitration favors a finding against waiver. *See, e.g.*, Bryant v. Toppers International, Inc., No. 3:20-CV-61 (CDL), 2021 WL 299253, at*2-3 (M.D. Ga. Jan. 28, 2021) (finding defendants did not act inconsistent with the right to arbitrate where, within the answer and "[s]everal times, [d]efendants gave [plaintiff] notice of their intent to demand arbitration"); Pope v. Dillard's Inc., No. 1:14-CV-1793-AT, 2014 WL 12323688, at *4-6 (N.D. Ga. Nov. 26, 2014) (finding defendant did not act inconsistent with the right to arbitrate where, in "all but two of its court filings, [defendant] expressly and affirmatively asserted its right and intent to arbitrate [p]laintiff's asserted claims."); *cf.* Jetaire Aerospace, LLC v. AerSale, Inc., No. 1:16-CV-2970-LMM, 2017 WL 11838226, at *5-7 (N.D. Ga. June 19, 2017) (finding acts inconsistent with the right to arbitrate where defendants *never* indicated an intent to arbitrate prior to moving to compel arbitration).

Here, Defendants have clearly and consistently preserved the issue of and right to arbitrate Plaintiffs' claims under the Agreement—putting Plaintiffs on fair notice of the same.  Indeed, prior to filing their Answer to Plaintiff's Complaint, Defendants' counsel advised Plaintiffs' counsel of Defendants' intent and desire to arbitrate, which was immediately frustrated by Plaintiffs' counsel's refusal to acknowledge over the telephone that Plaintiff Hyde signed the Agreement. (*See* Dkt. 65, at 12.)  Such refusal extended to the three opt-in plaintiffs and all Plaintiffs again denied signing the Agreement during written discovery.  (Dkt. 60-2, at 24, No. 17;

60-4, at 237, No. 17; 60-3, at 200, No. 16; 60-5, at 190, No. 16.)  All the while, and plainly contrary to Plaintiffs' allegations that "Defendants have spent 22 months litigating this case as if they had no plans of pursuing arbitration" or that "Defendants only ever raised arbitration as a defense to certification rather than as a defense to Plaintiffs' claims" (Dkt. 69, at 10), Defendants consistently asserted and preserved the position that "Plaintiff's claims are subject to a mandatory arbitration provision found within [the Agreement] . . . ." (Dkt. 5, at 3; *see also, e.g.*, Dkt. 14, at 3; 19, at 3; 20, at 12; 44, at 2; 59-1, at 16-17; 65, at 12-13), giving Plaintiffs (i) early and fair notice of Defendants' intent to arbitrate any arbitrable claims and (ii) the opportunity to "manage this litigation with [the arbitration] contingency in mind." *See* Gutierrez, 889 F.3d at 1236.  Accordingly, Defendants have not waived their right to arbitrate.

ii. Defendants' Participation in Discovery Is Not Conclusive of a Waiver to Arbitrate.

Courts have held that a defendant's participation in the discovery process is not determinative of a waiver of the right to arbitrate, particularly where, as here, the opposing party 'evades' arbitration by failing to admit basic facts, creating a need for such discovery regarding the arbitrability of the case.  *See* Jordan v. Comcast Cable Communications Management, LLC., No. 1:14-CV-3622-WSD, 2016 WL 452145, at *7 (N.D. Ga. Feb. 4, 2016) (finding defendants did not act inconsistent with the right to arbitrate where plaintiff "evade[d] arbitration by hiding basic facts," forcing defendants to conduct discovery to ascertain whether the case should be

arbitrated, only for plaintiff to "then claim that [d]efendants waived their right to compel arbitration through the delay that [p]laintiff manufactured.").

Here, despite Defendants' repeated attempts both informally and during written discovery to ascertain whether Plaintiffs' claims were arbitrable, Plaintiffs needlessly, and without explanation despite repeated request, created a formation dispute in an attempt to evade arbitration by failing to disclose basic facts—then vehemently disputed signing the Agreements containing the arbitration provision—only to diverge entirely when Plaintiffs sat for their depositions in late September 2023. (*See* Dkt. 71 (citing Dkt. 60).)  Indeed, it was only after Plaintiffs forced Defendants to participate in months of discovery on issues of arbitration, including depositions, that Defendants were able to uncover such basic facts to ascertain whether this matter could be arbitrated.  As in Jordan, Plaintiffs cannot now claim that Defendants waived their right to arbitrate through Plaintiffs' manufactured delays.  Accordingly, Defendants have not waived their right to arbitrate.

iii.   Defendants Never Litigated the Merits of Arbitrable Issues.

