## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| DUSTIN HYDE, individually and on Behalf of All Other Similarly Situated | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action File No: 2:22-cv-103-RWS |
| 316 TOWING & ROAD SERVICE, INC., and MAKSIM LISOVSKIY | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## <u>DEFENDANTS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION TO PLAINTIFF BRENT JOHNSON</u>

Pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure you, Plaintiff Brent Johnson, are required to answer each Interrogatory, Request for Production of Documents, and Request for Admission separately and fully in writing and under oath within 30 days after service of the Interrogatories, Requests for Production of Documents, and Requests for Admission, and serve a copy of your answers and any responsive documents upon counsel for Defendants, Jeremy R. Handschuh, Esq., Mitchell-Handschuh Law Group, LLC, 3390 Peachtree Road, Suite 520, Atlanta, GA 30326. You may do so by mailing copies of the requested documents to counsel for Defendants. If you answer an interrogatory by providing

business records, you must specify the records from which the answer may be derived or ascertained and afford a reasonable opportunity for Defendants to examine or inspect such records or to make copies.

These Interrogatories, Requests for Production of Documents, and Requests for Admission are continuing in nature; that is, if any additional or different information comes to your attention between the date of your answer and the time of trial, then your answers and production of documents must be supplemented or amended to include such additional or different information. the rule requires that any such supplemental answers be served seasonably.

## <u>INSTRUCTIONS</u>

1.     Terms not defined in the Definition section below have their respective meanings ascribed to such terms in the Defendants' Answer and Affirmative Defenses to Plaintiff's Complaint filed in the above-styled case.

2.     Each interrogatory is addressed to your personal knowledge, as well as to your attorneys, agents, employees, managers, and other representatives.  When a question is directed to you, the question is also directed to such persons.

3.     You must produce electronically stored information ("ESI") in its original native format, with all metadata intact, **OR** you must produce ESI in text-searchable PDF format with corresponding load files containing all available metadata.  Any files that are not easily converted to text-searchable PDF format,

such as spreadsheet, database, and drawing files, should be produced in native format.

4.    If you refuse to answer an interrogatory, in whole or in part, describe the basis of your refusal to answer in sufficient detail so as to permit the court to adjudicate the validity of the refusal.

5.    If a refusal to answer an interrogatory is stated on the grounds of burdensomeness, identify the number and nature of documents needed to be searched, the location of the documents, and the number of person hours and costs required to conduct the search.

6.    These interrogatories are continuing so as to require supplemental answers by the person or entity to whom they are addressed and should he, she, or it obtain further or different information between the time answers are served and the time of trial.

7.    These requests for production shall not be deemed to call for identical copies of documents. A document with handwritten notes, editing marks, or any other mark which differentiates the document should not be deemed identical to one without such modifications, additions, or deletions.

8.    If any request for production cannot be responded to in full, respond to the extent possible and specify the reasons for the inability to respond fully.

9.     No document or file requested for production should be altered, changed or modified in any respect.  No document or file requested should be disposed of or destroyed.

10.     These requests for production are deemed a continuing document request. If, after your response and production pursuant to this request for production, you later learn of or otherwise come into possession, custody or control of additional document called for by this request, such documents must be produced.

11.     If a refusal to respond to any request for production is stated on the grounds that the request is burdensome, identify the request, the nature of the documents, the location of the documents, and the number of person-hours and costs required to respond.

12.     If you do not produce any document because of a claim of privilege, state the nature of the privilege claimed, and identify the document by stating:

      a.     All persons preparing and receiving such document;

      b.     The date of such document;

      c.     The general subject matter of such document; and

      d.     A brief statement of the facts upon which you rely to support the claim of privilege.

13.     If any document requested was formerly in your possession, custody or control and has been lost or destroyed, you are requested to submit, in lieu of such documents, a writing which:

> a.     Describes in detail the nature of the document and its contents;
>
> b.     Identifies the person who prepared or authored the document, and if possible, the person to whom the document was sent;
>
> c.     Specifies the date on which the document was prepared or transmitted or both;
>
> d.     Specifies, if possible, the date on which the document was lost or destroyed, and, if destroyed, the conditions of or reasons for such destruction and the persons requesting and performing the instructions; and
>
> e.     The identities of all persons having knowledge of the contents of the document.

## **DEFINITIONS**

As used herein, the following words and terms shall have the following definitions:

1.     "And" and "Or" shall not be construed to limit the scope of any request due to either its disjunctive or conjunctive form.

2.    "You," "Plaintiff," or "Brent Johnson," shall mean and include Brent Johnson and any of his attorneys, agents, employees, and other representatives.

