# In the Matter Of:

# HYDE V. 316 TOWING & ROAD SERVICE

2:22-cv-103-RWS

## BRENT JOHNSON

*September 29, 2023*



800.211.DEPO (3376)
*EsquireSolutions.com*

1          IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF GEORGIA
2                  GAINESVILLE DIVISION

3
   DUSTIN HYDE, Individually,        )
4  and on Behalf of All Other        )
   Similarly Situated,               )
5                                    )   CIVIL ACTION FILE
                Plaintiff,           )
6                                    )   NO. 2:22-cv-103-RWS
        vs.                          )
7                                    )
   316 TOWING & ROAD SERVICE,        )
8  INC., and MAKSIM LISOVSKIY,       )
                                     )
9               Defendants.          )
   _____)

10

11

12          Deposition of BRENT JOHNSON, taken on

13     behalf of the Defendants, pursuant to Notice

14     and agreement of counsel, in accordance with

15     the Federal Rules of Civil Procedure, before

16     Cynthia B. Gatewood, Certified Court Reporter,

17     at 3390 Peachtree Road NE, Suite 520, Atlanta,

18     Georgia, on the 29th day of September 2023,

19     commencing at the hour of 10:09 a.m.

20

21

22

23

24

25



1                    INDEX TO EXAMINATIONS

2    EXAMINATION                                        PAGE

3    Cross-Examination by Mr. Handschuh                   4

4

5                     INDEX TO EXHIBITS

6    DEFENDANTS'
       EXHIBIT              DESCRIPTION              PAGE
7
        D-1      Fifth Amended Notice to Take          5
8                Deposition of Brent Johnson

9       D-2      Driver Application                    14

10      D-3      not tendered

11      D-4      Plaintiff Brent Johnson's             26
                 Responses to Defendants' First
12               Interrogatories, Requests for
                 Production of Documents, and
13               Requests for Admission

14      D-5      Independent Contractor and Lease      23
                 Agreement
15
        D-6      Towbook Log                           66
16
        D-7      Canceled Job Log                      70
17
        D-8      Declaration of Brent Johnson          85
18
        D-9      Invoices                             104
19
        D-10     Invoices                              38
20
        D-11     IRS Response                         121
21

22

23                          -   -   -

24

25



```
 1    APPEARANCES OF COUNSEL:

 2

      On behalf of the Plaintiff:
 3

             SEAN SHORT
 4           Attorney at Law
             Sanford Law Firm PLLC
 5           Suite 510, Kirkpatrick Plaza
             10800 Financial Centre Parkway
 6           Little Rock, Arkansas 72211
             Phone:   (501) 904-1650
 7           Email:   sean@sanfordlawfirm.com

 8

      On behalf of the Defendants:
 9

             JEREMY R. HANDSCHUH
10           AMANDA I. ELLIOTT
             Attorneys at Law
11           Mitchell-Handschuh Law Group
             3390 Peachtree Road NE
12           Suite 520
             Atlanta, Georgia 30326
13           Phone:   (404) 262-9488
             Email:   jeremy@m-hlawgroup.com
14           Email:   amanda@m-hlawgroup.com

15

      Also Present:
16

             Eli Kudrin
17

18

19

20                         -   -   -

21

22

                  (Disclosure, as required by the Georgia
23        Board of Court Reporting, was made by the court
          reporter, a written copy of which is attached
24        hereto.)

25
```



1    Q.    But you're just not sure whether or not in

2    this contract any independent contractor language is

3    set forth.

4    A.    Well, I really don't know how to answer that

5    question.

6    Q.    Well, what portion of your response to 16 --

7    this is the independent contractor and lease agreement.

8    A.    Uh-huh (affirmative).

9    Q.    Is this the independent contractor and lease

10   agreement you signed with 316?

11   A.    Yes, it is.  But, like I said, at the time

12   that I was asked the question, I wasn't 100 percent

13   sure.  So I didn't -- I wasn't aware.

14   Q.    Okay.

15   A.    But now that I see it, yes, I was false in

16   that statement.

17   Q.    Okay.  And then turn your attention to your

18   response to number 21.  And this goes back to a

19   question that I had in relation to who was in charge of

20   the application process with you for 316, and you

21   testified that was Eli; correct?

22   A.    Correct.

23   Q.    Look at your response here when asked

24   Request for Admission Number 21, it asked, "Please

25   admit that Lisovskiy" -- Max -- "personally neither



1   hired nor fired you."

2        A.    Hold on.  I still don't under -- I still

3   don't understand the question.  I'm sorry.

4        Q.    Okay.  So here your response, just looking

5   at it, states that, "Defendant Lisovskiy was consulted

6   and had final say on whether plaintiff was hired."

7   What does that mean?

8        A.    Are we saying that Max personally hired me?

9        Q.    No.  This is your response.  I'm asking you

10  what does that mean, "Denied to the extent that

11  Defendant Lisovskiy was consulted and had final say on

12  whether plaintiff was hired."

13       A.    I'm sorry.  I'm still not understanding the

14  question.

15       Q.    Does that mean that while you dealt with Eli

16  you believed at the time that Max nevertheless had the

17  final say?

18       A.    Yes.

19       Q.    Okay.  And how do you know that?

20       A.    Actually, I don't.  I'm not 100 percent sure

21  if he had the final say-so, but I just assumed that

22  because he was the one pretty much -- how can I say

23  this?  I'm trying to figure out how to put this in

24  words.  I would pretty much say that I always assumed

25  as Eli to be the manager and Max to be the owner, so he



1      A.      Uh-huh (affirmative).

2      Q.      That would have been 60 hours of shifts.

3      A.      Uh-huh (affirmative).

4      Q.      During that 60-hour shift, as you referred

5   to it, was there ever a time where you believed that

6   you were under dispatch and driving more than 40 hours

7   a week?

8      A.      Under dispatch driving more than 40 hours a

9   week?

10     Q.      Uh-huh (affirmative).

11     A.      Yeah.

12     Q.      Okay.  When was that?

13     A.      So when you say when was that, you need

14  specific date and time?

15     Q.      Sure.  What weeks during your eight months

16  did you happen to drive over 40 hours per week?

17     A.      I couldn't give you a date and time.  I

18  wouldn't know.

19     Q.      Okay.  What would you need to refer to to

20  refresh your memory?

21     A.      Driving over 40 hours.  To be honest, sir, I

22  have absolutely no idea.

23     Q.      Would you say it's accurate that perhaps if

24  you were to rely on Towbook it would show the --

25  because we went through and noted how it tracks the



ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com