IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| DUSTIN HYDE, individually and on Behalf of All Other Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>316 TOWING & ROAD SERVICE, INC., and MAKSIM LISOVSKIY<br><br>Defendants. | Civil Action File No: 2:22-cv-103-RWS<br><br>**JURY TRIAL DEMANDED** |

## REPLY IN SUPPORT OF
## DEFENDANTS' MOTION TO ARBITRATE AND TO STAY LITIGATION

COME NOW Defendants 316 Towing & Road Service, Inc. ("316 Towing") and Maksim Lisovskiy (collectively, "Defendants"), by and through their counsel of record, and file this Reply in Support of Defendants' Motion to Arbitrate and to Stay Litigation (Dkt. 72) (the "Motion") and, in support thereof, state as follows:

### INTRODUCTION

Plaintiffs have conceded, at least through omission, all issues with respect to the Motion except for the sole issue of waiver (Pls.' Resp., Dkt. 73), for which Plaintiffs bear a heavy burden of proof and persuasion. Based upon the unique facts of this record, waiver simply cannot be found to exist. The key distinguishing characteristic of this matter lies in the formation dispute Plaintiffs needlessly created

1

to evade arbitration altogether. Despite Defendants' early and repeated attempts to ascertain whether Plaintiffs' claims were arbitrable, Plaintiffs' counsel repeatedly disputed Plaintiffs' execution of the Agreements, dilated the issues subject to litigation, and, in so doing, hoped Defendants would inadvertently waive their arbitration right. Indeed, Plaintiffs' depositions in late September 2023 made it clear that Plaintiffs executed the Agreements.

Plaintiffs' counsel has significantly never offered any explanation for the divergence between counsel's representations and Plaintiffs' own testimony.[1] Once the formation of the Agreements became an issue, Plaintiffs put the issue of arbitration into a jury question posture that *could not* have been resolved on this record *prior to* Defendants' receipt of the original deposition transcripts in late 2023.[2] Since then, Defendants have only filed a single, threshold, procedural decertification motion, which the Court denied finding the issue of arbitration would be resolved collectively. Defendants then promptly requested leave to file this Motion, which the Court granted, finding good cause existed. (*See* Dkt. 71.)

By contrast, Plaintiffs attempt to convince the Court that this unique procedural posture was somehow Defendants' fault rather than a direct result of

---

[1] *See* Dkt. 68-1, 70, 72-1.
[2] *See* Omnibus Trading, Inc. v. Gold Creek Foods, LLC, 591 F. Supp. 3d 1334, 1347 (N.D. Ga. 2021) (citation omitted) ("Disputes of fact regarding whether an agreement has been accepted are questions that are properly entrusted to a jury.").

Plaintiffs' repeated failure to admit what was all along an undisputed issue—that Plaintiffs signed or initialed the Agreements.[3] But it was the needless formation dispute that forced Defendants to proceed with their limited participation in litigation based on the facts as they developed on this record, preserving their rights and intent to arbitrate along the way. While the waiver analysis here might be different had Plaintiffs' counsel adequately investigated and freely admitted that Plaintiffs executed the Agreements, that simply did not happen. Accordingly, Defendants respectfully request that this Court grant Defendants' Motion.

I. **WITHIN THEIR RESPONSE, PLAINTIFFS PRESERVED ONLY THE ISSUE OF WAIVER.**

Defendants' Motion presents, and Plaintiffs have conceded by omission, the following issues for the Court to consider: (1) the 11th Circuit requires this Court to stay this litigation and compel arbitration where Defendants have shown that (i) an enforceable agreement to arbitrate exists under state law and (ii) the dispute falls within the scope of the agreement; and (2) equitable estoppel applies to permit Defendant Lisovskiy to also benefit from the arbitration provision. Accordingly, if no waiver is found to exist on the record, this Court should order this matter to mediation followed by binding arbitration of Plaintiffs' claims against both Defendants. Plaintiffs do not dispute that, upon such order, the Court must stay this

---

[3] Defendants deny all misplaced characterizations subscribed to them within Plaintiffs' Response. (*See* Dkt. 73.)

3

action pending completion of such arbitration and any further motion of the Parties. See 9 U.S.C. § 3, O.C.G.A § 9-9-6(a); see also Smith v. Spizzirri, No. 22-1218, 2024 WL 2193872, at *4 (U.S. May 16, 2024) (same).