Further, although Defendants participated in the early stages of litigation to ascertain whether Plaintiffs' claims were arbitrable, Defendants have never litigated, or sought to litigate, the merits of arbitrable issues.  In evaluating waiver, courts have held that "[a] party generally invokes the judicial process by initially pursuing litigation of claims then reversing course and attempting to arbitrate those claims."

360 Mortgage Grp., LLC v. Castle Mortgage Corp., No. 1:18-CV-00332-RP, 2019 WL 2224854, at *2 (W.D. Tex. May 23, 2019), *report and recommendation adopted*, No. 1:18-CV-332-RP, 2019 WL 3816281 (W.D. Tex. June 13, 2019) (citing Nicholas v. KBR, Inc., 565 F.3d 904, 907 (5th Cir. 2009)) (holding that defendant did not waive its right to seek arbitration where it had not requested that the court address any of the merits of the case, further explaining that, to constitute a waiver, a party must litigate an issue and then attempt to arbitrate that issue following an unfavorable decision by the court); *cf.* Jetaire Aerospace, 2017 WL 11838226, at *5-7 (finding acts inconsistent with the right to arbitrate where, among other things, plaintiff/counter-defendant responded and filed dispositive motions).

To date, Defendants have undisputedly never requested that the Court address any merits of this case and the Court has not otherwise done so.[11]   Indeed, Defendants have only ever sought to address certain threshold procedural issues—such as decertification and, now, arbitration—that could narrow the scope of the Parties, claims, and issues involved in this matter.  *See* Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC, No. 7:07-CV-077

---

[11] *See* Dkt. 71 (holding that, since receiving Plaintiffs' admissions to signing the Agreements containing the arbitration provision, Defendants have only filed their procedural Motion for Decertification of Collective Action (Dkt. 59) and, upon the Court's Order on the same (Dkt. 67), Defendants promptly requested leave to file this Motion (Dkt. 68), and further extending the deadline for the parties to file any summary judgment or other dispositive motions).

(HL), 2008 WL 2967230, at *5 (M.D. Ga. July 30, 2008) (citing Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc., 754 F.2d 457, 465 (2d Cir. 1985)) (finding no waiver of arbitration rights where the defendant filed a motion to compel arbitration concurrently with a dismissal motion, explaining that, "by eliminating some of the claims as a matter of law[,] the role of the arbitrator might be made more simple, because the arbitrator would then be able to concentrate or focus solely on claims that have facial merit.").  Similarly, Defendants have motioned the Court on multiple occasions to purposefully defer the filing deadlines for any dispositive motions until after the Court could determine these threshold procedural issues (*see, e.g.*, Dkt. 55, 68)—all to preserve the Parties' and Court's resources and simplify the Court's, or more appropriately, the arbitrator's job in evaluating the merits of this case.  Accordingly, Defendants have not waived their right to arbitrate.

       iv.    **Defendants Are Timely Moving to Compel Arbitration Following Recent Deposition Testimony that Made Plaintiffs' Claims Arbitrable for the First Time.**

Mere passage of time is insufficient to show that a defendant has waived its right to seek arbitration. *See* Grigsby & Associates, Inc. v. M Securities Inc., 635 F. App'x 728, 733 (11th Cir. 2015) (noting that non-movants cite to "no case in which we have held that a party waived its right to arbitrate solely . . . based on the amount of time that elapsed.").  In considering this factor, the relevant time period begins only when the right to arbitrate becomes fully realized. *See* Belke v. Merrill Lynch,

Pierce, Fenner & Smith, 693 F.2d 1023, 1025 (11th Cir. 1982), *abrogated on other grounds by* Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985) (holding that any "the law does not require the 'futile gesture' of filing for arbitration before claims become arbitrable, and that delay in filing should be measured from the time of arbitrability."); *see also* SGM Magnetics, 2023 WL 5167361, at *2 (same).

As discussed in Section I(c)(ii), above, despite Defendants' repeated attempts to ascertain whether Plaintiffs' claims were arbitrable, Plaintiffs needlessly, and without explanation, created a formation dispute by denying their execution of the Agreements until their depositions in late September 2023.  Upon receipt of the original deposition transcripts containing Plaintiffs' admissions validating the formation of the Agreements, the record—for the first time—reflected a factual basis by which Defendants could seek arbitration of Plaintiffs' claims.  As discussed in Section I(c)(iii), above, since receiving these admissions, Defendants have only filed a single, threshold, procedural Motion for Decertification (Dkt. 59) and, upon the Court's Order on the same (Dkt. 67), promptly requested leave to file this Motion (Dkt. 68).  Just recently on April 15, 2024, having found that good cause exists, the Court granted Defendants' Motion for Leave (Dkt. 68) to file this Motion.  (Dkt. 71.)