3.    "Defendants" shall mean and include 316 Towing & Road Service, Inc. and Maksim Lisovskiy and any of their attorneys, agents, and other representatives.

4.    "316 Towing" shall mean and include Defendant 316 Towing & Road Service, Inc. and any of its attorneys, agents, and other representatives.

5.    "Lisovskiy" or "Mr. Lisovskiy" shall mean and include Defendant Maksim Lisovskiy and any of his attorneys, agents, and other representatives.

6.    "Suit," "Lawsuit," or "Litigation" shall mean this suit, which is styled *Dustin Hyde, individually and on behalf of all other similarly situated, v. 316 Towing & Road Service, Inc. and Maksim Lisovskiy,* Case No. 2:22-cv-103-RWS, pending in the United States District Court, Northern District of Georgia, Gainesville Division.

7.    To "identify" when used with reference to a natural person means to state the person's name and last known residence, phone numbers, and business address and business phone numbers.

8.    To "identify" a person that is a business, organization or group of persons means to state the full name and last known mailing address and telephone

6

number of such business, organization, or group of persons, the form of the business, organization, or group of persons (*e.g.*, governmental agency, corporation, partnership, joint venture, etc.), and to "identify" the natural person who would have knowledge of the information sought by the interrogatory.

9.    "Identify" when used with reference to a statement, oral or written, needs to state the exact language of the statement or, if you do not know the exact language of the statement, to state the substance of the statement, and to "identify" the person making the statement, the person to which the statement was made, the date of the statement and to describe the nature, oral or written, of the statement.

10.   To "identify" a "document" means to provide the following information irrespective of whether the document is deemed the subject to any claim of privilege:

(a)    The title or other means of identification of such document;

(b)    The date of each such document;

(c)    The author of each such document;

(d)    Their recipient or recipients of each such document, including but not limited to Defendant or anyone who purports to represent Defendant;

7

(e)     The present location of any and all copies of each such document in the care, custody or control of Defendant;

(f)     The names and current addresses of any and all persons who were custody and control of each such document or copies thereof; and

(g)     If all copies of the document have been destroyed, the names and current addresses of the person or persons authorizing the destruction of the document and the date the document was destroyed.

11.   In lieu of "identifying" any document, it shall be deemed a sufficient compliance with these interrogatories to attach a copy of each such document to the answers hereto and reference the document in the interrogatory to which the document is responsive.

12.   "Describe in detail" means to give a complete and full description concerning the matter about which inquiry is made, including the full name, address, and telephone number of persons involved, if appropriate, along with dates, times, places, amounts, and other particulars that make the answer to the interrogatory fair and meaningful.

13.   "Explain in detail" means to give a complete and full explanation of the matter about which inquiry is made including in the explanation all

particulars necessary to make the Answer to the Interrogatory fair and meaningful.

14. The term "person" or "persons" shall include individuals, associations, partnerships, corporations, and any other type of entity or institution whether formed for business purposes or any other purpose, and the officers, directors, employees, agents, partners, personal representatives, successors, and assigns thereof.

15. "Communication" means any expression or transmission of words or thoughts by any person or between or among two or more persons, including, but not limited to, spoken words, discussions, conferences, conversations, negotiations, agreements, understandings, interviews, inquiries, promises, correspondence, or other forms of discourse, whether oral or written or otherwise recorded, or whether transmitted in person, postal, or by electronic means, including but not limited to radio, computerized, cellular, or telephonic devices.

16. "Correspondence" means and includes both written correspondence and written evidence of verbal communications.

17. "Concerning" means referring, relating, reflecting, connected with, commenting on, responding to, showing, describing, analyzing,

constituting, or pertaining to, directly or indirectly, in any way, all or any part of a specified subject matter or document.

18. "Date" shall mean the exact day, month, and year, if ascertainable, or if not, the best approximation (including the relationship to other events).

19. "Document" means all written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced, of every type and description that is in your possession, control or custody or which you have knowledge, including, but not limited to, contracts; messenger's receipts; transaction reports; interest statements; records; papers; correspondence; emails; confirmation statements; monthly statements; profit and loss statements; equity runs; claims manuals; procedures manuals; compliance manuals; underwriting manuals; communications; reports; directives; computer print-outs; records; notices or memoranda of telephone conversations; summaries, notes, memoranda or minutes of personal conversations, interviews, or meetings; executed contracts, agreements, and all other forms of understanding; memoranda; instructions; projections; tabulations; notes; notebooks; diaries; telephone logs; calendars; travel and expense records; worksheets; receipts; vouchers; books of account (including ledgers, subledgers, journals, subjournals, vouchers, receipts, invoices and billings and all other financial