## II. DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO ARBITRATE.

In light of the above, the Court need only determine whether Plaintiffs have met *their heavy burden* of proving that Defendants waived their right to arbitrate. They simply have not. "Because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." Gutierrez v. Wells Fargo Bank, NA, 889 F.3d 1230, 1236 (11th Cir. 2018) (citation omitted).[4] "Whether waiver has occurred depends on the facts of each case. . . . A party waives the right to compel arbitration when they substantially participate in litigation to a point inconsistent with an intent to arbitrate. . . ." Jordan v. Comcast Cable Commc'ns Mgmt., LLC, No. 1:14-CV-3622-WSD, 2016 WL 452145, at *7 (N.D. Ga. Feb. 4, 2016) (citations omitted). Plaintiffs fail to show, and the record does not support a finding, that Defendants have waived arbitration by substantially participating in litigation to a

---

[4] "A court must hold a party to its arbitration contract just as the court would to any other kind." Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022). Under Georgia law, a similarly heavy burden of proof is placed on the party asserting waiver of any contractual right. See Holiday Hosp. Franchising, LLC v. N. Riverfront Marina & Hotel, LLLP, 2021 WL 3798561 at *3 (N.D. Ga. 2021) (citation omitted) (holding that the burden of proving a "clear and unmistakable" waiver lies with the party asserting waiver and explaining that the evidence relied upon to prove a waiver must "so clearly" indicate an intent to relinquish a known, particular right or benefit).

4

point inconsistent with their intent to arbitrate.

> **a.      Defendants Gave Early, Fair Notice of, and Affirmatively Preserved the Issue of, Right, and Intent to Arbitrate.**

The Parties agree that "[t]he key ingredient in the waiver analysis is fair notice to the opposing party and the District Court of a party's arbitration rights and its intent to exercise them."  Gutierrez, 889 F.3d at 1236.[5]  Then, the "court and the opposing party . . . can manage the litigation with [the arbitration] contingency in mind."  Id.   Defendants consistently asserted and preserved the position that "Plaintiff's claims are subject to a mandatory arbitration provision found within [the Agreements] . . . ."[6]  Despite clear notice of Defendants' express preservation of the arbitration right at every turn, Plaintiffs' counsel simply ignored the arbitration contingency, manufactured a formation dispute, and forced this case into this current procedural posture.  Neither Defendants nor the Court are responsible for Plaintiffs' disregard of the arbitration contingency.

Next, where Defendants have clearly satisfied the requisite notice necessary

---

[5] This matter is undeniably controlled by the 11th Circuit's standard for preservation of the right to arbitrate—notice.  Plaintiffs attempt to misconstrue this standard by asserting an 8th Circuit requirement that a party "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration."  (Dkt. 73, at 8 (citing Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC, 588 F.3d 963, 969 (8th Cir. 2009).)  Defendants' actions satisfy the 8th Circuit's standard also. See Dkt. 71.

[6] Dkt. 5, at 3; see also, e.g., Dkt. 14, at 3-4; 19, at 3; 20, at 12; 44, at 2; 59-1, at 16-17; 65, at 12-13.  Plaintiffs admit having received early notice.  (See Dkt. 73, at 3.)

to preserve the issue of arbitration, Plaintiffs' contention that an earlier motion to arbitrate in this matter was somehow required is clearly misplaced. Defendants simply were not required to ask permission from Plaintiff or to otherwise file an allegedly disputed motion to arbitrate in the face of Plaintiffs' early formation contests.[7] The issue of formation of the Agreements was itself an issue destined for jury trial resolution. Had Plaintiffs' counsel simply freely admitted to having executed the Agreements, Defendants would have motioned, or simply sought consent, to arbitrate much sooner. Every case Plaintiffs cited claiming that the Court could have given priority to a motion to arbitrate over a Motion for Conditional Certification (Dkt. 16) are inapposite as they do not involve a comparable ongoing formation dispute. (Dkt. 71, at 9.)

### b. Defendants' Participation in Discovery Is Not Conclusive of a Waiver to Arbitrate.

Participation in the discovery process alone is not determinative of a waiver

---

[7] Thus, Defendants intentionally, because formation was an issue, chose to preserve both the Court's and its own resources by consistently preserving the issue of, and right to, arbitrate—putting Plaintiffs on notice of the same—until such a time that the record finally reflected Plaintiffs' admitted execution of the Agreements and supported the arbitrability of Plaintiffs' claims. *See* Dkt. 70, at 7-8 (citing Regan v. Stored Value Cards, Inc., 85 F. Supp. 3d 1357, 1364 (N.D. Ga. 2015) ("[M]aterial fact issues surrounding contract formation preclude the Court from deciding as a matter of law that the parties did or did not enter into the agreement to arbitrate."); Mullinax v. United Mktg. Grp., L.L.C., No. 1:10-cv-03585–JEC, 2011 WL 4085933 at *8, (N.D. Ga. Sept. 13, 2011) (denying defendant's motion to arbitrate where plaintiff denied entering into the agreement and its arbitration provision)).

of the right to arbitrate, particularly where, as here, the opposing party 'evades' arbitration by failing to admit basic facts, creating a need for such discovery regarding the arbitrability of the case. See Jordan, 2016 WL 452145, at *7. At most, Plaintiffs contend that Defendants merely seeking discovery on issues beyond arbitration coupled with briefing on procedural certification and decertification issues are alone sufficient to constitute waiver of the arbitration issue. On this specific record here, it simply cannot.