Simply stated, as of April 29, 2024, Defendants have only had—at most— thirty-two (32) days beyond any stays since receiving the transcripts containing

Plaintiffs' admissions to signing the Agreements and filing this Motion. [12]   Thus,

Defendants have timely moved for arbitration in light of Plaintiffs' recently admitted

facts that made Plaintiffs' claims arbitrable for the first time.  *See* <u>Jordan</u>, 2016 WL

452145, at *7 (finding defendants did not act inconsistent with the right to arbitrate

where, among other things, defendants "repeatedly attempted to ascertain whether

[the] case should be arbitrated, and moved to compel arbitration shortly after

[p]laintiff finally admitted" she was subject to an agreement containing an

arbitration clause); *see also* <u>Benoay v. Prudential–Bache Securities, Inc.</u>, 805 F.2d

1437 (11th Cir.1986) (finding no waiver where claim was not arbitrable at the time

action commenced and request for arbitration was made only ten weeks after the

right to seek arbitration had accrued); *cf.* <u>Snellinq & Snelling, Inc. v. Reynolds</u>, 140

F. Supp. 2d 1314, 1322-23 (M.D. Fla. 2001) (finding acts inconsistent with the right

to arbitrate where defendant knew of his right to compel arbitration but participated

in discovery and failed to move to compel arbitration for fourteen months).

Accordingly, under the totality of the circumstances, Defendants have not acted

inconsistently with the arbitration right, and have not waived their right to arbitrate.

---

[12] Ten (10) days passed between Defendants' receipt of the first set of original deposition transcripts and Defendants filing their Motion for Decertification (Dkt. 59).  Eight (8) days passed between the Court's Order denying Defendants' Motion for Decertification (Dkt. 67) and Defendants filing their Motion for Leave to File a Motion to Arbitrate (Dkt. 68).  Finally, in granting Defendants' Motion for Leave, the Court gave Defendants fourteen (14) days to file this Motion.  (Dkt. 71.)

## II.   EQUITABLE ESTOPPEL APPLIES TO PERMIT LISOVSKIY TO ALSO BENFIT FROM THE ARBITRATION PROVISION.

Where Plaintiffs' FLSA claims are alleged against both 316 Towing and Lisovskiy, in his alleged "active role in operating 316 Towing and in the management thereof" (Dkt. 1, § 13), and are based upon the exact same facts and allegations, Plaintiffs' dispute with 316 Towing under the Agreement is clearly and inextricably intertwined with their claims against Lisovskiy. Thus, despite being a non-signatory to the Agreement, equitable estoppel justifies enforcement of the Agreement's arbitration provision as to Plaintiffs' claims against Lisovskiy. *See* Bailey v. Vulcan Materials Co., No. 1:21-CV-0998-MHC, 2021 WL 5860743, at *6 (N.D. Ga. Nov. 16, 2021) ("[C]laims against two defendants that are 'based on the same facts and are inherently inseparable' justify the application of equitable estoppel."); *see also* MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 948 (11th Cir. 1999) (holding that, where signatory and non-signatory defendants worked "hand-in-hand," plaintiff's claims against the non-signatory were "intimately founded in and intertwined with the obligations imposed by" the agreement); Diaz v. Michigan Logistics Inc., 167 F. Supp. 3d 375 (E.D.N.Y. 2016) (compelling arbitration of FLSA claims by drivers against signatory and non-signatory defendants). Accordingly, the Court should compel arbitration of Plaintiffs' claims

against both Defendants and stay this litigation[13] pending the arbitrator's decision.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion and (i) order this matter to mediation followed by binding arbitration of Plaintiffs' claims against Defendants, and (ii) upon such order, pursuant to 9 U.S.C. § 3 and O.C.G.A § 9-9-6(a), stay this action pending completion of such arbitration and any further motion of the Parties to lift the stay.

Respectfully submitted this 29th day of April 2024.

| | |
|---|---|
| MITCHELL - HANDSCHUH LAW GROUP 3390 Peachtree Road, NE, Suite 520 Atlanta, Georgia 30326 T: (404) 262 - 9488 E: jeremy@m-hlawgroup.com E: emma@m-hlawgroup.com | /s/ Jeremy R. Handschuh Jeremy R. Handschuh, Esq. Georgia Bar No. 418099 Emma K. Greer, Esq. Georgia Bar No. 459856 *Counsel for Defendants* |

*Counsel for Defendants certify that this document complies with N.D.Ga. L.R. 5.1B and the N.D.Ga. Standing Order No. 04-01.*

---

[13] *See* 9 U.S.C. § 3; *see also* O.C.G.A § 9-9-6(a).