10

records); bank records and statements; canceled checks and all bank vouchers or retained copies and all debit memos and other banking advices and bank communications; manuals; books; pamphlets; brochures; circulars; telegrams; cablegrams; transcripts; photographs; newspaper or magazine clippings; and any other writings, recordings or tapings of any kind, and computer records (translated if necessary, by any person or entity that has control of such records through detection devices into reasonably usable form); every draft of each such documents; every copy of each such document where the original is not in your possession, custody or control; and every copy of each such document where such copy is not an identical copy of an original, or other copy, or where such copy contains any commentary or notation whatsoever that does not appear on the original or other copy.

20. "Meeting" means any coincidence or presence of two or more persons, whether or not such coincidence or presence was by chance or prearranged, formal or informal warning connection with some activity.

21. The term "on-call period" shall refer to the time period each day during which you were scheduled to be available to answer and respond to calls for 316 Towing's customers.

22.   Terms of any gender (masculine, feminine, neuter) shall be deemed to include any and all other genders which the context may require or permit.

23.   Terms in the singular shall be deemed to include the plural and terms in the plural shall be deemed to include the singular.

## **INTERROGATORIES**

1.   Please identify the individual(s) who participated in answering these interrogatories, and for each, identify the individual's relationship to you.

2.   Please identify every entity, individual, or organization (including yourself and companies you own) for whom you have performed work in exchange for compensation as either an employee, officer, partner, owner, or independent contractor since June 1, 2019.  For each entity, individual, or organization, provide:

(a) The telephone number, address, EEIN, and full legal name as it appears on any check stub, W-2, or 1099 you may have received;

(b) The name, contact information, and address of any individual who either supervised, managed, or otherwise directed the work you performed;

(c) The time periods during which you performed work, including the beginning and end dates of your employment or engagement for each;

(d) A description of the payment and timekeeping practices relevant to the work you performed, including whether such work was paid on an hourly, salaried, per-job, or piecemeal basis;

(e) A description of any programs, software, apps, documents, or records that were used to log or track work performed; and

(f) A description of the manner of any and all work that you performed, including job descriptions, locations, whether the work was performed remotely or on-site, and your specific duties.

3.      For each workweek from June 1, 2019 through June 1, 2022 that you claim you performed more than 40 hours of work for 316 Towing and for which you allege you were not properly compensated under the Fair Labor Standards Act, state the precise number of hours you claim you worked. For each week for which you cannot give a precise number, state why you are unable to do so. Your answer should be organized by providing responsive information for each separate workweek.

4.      For each workweek from June 1, 2019 through June 1, 2022 that you claim you performed more than 40 hours of work for 316 Towing and for which you allege you were not properly compensated under the Fair Labor Standards Act, describe every physical location from which you performed work for 316 Towing and the number of total hours spent at each location.  For time spent at roadside or otherwise unknown locations while assisting 316 Towing customers, you may state

"assisting customer" instead of providing an exact physical location. For time spent in transit, you may specify "in transit" or "commuting" instead of providing an exact physical location. For each week for which you cannot give a precise number, state why you are unable to do so. Your answer should be organized by providing responsive information for each separate workweek.

5.     Please describe in detail the process by which you were hired or began working for 316 Towing, including detailed descriptions of all conversations, meetings, documents, training materials, offers, benefits information, protocols, handbooks, or agreements that were exchanged between you and any employee or representative of 316 Towing prior to and within the first two weeks of beginning work for 316 Towing.

6.     Please identify each cellular phone, smartphone, smartwatch, and any other mobile telecommunication device that you have used to transmit or receive communications, including phone calls, text messages, emails, or other app-based notifications, for or on behalf of any business or organization, including those which you own or have an interest in, since June 1, 2019. For each, please provide the make, model, date acquired, any assigned telephone number, and the name of any entity or individual who supplied or paid for the device or cellular service at any point in time.

7.      For each Request for Admission that you have denied, please describe in detail, and not in summary fashion, the factual bases supporting your denial.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS**

1.      Any and all documents that you believe support the allegations asserted by you in the First or Second Claim for Relief of your Complaint.

2.      Any and all documents relating to the allegation in Paragraphs 22, 27, 28, 72, 83, and 85 of the Complaint.

3.       Any and all documents relating to your claim for damages and other relief, including but not limited to all documents relating to the claim for damages set forth in the Prayer for Relief of the Complaint and your Initial Disclosures.