> 1. Plaintiffs' Failures Forced Defendants to Conduct Discovery on Issues Other than Solely Arbitration.

Contrary to Plaintiffs' assertions—without authority—Defendants were not *required* to request that this Court limit the scope of discovery or so limit themselves to preserve their arbitration rights where Defendants provided Plaintiffs and the Court with early notice of their right and intent to arbitrate. Plaintiffs emphasize the Gutierrez court's example that a court *could* limit the scope of early discovery with this possibility in view, but Plaintiffs offer no support for the proposition that Defendants were *required* to do so. And Plaintiffs never offered or asked to do so either. Defendants disagree with Plaintiffs' contention that "it was apparently up to the Court to *sua sponte* limit discovery to prevent engagement on the merits" (Dkt. 71, at 9), as addressing the threshold issue of arbitration should be a collective effort to preserve the Parties' and Court's resources. See Gutierrez, 889 F.3d at 1236 (admonishing parties to litigate with arbitration contingency in mind when they have

received notice of a preserved right and intent to arbitrate).  Not unimportantly, Plaintiffs' counsel was always responsible for performing basic and adequate factual investigation into the formation of the Agreements prior to Plaintiffs' depositions. F.R.C.P. 26(g).  Instead, Plaintiff's counsel simply refused to do so.  After creating the formation dispute, Plaintiffs' counsel then consented to discovery and deadline extensions, as discussed below, and otherwise ignored the arbitration contingency altogether.  Plaintiffs now claim that Defendants somehow chose to fully engage in discovery.  This is incorrect and counterfactual. Had Plaintiffs' counsel rightfully admitted that Plaintiffs executed the Agreements, Defendants would not have needed to pursue discovery to the extent they did at all.

    Further, and contrary to Plaintiffs' counsel's representations, there was simply no guarantee, or way to know, that Plaintiffs would reverse course and plainly admit to executing the Agreements later in this case.  Plaintiffs ignore the possibility that, even with discovery limited to issues of arbitration, Plaintiffs could have stubbornly maintained their denials, as they did during informal requests to Plaintiffs' counsel and in their written discovery responses.[8]  Plaintiffs seem to argue that it would have made sense to take multiple, narrow rounds of discovery to tee up a jury trial on each issue—including formation—which is unavailing, improper, and inefficient.

---

[8] Despite Plaintiffs' claim that Defendants could have negotiated a limited discovery arrangement (Dkt. 73, at 10), Defendants are not convinced Plaintiffs' counsel would have conferred in good faith in light of Plaintiffs' counsel's baseless denials.

During the ongoing formation dispute, Defendants intentionally sought to keep this matter as streamlined as possible, preserving (i) costs and resources for all involved, (ii) their arbitration rights along the way, and (iii) discovery on certain merits-based issues that appeared destined for jury trial resolution without the benefit of somehow knowing that the Plaintiffs' own deposition testimony about executing the Agreements would contravene their counsel's earlier, repeated denials.

2. Plaintiffs' Counsel's Needless Formation Dispute Renders this Matter Distinguishable from the Cases Cited by Plaintiffs.

Plaintiffs fail to point to any rule or case that states that discovery, beyond the issue of arbitration—when coupled with a formation dispute—is sufficient to find an issue of waiver. Even if Defendants were able to secure consent to limit discovery to solely the arbitration issue, such narrowing would have been futile in light of Plaintiffs' repeated and unsubstantiated denials of executing the Agreements. In the face of such stubborn denials, Defendants were resigned to the fact that a jury would ultimately decide if the Agreements were formed. And the ongoing formation dispute clearly distinguishes this matter from the cases Plaintiffs seem to rely upon in support of their position that a litigant's use of discovery not "necessarily available" in arbitration should be considered as a factor in determining waiver. *See* Garcia v. Wachovia Corp., 699 F.3d 1273 (11th Cir. 2012) (lacking a similar formation contest); In re Citigroup, Inc., 376 F.3d 23 (1st Cir. 2004) (same); Reid Burton Constr., Inc. v. Carpenters Dist. Council, 614 F.2d 698 (10th Cir. 1980)

9

(same). In Jordan, the defendant served limited discovery on the basic fact that the plaintiff was evading and was fortunate to have received an admission on the same sufficient to support its motion to arbitrate. Here, however, Defendants served discovery requests on the issue of arbitration and, instead of admitting to executing the Agreements like in Jordan, Plaintiffs erroneously denied those requests, forcing Defendants to continue to preserve discovery on all other issues within this matter.