4.      Any and all documents relating to any admission you contend 316 Towing or Lisovskiy has made at any time from June 1, 2019 through the present in relation to any of the allegations of the Complaint.

5.      Any and all documents evidencing or relating to any facts you believe or contend refute or contradict any of Defendants' defenses, as asserted in their Answer.

6.      Any and all documents or exhibits that you intend to reference, rely upon, or introduce into evidence at the trial of this Suit.

7.      Any and all documents relating to each expert you intend to call as a witness at trial in this Suit, including but not limited to documents and

communications sent to or received from each expert, resumes, curriculum vitae, oral or written reports, and any supporting data or information.

8.     All affidavits, sworn statements, notes, and other documents sent to, received from, or otherwise relating to any person you intend to call as a witness at trial, either in person, through deposition testimony, or through an affidavit regarding any claim or defense in this Suit.

9.     Any and all documents that you referred to, relied upon, consulted, or used in any way to draft the Complaint, your Initial Disclosures, or your response to the Declaration of Brent Johnson.

10.     Any and all documents or communications between you and any person or entity (other than your attorney) from June 1, 2019 through present, relating to the allegations in the Complaint, including but not limited to correspondence, emails, handwritten notes, memos, recordings, journal entries, and communications with any government agency.

11.     Any and all documents you obtained from any person or entity from June 1, 2019 through present relating to the allegations in the Complaint, including but not limited to any written statements, affidavits, declarations, sworn statements, notes, sworn testimony, documents obtained by subpoena, documents received in response to Freedom of Information Act (FOIA) requests, and documents received from any government agency.

12.    Any and all social media postings or communications relating to the allegations in the Complaint, including but not limited to postings on Facebook, LinkedIn, Twitter, YouTube, Instagram, Snapchat, WhatsApp, Reddit, blogs, wikis, and other social media sites.

13.    Any and all documents relating to any contracts, agreements, or correspondence in connection with your working relationship with either 316 Towing or Lisovskiy, including but not limited to any compensation or employment agreement or contract for tow truck services, onboarding documents, waivers, manuals, handbooks, training materials, or other written documents from 316 Towing characterize the work you performed or your working relationship with 316 Towing.

14.    Any and all documents relating to any work you performed for 316 Towing, relevant to any claim or defense in this Suit, at any time from June 1, 2019 through June 1, 2022, in exchange for any form of compensation, including but not limited to invoices for tow truck services provided, days and hours worked, shift schedules, calendars, Towbook records, uniforms, safety meetings, routes, store visits, use of electronic devices, product promotions, tips, badges, sales, training, new products, contests, product pricing, customers, paychecks, compensation records, inspection reports, and schedule for completion of work.

15.    Any and all documents relating to any benefits offered or provided to you by 316 Towing or Lisovskiy at any time from June 1, 2019 through present, including but not limited to pension, 401k, profit sharing, stock options, health insurance, life insurance, dental benefits, disability insurance, workers' compensation coverage, unemployment insurance, malpractice insurance, payment of professional dues, fees, or continuing education, reimbursement of moving expenses, business expenses, or tuition, paid time off, paid vacation, and paid sick leave.

16.    Any and all documents relating to any expenses you incurred at any time from June 1, 2019 through June 1, 2022 in connection with the work you performed for 316 Towing, including but not limited to mileage, vehicle maintenance and repair, tools, equipment, supplies, meals, travel, uniforms, professional licenses and certifications, attendance at conferences and seminars, tuition, cell phone, fax, postage, and home office.

17.    Any and all documents relating to your efforts to obtain employment or compensation in exchange for work or services at any time from June 1, 2019 through June 1, 2022, including but not limited to all versions of your resume, applications for employment, cover letters, reference letters, job inquiries, offers of employment, employment agreements, contracts, bids, proposals, job

advertisements and postings, termination notices, resignation notices, rejection letters, and any other communications with any prospective employer or customer.

18.    Any and all documents relating to any business, partnership, limited liability company, corporation, sole proprietorship, nonprofit, joint venture, or other entity you have been employed by, owned, served as an officer for, held a stake in, or performed work for in exchange for compensation at any time from June 1, 2019 through June 1, 2022, including but not limited to business logos, business cards and letterhead, documents filed with local, state, or federal governments, documentation of assets, business entity formation and dissolution documents, licenses, customer reviews, referrals and recommendations, offer letters, employment agreements or contracts, independent contractor arrangements, consulting agreements, bills, invoices, paychecks, paystubs, websites and social media accounts, advertising, business directory listings, insurance coverage, including but not limited to general liability and workers' compensation, receipts, settlement payments, statements of work, W2s, Form 1099s, IRS Schedule C, social security benefits, disability benefits, unemployment insurance benefits, workers' compensation benefits, employer identification numbers (EIN or FEIN), building and equipment leases, annual reports, bank accounts, business expenses, mileage logs, loans and other forms of financial assistance, and claims, charges, grievances, or complaints made by or against each such entity.