        3.        Defendants' Discovery Actions Prior to Plaintiffs' Admitted to Executing the Agreements are Irrelevant to the Waiver Analysis.

All other actions Plaintiffs cite in support of their claim that Defendants invoked the "machinery" of litigation, including Defendants' participation in the Joint Preliminary Report and Discovery Plan (Dkt. 14);[9] discovery extensions that Plaintiffs consented to—which were due in large part to Plaintiffs' delays and discovery failures, including a discovery dispute (Dkt. 27, 41, 46); responding to Plaintiffs' written discovery requests, including producing documents; and taking Plaintiffs' depositions, were all direct results of Plaintiffs' needless formation dispute that forced Defendants to conduct any discovery in the first place. Because

---

[9] Plaintiffs attempt to elevate form over substance by asserting that Defendants "raised arbitration [in the JPR] in passing but notably did not dispute this Court's jurisdiction" (Dkt. 73, at 11), but there is no requirement to couch the issue of arbitration as an attack on jurisdiction. See Wade v. Citibank, N.A., No. 20-60712-CIV, 2020 WL 13413691, at *2 (S.D. Fla. Oct. 7, 2020) (finding no waiver where, in part, defendant "reiterated its right to arbitration in the parties' Joint Scheduling Report" even though there was no dispute to the court's jurisdiction therein).

10

"the law does not require the 'futile gesture' of moving for arbitration before claims become arbitrable," the Court need not consider such actions whatsoever. *See* Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1025 (11th Cir. 1982) ("[D]elay in filing should be measured from the time of arbitrability."). Thus, contrary to Plaintiffs' assertion, it is not that Defendants "expended their pound of discovery flesh from Plaintiffs" then moved for arbitration (Dkt. 73, at 11), but rather, Plaintiffs' admissions—following a dilated formation dispute—developed a record upon which this Motion, among other factual issues, could finally be supported. Upon learning of such new and clear facts, Defendants ceased any further discovery efforts because the Plaintiffs' deposition testimony admitting to executing the Agreements rendered this matter arbitrable for the first time.

### c. **Defendants Never Litigated the Merits of Arbitrable Issues.**

Defendants' participation in litigation outside of discovery is similarly not conclusive, as Defendants never requested that the Court address any of the merits of arbitrable issues and the Court has not otherwise done so. *See, e.g.*, Jetaire Aerospace, LLC v. AerSale, Inc., No. 1:16-CV-2970-LMM, 2017 WL 11838226, at *6 (N.D. Ga. June 19, 2017) (finding waiver based, in part, on movant's request that the court address the merits of the case within its summary judgment motion). Plaintiffs misconstrue the merit-based standard by arguing, in addition to the discovery-related actions discussed above, that Defendants "indicat[ed] their zeal in

11

litigating this case on the merits" (Dkt. 73, at 12) by amending their Answer and the Scheduling Order (Dkt. 53, 57) and moving for decertification (Dkt. 59) – but none of these actions request that the Court address the merits of any arbitrable issues.[10]

Instead, these actions reflect Defendants' ongoing intent to keep this matter as streamlined as possible by addressing threshold procedural issues—including through the subject Motion—that could narrow the scope of the parties, claims, and issues involved in this matter, while preserving their rights along the way. At best, these actions might support a finding of waiver had Defendants never provided notice of their right, and intent, to arbitrate or had Plaintiffs freely admitted to executing the Agreements at the outset—neither of which are the case here. *See* Wells Fargo Bank, N.A. v. Moore, 1:12-CV-1738-ODE, 2013 WL 12207596, at *5 (N.D. Ga. Mar. 7, 2013) (finding waiver where defendant "went along with the litigation" by filing an answer, amended answer, responses to plaintiff's motions to dismiss, a joint preliminary report and discovery plan, discovery requests, discovery responses, and more without "even hint at a desire to invoke the arbitration provision"). Further, Plaintiffs ignore Defendants' motions (Dkt. 55, 58) to defer the filing deadlines for any dispositive motions until after the Court could determine such threshold procedural issues—all to preserve the Parties' and Court's resources