19.     Any and all documents in which you characterize your working relationship with 316 Towing and/or Lisovskiy, including but not limited to loan and credit applications, resumes, online profiles, and leases.

20.     Any and all emails, letters, facsimiles, text messages, social media messages, direct messages, or other communications between you and (i) 316 Towing, (ii) Lisovskiy, or (iii) any other independent contractor or employee of 316 Towing.

## REQUESTS FOR ADMISSION

1.     Please admit that you never sought input from Lisovskiy, personally, in accordance with your assertion in Johnson Decl. ¶ 7, August 26, 2022.

2.     Please admit that you have never been an employee of 316 Towing.

3.     Please admit that you have never been an employee of Lisovskiy.

4.     Please admit that you have never been an independent contractor for Lisovskiy.

5.     Please admit that you were never required to perform work for 316 Towing outside of the State of Georgia.

6.     Please admit that the time you spent answering calls, driving to and from customers, and performing roadside services for 316 Towing's customer was captured by a timekeeping software called "Towbook."

7.     Please admit that 316 Towing's records, which include data from

Towbook, accurately capture all work that you performed for 316 Towing.

8.    Please admit that you never performed more than 40 hours of work for 316 Towing in any given week between 2019 and 2022.

9.    Please admit that you received additional compensation from 316 Towing for worked performed outside of your scheduled on-call period.

10.    Please admit that you have been adequately compensated for all hours of work that you performed for 316 Towing.

11.    Please admit that you have received at least $7.25 per hour in compensation for all hours of work performed for 316 Towing.

12.    Please admit that 316 Towing did not supervise the manner in which you performed work.

13.    Please admit that 316 Towing did not direct the manner in which you performed work.

14.    Please admit that 316 Towing did not control the manner in which you performed work.

15.    Please admit that you completed and signed 316 Towing's "Pre-Contract Questionnaire."

16.    Please admit that you completed, initialed, and signed 316 Towing's "Independent Contractor and Lease Agreement."

17.     Please admit that you agreed in writing that any dispute arising from the terms of the Independent Contractor and Lease Agreement would be submitted to mediation followed by binding arbitration.

18.     Please admit that you never signed any contract or other agreement with Lisovskiy, personally, including but not limited to any compensation or employment agreement or contract for your tow truck services.

19.     Please admit that you never worked as a tow truck driver for Lisovskiy, personally.

20.     Please admit that you were never paid by Lisovskiy, personally.

21.     Please admit that Lisovskiy, personally, neither hired nor fired you.

22.     Please admit that Lisovskiy, personally, neither supervised nor controlled your work schedule, duties, protocols, applications, or assignments with 316 Towing.

23.     Please admit that Lisovskiy, personally, never maintained your payroll records.

24.     Please admit that, during the time that you were scheduled to be on-call, you were not required to report to an office.

25.     Please admit that during the time that you were scheduled to be on-call, you would spend at least part of your on-call period at home or engaged in personal activities.

22

26.    Please admit that during at least part of the time you were scheduled to be on-call, you would perform work for another company or individual from a computer.

27.    Please admit that during at least part of the time you were scheduled to be on-call, you would attend to personal responsibilities and errands.

28.    Please admit that you frequently rejected calls from potential clients during the time that you were scheduled to be on-call.

29.    Please admit that 316 Towing never disciplined or threatened to terminate you for rejecting a request from a potential customer.

30.    Please admit that you never raised objections to 316 Towing that the compensation you received was inadequate for the amount of work you performed.

31.    Please admit that you never raised objections to 316 Towing concerning your classification as an independent contractor.

Respectfully submitted this 16th day of November 2022.

MITCHELL - HANDSCHUH
LAW GROUP
3390 Peachtree Road, NE, Suite 520
Atlanta, Georgia 30326
T: (404) 262 - 9488
F: (404) 231 - 3774
E: jeremy@m-hlawgroup.com
E: amanda@m-hlawgroup.com

/s/ Jeremy R. Handschuh
Jeremy R. Handschuh, Esq.
Georgia Bar No. 418099
Amanda I. Elliott, Esq.
Georgia Bar No. 137633
*Counsel for Defendants*

*Counsel for the Defendants certifies that this document complies with N.D.Ga. L.R. 5.1B and the N.D.Ga. Standing Order No. 04-01.*