---

[10] Plaintiffs expressly admit that "issues of certification do not resolve merits issues," such that the Court's decertification order (Dkt. 67) is irrelevant for this waiver analysis. (Dkt. 73, at 13.)

and simplify the Court's, or more appropriately, an arbitrator's job in evaluating the merits of this case. Such conduct clearly reflects Defendants' strident attempts to preserve the issue of arbitrability as opposed to a clear and unmistakable waiver.

d. **Defendants Timely Moved to Arbitrate Following Recent Deposition Testimony that Made Plaintiffs' Claims Arbitrable for the First Time.**

In emphasizing that "[t]his case has proceeded through 22 months of litigation," (Dkt. 72, at 13) Plaintiffs attempt to deflect their responsibility for the same and otherwise detract from the minimal thirty-two (32) days beyond any stays that elapsed between Defendants' receipt of the deposition transcripts and filing their Motion after the Court found good cause and granted Defendants leave to file the same. *See* Belke, 693 F.2d at 1025; *see also* Dkt. 71, at 3 (finding good cause "in the interest of judicial efficiency, and given Defendants' prompt action in seeking leave. . . ."). Plaintiffs' cases on this issue are clearly distinguishable. *See* S&H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990) (finding waiver where claims were arbitrable for eight months in which the movant took five depositions prior to demanding arbitration); Mims v. Glob. Credit & Collection Corp., 803 F. Supp. 2d 1349, 1354 (S.D. Fla. 2011) (finding waiver where claims were arbitrable for eight months in which the movant attending hearings and a mediation conference "without ever attempting to invoke a right to arbitration.").

13

## CONCLUSION

For the foregoing reasons, and in light of the totality of the circumstances here, Defendants respectfully request that this Court grant Defendants' Motion and (i) order this matter to mediation followed by binding arbitration of Plaintiffs' claims against Defendants, and (ii) upon such order, pursuant to 9 U.S.C. § 3 and O.C.G.A § 9-9-6(a), stay this action pending completion of such arbitration and any further motion of the Parties to lift the stay.

Respectfully submitted this 21st day of May 2024.

|  |  |
|---|---|
| MITCHELL - HANDSCHUH LAW GROUP 3390 Peachtree Road, NE, Suite 520 Atlanta, Georgia 30326 T: (404) 262 - 9488 E: jeremy@m-hlawgroup.com E: emma@m-hlawgroup.com | /s/ Jeremy R. Handschuh Jeremy R. Handschuh, Esq. Georgia Bar No. 418099 Emma K. Schott, Esq. Georgia Bar No. 459856 *Counsel for Defendants* |

*Counsel for Defendants certify that this document complies with N.D.Ga. L.R. 5.1B and the N.D.Ga. Standing Order No. 04-01.*

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| DUSTIN HYDE, individually and on Behalf of All Other Similarly Situated ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action File No: 2:22-cv-103-RWS |
| 316 TOWING & ROAD SERVICE, INC., and MAKSIM LISOVSKIY ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day, Tuesday, May 21, 2024, I have caused to serve true and correct copies of the documents listed below:

1. REPLY IN SUPPORT OF DEFENDANTS' MOTION TO ARBITRATE AND TO STAY LITIGATIONBRIEF IN SUPPORT OF DEFENDANTS' MOTION TO ARBITRATE AND TO STAY LITIGATION; and

2. this CERTIFICATE OF SERVICE;

with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

*[SERVICE LIST FOLLOWS]*

1

Matthew W. Herrington, Esq.
DELONG, CALDWELL, BRIDGERS FITZPATRICK & BENJAMIN, LLC
Matthew.herrington@dcbflegal.com
*Local Counsel for Plaintiff*

Josh Sanford, Esq.
Sean Short, Esq.
SANFORD LAW FIRM, PLLC
josh@sanfordlawfirm.com
sean@sanfordlawfirm.com
*Lead Counsel for Plaintiff*

Respectfully submitted this 21st day of May 2024.

| | |
|---|---|
| MITCHELL - HANDSCHUH LAW GROUP<br>3390 Peachtree Road, NE, Suite 520<br>Atlanta, Georgia 30326<br>T: (404) 262 - 9488<br>E: jeremy@m-hlawgroup.com<br>E: emma@m-hlawgroup.com | /s/ Jeremy R. Handschuh<br>Jeremy R. Handschuh, Esq.<br>Georgia Bar No. 418099<br>Emma K. Greer, Esq.<br>Georgia Bar No. 459856<br>*Counsel for Defendants* |

*Counsel for Defendants certify that this document complies with N.D.Ga. L.R. 5.1B and the N.D.Ga. Standing Order No. 04-01.*